**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

 *Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

 *Of Attorneys for 15005 NW Cornell LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br> 15005 NW Cornell LLC; and<br> Vahan M. Dinihanian, Jr.,<br><br>       Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>**FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED** ~~JULY 31,~~**OCTOBER 13, 2020** |

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT
DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11  Doc 314  Filed 10/13/20

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY .......................................................... 1
     A.   Introduction ................................................................................. 1
     B.   Summary of the Plan ..................................................................... 3
          1.   General .................................................................................. 3
          2.   Secured Creditors .................................................................. 3
          3.   General Unsecured Creditors .................................................. 4
          4.   Equity Interests ..................................................................... 4
          5.   Leases and Executory Contracts .............................................. 4
          6.   Effective Date ........................................................................ 4
          7.   Cramdown Election ................................................................ 4
     C.   Brief Explanation of Chapter 11 .................................................... 5

II.  VOTING PROCEDURES AND CONFIRMATION OF PLAN ................... 5
     A.   Ballots and Voting Deadline .......................................................... 5
     B.   Parties Entitled to Vote ................................................................. 7
     C.   Votes Required for Class Acceptance of the Plan ............................. 8
     D.   "CramDown" of the Plan .............................................................. 8
     E.   Confirmation Hearing ................................................................... 9

III. COMPANY BACKGROUND AND GENERAL INFORMATION ............. 9
     A.   Debtor~~S~~s ........................................................................................ 9
     B.   ~~DINIHANIAN'S~~Dinihanian's Business~~ES 10~~ 10
     C.   Management OF NW Cornell. ...................................................... 10
     D.   ~~WASHINGTON~~Washington County Litigation ................................. 10

IV.  EVENTS LEADING TO THE BANKRUPTCY FILING ........................ 11

V.   SIGNIFICANT POST-PETITION EVENTS ......................................... 11
     A.   Employment of Professionals ...................................................... 11

VI.  ASSETS AND LIABILITIES ............................................................... 12
     A.   Assets ........................................................................................ 12
          1.   NW Cornell's Real Property ................................................. 12
          2.   Dinihanian's Real Property ................................................... 12
          3.   Personal Property ................................................................. 12
     B.   Liabilities .................................................................................. 13
          1.   Tasha Teherani-Ami ............................................................. 13
          2.   Bateman Seidel and Daniel Lorenz Trust Deed Claims ........... 13
          3.   Columbia Bank .................................................................... 13
          4.   Unsecured Creditors ............................................................ 14

VII. DESCRIPTION OF PLAN ................................................................. 14
     A.   ~~SOLICITATION AND CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY SECURITIES14~~Solicitation and Classification and Treatment of Cl
          1.   General ............................................................................... 14
          2.   Unclassified Claims ............................................................. 15

DEBTORS' JOINT DISCLOSURE STATEMENT
DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

|  | 3. | Classified Claims | 16 |
| B. | | Administrative Expenses | 20 |
| C. | | Executory Contracts | 20 |
| D. | | ~~IMPLEMENTATION OF THE PLAN~~ ~~21~~Implementation of the Plan | 21 |
| E. | | Effect Of Confirmation | 21 |
|  | 1. | Binding Effect | 21 |
|  | 2. | Revesting, Operation of Business | 22 |
|  | 3. | Injunction | 22 |
|  | 4. | Event of Default | 23 |
|  | 5. | Modification of the Plan; Revocation or Withdrawal of the Plan | 23 |
|  | 6. | Retention of Jurisdiction | 23 |
|  | 7. | United States Trustee Fees | 24 |

| VIII. | | LIQUIDATION ANALYSIS | 24 |

| IX. | | POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 25 |
|  | A. | Tax Consequences to the Debtors. | 25 |
|  | B. | General Tax Consequences on Creditors. | 26 |

| X. | | ACCEPTANCE AND CONFIRMATION OF THE PLAN | 26 |
|  | A. | Confirmation Hearing | 26 |
|  | B. | Requirements of Confirmation | 27 |
|  | C. | Cramdown | 27 |
|  | D. | Feasibility | 27 |
|  | E. | Alternatives to Confirmation of the Plan | 27 |

| XI. | | CONCLUSION | 28 |

DEBTORS' JOINT DISCLOSURE STATEMENT
DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11   Doc 314   Filed 10/13/20

## I. INTRODUCTION AND SUMMARY

### A. INTRODUCTION

On May 21, 2019, 15005 NW Cornell LLC ("NW Cornell") and Vahan M. Dinihanian, Jr. ("Dinihanian"), filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On October 18, 2019, NW Cornell and Dinihanian (collectively, the "Debtors") filed this Disclosure Statement (the "Disclosure Statement") with the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their Joint Plan of Reorganization (the "Plan"). A copy of the Plan is attached hereto as **Exhibit 1**.

This Disclosure Statement is being provided to you by Debtors to enable you to make an informed judgment about the Plan. This Disclosure Statement has been prepared to disclose information that in Debtors' opinion is material, important, and helpful to evaluate the Plan. Among other things, this Disclosure Statement describes the manner in which Claims and Equity Securities will be treated. This Disclosure Statement summarizes the Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the Plan, and outlines the procedures involved in confirmation of the Plan. The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself. If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan shall control. You are urged to review the Plan and, if applicable, consult with your own counsel about the Plan and its impact on your legal rights before voting on the Plan.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code. Factual information contained in this Disclosure Statement is the representation of Debtors only and not of their attorneys, consultants, or accountants. The information has been obtained from the books and records of Debtors as well as other sources deemed reliable. Debtors have prepared the information contained herein in good faith, based on information available to Debtors. The

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

information herein has not been subject to a verified audit.  No representation concerning Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the material relied on in preparation of this Disclosure Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan.  Nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceeding involving Debtors or any other party or be deemed advice on the tax or other legal effects of the Plan on the holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant classes to make an informed judgment concerning the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2020 at _____ Pacific time.  That hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Ave., 7th Floor, Courtroom 3, Portland, Oregon 97204, before the Honorable David W. Hercher.  The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing on any adjournment thereof.

A ballot has been enclosed with this Disclosure Statement for use in voting on the Plan. In order to be tabulated for purposes of determining whether the Plan has been accepted or

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

rejected, ballots must be <u>received</u> at the address indicated on the ballot no later than 4:00 p.m. on

_____, 2020.  Debtors believe that confirmation of the Plan is in the best interests of the

holders of Claims and urge you to accept the Plan.

This Disclosure Statement contains financial information and estimates that demonstrate

the feasibility of the Plan of Reorganization and Debtors' ability to complete the steps

envisioned by the Plan and the Plan Loan upon emergence from Bankruptcy.  Debtors prepared

such information for the limited purpose of furnishing information to Creditors to allow them to

make an informed judgment regarding acceptance of the Plan of Reorganization.  The estimates

of value should not be regarded for the purpose of this Disclosure Statement as representations

or warranties by Debtors as to the accuracy of such information or that any such projections or

valuations will be realized.  Actual values could vary significantly from these projections.

**B.      SUMMARY OF THE PLAN**

A copy of the Plan is attached and discussed in detail later in this Disclosure Statement.

The following description of the Plan is intended as a summary only and is qualified in its

entirety by reference to the Plan.  Debtors urge each holder of a Claim to carefully review the

entire Plan, together with this Disclosure Statement, before voting on the Plan.

**1.      General**

Generally, the Plan provides that Debtors will operate in the ordinary course and will

obtain financing to pay and satisfy their obligations in full.

**2.      Secured Creditors**

Reorganized Dinihanian's secured Creditor, Columbia State Bank ("Columbia"), will be

paid the full amount of its Allowed Secured Claims in accordance with the existing terms of its

loans to Dinihanian, except as modified under the Plan with respect to certain loan terms and

covenants set forth in the Plan.

D̶E̶B̶T̶O̶R̶FIRST AMENDED DEBTORS'S̶ JOINT DISCLOSURE
STATEMENT
 DATED J̶U̶L̶Y̶ ̶3̶1̶OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Reorganized Dinihanian's secured Creditor, Tasha Teherani-Ami, will be paid on the Effective Date the full amount of her Allowed Secured Claim with interest as stated in the Divorce Judgment and actual costs and reasonable attorney fees.

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

### 3. General Unsecured Creditors

All General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date, from and after the Effective Date, not later than six months after the Effective Date.

### 4. Equity Interests

The Plan provides that existing equity interests in NW Cornell, including that of the Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust"), will be left in place. The Plan provides that Dinihanian will retain his interests in assets of his bankruptcy estate.

### 5. Leases and Executory Contracts

All unexpired leases and executory contracts will be assumed by the respective Debtors through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned or rejected, or a motion seeking their assumption or rejection has been Filed before the Confirmation Date.

### 6. Effective Date

The Effective Date of the Plan shall be the later of (a) the eleventh day following entry of the Confirmation Order and (b) the first business day following the entry of an order by the Bankruptcy Court establishing the reasonable attorney fees and costs for the Class 1 Claim.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 7. Cramdown Election

In the event any Class does not accept the Plan, Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

### C. BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization provision of the Bankruptcy Code. Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of Debtor, its creditors, and other parties in interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. A plan of reorganization sets forth the method for compensating the holders of claims and interests in a debtor. If a plan is confirmed by the Bankruptcy Court, it will be binding on a debtors, its creditors, and all other parties in interest. A claim or interest is impaired under a plan of reorganization if the plan provides that the legal, equitable, or contractual rights of the holder of such claim or interest are altered. A holder of an impaired claim or interest is entitled to vote to accept or reject the plan. Chapter 11 does not require all holders of claims and interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it. However, the Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve the plan. These tests are designed to protect the interests of holders of claims or interests who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy Court.

An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

## II. VOTING PROCEDURES AND CONFIRMATION OF PLAN

### A. BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement. After carefully reviewing this Disclosure Statement and its exhibits,

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be <u>received</u> by Debtors no later than 4:00 p.m. Pacific time on _____, 2020 at the following address:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas J. Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204-2099

or via facsimile transmission to Nicholas J. Henderson at (503) 417-0528.

Holders of each Claim scheduled by Debtors or for which a Proof of Claim has been Filed will receive ballots and are permitted to vote based on the amount of the Proof of Claim, except as discussed below.  If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by Debtors in their Schedules.  The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified, or suspended prior to computation of the vote on the Plan.  A Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection.  Holders of disputed Claims who have settled their dispute with Debtors are entitled to vote the settled amount of their Claim.  The Bankruptcy Code and rules provide that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim, estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class.  If you do not receive a ballot or if a ballot is damaged or lost, please contact:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR  97204-2099
> (503) 417-0508

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT
 DATED ~~JULY 31~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating, and signing the enclosed ballot and returning it, by First Class mail or hand delivery, to Debtors at the address indicated above. In order to be counted, all ballots must be executed and <u>received</u> at the above address no later than 4:00 p.m. Pacific time on _____, 2020. Any ballots received after 4:00 p.m. Pacific time on _____, 2020 will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Motschenbacher & Blattner LLP, Attention: Nicholas J. Henderson, at (503) 417-0501. Ballots sent by facsimile transmission will be counted if faxed to Mr. Henderson and received by 4:00 p.m. Pacific time on _____, 2020.

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim or an amount different from a timely Filed Proof of Claim, then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim Filed with respect to such Claim or Order of the Bankruptcy Court.

**B.     PARTIES ENTITLED TO VOTE**

Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of Claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (a) curing any

DEBTOR<u>FIRST AMENDED DEBTORS'</u>S JOINT DISCLOSURE STATEMENT DATED JULY 31<u>OCTOBER 13,</u> 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

defaults; (b) reinstating the maturity of such Claim; (c) compensating the holder of such Claim for damages that result from the reasonable reliance on any contractual provision or law that allows acceleration of such Claim; and (d) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim.  Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired.  Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan.  All Classes of Claims are impaired under Debtor's Plan except the Class 1 and Class 5 Claims of secured Creditor Tasha Teherani-Ami.

### C.  VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cramdown of the Plan."  In a "Cramdown," at least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan.  The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan.  If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

### D.  "CRAMDOWN" OF THE PLAN

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting impaired Class of Claims or Interests. Debtors believe the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any Class of Creditors does not accept the Plan.

## E. CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2020, at __ a.m. Pacific time. The confirmation hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, Courtroom 3, 1050 SW 6th Avenue, 7th Floor Portland, Oregon, before the Honorable David W. Hercher, United States Bankruptcy Judge. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the Creditors of Debtors. Prior to the hearing, Debtors will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objections to confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and received by counsel for Debtors no later than 4:00 p.m. Pacific time on _____, 2020. Unless an objection to confirmation is timely Filed and received, it will not be considered by the Bankruptcy Court.

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### III.    COMPANY BACKGROUND AND GENERAL INFORMATION

#### A.    DEBTORS

NW Cornell is a manager-managed Oregon limited liability company owned equally by Eagle Holdings LLC and the Trust, which also asserts an equitable interest in the real property owned by NW Cornell, although such ownership is disputed.  Dinihanian is the manager of NW Cornell and is authorized to take all actions on its behalf.  Dinihanian is an individual residing in the State of Oregon and is the sole member and manager of Eagle Holdings, LLC.  NW Cornell's primary asset is its 50 percent tenant-in-common ownership interest in 37 acres of undeveloped real property located at 15005 NW Cornell Road, Beaverton, Oregon.

#### B.    DINIHANIAN'S BUSINESSES

Prior to the filing of the Bankruptcy Cases, Dinihanian's principal business was operating Eagle Holdings, LLC, which owns other real estate-centered limited liability companies and engages in enterprises regarding motor vehicles, the production of mechanical parts, and property management.  Dinihanian intends to continue operating Eagle Holdings and its entities under their existing business models.

#### C.    MANAGEMENT OF NW CORNELL.

Reorganized NW Cornell will consist of the same owners and management as currently exists.  NW Cornell does not have any employees.  Depending on the path pursued under the Plan, NW Cornell will continue to own a 50 percent tenant-in-common interest in the Cornell Property, develop the Cornell Property in cooperation with non-debtor tenant-in-common owners, or it will possess the net proceeds from the sale of its interest in the property.

#### D.    WASHINGTON COUNTY LITIGATION

NW Cornell is the plaintiff in *15005 NW Cornell, LLC v. Cornell Rd. LLC, et al.*, Case No. 18CV17059, pending in the Circuit Court for the State of Oregon for Washington County.  NW Cornell commenced the partition proceeding because the other tenant-in-common owners of the Cornell Property would not cooperate in the development of the property or consent to NW

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Cornell borrowing against its interest in the property. The Washington County court in a memorandum opinion indicated that partitioning is an appropriate remedy, although it would require additional time-consuming land use master-planning procedures prior to such a partition being determined. No further action has occurred in the Washington County court after the Petition Date due to the fact that parties have opposed NW Cornell's applications to employ counsel for that action.

## IV. EVENTS LEADING TO THE BANKRUPTCY FILING

Debtors' bankruptcy filings were precipitated by the scheduled foreclosure sales of the Skyline Property and the Cornell Property initiated by Creditor Tasha Teherani-Ami ("Teherani-Ami") based on deeds of trust recorded on both properties as provided in the General Judgment of Dissolution of Marriage (the "General Judgment") entered in the divorce case involving Teherani-Ami and Dinihanian, Multnomah County Circuit Court Case No. 1208-68730 (the "Divorce Case"). In the General Judgment obligated Dinihanian to make a significant settlement payment to Teherani-Ami in January 2018, and that payment was secured by the deeds of trust. When Dinihanian was unable to make that payment, Teherani-Ami initiated foreclosure proceedings on both the Skyline and the Cornell Property. In addition, Teherani-Ami filed an action compel Dinihanian to execute a deed, on behalf of NW Cornell, to half of NW Cornell's tenant-in-common interest in the Cornell Property or be held in contempt (Multnomah County Circuit Court Case No. 19-CN01457) (the "Contempt Proceeding").

Debtors had and continue to have insufficient funds with which to pay their creditors until the Cornell Property is sold or until Debtors can obtain financing secured by NW Cornell's interest in the Cornell Property and Dinihanian's interest in the Skyline Property, or both. As a result, Debtors were unable to avoid the imminent risks of foreclosure or the transfer of half of NW Cornell's interest in the Cornell Property and filed for Chapter 11 bankruptcy protection to prevent the loss of significant value in the Cornell Property and Skyline Property.

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## V. SIGNIFICANT POST-PETITION EVENTS

Debtors obtained an order to lift the automatic stay to reengage in the Washington County partition litigation. Debtors have not pursued that litigation for various reasons, primarily because the application ~~of its~~to employ partition counsel has been blocked in the Bankruptcy Cases. Debtors have invested extensive efforts to arrange financing to finance the payments of Claims and facilitate the incremental development of some or all of the Cornell Property. Such financing has been arranged through lender SORFI, LLC, an affiliate of Sortis Capital (the "Plan Lender") and the Plan Loan described in the Plan. [1] The term sheet describing the Plan Loan's terms is attached as Exhibit 2 hereto. Under the term sheet, Debtors will be obligated to grant Sortis Real Estate, LLC, an affiliate of the Plan Lender, a right of first refusal to serve as the listing broker to market and sell NW Cornell's rights, title and interest in the Cornell Property should the listing and marketing of NW Cornell's tenant-in-common interests become necessary and appropriate following Plan confirmation.

Debtors have otherwise devoted the bulk of their efforts since the petition date preparing and proposing a plan of reorganization and disclosure statement and plan and then engaging in numerous rounds of mediation with Tasha Teherani-Ami, in her individual capacity and as trustee for the Trust, as well as the other tenant-in-common owners of the Cornell Property. To date, these efforts have been unsuccessful in reaching a resolution, leading Debtors to file and seek confirmation of the present Plan.

---

[1] Debtors already have an indirect lender-borrower relationship. SORFI, LLC loaned 933 Harrison Blvd., LLC ("933 LLC") the amount of $1,250,000 in early 2020, to refinance 933 LLC's mortgage debt that had matured. The SORFI loan to 933 LLC was guaranteed by Eagle Holdings, LLC, but was not personally guaranteed by either of the Debtors. Dinihanian asserts that 100% of the outstanding membership interest in 933 LLC is owned by Eagle Holdings, LLC, a single member LLC in which Dinihanian owns 100% of the membership interest. Certain parties in interest dispute Dinihanian's assertions that Eagle Holdings owns 933 LLC, and allege that Dinihanian owns 933 LLC directly. Debtors believe this distinction is inaccurate, and, more importantly, Debtors believe that the distinction is irrelevant given that (i) Debtors' Plan proposes to pay 100%, and (ii) Dinihanian's liquidation analysis includes the value of 933 LLC and its assets.

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

In addition, the Trust has filed an adversary proceeding (Adv. Pro. No. 20-03077) (the "Trust Complaint") seeking a declaratory judgment to enforce the terms of the Stipulated Judgment, specifically with respect to its asserted right to a deed from NW Cornell to a twenty-five percent tenant-in-common interest in the Cornell Property. The Trust also filed a proof of claim in the NW Cornell case (Claim 5-1, the "Claim"). NW Cornell has objected [Dkt. 258] to the Claim on various grounds, filed an answer to the Trust Complaint, and filed an adversary proceeding (Adv. Pro. No. 20-03079) (the "Cornell Avoidance Action"), to which the Trust has filed an answer.

NW Cornell instituted an adversary proceeding (Adv. Pro. No. 19-03096) (the "Teherani-Ami Adversary") against Teherani-Ami to avoid the Deed of Trust on the grounds that it constituted a fraudulent transfer. In light of the full payment provided for the Teherani-Ami Claim under the Plan, the Debtors will seek to abate the Teherani-Ami Adversary.

### A. EMPLOYMENT OF PROFESSIONALS

NW Cornell has retained Perkins Coie LLP as its general counsel in the NW Cornell Bankruptcy Case. Dinihanian has retained Motschenbacher & Blattner LLP as his general counsel in the Dinihanian Bankruptcy Case. Dinihanian also sought and obtained Bankruptcy Court approval for the employment of Delap as his accountant. NW Cornell has sought the approval for the employment of Bateman Seidel to serve as ordinary course counsel in the partition litigation, although no order has been entered by the Court due to objections asserted by the Trust and the partition litigation has therefore been unable to proceed.

## VI. ASSETS AND LIABILITIES

### A. ASSETS

#### 1. NW Cornell's Real Property

As described above, NW Cornell's principal asset is a fifty-percent tenant-in-common interest in the Cornell Property, which is a 37-acre parcel located at 15005 NW Cornell Road, Beaverton, Oregon. ~~Debtors estimate~~NW Cornell estimates that the value of its half interest in

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT
DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the Cornell Property was approximately $13,500,000 as of the Petition Date.  This is supported by a broker's price opinion dated February 26, 2019.  It is difficult to assess what impact the pandemic currently afflicting the United States will have on the value of the Cornell Property or other properties in the greater Portland area.  The non-debtor tenant-in-common owners are limited liability companies owned by Dinihanian's sister, Lillian Logan, and her two adult children.  They assert that NW Cornell lacks the authority to enter into the Plan Loan, and that entering into the Plan Loan will, through an unauthorized transfer or otherwise, create a multi-million-dollar damages claim in favor of the non-debtor tenant-in-common owners under the tenant-in-common agreement.  NW Cornell asserts that it has the authority to enter into the Plan Loan pursuant to Section 8 of the tenant-in-common agreement without violating any other provision of the agreement or creating a damages claim.

### 2. Dinihanian's Real Property

Dinihanian owns real property and improvements at 237 NW Skyline, in Portland Oregon.  The Skyline Property is Mr. Dinihanian's residence, as well as the location where Mr. Dinihanian conducts the business activities of Eagle Holdings.  Dinihanian estimates that the total value of the residence was approximately $1,000,000 as of the Petition Date.

### 3. Personal Property

As of the Petition Date, NW Cornell owns very few items of personal property.  As of the Petition Date, Dinihanian's hard assets consisted of miscellaneous household goods and furnishings.  Dinihanian also had checking accounts and brokerage accounts.  Dinihanian also owns all membership interests in Eagle Holdings, LLC, which in turn owns stock or membership interests in various entities that own commercial real estate.  Dinihanian owns a half interest with his sister, Lillian Logan, in a cabin located in Welches, Oregon.  A list of Dinihanian's assets can be found in Dinihanian's Amended Schedule A/B [ECF No. 60] (Dinihanian Case)[12].  The combined net values of Dinihanian's assets, including Eagle Holdings and the various stock or

---

[12] References to the "Dinihanian Case" refer to Bankruptcy Case No. 19-31886-dwh11.

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

membership interests it owns, and the Welches cabin, fall far short of the funds necessary to pay the Claims and other amounts required to be paid under the Plan.

Dinihanian also has potential tort claims (potentially as derivative claims) against Lillian Logan, related to allegations of breach of fiduciary duty and oppression in connection with Dinihanian Floral Products, Inc., which is jointly owned by Dinihanian and Ms. Logan.

## B. LIABILITIES

### 1. Tasha Teherani-Ami

Pursuant to the Divorce Judgment, Dinihanian owes Tasha Teherani-Ami $2,250,000, plus accrued interest at 4.5% per annum from the date of the Divorce Judgment, until paid, as well as actual and reasonable costs and attorney fees. The Divorce Judgment is secured by a Residential Trust Deed against the Skyline Property and by a deed of trust against NW Cornell's interest in the Cornell Property. NW Cornell has commenced an adversary proceeding to avoid the transfer by which the deed of trust against the Cornell Property was delivered to Ms. Teherani-Ami.

### 2. Bateman Seidel and Daniel Lorenz Trust Deed Claims

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

### 3. Columbia Bank

Dinihanian owes Columbia Bank in connection with an equipment loan, and a real estate loan for commercial properties owned by two limited liability companies he controls. Dinihanian also has executed personal guaranties in connection with other loans made by Columbia Bank to entities controlled by Mr. Dinihanian.

### 4. Unsecured Creditors

The total amount of Unsecured Claims scheduled by Dinihanian is approximately $976,654. This amount ~~excludes any duplication for scheduled and Filed claims~~includes the

~~DEBTOR~~FIRST AMENDED DEBTOR'~~S~~S JOINT DISCLOSURE STATEMENT DATED ~~JULY 31,~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Columbia Bank claims described above.  This amount does not include claims made by Lillian Logan [See Claim No. 4; Case No. 19-31886-dwh11].

**5.     Trust Claim**

The Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust") seeks the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6.  NW Cornell has commenced an adversary proceeding to avoid any obligation to make such a transfer of half of its assets or, to the extent such a transfer is deemed to have occurred without an executed deed, to avoid such a deemed transfer.

**6.     Other Asserted Hypothetical Claims**

The co-owners of the Cornell Property have asserted arguments that they may be injured and suffer damages if (1) NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the proposed Plan Loan; or (2) the entire Cornell Property is ultimately sold as a whole pursuant to Section 363(h) of the Bankruptcy Code.  The co-owners argue that either type of transfer would result in a breach of the Tenancy in Common Agreement between NW Cornell and the co-owners.  Further, in the event that a sale of the entire Cornell Property is sold pursuant to 11 U.S.C. § 363(h), the co-owners argue they may be damaged because the sale would result in taxable gains, which would impose tax liabilities upon them that would not exist but for a sale of the entire Cornell Property.  Debtors deny the co-owners' arguments that Debtors would be liable under either scenario, for the reasons set forth below.

**a.     Foreclosure of Plan Loan**

First, in the event that NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the Plan Loan, the transfer would be an authorized transfer.  The Tenancy in Common Agreement is written to preserve each co-owner's ability to pursue a 1031 exchange with respect to their prospective interests in the Cornell Property.  Specifically, the

D̶E̶B̶T̶O̶R̶FIRST AMENDED DEBTORS'S̶ JOINT DISCLOSURE STATEMENT
 DATED J̶U̶L̶Y̶ 3̶1̶,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Tenancy in Common Agreement is written in compliance with IRS Rev. Proc. 2002-22 in at least the following ways in that it:

   • Provides that the title to the Cornell Property as a whole may not be held as an entity under state law (TIC Agreement, ¶ 1);

   • Provides that the co-ownership may not file a partnership or corporate tax return (TIC Agreement); • Indicates that each co-owner may encumber its share of the Cornell Property (TIC Agreement, ¶ 8);

   • Indicates that each co-owner may transfer its respective interest in the Cornell Property, subject only to a right of first refusal in favor of the other co-owners (TIC Agreement, ¶ 10(a)).

   Because these provisions are present in the Tenancy In Common Agreement, Debtors believe that the co-owners arguments are misplaced. Because the agreement authorizes NW Cornell to encumber its TIC Interest, the agreement implicitly consents to the risk that NW Cornell's interest may be transferred through foreclosure in the event of a default. Moreover, if the Debtors default on the Plan Loan after confirmation and funding of such loan, notice of any potential foreclosure sale can be provided to the co-owners in compliance with Section 10(b) of the TIC Agreement. Such notice would provide the co-owners the opportunity to purchase NW Cornell's TIC Interest prior to foreclosure. In the event that the co-owners fail to elect to purchase NW Cornell's TIC Interest, the TIC Agreement explicitly authorizes a transfer. In the event that Debtors are wrong about this position, and if foreclosure of the Plan loan would result in a breach of the TIC Agreement, there is a risk that the Debtors will be liable to the co-owners, which could diminish the amount of Debtors' equity. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

   **b.      Sale of Entire Cornell Property**

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31.OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

In the event of a sale of the entire property, Debtors believe the TIC co-owners would not have any claim against the Debtors, for breach of the TIC Agreement or otherwise. First, Debtors do not believe there is any controlling authority indicating that they bear any liability to the co-owners if Debtors successfully prove the elements of a claim under § 363(h). Second, Debtors believe the co-owners would be provided sufficient notice to enable them to minimize their respective taxes through a 1031 exchange, completely mitigating any potential damages. Finally, as is described above regarding foreclosure, co-owners would be provided notice of any potential sale of the entire property, and they would therefore have the ability to make an offer to purchase the Cornell Property, or even just NW Cornell's TIC Interest. There is a risk that, if Debtors are incorrect in these arguments, that the equity Debtors will receive after a sale will be reduced by the amount of damages they are required to pay the co-owners. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

## VII. DESCRIPTION OF PLAN

### A. SOLICITATION AND CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY SECURITIES

#### 1. General

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization must designate classes of Claims and classes of interest. The Plan classifies all Claims and Interests into 13 classes. The classification of Claims and Interests is made for the purpose of voting on the Plan and making distributions thereunder, and for ease of administration of the Plan. A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is entitled to vote in a particular Class and to receive distributions in such Class only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

paid prior to the Effective Date. Under the Plan, a Claim or Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a proof of the Claim or Interest was (1) timely Filed, or (2) deemed Filed under applicable law by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party in interest has Filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or Interest is allowed by Final Order; or (iii) with respect to an application for compensation or reimbursement of an Administrative Expense Claim, the amount of the Administrative Expense Claim has been approved by the Bankruptcy Court.

2.      **Unclassified Claims**

Administrative Expense Claims and Priority Tax Claims are not classified. An Administrative Expense Claim is a Claim against Debtors constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors, within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

by 11 U.S.C. § 1129(a)(9)(C) and (D).  The IRS has Filed a Priority Tax Claim against Dinihanian in the amount of $6,084.70

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim).  However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto.  Debtors will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be Filed prior to the hearing on confirmation.

3.  **Classified Claims**

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan attached hereto as **Exhibit 1**.

(a) Class 1 (Tasha-Teherani-Ami's Secured Claim Against Dinihanian).
Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian.  The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, and reasonable costs and attorney fees in an amount established by the Bankruptcy Court following application and hearing.  Teherani-Ami will file an application her reasonable costs and attorney fees associated with the Class 1 Claim not later than 14 days after the entry of order confirming the Plan.  Class 1 is unimpaired and will be deemed to accept the Plan.  The Divorce Judgment shall be modified to extend the deadline for

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

payment of the Class 1 Claim to the date on which the Class 1 Claim is to be paid under the terms of this Plan.

The Teherani-Ami Skyline Trust Deed shall be modified as follows:

- Section 1.2 shall be modified to read as follows:

    "Grantor will pay and perform all Obligations when due under the Joint Chapter 11 Plan dated July 30, 2020, filed in the Bankruptcy Case of *In re 15005 NW Cornell, LLC*, Bankruptcy Case No. 19-31883-dwh11 (jointly administered).

- The following language shall be added to the end of Article V:

    "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11.

- Sections 1.8, 1.9, and all provisions referring those sections, shall be deleted.

All other provisions of the Teherani-Ami Skyline Trust Deed shall remain unmodified.

(b) <u>Class 2 (General Unsecured Claims Allowed Against NW Cornell)</u>. Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise classified in the Plan. Each holder of a Class 2 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Effective Date) within six months after the Effective Date.

(c) <u>Class 3 (Trust Claim)</u>. Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment. The Class 3 will retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor in full satisfaction of the Trust Claim. The Class 3 is impaired under the Plan.

(d) <u>Class 4 (Multnomah County Property Taxes)</u>. Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property. The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date. The Class 3 Claim shall be paid in the same manner as Class 2 Claims.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(e) Class 5 (Tasha Teherani-Ami). The Class 5 Claim consists of Tasha Teherani-Ami's disputed secured claim against NW Cornell, pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed.  The Class 5 Claim is the same debt as the Class 1 Claim and payment of the Class 1 Claim, described above, shall constitute full satisfaction of the Class 5 Claim.  The Class 5 Claim is unimpaired and is deemed to accept the Plan.

(f)      Class 6 (Bateman Seidel Claim). Class 6 consists of the Allowed secured Claim of Bateman Seidel, PC.  The Class 6 Claim shall be paid at the same time and in same manner as Class 2 Claims, described above.

(g)      Class 7 (Lorenz Claim). Class 7 consists of the Allowed secured Claim of Daniel Lorenz.  The Class 7 Claim shall be paid in at the same time and in the same manner as the Class 2 Claims, described above.

(h) Class 8 (Columbia Bank – Equipment Loans).  Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note.  Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date.  Columbia's Class 6 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date.  The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 6 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

   "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
 DATED JULY 31OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(i) <u>Class 9 (Columbia Bank – Real Estate Loan)</u>. Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note. The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(j) <u>Class 10 (Guaranty Claims against Dinihanian)</u>. Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents. Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date. The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated:

- The following language in the Columbia Guaranty Documents shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(k) Class 11 (General Unsecured Claims against Dinihanian). Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan. Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full. The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

(l) Class 12 (Interests in NW Cornell). Class 12 Interests in NW Cornell shall retain their interests in NW Cornell.

(m) Class 13 (Dinihanian's Interests). The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

## B.    ADMINISTRATIVE EXPENSES

NW Cornell has retained the following professionals: (a) Perkins Coie LLP as its general counsel in this case and (b) Delap LLP as its accountants. ~~The~~Currently, the total amount of Administrative Expense Claims is ~~uncertain at this time~~$300,000 and could be as high as $375,000 by the Effective Date depending on the extent of litigation with various parties in interest. A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

Dinihanian has retained the following professionals: (a) Motschenbacher & Blattner LLP as his general bankruptcy counsel in this case and (b) Delap LLP as his accountants. ~~The~~Currently, the total amount of Administrative Expense Claims is ~~uncertain at this time~~approximately $150,000 and could be as high as $200,000 depending on the extent of litigation with various parties in interest. A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT DATED ~~JULY 31~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### C.    EXECUTORY CONTRACTS

The Bankruptcy Code gives debtors the right, after commencement of their Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Generally, an "executory contract" is a contract under which material performance (other than the payment of money) is still due by each party.  The Plan provides for the assumption by debtors of all executory contracts and unexpired leases that are not expressly rejected or subject to a motion for rejection Filed on or before the Confirmation Date.

If an executory contract or unexpired lease is or has been rejected, the other party to the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a Proof of Claim with respect to any such Claim must be Filed within 30 days of approval of the Bankruptcy Court of the rejection of the relevant executory contract or unexpired lease.  Any such Claim shall constitute a Class 2 Claim to the extent such Claim is finally treated as an Allowed Claim.  To the extent a debtor rejects an unexpired lease of nonresidential real property, the Claim for damages resulting from such rejection will be limited to the amount allowed under the Bankruptcy Code.

Upon assumption of an executory contract or unexpired lease, debtors must cure or provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides that Reorganized Debtors will promptly cure all monetary defaults.

The Trust asserts the NW Cornell limited liability operating agreement (the "Operating Agreement") is an executory contract that must be assumed and that, because it includes a personal services contract, the Trust contends, the contract cannot be assumed by NW Cornell without the Trust's consent, which will not be provided.  The Trust further contends the Plan cannot be confirmed, and indeed the bankruptcy case must be dismissed, absent NW Cornell's assumption of the Operating Agreement.  Specifically, the Trust argues NW Cornell's failure to execute a deed to the Trust of half of NW Cornell's tenant-in-common interest in the Cornell

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Property, pursuant to the Stipulated Judgment, is default under the Operating Agreement that must be cured as a condition of assumption.

The Debtors disagree with the Trust's argument on numerous grounds, including that the Operating Agreement is not an executory contract, that NW Cornell was not a party to the Stipulated Judgment that purports to require execution of a deed to the Trust, that NW Cornell received no consideration for such a transfer, among other arguments. These arguments are set forth and will be decided, in whole or in part, through NW Cornell's objection to the Trust's Claim, the Trust's Complaint, and the Cornell Avoidance Action.

If the Trust prevails and the Debtors do not, the Plan Lender may not fund the Plan Loan and the Plan may not be confirmable.

### D. IMPLEMENTATION OF THE PLAN

The Debtors will obtain the funds to pay Claims as provided in this Plan through borrowing under the Plan Loan. A condition of the Plan Loan is Debtors' obligation to complete or otherwise resolve the partition litigation pending in Washington County or, in consultation with the Plan Lender, the Debtors' determination that completion of the partition litigation is not practicable within a reasonable time and the Debtors should pursue, through a reservation of jurisdiction by this Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. Repayment of the Plan Loan will be secured by encumbrance on the Skyline Property. It will also be secured by an encumbrance on NW Cornell's tenant-in-common interest in the Cornell Property. NW Cornell is authorized to such an encumbrance pursuant to Paragraph 8 of the Tenant-in-Common Agreement, which states: "Each owner shall have the right to encumber its undivided interest in the Property without the approval of any person and shall discharge the obligation secured by the encumbrance in accordance with its terms." Other tenant-in-common owners have challenged NW Cornell's right to agree to such an encumbrance. There is a risk that such a challenge will prevail and that

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the encumbrance will not be permitted.  Under those conditions, the Plan Lender may not agree to fund the Plan Loan.

The Trust asserts NW Cornell must deliver to it a deed to a twenty-five percent tenant-in-common interest in the Cornell Property in exchange for the redemption of the Trust's fifty-percent membership interest in NW Cornell, an exchange provided for the Stipulated Judgment.   NW Cornell rejects the Trust's position that it must deliver a deed on various grounds, including that NW Cornell was not a party to the Stipulated Judgment and received no consideration for such a deed.  The Trust has commenced an adversary proceeding seeking a declaratory judgment that would result in the Trust owning half of NW Cornell's TIC interest in the Cornell Property.  The Trust also argues that the Debtors must assume three executory contracts before Debtors have the authority to confirm the Plan and obtain the Plan loan. Debtors deny all of the Trust's claims.

NW Cornell is defending the adversary proceeding brought by the Trust and has commenced an adversary proceeding to avoid any obligation allegedly imposed upon NW Cornell to transfer a deed to the Trust.  NW Cornell has also filed an objection to the Trust's proof of claim.  Debtors believe that the Trust's right to equitable relief would be eliminated if the objection to the proof of claim is sustained by the Bankruptcy Court.  The Trust has argued that NW Cornell must succeed in both adversary proceedings and the proof of claim objection for the Plan to be successful.  Debtors reject the Trust's arguments and believe the Plan may still be successful even if NW Cornell loses the claim objection and both adversary proceedings. Ultimately, however, the following risks exist: (i) the Debtors may lose the adversary proceedings and the proof of claim objection, (ii) losing one or more of the adversary proceedings and the proof of claim objection could require NW Cornell to grant a deed to the Trust; and (iii) the Plan Lender may not agree to fund the Plan Loan if the Trust is granted a deed, which would result in failure of the Plan.

D̶E̶B̶T̶O̶R̶FIRST AMENDED DEBTORS'S̶ JOINT DISCLOSURE STATEMENT
 DATED J̶U̶L̶Y̶ ̶3̶1̶,̶OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

The Trust also asserts, in light of its claims under the Stipulated Judgment, NW Cornell should not be permitted to grant an encumbrance on NW Cornell's half tenant-in-common interest in the Cornell Property. If the Trust's objection is sustained, the encumbrance on NW Cornell's fifty-percent tenant-in-common interest in the Cornell Property envisioned by Plan Lender will be diminished by half, and the Plan Lender may not agree to fund the Plan Loan.

As a condition of the Plan Loan, the Plan Lender will require the Debtors to agree to (i) use their best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Plan Lender, make a determination that completion of the partition litigation is not practicable within a reasonable time and the Debtors should pursue, through a reservation of jurisdiction by this Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. The criteria used by Debtors would include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Debtors' efforts to finalize the partition of the Cornell Property. For the avoidance of doubt, the Debtors' agreement to referenced above will be sufficient to permit the funding of the Plan Loan and the payment of Claims as set forth in the Plan.

The Debtors anticipate the $5.6 million in proceeds under the Plan Loan to be dedicated as set forth in Exhibit 3, Projected Use of Funds. One component of the Use of Funds is the reservation of $1.5 million (a) for completion of the partition litigation, (b) to complete the land use and entitlement process in Washington County, (c) if necessary, to prosecute an adversary proceeding under Section 363(h) of the Bankruptcy Code to obtain an order requiring the sale of the entire Cornell Property on the grounds that completion of the partition process will involve impracticable delays and obstruction, and (d) for initial design and development costs. The actual timing and content of any future development of the Cornell Property or any partitioned portion thereof will depend on how the above elements evolve. The payment of creditors'

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

claims under the Plan will be funded by the Plan Loan and will not await or be dependent upon the resolution of any of the elements of uncertainty described in this paragraph.

The Debtors anticipate that the Plan Loan will be repaid at maturity by refinancing. If the Debtors are forced to seek relief under Section 363(h) of the Bankruptcy Code, the sale of the NW Cornell-owned as well as non-debtor interests in the Cornell Property will be sold. In this instance, the Plan Loan would be repaid with the proceeds of such sale.

## E. EFFECT OF CONFIRMATION

### 1. Binding Effect

The treatment of, and consideration received by, holders of Allowed Claims and Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or Interests in Debtors. The Confirmation Order shall bind Debtors and any Creditor, and discharge Debtors from any liability that arose before the Effective Date, as provided in Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (2) a Claim based on such debt or liability is Allowed, or (3) the holder of the Claim based on such debt or liability has accepted the Plan.

### 2. Revesting, Operation of Business

Except for the Cornell Property, which will remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, all property of the bankruptcy estates shall revest in each respective Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens, charges, encumbrances, and interests, except as otherwise specifically provided in the Plan. Except as otherwise set forth in the Plan, there are no limitations or restrictions on the post-confirmation activities or operations of Debtors.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 3. Injunction

The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtors or Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order; (2) the enforcement, attachment, collection, or recovery against Reorganized Debtors or its assets of any judgment, award, decree, or order obtained before the Petition Date; (3) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (4) asserting any setoff, or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (5) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the Confirmation Order.  For the avoidance of doubt, the injunction referenced above shall be applicable to the matters set forth in Section IV.  Neither the injunction nor any provision of the Plan prohibits ~~or otherwise overrides the Stipulated Relief From Stay Order which allows the Marion~~the Washington County Case to proceed to completion in state court including all appeals.

### 4. Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan or any agreement between the holder of such Claim and Debtors or Reorganized

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT
 DATED ~~JULY 31~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Debtors.  An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5.    Modification of the Plan; Revocation or Withdrawal of the Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserves the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

### 6.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and:

(a)  to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

(b)  to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c)  to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d)  to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e)  to resolve controversies and disputes regarding the interpretation of this Plan,

(f)  to implement the provisions of this Plan and enter orders in aid of confirmation, including an action by the Reorganized Debtors pursuant to Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT
DATED JULY 31.OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(g) to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h) to enter a final decree closing this Chapter 11 proceeding.

### 7. United States Trustee Fees

Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. After confirmation, Reorganized Debtors shall serve on the United States Trustee a financial report for each quarter, or portion thereof, that the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

## VIII. LIQUIDATION ANALYSIS

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security in, Debtors subject to such plan. The best interest test is satisfied if a plan provides each dissenting or non-voting member of each impaired Class with a recovery not less than the recovery such member would receive if each Debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee. The Debtors are proposing to pay all creditors in full, and thus the best interest of creditors test is automatically satisfied.

Despite the fact that the Debtors' Plan of Reorganization proposes to pay all creditors in full and therefore satisfies best interest of creditors test, certain parties in interest have demanded that a liquidation analysis be provided. Attached as Exhibit 4 is a liquidation analysis provided by the Debtors. All asset values included in the liquidation analysis were based on the Debtors' opinions of value, based on Debtors' familiarity with their properties, and Debtors' experience in the area of commercial real estate. Parties in interest have asserted that the Debtors' statements of value have been inconsistent, but Debtors assert that any differing valuation numbers were due, in part, to the difference in the time periods when valuation estimates were prepared.

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Additionally, Debtors assert that inconsistency in valuation may also be due to differences in the type of valuation (i.e., liquidation vs. going concern value). The valuation estimates provided in the attached liquidation analysis are intended to be current fair market values as of the date of this disclosure statement.

## IX. POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion summarizes in general terms certain federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR. Substantial differences in the tax implications are likely to be encountered by the creditors because of the difference in the nature of their Claims, their taxpayer status, their method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The following are the anticipated tax consequences of the Plan:

### A. TAX CONSEQUENCES TO THE DEBTORS.

The Debtors do not anticipate any extraordinary or unusual tax consequences because all claims are expected to be paid in full. Debtors will experience ordinary income from continued

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31.OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

operations and earnings and will be entitled to deduct business expenses for any business-related expenses and interest expense. Debtors do not anticipate any cancellation of debt income. In the event NW Cornell sells its real property, NW Cornell shall pay any applicable capital gains taxes that result from the sale.

**B.    GENERAL TAX CONSEQUENCES ON CREDITORS.**

Creditors will likely not experience any unusual or extraordinary tax consequence following Confirmation of the Plan. Payments will be treated in the same manner as they were treated before Confirmation of the Plan. As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor that is unknown to the Debtors. As a result, the tax implications to specific creditors cannot be completely described herein

EACH INTEREST HOLDER IS URGED TO CONSULT SUCH INTEREST HOLDER'S OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS. DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY CLAIMANT.

**X.    ACCEPTANCE AND CONFIRMATION OF THE PLAN**

**A.    CONFIRMATION HEARING**

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on _____, 2020 at ____.m Pacific time. The hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Avenue, 7th Floor, Portland, Oregon in Courtroom No. 3, before the Honorable David W. Hercher, United States Bankruptcy Judge. At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interest of Creditors and Interest holders of Debtors. Debtors will submit a report to the

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT DATED ~~JULY 31~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Bankruptcy Court prior to the hearing concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote thereon. Any objection to confirmation of the Plan must be timely filed on or before _____, 2020 to be considered by the Court.

## B. REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the provisions of Section 1129 of the Bankruptcy Code have been satisfied. If all of the provisions of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan. Debtors believe the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code, that it has complied or will have complied with all of the requirements of Chapter 11, and that the Plan has been proposed and is made in good faith.

## C. CRAMDOWN

A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan has been accepted by at least one impaired class of claims and the Plan meets the cramdown requirements set forth in Section 1129(b) of the Bankruptcy Code. In the event any impaired Class of Claims does not accept the Plan, Debtor hereby requests the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit Debtors to modify the Plan.

## D. FEASIBILITY

Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation of either of the Reorganized Debtors or a need for a further financial reorganization of Reorganized Debtors. Debtors believe they can obtain financing through the Plan Loan in an amount sufficient to pay all creditors in full. The timing of the payments to Creditors will depend on the timing of the closing and the availability of funds under the Plan Loan.

## E. ALTERNATIVES TO CONFIRMATION OF THE PLAN

If a Plan is not confirmed, Debtors or another party in interest may attempt to formulate or propose a different Plan or Plans of Reorganization. Such Plans might involve the sale of

~~DEBTOR~~FIRST AMENDED DEBTORS'~~S~~ JOINT DISCLOSURE STATEMENT
 DATED ~~JULY 31~~OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Dinihanian's other assets, an orderly liquidation of NW Cornell's assets, or any combination thereof. If no Plan of Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

In a liquidation, a Chapter 7 trustee would be appointed with the purpose of liquidating the assets of Debtors. Typically, in liquidation, assets are sold for less than their going concern value and, accordingly, the return to Creditors and Interest holders is less than the return in a reorganization, which derives the value to be distributed in a Plan from the business as a going concern. Proceeds from liquidation would be distributed to Creditors and Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

Debtors believe there is no currently available alternative that would offer holders of Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on the Plan to vote to accept the Plan.

## XI.    CONCLUSION

Please read this Disclosure Statement and the Plan carefully. After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

DATED this 31st13th day of JulyOctober 2020.

Respectfully submitted,

PERKINS COIE LLP

By /s/ Douglas Pahl
   Douglas Pahl, OR Bar No. 950476
   Of Attorneys for Debtor 15005 NW Cornell LLC

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE STATEMENT DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

MOTSCHENBACHER & BLATTNER LLP


By /s/ Nicholas J. Henderson
    Nicholas J. Henderson, OSB No. 074027
    Of Attorneys for Debtor Vahan M. Dinihanian, Jr

DEBTORFIRST AMENDED DEBTORS'S JOINT DISCLOSURE
STATEMENT
 DATED JULY 31,OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**EXHIBITS ATTACHED**:

Exhibit 1: Joint Plan of Reorganization

Exhibit 2:  Term Sheet

Exhibit 3: Projected Use of Funds

Exhibit 4: Liquidation Analysis

Page 38 of 6̶37 ̶DEBTOR̶FIRST AMENDED DEBTORS'S̶ JOINT DISCLOSURE STATEMENT DATED J̶U̶L̶Y̶ ̶3̶1̶OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 314    Filed 10/13/20

<u>Exhibit 3 -- Projected Use of Funds</u>

| | |
|---|---|
| Teherani-Ami Claim | $3,000,000 |
| Creditors, unsecured | $300,000 |
| Creditors, admin | $600,000 |
| Loan Transaction Costs | $35,000 |
| Origination Fee | $112,000 |
| Underwriting Fee | $15,000 |
| Reserves / Future Development Costs | $1,500,000 |
| | |
| Total Use of Funds | $5,600,000 |

\*\* Projections, subject to modification.

**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

     *Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

     *Of Attorneys for 15005 NW Cornell LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>   15005 NW Cornell LLC; and<br>   Vahan M. Dinihanian, Jr.,<br><br>                Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>**FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020** |

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

I.     **INTRODUCTION AND SUMMARY** ..................................................1
      **A.**    Introduction ...........................................................................1
      **B.**    Summary of the Plan ...........................................................3
          **1.**    General ...........................................................................3
          **2.**    Secured Creditors .......................................................3
          **3.**    General Unsecured Creditors ...................................4
          **4.**    Equity Interests ...........................................................4
          **5.**    Leases and Executory Contracts ...........................4
          **6.**    Effective Date .............................................................4
          **7.**    Cramdown Election ....................................................5
      **C.**    Brief Explanation of Chapter 11 ........................................5

II.    **VOTING PROCEDURES AND CONFIRMATION OF PLAN** ...............5
      **A.**    Ballots and Voting Deadline ...............................................5
      **B.**    Parties Entitled to Vote ........................................................7
      **C.**    Votes Required for Class Acceptance of the Plan .............8
      **D.**    "CramDown" of the Plan ....................................................8
      **E.**    Confirmation Hearing ..........................................................9

III.   **COMPANY BACKGROUND AND GENERAL INFORMATION** .........10
      **A.**    Debtors ................................................................................10
      **B.**    Dinihanian's Businesses ...................................................10
      **C.**    Management OF NW Cornell .............................................10
      **D.**    Washington County Litigation ..........................................10

IV.   **EVENTS LEADING TO THE BANKRUPTCY FILING** .......................11

V.    **SIGNIFICANT POST-PETITION EVENTS** .........................................12
      **A.**    Employment of Professionals ...........................................13

VI.   **ASSETS AND LIABILITIES** ...............................................................13
      **A.**    Assets ..................................................................................13
          **1.**    NW Cornell's Real Property ...................................13
          **2.**    Dinihanian's Real Property ......................................14
          **3.**    Personal Property ......................................................14
      **B.**    Liabilities ...........................................................................15
          **1.**    Tasha Teherani-Ami .................................................15
          **2.**    Bateman Seidel and Daniel Lorenz Trust Deed Claims ...15
          **3.**    Columbia Bank ........................................................15
          **4.**    Unsecured Creditors .................................................16

VII.   **DESCRIPTION OF PLAN** ...................................................................18
      **A.**    Solicitation and Classification and Treatment of Claims and Equity Securities ...18
          **1.**    General .......................................................................18
          **2.**    Unclassified Claims .................................................19

**DEBTORS' JOINT DISCLOSURE STATEMENT
DATED OCTOBER 13, 2020**

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

|  |  | **3.** | Classified Claims | 20 |
|  | **B.** | | Administrative Expenses | 24 |
|  | **C.** | | Executory Contracts | 25 |
|  | **D.** | | Implementation of the Plan | 26 |
|  | **E.** | | Effect Of Confirmation | 29 |
|  |  | **1.** | Binding Effect | 29 |
|  |  | **2.** | Revesting, Operation of Business | 29 |
|  |  | **3.** | Injunction | 29 |
|  |  | **4.** | Event of Default | 30 |
|  |  | **5.** | Modification of the Plan; Revocation or Withdrawal of the Plan | 30 |
|  |  | **6.** | Retention of Jurisdiction | 31 |
|  |  | **7.** | United States Trustee Fees | 31 |
| **VIII.** | LIQUIDATION ANALYSIS | | | 32 |
| **IX.** | POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | | 33 |
|  | **A.** | | Tax Consequences to the Debtors. | 33 |
|  | **B.** | | General Tax Consequences on Creditors. | 34 |
| **X.** | ACCEPTANCE AND CONFIRMATION OF THE PLAN | | | 34 |
|  | **A.** | | Confirmation Hearing | 34 |
|  | **B.** | | Requirements of Confirmation | 35 |
|  | **C.** | | Cramdown | 35 |
|  | **D.** | | Feasibility | 35 |
|  | **E.** | | Alternatives to Confirmation of the Plan | 35 |
| **XI.** | CONCLUSION | | | 36 |

DEBTORS' JOINT DISCLOSURE STATEMENT
DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## I.     INTRODUCTION AND SUMMARY

### A.     INTRODUCTION

On May 21, 2019, 15005 NW Cornell LLC ("NW Cornell") and Vahan M. Dinihanian, Jr. ("Dinihanian"), filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On October 18, 2019, NW Cornell and Dinihanian (collectively, the "Debtors") filed this Disclosure Statement (the "Disclosure Statement") with the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their Joint Plan of Reorganization (the "Plan").  A copy of the Plan is attached hereto as **Exhibit 1**.

This Disclosure Statement is being provided to you by Debtors to enable you to make an informed judgment about the Plan.  This Disclosure Statement has been prepared to disclose information that in Debtors' opinion is material, important, and helpful to evaluate the Plan. Among other things, this Disclosure Statement describes the manner in which Claims and Equity Securities will be treated.  This Disclosure Statement summarizes the Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the Plan, and outlines the procedures involved in confirmation of the Plan.  The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself.  If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan shall control.  You are urged to review the Plan and, if applicable, consult with your own counsel about the Plan and its impact on your legal rights before voting on the Plan.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.  Factual information contained in this Disclosure Statement is the representation of Debtors only and not of their attorneys, consultants, or accountants.  The information has been obtained from the books and records of Debtors as well as other sources deemed reliable.  Debtors have prepared the information contained herein in good faith, based on information available to Debtors.  The

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

information herein has not been subject to a verified audit.  No representation concerning Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the material relied on in preparation of this Disclosure Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan.  Nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceeding involving Debtors or any other party or be deemed advice on the tax or other legal effects of the Plan on the holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant classes to make an informed judgment concerning the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2020 at _____ Pacific time.  That hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Ave., 7th Floor, Courtroom 3, Portland, Oregon 97204, before the Honorable David W. Hercher.  The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing on any adjournment thereof.

A ballot has been enclosed with this Disclosure Statement for use in voting on the Plan. In order to be tabulated for purposes of determining whether the Plan has been accepted or

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

rejected, ballots must be <u>received</u> at the address indicated on the ballot no later than 4:00 p.m. on

_____, 2020. Debtors believe that confirmation of the Plan is in the best interests of the

holders of Claims and urge you to accept the Plan.

This Disclosure Statement contains financial information and estimates that demonstrate

the feasibility of the Plan of Reorganization and Debtors' ability to complete the steps envisioned

by the Plan and the Plan Loan upon emergence from Bankruptcy. Debtors prepared such

information for the limited purpose of furnishing information to Creditors to allow them to make

an informed judgment regarding acceptance of the Plan of Reorganization. The estimates of

value should not be regarded for the purpose of this Disclosure Statement as representations or

warranties by Debtors as to the accuracy of such information or that any such projections or

valuations will be realized. Actual values could vary significantly from these projections.

### B.        SUMMARY OF THE PLAN

A copy of the Plan is attached and discussed in detail later in this Disclosure Statement.

The following description of the Plan is intended as a summary only and is qualified in its

entirety by reference to the Plan. Debtors urge each holder of a Claim to carefully review the

entire Plan, together with this Disclosure Statement, before voting on the Plan.

#### 1.        General

Generally, the Plan provides that Debtors will operate in the ordinary course and will

obtain financing to pay and satisfy their obligations in full.

#### 2.        Secured Creditors

Reorganized Dinihanian's secured Creditor, Columbia State Bank ("Columbia"), will be

paid the full amount of its Allowed Secured Claims in accordance with the existing terms of its

loans to Dinihanian, except as modified under the Plan with respect to certain loan terms and

covenants set forth in the Plan.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Reorganized Dinihanian's secured Creditor, Tasha Teherani-Ami, will be paid on the Effective Date the full amount of her Allowed Secured Claim with interest as stated in the Divorce Judgment and actual costs and reasonable attorney fees.

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

### 3.     General Unsecured Creditors

All General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date, from and after the Effective Date, not later than six months after the Effective Date.

### 4.     Equity Interests

The Plan provides that existing equity interests in NW Cornell, including that of the Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust"), will be left in place. The Plan provides that Dinihanian will retain his interests in assets of his bankruptcy estate.

### 5.     Leases and Executory Contracts

All unexpired leases and executory contracts will be assumed by the respective Debtors through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned or rejected, or a motion seeking their assumption or rejection has been Filed before the Confirmation Date.

### 6.     Effective Date

The Effective Date of the Plan shall be the later of (a) the eleventh day following entry of the Confirmation Order and (b) the first business day following the entry of an order by the Bankruptcy Court establishing the reasonable attorney fees and costs for the Class 1 Claim.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 7. Cramdown Election

In the event any Class does not accept the Plan, Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

### C. BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization provision of the Bankruptcy Code. Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of Debtor, its creditors, and other parties in interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. A plan of reorganization sets forth the method for compensating the holders of claims and interests in a debtor. If a plan is confirmed by the Bankruptcy Court, it will be binding on a debtors, its creditors, and all other parties in interest. A claim or interest is impaired under a plan of reorganization if the plan provides that the legal, equitable, or contractual rights of the holder of such claim or interest are altered. A holder of an impaired claim or interest is entitled to vote to accept or reject the plan. Chapter 11 does not require all holders of claims and interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it. However, the Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve the plan. These tests are designed to protect the interests of holders of claims or interests who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy Court.

An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

## II. VOTING PROCEDURES AND CONFIRMATION OF PLAN

### A. BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement. After carefully reviewing this Disclosure Statement and its exhibits,

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be <u>received</u> by Debtors no later than 4:00 p.m. Pacific time on _____, 2020 at the following address:

> Motschenbacher & Blattner LLP
> Attention: Nicholas J. Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204-2099

or via facsimile transmission to Nicholas J. Henderson at (503) 417-0528.

Holders of each Claim scheduled by Debtors or for which a Proof of Claim has been Filed will receive ballots and are permitted to vote based on the amount of the Proof of Claim, except as discussed below. If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by Debtors in their Schedules. The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified, or suspended prior to computation of the vote on the Plan. A Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection. Holders of disputed Claims who have settled their dispute with Debtors are entitled to vote the settled amount of their Claim. The Bankruptcy Code and rules provide that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim, estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class. If you do not receive a ballot or if a ballot is damaged or lost, please contact:

> Motschenbacher & Blattner LLP
> Attention: Nicholas Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204-2099
> (503) 417-0508

Page 6 of 37  FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 314    Filed 10/13/20

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating, and signing the enclosed ballot and returning it, by First Class mail or hand delivery, to Debtors at the address indicated above. In order to be counted, all ballots must be executed and <u>received</u> at the above address no later than 4:00 p.m. Pacific time on _____, 2020. Any ballots received after 4:00 p.m. Pacific time on _____, 2020 will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Motschenbacher & Blattner LLP, Attention: Nicholas J. Henderson, at (503) 417-0501. Ballots sent by facsimile transmission will be counted if faxed to Mr. Henderson and received by 4:00 p.m. Pacific time on _____, 2020.

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim or an amount different from a timely Filed Proof of Claim, then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim Filed with respect to such Claim or Order of the Bankruptcy Court.

## B. PARTIES ENTITLED TO VOTE

Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of Claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (a) curing any

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

defaults; (b) reinstating the maturity of such Claim; (c) compensating the holder of such Claim for damages that result from the reasonable reliance on any contractual provision or law that allows acceleration of such Claim; and (d) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim. Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired. Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan. All Classes of Claims are impaired under Debtor's Plan except the Class 1 and Class 5 Claims of secured Creditor Tasha Teherani-Ami.

### C.     VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cramdown of the Plan." In a "Cramdown," at least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan. The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan. If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

### D.     "CRAMDOWN" OF THE PLAN

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one

Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the

Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly"

and is "fair and equitable" with respect to each non-accepting impaired Class of Claims or

Interests.  Debtors believe the Plan can be confirmed even if it is not accepted by all impaired

Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance

with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any

Class of Creditors does not accept the Plan.

### E.     CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence

on _____, 2020, at __ a.m. Pacific time.  The confirmation hearing will be held at the

U.S. Bankruptcy Court for the District of Oregon, Courtroom 3, 1050 SW 6th Avenue, 7th Floor

Portland, Oregon, before the Honorable David W. Hercher, United States Bankruptcy Judge.  At

the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various

requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the

best interests of the Creditors of Debtors.  Prior to the hearing, Debtors will submit a report to the

Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons

entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to

confirmation of the Plan.  Any objections to confirmation of the Plan must be made in writing

and Filed with the Bankruptcy Court and received by counsel for Debtors no later than 4:00 p.m.

Pacific time on _____, 2020.  Unless an objection to confirmation is timely Filed and received,

it will not be considered by the Bankruptcy Court.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### III. COMPANY BACKGROUND AND GENERAL INFORMATION

#### A. DEBTORS

NW Cornell is a manager-managed Oregon limited liability company owned equally by Eagle Holdings LLC and the Trust, which also asserts an equitable interest in the real property owned by NW Cornell, although such ownership is disputed. Dinihanian is the manager of NW Cornell and is authorized to take all actions on its behalf. Dinihanian is an individual residing in the State of Oregon and is the sole member and manager of Eagle Holdings, LLC. NW Cornell's primary asset is its 50 percent tenant-in-common ownership interest in 37 acres of undeveloped real property located at 15005 NW Cornell Road, Beaverton, Oregon.

#### B. DINIHANIAN'S BUSINESSES

Prior to the filing of the Bankruptcy Cases, Dinihanian's principal business was operating Eagle Holdings, LLC, which owns other real estate-centered limited liability companies and engages in enterprises regarding motor vehicles, the production of mechanical parts, and property management. Dinihanian intends to continue operating Eagle Holdings and its entities under their existing business models.

#### C. MANAGEMENT OF NW CORNELL.

Reorganized NW Cornell will consist of the same owners and management as currently exists. NW Cornell does not have any employees. Depending on the path pursued under the Plan, NW Cornell will continue to own a 50 percent tenant-in-common interest in the Cornell Property, develop the Cornell Property in cooperation with non-debtor tenant-in-common owners, or it will possess the net proceeds from the sale of its interest in the property.

#### D. WASHINGTON COUNTY LITIGATION

NW Cornell is the plaintiff in *15005 NW Cornell, LLC v. Cornell Rd. LLC, et al.*, Case No. 18CV17059, pending in the Circuit Court for the State of Oregon for Washington County. NW Cornell commenced the partition proceeding because the other tenant-in-common owners of the Cornell Property would not cooperate in the development of the property or consent to NW

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Cornell borrowing against its interest in the property. The Washington County court in a memorandum opinion indicated that partitioning is an appropriate remedy, although it would require additional time-consuming land use master-planning procedures prior to such a partition being determined. No further action has occurred in the Washington County court after the Petition Date due to the fact that parties have opposed NW Cornell's applications to employ counsel for that action.

## IV. EVENTS LEADING TO THE BANKRUPTCY FILING

Debtors' bankruptcy filings were precipitated by the scheduled foreclosure sales of the Skyline Property and the Cornell Property initiated by Creditor Tasha Teherani-Ami ("Teherani-Ami") based on deeds of trust recorded on both properties as provided in the General Judgment of Dissolution of Marriage (the "General Judgment") entered in the divorce case involving Teherani-Ami and Dinihanian, Multnomah County Circuit Court Case No. 1208-68730 (the "Divorce Case"). In the General Judgment obligated Dinihanian to make a significant settlement payment to Teherani-Ami in January 2018, and that payment was secured by the deeds of trust. When Dinihanian was unable to make that payment, Teherani-Ami initiated foreclosure proceedings on both the Skyline and the Cornell Property. In addition, Teherani-Ami filed an action compel Dinihanian to execute a deed, on behalf of NW Cornell, to half of NW Cornell's tenant-in-common interest in the Cornell Property or be held in contempt (Multnomah County Circuit Court Case No. 19-CN01457) (the "Contempt Proceeding").

Debtors had and continue to have insufficient funds with which to pay their creditors until the Cornell Property is sold or until Debtors can obtain financing secured by NW Cornell's interest in the Cornell Property and Dinihanian's interest in the Skyline Property, or both. As a result, Debtors were unable to avoid the imminent risks of foreclosure or the transfer of half of NW Cornell's interest in the Cornell Property and filed for Chapter 11 bankruptcy protection to prevent the loss of significant value in the Cornell Property and Skyline Property.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## V.    SIGNIFICANT POST-PETITION EVENTS

Debtors obtained an order to lift the automatic stay to reengage in the Washington County partition litigation.  Debtors have not pursued that litigation for various reasons, primarily because the application to employ partition counsel has been blocked in the Bankruptcy Cases.  Debtors have invested extensive efforts to arrange financing to finance the payments of Claims and facilitate the incremental development of some or all of the Cornell Property.  Such financing has been arranged through lender SORFI, LLC, an affiliate of Sortis Capital (the "Plan Lender") and the Plan Loan described in the Plan.[1]  The term sheet describing the Plan Loan's terms is attached as Exhibit 2 hereto.  Under the term sheet, Debtors will be obligated to grant Sortis Real Estate, LLC, an affiliate of the Plan Lender, a right of first refusal to serve as the listing broker to market and sell NW Cornell's rights, title and interest in the Cornell Property should the listing and marketing of NW Cornell's tenant-in-common interests become necessary and appropriate following Plan confirmation.

Debtors have otherwise devoted the bulk of their efforts since the petition date preparing and proposing a plan of reorganization and disclosure statement and plan and then engaging in numerous rounds of mediation with Tasha Teherani-Ami, in her individual capacity and as trustee for the Trust, as well as the other tenant-in-common owners of the Cornell Property.  To date, these efforts have been unsuccessful in reaching a resolution, leading Debtors to file and seek confirmation of the present Plan.

---

[1] Debtors already have an indirect lender-borrower relationship.  SORFI, LLC loaned 933 Harrison Blvd., LLC ("933 LLC") the amount of $1,250,000 in early 2020, to refinance 933 LLC's mortgage debt that had matured.  The SORFI loan to 933 LLC was guaranteed by Eagle Holdings, LLC, but was not personally guaranteed by either of the Debtors.  Dinihanian asserts that 100% of the outstanding membership interest in 933 LLC is owned by Eagle Holdings, LLC, a single member LLC in which Dinihanian owns 100% of the membership interest. Certain parties in interest dispute Dinihanian's assertions that Eagle Holdings owns 933 LLC, and allege that Dinihanian owns 933 LLC directly.  Debtors believe this distinction is inaccurate, and, more importantly, Debtors believe that the distinction is irrelevant given that (i) Debtors' Plan proposes to pay 100%, and (ii) Dinihanian's liquidation analysis includes the value of 933 LLC and its assets.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

In addition, the Trust has filed an adversary proceeding (Adv. Pro. No. 20-03077) (the "Trust Complaint") seeking a declaratory judgment to enforce the terms of the Stipulated Judgment, specifically with respect to its asserted right to a deed from NW Cornell to a twenty-five percent tenant-in-common interest in the Cornell Property. The Trust also filed a proof of claim in the NW Cornell case (Claim 5-1, the "Claim"). NW Cornell has objected [Dkt. 258] to the Claim on various grounds, filed an answer to the Trust Complaint, and filed an adversary proceeding (Adv. Pro. No. 20-03079) (the "Cornell Avoidance Action"), to which the Trust has filed an answer.

NW Cornell instituted an adversary proceeding (Adv. Pro. No. 19-03096) (the "Teherani-Ami Adversary") against Teherani-Ami to avoid the Deed of Trust on the grounds that it constituted a fraudulent transfer. In light of the full payment provided for the Teherani-Ami Claim under the Plan, the Debtors will seek to abate the Teherani-Ami Adversary.

## A. EMPLOYMENT OF PROFESSIONALS

NW Cornell has retained Perkins Coie LLP as its general counsel in the NW Cornell Bankruptcy Case. Dinihanian has retained Motschenbacher & Blattner LLP as his general counsel in the Dinihanian Bankruptcy Case. Dinihanian also sought and obtained Bankruptcy Court approval for the employment of Delap as his accountant. NW Cornell has sought the approval for the employment of Bateman Seidel to serve as ordinary course counsel in the partition litigation, although no order has been entered by the Court due to objections asserted by the Trust and the partition litigation has therefore been unable to proceed.

## VI. ASSETS AND LIABILITIES

### A. ASSETS

#### 1. NW Cornell's Real Property

As described above, NW Cornell's principal asset is a fifty-percent tenant-in-common interest in the Cornell Property, which is a 37-acre parcel located at 15005 NW Cornell Road, Beaverton, Oregon. NW Cornell estimates that the value of its half interest in the Cornell

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Property was approximately $13,500,000 as of the Petition Date. This is supported by a broker's price opinion dated February 26, 2019. It is difficult to assess what impact the pandemic currently afflicting the United States will have on the value of the Cornell Property or other properties in the greater Portland area. The non-debtor tenant-in-common owners are limited liability companies owned by Dinihanian's sister, Lillian Logan, and her two adult children. They assert that NW Cornell lacks the authority to enter into the Plan Loan, and that entering into the Plan Loan will, through an unauthorized transfer or otherwise, create a multi-million-dollar damages claim in favor of the non-debtor tenant-in-common owners under the tenant-in-common agreement. NW Cornell asserts that it has the authority to enter into the Plan Loan pursuant to Section 8 of the tenant-in-common agreement without violating any other provision of the agreement or creating a damages claim.

## 2. Dinihanian's Real Property

Dinihanian owns real property and improvements at 237 NW Skyline, in Portland Oregon. The Skyline Property is Mr. Dinihanian's residence, as well as the location where Mr. Dinihanian conducts the business activities of Eagle Holdings. Dinihanian estimates that the total value of the residence was approximately $1,000,000 as of the Petition Date.

## 3. Personal Property

As of the Petition Date, NW Cornell owns very few items of personal property. As of the Petition Date, Dinihanian's hard assets consisted of miscellaneous household goods and furnishings. Dinihanian also had checking accounts and brokerage accounts. Dinihanian also owns all membership interests in Eagle Holdings, LLC, which in turn owns stock or membership interests in various entities that own commercial real estate. Dinihanian owns a half interest with his sister, Lillian Logan, in a cabin located in Welches, Oregon. A list of Dinihanian's assets can be found in Dinihanian's Amended Schedule A/B [ECF No. 60] (Dinihanian Case)[2]. The

---

[2] References to the "Dinihanian Case" refer to Bankruptcy Case No. 19-31886-dwh11.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11   Doc 314   Filed 10/13/20

combined net values of Dinihanian's assets, including Eagle Holdings and the various stock or membership interests it owns, and the Welches cabin, fall far short of the funds necessary to pay the Claims and other amounts required to be paid under the Plan.

Dinihanian also has potential tort claims (potentially as derivative claims) against Lillian Logan, related to allegations of breach of fiduciary duty and oppression in connection with Dinihanian Floral Products, Inc., which is jointly owned by Dinihanian and Ms. Logan.

### B.    LIABILITIES

#### 1.    Tasha Teherani-Ami

Pursuant to the Divorce Judgment, Dinihanian owes Tasha Teherani-Ami $2,250,000, plus accrued interest at 4.5% per annum from the date of the Divorce Judgment, until paid, as well as actual and reasonable costs and attorney fees.  The Divorce Judgment is secured by a Residential Trust Deed against the Skyline Property and by a deed of trust against NW Cornell's interest in the Cornell Property.  NW Cornell has commenced an adversary proceeding to avoid the transfer by which the deed of trust against the Cornell Property was delivered to Ms. Teherani-Ami.

#### 2.    Bateman Seidel and Daniel Lorenz Trust Deed Claims

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

#### 3.    Columbia Bank

Dinihanian owes Columbia Bank in connection with an equipment loan, and a real estate loan for commercial properties owned by two limited liability companies he controls. Dinihanian also has executed personal guaranties in connection with other loans made by Columbia Bank to entities controlled by Mr. Dinihanian.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 4. Unsecured Creditors

The total amount of Unsecured Claims scheduled by Dinihanian is approximately $976,654. This amount includes the Columbia Bank claims described above. This amount does not include claims made by Lillian Logan [See Claim No. 4; Case No. 19-31886-dwh11].

### 5. Trust Claim

The Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust") seeks the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6. NW Cornell has commenced an adversary proceeding to avoid any obligation to make such a transfer of half of its assets or, to the extent such a transfer is deemed to have occurred without an executed deed, to avoid such a deemed transfer.

### 6. Other Asserted Hypothetical Claims

The co-owners of the Cornell Property have asserted arguments that they may be injured and suffer damages if (1) NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the proposed Plan Loan; or (2) the entire Cornell Property is ultimately sold as a whole pursuant to Section 363(h) of the Bankruptcy Code. The co-owners argue that either type of transfer would result in a breach of the Tenancy in Common Agreement between NW Cornell and the co-owners. Further, in the event that a sale of the entire Cornell Property is sold pursuant to 11 U.S.C. § 363(h), the co-owners argue they may be damaged because the sale would result in taxable gains, which would impose tax liabilities upon them that would not exist but for a sale of the entire Cornell Property. Debtors deny the co-owners' arguments that Debtors would be liable under either scenario, for the reasons set forth below.

#### a. Foreclosure of Plan Loan

First, in the event that NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the Plan Loan, the transfer would be an authorized transfer. The

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Tenancy in Common Agreement is written to preserve each co-owner's ability to pursue a 1031 exchange with respect to their prospective interests in the Cornell Property. Specifically, the Tenancy in Common Agreement is written in compliance with IRS Rev. Proc. 2002-22 in at least the following ways in that it:

- Provides that the title to the Cornell Property as a whole may not be held as an entity under state law (TIC Agreement, ¶ 1);
- Provides that the co-ownership may not file a partnership or corporate tax return (TIC Agreement); • Indicates that each co-owner may encumber its share of the Cornell Property (TIC Agreement, ¶ 8);
- Indicates that each co-owner may transfer its respective interest in the Cornell Property, subject only to a right of first refusal in favor of the other co-owners (TIC Agreement, ¶ 10(a)).

Because these provisions are present in the Tenancy In Common Agreement, Debtors believe that the co-owners arguments are misplaced. Because the agreement authorizes NW Cornell to encumber its TIC Interest, the agreement implicitly consents to the risk that NW Cornell's interest may be transferred through foreclosure in the event of a default. Moreover, if the Debtors default on the Plan Loan after confirmation and funding of such loan, notice of any potential foreclosure sale can be provided to the co-owners in compliance with Section 10(b) of the TIC Agreement. Such notice would provide the co-owners the opportunity to purchase NW Cornell's TIC Interest prior to foreclosure. In the event that the co-owners fail to elect to purchase NW Cornell's TIC Interest, the TIC Agreement explicitly authorizes a transfer. In the event that Debtors are wrong about this position, and if foreclosure of the Plan loan would result in a breach of the TIC Agreement, there is a risk that the Debtors will be liable to the co-owners, which could diminish the amount of Debtors' equity. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### b. Sale of Entire Cornell Property

In the event of a sale of the entire property, Debtors believe the TIC co-owners would not have any claim against the Debtors, for breach of the TIC Agreement or otherwise. First, Debtors do not believe there is any controlling authority indicating that they bear any liability to the co-owners if Debtors successfully prove the elements of a claim under § 363(h). Second, Debtors believe the co-owners would be provided sufficient notice to enable them to minimize their respective taxes through a 1031 exchange, completely mitigating any potential damages. Finally, as is described above regarding foreclosure, co-owners would be provided notice of any potential sale of the entire property, and they would therefore have the ability to make an offer to purchase the Cornell Property, or even just NW Cornell's TIC Interest. There is a risk that, if Debtors are incorrect in these arguments, that the equity Debtors will receive after a sale will be reduced by the amount of damages they are required to pay the co-owners. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

## VII. DESCRIPTION OF PLAN

### A. SOLICITATION AND CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY SECURITIES

#### 1. General

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization must designate classes of Claims and classes of interest. The Plan classifies all Claims and Interests into 13 classes. The classification of Claims and Interests is made for the purpose of voting on the Plan and making distributions thereunder, and for ease of administration of the Plan. A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is entitled to vote in a particular Class and to receive distributions in such Class only to the extent

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid prior to the Effective Date. Under the Plan, a Claim or Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a proof of the Claim or Interest was (1) timely Filed, or (2) deemed Filed under applicable law by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party in interest has Filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or Interest is allowed by Final Order; or (iii) with respect to an application for compensation or reimbursement of an Administrative Expense Claim, the amount of the Administrative Expense Claim has been approved by the Bankruptcy Court.

## 2.     Unclassified Claims

Administrative Expense Claims and Priority Tax Claims are not classified. An Administrative Expense Claim is a Claim against Debtors constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors, within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed by

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

11 U.S.C. § 1129(a)(9)(C) and (D).  The IRS has Filed a Priority Tax Claim against Dinihanian in the amount of $6,084.70

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim).  However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto.  Debtors will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be Filed prior to the hearing on confirmation.

### 3.      Classified Claims

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan attached hereto as **Exhibit 1**.

(a)  Class 1 (Tasha-Teherani-Ami's Secured Claim Against Dinihanian). Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian.  The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, and reasonable costs and attorney fees in an amount established by the Bankruptcy Court following application and hearing.  Teherani-Ami will file an application her reasonable costs and attorney fees associated with the Class 1 Claim not later than 14 days after the entry of order confirming the Plan.  Class 1 is unimpaired and will be deemed to accept the Plan.  The Divorce Judgment shall be modified to extend the deadline for

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

payment of the Class 1 Claim to the date on which the Class 1 Claim is to be paid under the terms of this Plan.

The Teherani-Ami Skyline Trust Deed shall be modified as follows:

- Section 1.2 shall be modified to read as follows:

  "Grantor will pay and perform all Obligations when due under the Joint Chapter 11 Plan dated July 30, 2020, filed in the Bankruptcy Case of *In re 15005 NW Cornell, LLC*, Bankruptcy Case No. 19-31883-dwh11 (jointly administered).

- The following language shall be added to the end of Article V:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11.

- Sections 1.8, 1.9, and all provisions referring those sections, shall be deleted.

All other provisions of the Teherani-Ami Skyline Trust Deed shall remain unmodified.

(b) <u>Class 2 (General Unsecured Claims Allowed Against NW Cornell)</u>. Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise classified in the Plan. Each holder of a Class 2 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Effective Date) within six months after the Effective Date.

(c) <u>Class 3 (Trust Claim)</u>. Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment. The Class 3 will retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor in full satisfaction of the Trust Claim. The Class 3 is impaired under the Plan.

(d) <u>Class 4 (Multnomah County Property Taxes)</u>. Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property. The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date. The Class 3 Claim shall be paid in the same manner as Class 2 Claims.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(e) <u>Class 5 (Tasha Teherani-Ami)</u>. The Class 5 Claim consists of Tasha Teherani-Ami's disputed secured claim against NW Cornell, pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed. The Class 5 Claim is the same debt as the Class 1 Claim and payment of the Class 1 Claim, described above, shall constitute full satisfaction of the Class 5 Claim. The Class 5 Claim is unimpaired and is deemed to accept the Plan.

(f)      <u>Class 6 (Bateman Seidel Claim)</u>. Class 6 consists of the Allowed secured Claim of Bateman Seidel, PC. The Class 6 Claim shall be paid at the same time and in same manner as Class 2 Claims, described above.

(g)      <u>Class 7 (Lorenz Claim)</u>. Class 7 consists of the Allowed secured Claim of Daniel Lorenz. The Class 7 Claim shall be paid in at the same time and in the same manner as the Class 2 Claims, described above.

(h) <u>Class 8 (Columbia Bank – Equipment Loans)</u>. Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. Columbia's Class 6 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date. The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 6 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

    (i) <u>Class 9 (Columbia Bank – Real Estate Loan)</u>.  Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note.  Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date.  The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note.  The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

    (j) <u>Class 10 (Guaranty Claims against Dinihanian)</u>.  Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents.  Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date.  The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated:

- The following language in the Columbia Guaranty Documents shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(k) <u>Class 11 (General Unsecured Claims against Dinihanian)</u>. Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan. Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full. The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

(l) <u>Class 12 (Interests in NW Cornell)</u>. Class 12 Interests in NW Cornell shall retain their interests in NW Cornell.

(m) <u>Class 13 (Dinihanian's Interests)</u>. The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

## B. ADMINISTRATIVE EXPENSES

NW Cornell has retained the following professionals: (a) Perkins Coie LLP as its general counsel in this case and (b) Delap LLP as its accountants. Currently, the total amount of Administrative Expense Claims is $300,000 and could be as high as $375,000 by the Effective Date depending on the extent of litigation with various parties in interest. A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

Dinihanian has retained the following professionals: (a) Motschenbacher & Blattner LLP as his general bankruptcy counsel in this case and (b) Delap LLP as his accountants. Currently, the total amount of Administrative Expense Claims is approximately $150,000 and could be as high as $200,000 depending on the extent of litigation with various parties in interest. A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## C.    EXECUTORY CONTRACTS

The Bankruptcy Code gives debtors the right, after commencement of their Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Generally, an "executory contract" is a contract under which material performance (other than the payment of money) is still due by each party.  The Plan provides for the assumption by debtors of all executory contracts and unexpired leases that are not expressly rejected or subject to a motion for rejection Filed on or before the Confirmation Date.

If an executory contract or unexpired lease is or has been rejected, the other party to the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a Proof of Claim with respect to any such Claim must be Filed within 30 days of approval of the Bankruptcy Court of the rejection of the relevant executory contract or unexpired lease.  Any such Claim shall constitute a Class 2 Claim to the extent such Claim is finally treated as an Allowed Claim.  To the extent a debtor rejects an unexpired lease of nonresidential real property, the Claim for damages resulting from such rejection will be limited to the amount allowed under the Bankruptcy Code.

Upon assumption of an executory contract or unexpired lease, debtors must cure or provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides that Reorganized Debtors will promptly cure all monetary defaults.

The Trust asserts the NW Cornell limited liability operating agreement (the "Operating Agreement") is an executory contract that must be assumed and that, because it includes a personal services contract, the Trust contends, the contract cannot be assumed by NW Cornell without the Trust's consent, which will not be provided.  The Trust further contends the Plan cannot be confirmed, and indeed the bankruptcy case must be dismissed, absent NW Cornell's assumption of the Operating Agreement.  Specifically, the Trust argues NW Cornell's failure to execute a deed to the Trust of half of NW Cornell's tenant-in-common interest in the Cornell

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Property, pursuant to the Stipulated Judgment, is default under the Operating Agreement that must be cured as a condition of assumption.

The Debtors disagree with the Trust's argument on numerous grounds, including that the Operating Agreement is not an executory contract, that NW Cornell was not a party to the Stipulated Judgment that purports to require execution of a deed to the Trust, that NW Cornell received no consideration for such a transfer, among other arguments. These arguments are set forth and will be decided, in whole or in part, through NW Cornell's objection to the Trust's Claim, the Trust's Complaint, and the Cornell Avoidance Action.

If the Trust prevails and the Debtors do not, the Plan Lender may not fund the Plan Loan and the Plan may not be confirmable.

### D.     IMPLEMENTATION OF THE PLAN

The Debtors will obtain the funds to pay Claims as provided in this Plan through borrowing under the Plan Loan. Repayment of the Plan Loan will be secured by encumbrance on the Skyline Property. It will also be secured by an encumbrance on NW Cornell's tenant-in-common interest in the Cornell Property. NW Cornell is authorized to such an encumbrance pursuant to Paragraph 8 of the Tenant-in-Common Agreement, which states: "Each owner shall have the right to encumber its undivided interest in the Property without the approval of any person and shall discharge the obligation secured by the encumbrance in accordance with its terms." Other tenant-in-common owners have challenged NW Cornell's right to agree to such an encumbrance. There is a risk that such a challenge will prevail and that the encumbrance will not be permitted. Under those conditions, the Plan Lender may not agree to fund the Plan Loan.

The Trust asserts NW Cornell must deliver to it a deed to a twenty-five percent tenant-in-common interest in the Cornell Property in exchange for the redemption of the Trust's fifty-percent membership interest in NW Cornell, an exchange provided for the Stipulated Judgment. NW Cornell rejects the Trust's position that it must deliver a deed on various grounds, including that NW Cornell was not a party to the Stipulated Judgment and received no consideration for

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

such a deed.  The Trust has commenced an adversary proceeding seeking a declaratory judgment that would result in the Trust owning half of NW Cornell's TIC interest in the Cornell Property. The Trust also argues that the Debtors must assume three executory contracts before Debtors have the authority to confirm the Plan and obtain the Plan loan.  Debtors deny all of the Trust's claims.

NW Cornell is defending the adversary proceeding brought by the Trust and has commenced an adversary proceeding to avoid any obligation allegedly imposed upon NW Cornell to transfer a deed to the Trust.  NW Cornell has also filed an objection to the Trust's proof of claim.  Debtors believe that the Trust's right to equitable relief would be eliminated if the objection to the proof of claim is sustained by the Bankruptcy Court.  The Trust has argued that NW Cornell must succeed in both adversary proceedings and the proof of claim objection for the Plan to be successful.  Debtors reject the Trust's arguments and believe the Plan may still be successful even if NW Cornell loses the claim objection and both adversary proceedings. Ultimately, however, the following risks exist: (i) the Debtors may lose the adversary proceedings and the proof of claim objection, (ii) losing one or more of the adversary proceedings and the proof of claim objection could require NW Cornell to grant a deed to the Trust; and (iii) the Plan Lender may not agree to fund the Plan Loan if the Trust is granted a deed, which would result in failure of the Plan.

The Trust also asserts, in light of its claims under the Stipulated Judgment, NW Cornell should not be permitted to grant an encumbrance on NW Cornell's half tenant-in-common interest in the Cornell Property.  If the Trust's objection is sustained, the encumbrance on NW Cornell's fifty-percent tenant-in-common interest in the Cornell Property envisioned by Plan Lender will be diminished by half, and the Plan Lender may not agree to fund the Plan Loan.

As a condition of the Plan Loan, the Plan Lender will require the Debtors to agree to (i) use their best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Plan Lender, make a determination that

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

completion of the partition litigation is not practicable within a reasonable time and the Debtors should pursue, through a reservation of jurisdiction by this Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. The criteria used by Debtors would include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Debtors' efforts to finalize the partition of the Cornell Property. For the avoidance of doubt, the Debtors' agreement to referenced above will be sufficient to permit the funding of the Plan Loan and the payment of Claims as set forth in the Plan.

The Debtors anticipate the $5.6 million in proceeds under the Plan Loan to be dedicated as set forth in Exhibit 3, Projected Use of Funds. One component of the Use of Funds is the reservation of $1.5 million (a) for completion of the partition litigation, (b) to complete the land use and entitlement process in Washington County, (c) if necessary, to prosecute an adversary proceeding under Section 363(h) of the Bankruptcy Code to obtain an order requiring the sale of the entire Cornell Property on the grounds that completion of the partition process will involve impracticable delays and obstruction, and (d) for initial design and development costs. The actual timing and content of any future development of the Cornell Property or any partitioned portion thereof will depend on how the above elements evolve. The payment of creditors' claims under the Plan will be funded by the Plan Loan and will not await or be dependent upon the resolution of any of the elements of uncertainty described in this paragraph.

The Debtors anticipate that the Plan Loan will be repaid at maturity by refinancing. If the Debtors are forced to seek relief under Section 363(h) of the Bankruptcy Code, the sale of the NW Cornell-owned as well as non-debtor interests in the Cornell Property will be sold. In this instance, the Plan Loan would be repaid with the proceeds of such sale.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### E. EFFECT OF CONFIRMATION

#### 1. Binding Effect

The treatment of, and consideration received by, holders of Allowed Claims and Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or Interests in Debtors. The Confirmation Order shall bind Debtors and any Creditor, and discharge Debtors from any liability that arose before the Effective Date, as provided in Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (2) a Claim based on such debt or liability is Allowed, or (3) the holder of the Claim based on such debt or liability has accepted the Plan.

#### 2. Revesting, Operation of Business

Except for the Cornell Property, which will remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, all property of the bankruptcy estates shall revest in each respective Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens, charges, encumbrances, and interests, except as otherwise specifically provided in the Plan. Except as otherwise set forth in the Plan, there are no limitations or restrictions on the post-confirmation activities or operations of Debtors.

#### 3. Injunction

The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtors or Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order; (2) the enforcement, attachment, collection, or recovery against

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Reorganized Debtors or its assets of any judgment, award, decree, or order obtained before the Petition Date; (3) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (4) asserting any setoff, or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (5) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the Confirmation Order.  For the avoidance of doubt, the injunction referenced above shall be applicable to the matters set forth in Section IV.  Neither the injunction nor any provision of the Plan prohibits the Washington County Case to proceed to completion in state court including all appeals.

### 4.    Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan or any agreement between the holder of such Claim and Debtors or Reorganized Debtors.  An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5.    Modification of the Plan; Revocation or Withdrawal of the Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserves the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 6.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and:

(a)  to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

(b)  to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c)  to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d)  to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e)  to resolve controversies and disputes regarding the interpretation of this Plan,

(f)  to implement the provisions of this Plan and enter orders in aid of confirmation, including an action by the Reorganized Debtors pursuant to Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

(g)  to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h)  to enter a final decree closing this Chapter 11 proceeding.

### 7.    United States Trustee Fees

Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  After confirmation, Reorganized Debtors shall serve on the United States Trustee a financial report for each quarter,

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

or portion thereof, that the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

## VIII.   LIQUIDATION ANALYSIS

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security in, Debtors subject to such plan. The best interest test is satisfied if a plan provides each dissenting or non-voting member of each impaired Class with a recovery not less than the recovery such member would receive if each Debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee. The Debtors are proposing to pay all creditors in full, and thus the best interest of creditors test is automatically satisfied.

Despite the fact that the Debtors' Plan of Reorganization proposes to pay all creditors in full and therefore satisfies best interest of creditors test, certain parties in interest have demanded that a liquidation analysis be provided. Attached as Exhibit 4 is a liquidation analysis provided by the Debtors. All asset values included in the liquidation analysis were based on the Debtors' opinions of value, based on Debtors' familiarity with their properties, and Debtors' experience in the area of commercial real estate. Parties in interest have asserted that the Debtors' statements of value have been inconsistent, but Debtors assert that any differing valuation numbers were due, in part, to the difference in the time periods when valuation estimates were prepared. Additionally, Debtors assert that inconsistency in valuation may also be due to differences in the type of valuation (i.e., liquidation vs. going concern value). The valuation estimates provided in the attached liquidation analysis are intended to be current fair market values as of the date of this disclosure statement.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## IX.  POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion summarizes in general terms certain federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice.  This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply.  No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR.  Substantial differences in the tax implications are likely to be encountered by the creditors because of the difference in the nature of their Claims, their taxpayer status, their method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The following are the anticipated tax consequences of the Plan:

### A.  TAX CONSEQUENCES TO THE DEBTORS.

The Debtors do not anticipate any extraordinary or unusual tax consequences because all claims are expected to be paid in full.  Debtors will experience ordinary income from continued operations and earnings and will be entitled to deduct business expenses for any business-related expenses and interest expense.  Debtors do not anticipate any cancellation of debt income.  In the event NW Cornell sells its real property, NW Cornell shall pay any applicable capital gains taxes that result from the sale.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**B.      GENERAL TAX CONSEQUENCES ON CREDITORS.**

Creditors will likely not experience any unusual or extraordinary tax consequence following Confirmation of the Plan.  Payments will be treated in the same manner as they were treated before Confirmation of the Plan. As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor that is unknown to the Debtors. As a result, the tax implications to specific creditors cannot be completely described herein

EACH INTEREST HOLDER IS URGED TO CONSULT SUCH INTEREST HOLDER'S OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS.  DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY CLAIMANT.

**X.      ACCEPTANCE AND CONFIRMATION OF THE PLAN**

**A.      CONFIRMATION HEARING**

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on _____, 2020 at _____.m Pacific time.  The hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Avenue, 7th Floor, Portland, Oregon in Courtroom No. 3, before the Honorable David W. Hercher, United States Bankruptcy Judge.  At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interest of Creditors and Interest holders of Debtors.  Debtors will submit a report to the Bankruptcy Court prior to the hearing concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote thereon.  Any objection to confirmation of the Plan must be timely filed on or before _____, 2020 to be considered by the Court.

FIRST AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### B.    REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the provisions of Section 1129 of the Bankruptcy Code have been satisfied. If all of the provisions of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan. Debtors believe the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code, that it has complied or will have complied with all of the requirements of Chapter 11, and that the Plan has been proposed and is made in good faith.

### C.    CRAMDOWN

A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan has been accepted by at least one impaired class of claims and the Plan meets the cramdown requirements set forth in Section 1129(b) of the Bankruptcy Code. In the event any impaired Class of Claims does not accept the Plan, Debtor hereby requests the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit Debtors to modify the Plan.

### D.    FEASIBILITY

Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation of either of the Reorganized Debtors or a need for a further financial reorganization of Reorganized Debtors. Debtors believe they can obtain financing through the Plan Loan in an amount sufficient to pay all creditors in full. The timing of the payments to Creditors will depend on the timing of the closing and the availability of funds under the Plan Loan.

### E.    ALTERNATIVES TO CONFIRMATION OF THE PLAN

If a Plan is not confirmed, Debtors or another party in interest may attempt to formulate or propose a different Plan or Plans of Reorganization. Such Plans might involve the sale of Dinihanian's other assets, an orderly liquidation of NW Cornell's assets, or any combination thereof. If no Plan of Reorganization is determined by the Bankruptcy Court to be confirmable,

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the Chapter 11 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

In a liquidation, a Chapter 7 trustee would be appointed with the purpose of liquidating the assets of Debtors.  Typically, in liquidation, assets are sold for less than their going concern value and, accordingly, the return to Creditors and Interest holders is less than the return in a reorganization, which derives the value to be distributed in a Plan from the business as a going concern.  Proceeds from liquidation would be distributed to Creditors and Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

Debtors believe there is no currently available alternative that would offer holders of Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on the Plan to vote to accept the Plan.

## XI.    CONCLUSION

Please read this Disclosure Statement and the Plan carefully.  After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

DATED this 13th day of October 2020.

Respectfully submitted,

PERKINS COIE LLP

By /s/ Douglas Pahl
     Douglas Pahl, OR Bar No. 950476
     Of Attorneys for Debtor 15005 NW Cornell LLC


MOTSCHENBACHER & BLATTNER LLP

By /s/ Nicholas J. Henderson
     Nicholas J. Henderson, OSB No. 074027
      Of Attorneys for Debtor Vahan M. Dinihanian, Jr

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**EXHIBITS ATTACHED**:

<u>Exhibit 1</u>: Joint Plan of Reorganization

Exhibit 2:  Term Sheet

Exhibit 3: Projected Use of Funds

Exhibit 4: Liquidation Analysis

FIRST AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED OCTOBER 13, 2020

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Exhibit 3 -- Projected Use of Funds

| | |
|---|---|
| Teherani-Ami Claim | $3,000,000 |
| Creditors, unsecured | $300,000 |
| Creditors, admin | $600,000 |
| Loan Transaction Costs | $35,000 |
| Origination Fee | $112,000 |
| Underwriting Fee | $15,000 |
| Reserves / Future Development Costs | $1,500,000 |
| | |
| Total Use of Funds | $5,600,000 |

** Projections, subject to modification.