**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

*Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Of Attorneys for 15005 NW Cornell LLC*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re: | Bankruptcy Case Nos.: |
| 15005 NW Cornell LLC; and Vahan M. Dinihanian, Jr., | 19-31883-dwh11 (Lead Case) 19-31886-dwh11 |
| Debtors. | Jointly Administered Under Case No. 19-31883-dwh11 |
| | ~~FIRST~~SECOND **AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021** |

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4          Case 19-31883-dwh11      Doc 401      Filed 07/22/21

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY ........................................................................1
        **A.**     Introduction..............................................................................................1
        **B.**     Summary of the Plan..............................................................................3
                **1.**     General ........................................................................................3
                **2.**     Secured Creditors .......................................................................3
                **3.**     General Unsecured Creditors ....................................................4
                **4.**     Equity Interests ..........................................................................4
                **5.**     Leases and Executory Contracts ...............................................4
                **6.**     Effective Date .............................................................................4
                **7.**     Cramdown Election .................................................................~~4~~5
        **C.**     Brief Explanation of Chapter 11 ............................................................5

II.     VOTING PROCEDURES AND CONFIRMATION OF PLAN ..............................5
        **A.**     Ballots and Voting Deadline .................................................................5
        **B.**     Parties Entitled to Vote ..........................................................................7
        **C.**     Votes Required for Class Acceptance of the Plan ................................8
        **D.**     "CramDown" of the Plan .......................................................................8
        **E.**     Confirmation Hearing .............................................................................9

III.    COMPANY BACKGROUND AND GENERAL INFORMATION ..........................9
        **A.**     Debtors ....................................................................................................9
        **B.**     Dinihanian's Businesses .......................................................................10
        **C.**     Management OF NW Cornell..................................................................10
        **D.**     Washington County Litigation................................................................10

IV.     EVENTS LEADING TO THE BANKRUPTCY FILING ......................................11

V.      SIGNIFICANT POST-PETITION EVENTS ...........................................................11
        **A.**     Employment of Professionals ...............................................~~11~~13

VI.     ASSETS AND LIABILITIES ..................................................................~~12~~14
        **A.**     Assets ..................................................................................~~12~~14
                **1.**     NW Cornell's Real Property ..................................~~12~~14
                **2.**     Dinihanian's Real Property ....................................~~12~~14
                **3.**     Personal Property ...................................................~~12~~14
        **B.**     Liabilities ...........................................................................~~13~~15
                **1.**     Tasha Teherani-Ami ...............................................~~13~~15
                **2.**     Bateman Seidel and Daniel Lorenz Trust Deed Claims .................~~13~~16
                **3.**     Columbia Bank .......................................................~~13~~16
                **4.**     Unsecured Creditors...............................................~~14~~16

VII.    DESCRIPTION OF PLAN .......................................................................~~14~~19
        **A.**     Solicitation ~~and~~And Classification ~~and~~And Treatment ~~of~~Of Claims ~~and~~And
                Equity Securities .................................................................~~14~~19
                **1.**     General .....................................................................~~14~~19
                **2.**     Unclassified Claims ...............................................~~15~~19

~~DEBTORS' JOINT DISCLOSURE STATEMENT
DATED OCTOBER 13, 2020~~TABLE OF CONTENTS

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4       Case 19-31883-dwh11     Doc 401     Filed 07/22/21

|  | **3.** | Classified Claims | ~~16~~21 |
| **B.** | | Administrative Expenses | ~~20~~25 |
| **C.** | | Executory Contracts | ~~20~~25 |
| **D.** | | Implementation ~~of the~~Of The Plan | ~~21~~27 |
| **E.** | | Effect Of Confirmation | ~~21~~29 |
|  | **1.** | Binding Effect | ~~21~~29 |
|  | **2.** | Revesting, Operation of Business | ~~22~~30 |
|  | **3.** | Injunction | ~~22~~30 |
|  | **4.** | Event of Default | ~~23~~31 |
|  | **5.** | Modification of the Plan; Revocation or Withdrawal of the Plan | ~~23~~31 |
|  | **6.** | Retention of Jurisdiction | ~~23~~31 |
|  | **7.** | United States Trustee Fees | ~~24~~32 |

| **VIII.** | LIQUIDATION ANALYSIS | ~~24~~32 |

| **IX.** | POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | ~~25~~33 |
| **A.** | Tax Consequences to the Debtors. | ~~25~~34 |
| **B.** | General Tax Consequences on Creditors. | ~~26~~34 |

| **X.** | ACCEPTANCE AND CONFIRMATION OF THE PLAN | ~~26~~35 |
| **A.** | Confirmation Hearing | ~~26~~35 |
| **B.** | Requirements of Confirmation | ~~27~~35 |
| **C.** | Cramdown | ~~27~~35 |
| **D.** | Feasibility | ~~27~~36 |
| **E.** | Alternatives to Confirmation of the Plan | ~~27~~36 |

| **XI.** | CONCLUSION | ~~28~~37 |

~~DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13, 2020~~TABLE OF CONTENTS

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

~~146047944.4~~

## I.  INTRODUCTION AND SUMMARY

### A.  INTRODUCTION

On May 21, 2019, 15005 NW Cornell LLC ("NW Cornell") and Vahan M. Dinihanian, Jr. ("Dinihanian"), filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On ~~October 18~~July 13, 2019, NW Cornell and Dinihanian (collectively, the "Debtors") filed this Second Amended Disclosure Statement (the "Disclosure Statement") with the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their Second Amended Joint Plan of Reorganization (the "Plan").  ~~A copy of the~~The Plan is attached hereto as **Exhibit 1**.

This Disclosure Statement is being provided to you by Debtors to enable you to make an informed judgment about the Plan.  This Disclosure Statement has been prepared to disclose information that in Debtors' opinion is material, important, and helpful to evaluate the Plan. Among other things, this Disclosure Statement describes the manner in which Claims and Equity Securities will be treated.  This Disclosure Statement summarizes the Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the Plan, and outlines the procedures involved in confirmation of the Plan.  The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself.  If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan shall control.  You are urged to review the Plan and, if applicable, consult with your own counsel about the Plan and its impact on your legal rights before voting on the Plan.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.  Factual information contained in this Disclosure Statement is the representation of Debtors only and not of their attorneys, consultants, or accountants.  The information has been obtained from the books and records of Debtors as well as other sources deemed reliable.  Debtors have prepared the information contained herein in good faith, based on information available to Debtors.  The

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479144.4

information herein has not been subject to a verified audit.  No representation concerning Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the material relied on in preparation of this Disclosure Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan.  Nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceeding involving Debtors or any other party or be deemed advice on the tax or other legal effects of the Plan on the holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court (the "Order") as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant classes to make an informed judgment concerning the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2020 at _____ Pacificat the time.  That hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Ave., 7th Floor, Courtroom 3, Portland, Oregon 97204, before the Honorable David W. Hercher and place set forth in the Order.  The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing on any adjournment thereof.

A ballot has been enclosed with this Disclosure Statement for use in voting on the Plan.  In order to be tabulated for purposes of determining whether the Plan has been accepted or rejected,

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

ballots must be <u>received</u> at the address indicated on the ballot no later than ~~4:00 p.m. on _____, 2020~~<u>the ballot deadline set forth in the Order</u>.  Debtors believe that confirmation of the Plan is in the best interests of the holders of Claims and urge you to accept the Plan.

This Disclosure Statement contains financial information and estimates that demonstrate the feasibility of the Plan of Reorganization and Debtors' ability to complete the steps envisioned by the Plan and the Plan Loan upon emergence from Bankruptcy.  Debtors prepared such information for the limited purpose of furnishing information to Creditors to allow them to make an informed judgment regarding acceptance of the Plan of Reorganization.  The estimates of value should not be regarded for the purpose of this Disclosure Statement as representations or warranties by Debtors as to the accuracy of such information or that any such projections or valuations will be realized.  Actual values could vary significantly from these projections.

### B.      SUMMARY OF THE PLAN

A copy of the Plan is attached and discussed in detail later in this Disclosure Statement. The following description of the Plan is intended as a summary only and is qualified in its entirety by reference to the Plan.  Debtors urge each holder of a Claim to carefully review the entire Plan, together with this Disclosure Statement, before voting on the Plan.

#### 1.      General

Generally, the Plan provides that Debtors will operate in the ordinary course and will obtain financing to pay and satisfy their obligations in full.

#### 2.      Secured Creditors

Reorganized Dinihanian's secured Creditor, Columbia State Bank ("Columbia"), will be paid the full amount of its Allowed Secured Claims in accordance with the existing terms of its loans to Dinihanian, except as modified under the Plan with respect to certain loan terms and covenants set forth in the Plan.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Reorganized Dinihanian's secured Creditor, Tasha Teherani-Ami, will be paid on the Effective Date the full amount of her Allowed Secured Claim with interest as stated in the Divorce Judgment and actual costs and reasonable attorney fees.

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

### 3. General Unsecured Creditors

All General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date, from and after the Effective Date, not later than six months after the Effective Date.

### 4. Equity Interests

The Plan provides that existing equity interests in NW Cornell, including that of the Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust"), will be left in place. The Plan provides that Dinihanian will retain his interests in assets of his bankruptcy estate. Depending on the outcome of certain adversary proceedings and claim objections described in Section V below, the Trust may forfeit its equity interest in favor of other relief.

### 5. Leases and Executory Contracts

All unexpired leases and executory contracts will be assumed by the respective Debtors through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned or rejected, or a motion seeking their assumption or rejection has been Filed before the Confirmation Date. Debtors are not aware of significant cure amounts associated with any of the executory contracts to be assumed.

### 6. Effective Date

The Effective Date of the Plan shall be the later of (a) the eleventh day following entry of the Confirmation Order and (b) the first business day following the entry of an order by the Bankruptcy Court establishing the reasonable attorney fees and costs for the Class 1 Claim.

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4

### 7. Cramdown Election

In the event any Class does not accept the Plan, Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

### C. BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization provision of the Bankruptcy Code. Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of Debtor, its creditors, and other parties in interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. A plan of reorganization sets forth the method for compensating the holders of claims and interests in a debtor. If a plan is confirmed by the Bankruptcy Court, it will be binding on a debtors, its creditors, and all other parties in interest. A claim or interest is impaired under a plan of reorganization if the plan provides that the legal, equitable, or contractual rights of the holder of such claim or interest are altered. A holder of an impaired claim or interest is entitled to vote to accept or reject the plan. Chapter 11 does not require all holders of claims and interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it. However, the Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve the plan. These tests are designed to protect the interests of holders of claims or interests who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy Court.

An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

## II. VOTING PROCEDURES AND CONFIRMATION OF PLAN

### A. BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement. After carefully reviewing this Disclosure Statement and its exhibits,

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be <u>received</u> by Debtors no later than ~~4:00 p.m. Pacific~~the time ~~on _____, 2020~~and date set forth in the Order accompanying this Disclosure Statement at the following address:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas J. Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204-2099

or via facsimile transmission to Nicholas J. Henderson at (503) 417-0528.

Holders of each Claim scheduled by Debtors or for which a Proof of Claim has been Filed will receive ballots and are permitted to vote based on the amount of the Proof of Claim, except as discussed below.  If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by Debtors in their Schedules.  The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified, or suspended prior to computation of the vote on the Plan.  A Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection.  Holders of disputed Claims who have settled their dispute with Debtors are entitled to vote the settled amount of their Claim. The Bankruptcy Code and rules provide that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim, estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class.  If you do not receive a ballot or if a ballot is damaged or lost, please contact:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR  97204-2099
> (503) 417-0508

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating, and signing the enclosed ballot and returning it, by First Class mail or hand delivery, to Debtors at the address indicated above. In order to be counted, all ballots must be executed and <u>received</u> at the above address no later than ~~4:00 p.m. Pacific~~<span style="color:blue">the</span> time ~~on _____, 2020~~<span style="color:blue">set forth in the Order</span>. Any ballots received after ~~4:00 p.m. Pacific time on _____, 2020~~<span style="color:blue">the deadline set forth in the Order</span> will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Motschenbacher & Blattner LLP, Attention: Nicholas J. Henderson, at (503) 417-0501. Ballots sent by facsimile transmission will be counted if faxed to Mr. Henderson and received by ~~4:00 p.m. Pacific time on _____, 2020~~<span style="color:blue">the deadline set forth in the Order</span>.

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim or an amount different from a timely Filed Proof of Claim, then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim Filed with respect to such Claim or Order of the Bankruptcy Court.

### B. PARTIES ENTITLED TO VOTE

Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of Claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (a) curing any defaults; (b) reinstating the

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

maturity of such Claim; (c) compensating the holder of such Claim for damages that result from the reasonable reliance on any contractual provision or law that allows acceleration of such Claim; and (d) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim. Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired. Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan. All Classes of Claims are impaired under Debtor's Plan except the Class 1 and Class 5 Claims of secured Creditor Tasha Teherani-Ami.

### C.     VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cramdown of the Plan." In a "Cramdown," at least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan. The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan. If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

### D.     "CRAMDOWN" OF THE PLAN

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting impaired Class of Claims or Interests. Debtors believe the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any Class of Creditors does not accept the Plan.

### E.    CONFIRMATION HEARING

~~The~~In the accompanying Order, the Bankruptcy Court has scheduled a hearing on confirmation of the Plan ~~to commence on _____, 2020, at ___ a.m. Pacific time. The confirmation hearing will be held at the U.S. Bankruptcy Court for the District of Oregon, Courtroom 3, 1050 SW 6th Avenue, 7th Floor Portland, Oregon,~~ before the Honorable David W. Hercher, United States Bankruptcy Judge. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the Creditors of Debtors. Prior to the hearing, Debtors will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objections to confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and received by counsel for Debtors no later than ~~4:00 p.m. Pacific time on _____, 2020~~the objection deadline set forth in the Order. Unless an objection to confirmation is timely Filed and received, it will not be considered by the Bankruptcy Court.

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

### III. COMPANY BACKGROUND AND GENERAL INFORMATION

#### A. DEBTORS

NW Cornell is a manager-managed Oregon limited liability company owned equally by Eagle Holdings LLC and the Trust, which also asserts an equitable interest in the real property owned by NW Cornell, although such ownership is disputed. Dinihanian is the manager of NW Cornell and is authorized to take all actions on its behalf. Dinihanian is an individual residing in the State of Oregon and is the sole member and manager of Eagle Holdings, LLC. NW Cornell's primary asset is its 50 percent tenant-in-common ownership interest in 37 acres of undeveloped real property located at 15005 NW Cornell Road, Beaverton, Oregon.

#### B. DINIHANIAN'S BUSINESSES

Prior to the filing of the Bankruptcy Cases, Dinihanian's principal business was operating Eagle Holdings, LLC, which owns other real estate-centered limited liability companies and engages in enterprises regarding motor vehicles, the production of mechanical parts, and property management. Dinihanian intends to continue operating Eagle Holdings and its entities under their existing business models.

#### C. MANAGEMENT OF NW CORNELL.

Reorganized NW Cornell will consist of the same owners and management as currently exists. NW Cornell does not have any employees. Depending on the path pursued under the Plan, NW Cornell will continue to own a 50 percent tenant-in-common interest in the Cornell Property, develop the Cornell Property in cooperation with non-debtor tenant-in-common owners, or it will possess the net proceeds from the sale of its interest in the property.

#### D. WASHINGTON COUNTY LITIGATION

NW Cornell is the plaintiff in *15005 NW Cornell, LLC v. Cornell Rd. LLC, et al*., Case No. 18CV17059, pending in the Circuit Court for the State of Oregon for Washington County. NW Cornell commenced the partition proceeding because the other tenant-in-common owners of the Cornell Property would not cooperate in the development of the property or consent to NW

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Cornell borrowing against its interest in the property.  The Washington County court in a memorandum opinion indicated that partitioning is an appropriate remedy, although it would require additional time-consuming land use master-planning procedures prior to such a partition being determined.  No further action has occurred in the Washington County court after the Petition Date due to the fact that parties have opposed NW Cornell's applications to employ counsel for that action and the parties engaged in repeated discussions with participants in these bankruptcy cases and with parties in the partition litigation toward the preferable objective of consensual settlement.

## IV.    EVENTS LEADING TO THE BANKRUPTCY FILING

Debtors' bankruptcy filings were precipitated by the scheduled foreclosure sales of the Skyline Property and the Cornell Property initiated by Creditor Tasha Teherani-Ami ("Teherani-Ami") based on deeds of trust recorded on both properties as provided in the General Judgment of Dissolution of Marriage (the "General Judgment") entered in the divorce case involving Teherani-Ami and Dinihanian, Multnomah County Circuit Court Case No. 1208-68730 (the "Divorce Case").  In the General Judgment obligated Dinihanian to make a significant settlement payment to Teherani-Ami in January 2018, and that payment was secured by the deeds of trust.  When Dinihanian was unable to make that payment, Teherani-Ami initiated foreclosure proceedings on both the Skyline and the Cornell Property.  In addition, Teherani-Ami filed an action compel Dinihanian to execute a deed, on behalf of NW Cornell, to half of NW Cornell's tenant-in-common interest in the Cornell Property or be held in contempt (Multnomah County Circuit Court Case No. 19-CN01457) (the "Contempt Proceeding").

Debtors had and continue to have insufficient funds with which to pay their creditors until the Cornell Property is sold or until Debtors can obtain financing secured by NW Cornell's interest in the Cornell Property and Dinihanian's interest in the Skyline Property, or both.  As a result, Debtors were unable to avoid the imminent risks of foreclosure or the transfer of

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4

half of NW Cornell's interest in the Cornell Property and filed for Chapter 11 bankruptcy protection to prevent the loss of significant value in the Cornell Property and Skyline Property.

## V. SIGNIFICANT POST-PETITION EVENTS

Debtors obtained an order to lift the automatic stay to reengage in the Washington County partition litigation. Debtors have not pursued that litigation for various reasons, primarily because the application to employ partition counsel has been blocked in the Bankruptcy Cases. Debtors have invested extensive efforts to arrange financing to finance the payments of Claims and facilitate the incremental development of some or all of the Cornell Property. Such financing has been arranged through lender SORFI, LLC, an affiliate of Sortis Capital (the "Plan Lender") and the Plan Loan described in the Plan.[1] The term sheet describing the Plan Loan's key terms is attached as Exhibit 2 hereto. The documents that will evidence the Plan Loan will be filed with the Bankruptcy Court not later than four weeks prior to the confirmation hearing set forth in the Order. Under the term sheet, Debtors will be obligated to grant Sortis Real Estate, LLC, an affiliate of the Plan Lender, a right of first refusal to serve as the listing broker to market and sell NW Cornell's rights, title and interest in the Cornell Property should the listing and marketing of NW Cornell's tenant-in-common interests become necessary and appropriate following Plan confirmation. For the avoidance of doubt, the listing agreement would pertain only to NW Cornell's interest in the

---

[1] Debtors already have an indirect lender-borrower relationship. SORFI, LLC loaned 933 Harrison Blvd., LLC ("933 LLC") the amount of $1,250,000 in early 2020, to refinance 933 LLC's mortgage debt that had matured. The SORFI loan to 933 LLC was guaranteed by Eagle Holdings, LLC, but was not personally guaranteed by either of the Debtors. Later, in April of 2021, the SORFI loan was refinanced to payoff an existing $1,000,000 loan owed to Juniper by 2275 W Burnside, which was secured by the property located at 2001 N. Main Street, Forest Grove. The Juniper loan had matured and was in default. Additionally, at the time of the refinance, 933 LLC and 2275 W Burnside had defaulted on obligations to Columbia Bank and iQ Credit Union, due to decreased rental revenue caused by the COVID-19 pandemic. The new SORFI loan also cured those defaults. Dinihanian asserts that 100% of the outstanding membership interest in 933 LLC is owned by Eagle Holdings, LLC, a single member LLC in which Dinihanian owns 100% of the membership interest. Certain parties in interest dispute Dinihanian's assertions that Eagle Holdings owns 933 LLC, and allege that Dinihanian owns 933 LLC directly. Debtors believe this distinction is inaccurate, and, more importantly, Debtors believe that the distinction is irrelevant given that (i) Debtors' Plan proposes to pay 100%, and (ii) Dinihanian's liquidation analysis includes the value of 933 LLC and its assets.

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444

Cornell Property, and not to the interests of parties other than NW Cornell.  Other than the terms set forth in the term sheet, no agreement to specific terms have been reached between Debtors and SORFI, LLC or Sortis Capital with respect to the Plan Loan or right of first refusal set forth in this paragraph and no other documents exist.

Debtors have otherwise devoted the bulk of their efforts since the petition date preparing and proposing a plan of reorganization and disclosure statement and plan and then engaging in numerous rounds of settlement discussions and mediation with Tasha Teherani-Ami, in her individual capacity and as trustee for the Trust, as well as the other tenant-in-common owners of the Cornell Property.  To date, these efforts have been unsuccessful in reaching a resolution, leading Debtors to file and seek confirmation of the present Plan.

In addition, the Trust has filed an adversary proceeding (Adv. Pro. No. 20-03077) (the "Trust Complaint") seeking a declaratory judgment to enforce the terms of the Stipulated Judgment, specifically with respect to its asserted right to a deed from NW Cornell to a twenty-five percent tenant-in-common interest in the Cornell Property.  The Trust also filed a proof of claim in the NW Cornell case (Claim 5-1, the "Claim").  NW Cornell has objected [Dkt. 258] to the Claim on various grounds, filed an answer to the Trust Complaint, and filed an adversary proceeding (Adv. Pro. No. 20-03079) (the "Cornell Avoidance Action"), to which the Trust has filed an answer.

NW Cornell instituted an adversary proceeding (Adv. Pro. No. 19-03096) (the "Teherani-Ami Adversary") against Teherani-Ami to avoid the Deed of Trust on the grounds that it constituted a fraudulent transfer.  In light of the full payment provided for the Teherani-Ami Claim under the Plan, the Debtors will seek to abate the Teherani-Ami Adversary.

A.      **EMPLOYMENT OF PROFESSIONALS**

NW Cornell has retained Perkins Coie LLP as its general counsel in the NW Cornell Bankruptcy Case.  Dinihanian has retained Motschenbacher & Blattner LLP as his general counsel in the Dinihanian Bankruptcy Case.  Dinihanian also sought and obtained Bankruptcy Court

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

approval for the employment of Delap as his accountant.  NW Cornell has sought the approval for the employment of Bateman Seidel to serve as ordinary course counsel in the partition litigation, although no order has been entered by the Court due to objections asserted by the Trust and the partition litigation has therefore been unable to proceed.

## VI.    ASSETS AND LIABILITIES

### A.    ASSETS

#### 1.    NW Cornell's Real Property

As described above, NW Cornell's principal asset is a fifty-percent tenant-in-common interest in the Cornell Property, which is a 37-acre parcel located at 15005 NW Cornell Road, Beaverton, Oregon.  NW Cornell estimates that the value of its half interest in the Cornell Property was approximately $13,500,000 as of the Petition Date.  This is supported by a broker's price opinion dated February 26, 2019.  It is difficult to assess what impact the pandemic currently afflicting the United States will have on the value of the Cornell Property or other properties in the greater Portland area.  The non-debtor tenant-in-common owners are limited liability companies owned by Dinihanian's sister, Lillian Logan, and her two adult children.  They assert that NW Cornell lacks the authority to enter into the Plan Loan, and that entering into the Plan Loan will, through an unauthorized transfer or otherwise, create a multi-million-dollar damages claim in favor of the non-debtor tenant-in-common owners under the tenant-in-common agreement.  NW Cornell asserts that it has the authority to enter into the Plan Loan pursuant to Section 8 of the tenant-in-common agreement without violating any other provision of the agreement or creating a damages claim.

#### 2.    Dinihanian's Real Property

Dinihanian owns real property and improvements at 237 NW Skyline, in Portland Oregon. The Skyline Property is Mr. Dinihanian's residence, as well as the location where Mr. Dinihanian conducts the business activities of Eagle Holdings.  Dinihanian estimates that the total value of the residence was approximately $1,000,000 as of the Petition Date.

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 3. Personal Property

As of the Petition Date, NW Cornell ~~owns~~<u>owned</u> very few items of personal property. As of the Petition Date, Dinihanian's hard assets consisted of miscellaneous household goods and furnishings. Dinihanian also had checking accounts and brokerage accounts. Dinihanian also owns all membership interests in Eagle Holdings, LLC, which in turn owns stock or membership interests in various entities that own commercial real estate. Dinihanian ~~owns~~<u>owned</u> a half interest with his sister, Lillian Logan, in a cabin located in Welches, Oregon. A list of Dinihanian's assets can be found in Dinihanian's Amended Schedule A/B [ECF No. 60] (Dinihanian Case)[2]. The combined net values of Dinihanian's assets, including Eagle Holdings and the various stock or membership interests it owns, and the Welches cabin, fall far short of the funds necessary to pay the Claims and other amounts required to be paid under the Plan.

Dinihanian also has potential tort claims (potentially as derivative claims) against Lillian Logan, related to allegations of breach of fiduciary duty and oppression in connection with Dinihanian Floral Products, Inc., which is jointly owned by Dinihanian and Ms. Logan.

### B. LIABILITIES

### 1. Tasha Teherani-Ami

Pursuant to the Divorce Judgment, Dinihanian owes Tasha Teherani-Ami $2,250,000, plus accrued interest at 4.5% per annum from the date of the Divorce Judgment, until paid, as well as actual and reasonable costs and attorney fees. <u>As of June 1, 2021, Debtors believe the total amount owing to Teherani-Ami was approximately $2,855,000. Since June 1, 2021, Debtors have made monthly adequate protection payments of interest to Teherani-Ami. Such payments will continue through September 2021, at which time Teherani-Ami will be entitled to relief from stay to continue her foreclosure actions.</u>

The Divorce Judgment is secured by a Residential Trust Deed against the Skyline Property and by a deed of trust against NW Cornell's interest in the Cornell Property. NW Cornell has

---

[2] References to the "Dinihanian Case" refer to Bankruptcy Case No. 19-31886-dwh11.

~~FIRST~~<u>SECOND</u> AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED ~~OCTOBER 13~~<u>JULY 22</u>, ~~2020~~<u>2021</u>

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4

commenced an adversary proceeding to avoid the transfer by which the deed of trust against the Cornell Property was delivered to Ms. Teherani-Ami.

### 2. Bateman Seidel and Daniel Lorenz Trust Deed Claims

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor of NW Cornell's prepetition counsel, Bateman Seidel, and Dinihanian's prepetition counsel, Daniel Lorenz, in the collective face amount of $250,000 as security for legal fees advanced prepetition for the respective Debtors by such counsel.

### 3. Columbia Bank

Dinihanian owes Columbia Bank in connection with an equipment loan, and a real estate loan for commercial properties owned by two limited liability companies he controls. Dinihanian also has executed personal guaranties in connection with other loans made by Columbia Bank to entities controlled by Mr. Dinihanian.

### 4. Unsecured Creditors

The total amount of Unsecured Claims scheduled by Dinihanian is approximately $976,654. This amount includes the Columbia Bank claims described above. This amount does not include claims made by Lillian Logan [See Claim No. 4; Case No. 19-31886-dwh11].

### 5. Trust Claim

The Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust") seeks the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6. NW Cornell has commenced an adversary proceeding to avoid any obligation to make such a transfer of half of its assets or, to the extent such a transfer is deemed to have occurred without an executed deed, to avoid such a deemed transfer.

### 6. Other Asserted Hypothetical Claims

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

The co-owners of the Cornell Property have asserted arguments that they may be injured and suffer damages if (1) NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the proposed Plan Loan; or (2) the entire Cornell Property is ultimately sold as a whole pursuant to Section 363(h) of the Bankruptcy Code. The co-owners argue that either type of transfer would result in a breach of the Tenancy in Common Agreement between NW Cornell and the co-owners. Further, in the event that a sale of the entire Cornell Property is sold pursuant to 11 U.S.C. § 363(h), the co-owners argue they may be damaged because the sale would result in taxable gains, which would impose tax liabilities upon them that would not exist but for a sale of the entire Cornell Property. Debtors deny the co-owners' arguments that Debtors would be liable under either scenario, for the reasons set forth below.

a.    **Foreclosure of Plan Loan**

First, in the event that NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the Plan Loan, the transfer would be an authorized transfer. The Tenancy in Common Agreement is written to preserve each co-owner's ability to pursue a 1031 exchange with respect to their prospective interests in the Cornell Property. Specifically, the Tenancy in Common Agreement is written in compliance with IRS Rev. Proc. 2002-22 in at least the following ways in that it:

- Provides that the title to the Cornell Property as a whole may not be held as an entity under state law (TIC Agreement, ¶ 1);

- Provides that the co-ownership may not file a partnership or corporate tax return (TIC Agreement);

- Indicates that each co-owner may encumber its share of the Cornell Property (TIC Agreement, ¶ 8); and,

- Indicates that each co-owner may transfer its respective interest in the Cornell Property, subject only to a right of first refusal in favor of the other co-owners (TIC Agreement, ¶ 10(a)).

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Because these provisions are present in the Tenancy In Common Agreement, Debtors believe that the co-owners arguments are misplaced.  Because the agreement authorizes NW Cornell to encumber its TIC Interest, the agreement implicitly consents to the risk that NW Cornell's interest may be transferred through foreclosure in the event of a default.  Moreover, if the Debtors default on the Plan Loan after confirmation and funding of such loan, notice of any potential foreclosure sale can be provided to the co-owners in compliance with Section 10(b) of the TIC Agreement.  Such notice would provide the co-owners the opportunity to purchase NW Cornell's TIC Interest prior to foreclosure.  In the event that the co-owners fail to elect to purchase NW Cornell's TIC Interest, the TIC Agreement explicitly authorizes a transfer.  In the event that Debtors are wrong about this position, and if foreclosure of the Plan ~~loan~~Loan would result in a breach of the TIC Agreement, there is a risk that the Debtors will be liable to the co-owners, which could diminish the amount of Debtors' equity.  Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure.  Thus, the majority of the risk is borne by Debtors themselves.

b.    **Sale of Entire Cornell Property**

In the event of a sale of the entire property, Debtors believe the TIC co-owners would not have any claim against the Debtors, for breach of the TIC Agreement or otherwise.  First, Debtors do not believe there is any controlling authority indicating that they bear any liability to the co-owners if Debtors successfully prove the elements of a claim under § 363(h).  Second, Debtors believe the co-owners would be provided sufficient notice to enable them to minimize their respective taxes through a 1031 exchange, completely mitigating any potential damages.  Finally, as is described above regarding foreclosure, co-owners would be provided notice of any potential sale of the entire property, and they would therefore have the ability to make an offer to purchase the Cornell Property, or even just NW Cornell's TIC Interest.  There is a risk that, if Debtors are incorrect in these arguments, ~~that~~ the equity Debtors will receive after a sale will be reduced by the amount of damages they are required to pay the co-owners.  Debtors

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure.  Thus, the majority of the risk is borne by Debtors themselves.

## VII.  DESCRIPTION OF PLAN

### A.  SOLICITATION AND CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY SECURITIES

#### 1.  General

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization must designate classes of Claims and classes of interest.  The Plan classifies all Claims and Interests into 13 classes.  The classification of Claims and Interests is made for the purpose of voting on the Plan and making distributions thereunder, and for ease of administration of the Plan.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is entitled to vote in a particular Class and to receive distributions in such Class only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid prior to the Effective Date.  Under the Plan, a Claim or Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a proof of the Claim or Interest was (1) timely Filed, or (2) deemed Filed under applicable law by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party in interest has Filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or Interest is allowed by Final Order; or (iii) with respect to an application for compensation or reimbursement of an Administrative Expense Claim, the amount of the Administrative Expense Claim has been approved by the Bankruptcy Court.

#### 2.  Unclassified Claims

Administrative Expense Claims and Priority Tax Claims are not classified.  An Administrative Expense Claim is a Claim against Debtors constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444

including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors, within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D). The IRS has Filed a Priority Tax Claim against Dinihanian in the amount of $6,084.70

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim). However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto. Debtors will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be Filed prior to the hearing on confirmation.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

### 3. Classified Claims

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan attached hereto as **Exhibit 1**.

(a) <u>Class 1 (Tasha-Teherani-Ami's Secured Claim Against Dinihanian)</u>. Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian. The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, and reasonable costs and attorney fees in an amount established by the Bankruptcy Court following application and hearing. Teherani-Ami will file an application her reasonable costs and attorney fees associated with the Class 1 Claim not later than 14 days after the entry of order confirming the Plan. Class 1 is unimpaired and will be deemed to accept the Plan. The Divorce Judgment shall be modified to extend the deadline for payment of the Class 1 Claim to the date on which the Class 1 Claim is to be paid under the terms of this Plan.

The Teherani-Ami Skyline Trust Deed shall be modified as follows:

- Section 1.2 shall be modified to read as follows:

  "Grantor will pay and perform all Obligations when due under the Joint Chapter 11 Plan dated July 30, 2020, filed in the Bankruptcy Case of *In re 15005 NW Cornell, LLC*, Bankruptcy Case No. 19-31883-dwh11 (jointly administered).

- The following language shall be added to the end of Article V:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11.

- Sections 1.8, 1.9, and all provisions referring those sections, shall be deleted.

All other provisions of the Teherani-Ami Skyline Trust Deed shall remain unmodified.

(b) <u>Class 2 (General Unsecured Claims Allowed Against NW Cornell)</u>. Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise classified in the Plan. Each holder of a Class 2 Claim shall be paid in full together with interest at

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

the federal judgment rate (fixed at the rate in effect on the Effective Date) within six months after the Effective Date.

(c)  <u>Class 3 (Trust Claim)</u>.  Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment.  The Class 3 <u>Claim</u> will <u>(a)</u> retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor <u>or (b) receive such alternative relief as ordered by the Court, including in Adv. Pro. No. 20-03077, Adv. Pro. No. 20-03079 and the claim objection found at Docket No. 258,</u> in full satisfaction of the Trust Claim. The Class 3 <u>Claim</u> is impaired under the Plan.

(d)  <u>Class 4 (Multnomah County Property Taxes)</u>.  Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property.  The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date.  The Class 34 Claim shall be paid in the same manner as Class 2 Claims.

(e)  <u>Class 5 (Tasha Teherani-Ami)</u>. The Class 5 Claim consists of Tasha Teherani-Ami's disputed secured claim against NW Cornell, pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed.  The Class 5 Claim is the same debt as the Class 1 Claim and payment of the Class 1 Claim, described above, shall constitute full satisfaction of the Class 5 Claim.  The Class 5 Claim is unimpaired and is deemed to accept the Plan.

(f)  <u>Class 6 (Bateman Seidel Claim)</u>. Class 6 consists of the Allowed secured Claim of Bateman Seidel, PC.  The Class 6 Claim shall be paid at the same time and in same manner as Class 2 Claims, described above.

(g)  <u>Class 7 (Lorenz Claim)</u>. Class 7 consists of the Allowed secured Claim of Daniel Lorenz <u>against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed</u>.  The Class 7 Claim shall be paid in at the same time and in the same manner as the Class 2 Claims, described above.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(h) Class 8 (Columbia Bank – Equipment Loans). Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. Columbia's Class 6 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date. The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 6 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(i) Class 9 (Columbia Bank – Real Estate Loan). Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note. The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

"Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(j)  Class 10 (Guaranty Claims against Dinihanian).  Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents.  Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date.  The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated:

- The following language in the Columbia Guaranty Documents shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(k)  Class 11 (General Unsecured Claims against Dinihanian).  Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan.  Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full.  The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

(l)  Class 12 (Interests in NW Cornell).  Class 12 Interests in NW Cornell shall retain their interests in NW Cornell except as may be determined by the Bankruptcy Court with respect to Class 3 Claims referenced above.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(m) <u>Class 13 (Dinihanian's Interests)</u>. The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

**B.    ADMINISTRATIVE EXPENSES**

NW Cornell has retained the following professionals: (a) Perkins Coie LLP as its general counsel in this case and (b) Delap LLP as its accountants.  Currently, the total amount of Administrative Expense Claims is $~~300,000~~460,000 and could be as high as $~~375,000~~600,000 by the Effective Date depending on the extent of litigation with various parties in interest.  A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

Dinihanian has retained the following professionals: (a) Motschenbacher & Blattner LLP as his general bankruptcy counsel in this case and (b) Delap LLP as his accountants.  Currently, the total amount of Administrative Expense Claims is approximately $~~150,000~~220,000 and could be as high as $~~200,000~~300,000 depending on the extent of litigation with various parties in interest. A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

**C.    EXECUTORY CONTRACTS**

The Bankruptcy Code gives debtors the right, after commencement of their Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Generally, an "executory contract" is a contract under which material performance (other than the payment of money) is still due by each party.  The Plan provides for the assumption by debtors of all executory contracts and unexpired leases that are not expressly rejected or subject to a motion for rejection Filed on or before the Confirmation Date.

If an executory contract or unexpired lease is or has been rejected, the other party to the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a Proof of Claim with respect to any such Claim must be Filed within 30 days of approval of

~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

the Bankruptcy Court of the rejection of the relevant executory contract or unexpired lease. Any such Claim shall constitute a Class 2 Claim to the extent such Claim is finally treated as an Allowed Claim. To the extent a debtor rejects an unexpired lease of nonresidential real property, the Claim for damages resulting from such rejection will be limited to the amount allowed under the Bankruptcy Code.

Upon assumption of an executory contract or unexpired lease, debtors must cure or provide adequate assurance of prompt cure of any monetary defaults. The Plan provides that Reorganized Debtors will promptly cure all monetary defaults. Debtors do not believe any of the executory contracts being assumed will require significant cure payments.

The Trust asserts the NW Cornell limited liability operating agreement (the "Operating Agreement") is an executory contract that must be assumed and that, because it includes a personal services contract, the Trust contends, the contract cannot be assumed by NW Cornell without the Trust's consent, which will not be provided. The Trust further contends the Plan cannot be confirmed, and indeed the bankruptcy case must be dismissed, absent NW Cornell's assumption of the Operating Agreement. Specifically, the Trust argues NW Cornell's failure to execute a deed to the Trust of half of NW Cornell's tenant-in-common interest in the Cornell Property, pursuant to the Stipulated Judgment, is default under the Operating Agreement that must be cured as a condition of assumption.

The Debtors disagree with the Trust's argument on numerous grounds, including that the Operating Agreement is not an executory contract, that NW Cornell was not a party to the Stipulated Judgment that purports to require execution of a deed to the Trust, that NW Cornell received no consideration for such a transfer, among other arguments. These arguments are set forth and will be decided, in whole or in part, through NW Cornell's objection to the Trust's Claim, the Trust's Complaint, and the Cornell Avoidance Action.

If the Trust prevails and the Debtors do not, the Plan Lender may not fund the Plan Loan and the Plan may not be confirmable.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444

### D.     IMPLEMENTATION OF THE PLAN

The Debtors will obtain the funds to pay Claims as provided in this Plan through borrowing under the Plan Loan.  Repayment of the Plan Loan will be secured by an encumbrance on the Skyline Property.  It will also be secured by an encumbrance on NW Cornell's tenant-in-common interest in the Cornell Property, not the interests of other owners of tenant-in-common interests in the Cornell Property .  NW Cornell is authorized to such an encumbrance pursuant to Paragraph 8 of the Tenant-in-Common Agreement, which states: "Each owner shall have the right to encumber its undivided interest in the Property without the approval of any person and shall discharge the obligation secured by the encumbrance in accordance with its terms."  Other tenant-in-common owners have challenged NW Cornell's right to agree to such an encumbrance.  There is a risk that such a challenge will prevail and that the encumbrance will not be permitted.  Under those conditions, the Plan Lender may not agree to fund the Plan Loan.

The Trust asserts NW Cornell must deliver to it a deed to a twenty-five percent tenant-in-common interest in the Cornell Property in exchange for the redemption of the Trust's fifty-percent membership interest in NW Cornell, an exchange provided for the Stipulated Judgment.   NW Cornell rejects the Trust's position that it must deliver a deed on various grounds, including that NW Cornell was not a party to the Stipulated Judgment and received no consideration for such a deed.  The Trust has commenced an adversary proceeding seeking a declaratory judgment that would result in the Trust owning half of NW Cornell's TIC interest in the Cornell Property.  The Trust also argues that the Debtors must assume three executory contracts before Debtors have the authority to confirm the Plan and obtain the Plan loanLoan.  The Trust asserts Debtors must obtain the Trust's consent, which will not be given, to assume a portion of the NW Cornell operating agreement.  Debtors deny all of the Trust's claims.

NW Cornell is defending the adversary proceeding brought by the Trust and has commenced an adversary proceeding to avoid any obligation allegedly imposed upon NW Cornell to transfer a deed to the Trust.  NW Cornell has also filed an objection to the Trust's proof of claim.

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4

Debtors believe that the Trust's right to equitable relief would be eliminated if the objection to the proof of claim is sustained by the Bankruptcy Court. The Trust has argued that NW Cornell must succeed in both adversary proceedings and the proof of claim objection for the Plan to be successful. Debtors reject the Trust's arguments and believe the Plan may still be successful even if NW Cornell loses the claim objection and both adversary proceedings. Ultimately, however, the following risks exist: (i) the Debtors may lose the adversary proceedings and the proof of claim objection, (ii) losing one or more of the adversary proceedings and the proof of claim objection could require NW Cornell to grant a deed to the Trust; and (iii) the Plan Lender may not agree to fund the Plan Loan if the Trust is granted a deed, which would result in failure of the Plan.

The Trust also asserts, in light of its claims under the Stipulated Judgment, NW Cornell should not be permitted to grant an encumbrance on NW Cornell's half tenant-in-common interest in the Cornell Property. If the Trust's objection is sustained, the encumbrance on NW Cornell's fifty-percent tenant-in-common interest in the Cornell Property envisioned by Plan Lender will be diminished by half, and the Plan Lender may not agree to fund the Plan Loan.

As a condition of the Plan Loan, the Plan Lender will require the Debtors to agree to (i) use their best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Plan Lender, make a determination that completion of the partition litigation is not practicable within a reasonable time and the Debtors should pursue, through a reservation of jurisdiction by this Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. No documents exist that define or expand upon the precise meaning of "in consultation with," as referenced in this paragraph. The criteria used by Debtors would include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property, potentially including the Trust, oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Debtors' efforts to finalize the partition of the Cornell

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Property.  For the avoidance of doubt, the Debtors' agreement ~~to~~ referenced above will be sufficient to permit the funding of the Plan Loan and the payment of Claims as set forth in the Plan.

The Debtors anticipate the $5.6 million in proceeds under the Plan Loan to be dedicated as set forth in Exhibit 3, Projected Use of Funds.  One component of the Use of Funds is the reservation of $1.5 million (a) for completion of the partition litigation, (b) to complete the land use and entitlement process in Washington County, (c) if necessary, to prosecute an adversary proceeding under Section 363(h) of the Bankruptcy Code to obtain an order requiring the sale of the entire Cornell Property on the grounds that completion of the partition process will involve impracticable delays and obstruction, and (d) for initial design and development costs.  In addition, counsel for the Reorganized Debtor in the partition action, whose employment application has been blocked by objections in these cases, will be permitted to proceed post-confirmation and be paid with proceeds of the Plan Loan.  The actual timing and content of any future development of the Cornell Property or any partitioned portion thereof will depend on how the above elements evolve.  The payment of creditors' ~~claims~~Claims under the Plan will be funded by the Plan Loan and will not await or be dependent upon the resolution of any of the elements of uncertainty described in this paragraph.

The Debtors anticipate that the Plan Loan will be repaid at maturity by refinancing.  If the Debtors are forced to seek relief under Section 363(h) of the Bankruptcy Code, ~~the sale of~~ the NW Cornell-owned as well as non-debtor interests in the Cornell Property will be sold.  In this instance, the Plan Loan would be repaid with the proceeds of such sale.

## E.    EFFECT OF CONFIRMATION

### 1.    Binding Effect

The treatment of, and consideration received by, holders of Allowed Claims and Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or Interests in Debtors.  The Confirmation Order shall bind Debtors and any Creditor, and discharge Debtors from any liability that arose before the Effective Date, as provided in Sections 524 and 1141 of the

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444.4

Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (2) a Claim based on such debt or liability is Allowed, or (3) the holder of the Claim based on such debt or liability has accepted the Plan.

## 2. Revesting, Operation of Business

Except for the Cornell Property, which will remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, all property of the bankruptcy estates shall revest in each respective Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens, charges, encumbrances, and interests, except as otherwise specifically provided in the Plan. Except as otherwise set forth in the Plan, there are no limitations or restrictions on the post-confirmation activities or operations of Debtors.

## 3. Injunction

The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtors or Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order; (2) the enforcement, attachment, collection, or recovery against Reorganized Debtors or its assets of any judgment, award, decree, or order obtained before the Petition Date; (3) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (4) asserting any setoff, or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (5) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Confirmation Order.  For the avoidance of doubt, the injunction referenced above shall be applicable to the matters set forth in Section IV.  Neither the injunction nor any provision of the Plan prohibits the Washington County Case to proceed to completion in state court including all appeals.

### 4.     Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan or any agreement between the holder of such Claim and Debtors or Reorganized Debtors.  An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5.     Modification of the Plan; Revocation or Withdrawal of the Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserves the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

### 6.     Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and:

(a)  to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Case 19-31883-dwh11     Doc 401     Filed 07/22/21

(b) to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c) to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d) to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e) to resolve controversies and disputes regarding the interpretation of this Plan,

(f) to implement the provisions of this Plan and enter orders in aid of confirmation, including an action by the Reorganized Debtors pursuant to Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

(g) to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h) to enter a final decree closing this Chapter 11 proceeding.

**7.** **United States Trustee Fees**

Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. After confirmation, Reorganized Debtors shall serve on the United States Trustee a financial report for each quarter, or portion thereof, that the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

**VIII.   LIQUIDATION ANALYSIS**

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security in, Debtors subject to such plan. The best interest test is satisfied if a plan provides each dissenting or non-voting member of each impaired Class with a recovery not less than the recovery such

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

member would receive if each Debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee. The Debtors are proposing to pay all creditors in full, and thus the best interest of creditors test is automatically satisfied.

Despite the fact that the Debtors' Plan of Reorganization proposes to pay all creditors in full and therefore satisfies best interest of creditors test, certain parties in interest have demanded that a liquidation analysis be provided. Attached as Exhibit 4 is a liquidation analysis provided by the Debtors for each Debtor separately. All asset values included in the liquidation analysis were based on the Debtors' opinions of value, based on Debtors' familiarity with their properties, and Debtors' experience in the area of commercial real estate. Parties in interest have asserted that the Debtors' statements of value have been inconsistent, but Debtors assert that any differing valuation numbers were due, in part, to the difference in the time periods when valuation estimates were prepared. Additionally, Debtors assert that inconsistency in valuation may also be due to differences in the type of valuation (i.e., liquidation vs. going concern value). The valuation estimates provided in the attached liquidation analysis are intended to be current fair market values as of the date of this disclosure statement.

## IX.    POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion summarizes in general terms certain federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors (including financial institutions, life insurance companies, tax exempt organizations and foreign

FIRSTSECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED OCTOBER 13JULY 22, 20202021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479144.4

taxpayers) to which special rules may apply.  No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR.  Substantial differences in the tax implications are likely to be encountered by the creditors because of the difference in the nature of their Claims, their taxpayer status, their method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The following are the anticipated tax consequences of the Plan:

### A.      TAX CONSEQUENCES TO THE DEBTORS.

The Debtors do not anticipate any extraordinary or unusual tax consequences because all claims are expected to be paid in full.  Debtors will experience ordinary income from continued operations and earnings and will be entitled to deduct business expenses for any business-related expenses and interest expense.  Debtors do not anticipate any cancellation of debt income.  In the event NW Cornell sells its real property, NW Cornell shall pay any applicable capital gains taxes that result from the sale.

### B.      GENERAL TAX CONSEQUENCES ON CREDITORS.

Creditors will likely not experience any unusual or extraordinary tax consequence following Confirmation of the Plan.  Payments will be treated in the same manner as they were treated before Confirmation of the Plan. As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor that is unknown to the Debtors. As a result, the tax implications to specific creditors cannot be completely described herein

EACH INTEREST HOLDER IS URGED TO CONSULT SUCH INTEREST HOLDER'S OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN TAX LAWS.

Page 34 of 3838      ~~FIRST~~SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED ~~OCTOBER 13~~JULY 22, ~~2020~~2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4      Case 19-31883-dwh11    Doc 401    Filed 07/22/21

DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY CLAIMANT.

## X. ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A. CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on ~~_____, 2020~~the date and at ~~\_\_\_\_.m Pacific~~the time.  ~~The hearing~~ and place set forth in the accompanying Order and will be held ~~at the U.S. Bankruptcy Court for the District of Oregon, 1050 SW 6th Avenue, 7th Floor, Portland, Oregon in Courtroom No. 3,~~ before the Honorable David W. Hercher, United States Bankruptcy Judge.  At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interest of Creditors and Interest holders of Debtors.  Debtors will submit a report to the Bankruptcy Court prior to the hearing concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote thereon.  ~~Any~~To be considered by the Court, any objection to confirmation of the Plan must be timely filed on or before ~~_____, 2020 to be considered by the Court~~the deadline set in the Order.

### B. REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan.  Debtors believe the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code, that it has complied or will have complied with all of the requirements of Chapter 11, and that the Plan has been proposed and is made in good faith.

### C. CRAMDOWN

A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan has been accepted by at least one impaired class of claims and the Plan meets the cramdown requirements set forth in Section 1129(b) of the Bankruptcy Code.  In the event any impaired Class

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

1460479444

of Claims does not accept the Plan, Debtor hereby requests the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit Debtors to modify the Plan.

### D.    FEASIBILITY

Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation of either of the Reorganized Debtors or a need for a further financial reorganization of Reorganized Debtors.  Debtors believe they can obtain financing through the Plan Loan in an amount sufficient to pay all creditors in full.  The timing of the payments to Creditors will depend on the timing of the closing and the availability of funds under the Plan Loan.

### E.    ALTERNATIVES TO CONFIRMATION OF THE PLAN

If a Plan is not confirmed, Debtors or another party in interest may attempt to formulate or propose a different Plan or Plans of Reorganization.  Such Plans might involve the sale of Dinihanian's other assets, an orderly liquidation of NW Cornell's assets, or any combination thereof.  If no Plan of Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

In a liquidation, a Chapter 7 trustee would be appointed with the purpose of liquidating the assets of Debtors.  Typically, in liquidation, assets are sold for less than their going concern value and, accordingly, the return to Creditors and Interest holders is less than the return in a reorganization, which derives the value to be distributed in a Plan from the business as a going concern.  Proceeds from liquidation would be distributed to Creditors and Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

Debtors believe there is no currently available alternative that would offer holders of Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on the Plan to vote to accept the Plan.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## XI.  CONCLUSION

Please read this Disclosure Statement and the Plan carefully.  After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

DATED this ~~13th~~22 day of ~~October 2020~~July 2021.

Respectfully submitted,

PERKINS COIE LLP

By */s/ Douglas Pahl*
Douglas Pahl, OR Bar No. 950476
Of Attorneys for Debtor 15005 NW Cornell LLC


MOTSCHENBACHER & BLATTNER LLP

By */s/ Nicholas J. Henderson*
Nicholas J. Henderson, OSB No. 074027
Of Attorneys for Debtor Vahan M. Dinihanian, Jr

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

146047944.4

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

**EXHIBITS ATTACHED**:

<u>Exhibit 1</u>: Joint Plan of Reorganization

Exhibit 2:  Term Sheet

Exhibit 3: Projected Use of Funds

Exhibit 4: Liquidation Analysis

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# Exhibit 1
# Joint Plan of Reorganization

**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

    *Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

    *Of Attorneys for 15005 NW Cornell LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>    15005 NW Cornell LLC; and<br>    Vahan M. Dinihanian, Jr.,<br><br>                    Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>**DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY ~~31~~22, ~~2020~~2021** |

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

# TABLE OF CONTENTS

Article 1 DEFINITIONS............................................................................1

Article 2 UNCLASSIFIED CLAIMS ..................................................~~9~~8

Article 3 CLASSIFICATION ...................................................~~10~~9

Article 4 TREATMENT OF UNIMPAIRED CLASSES ....................................11

Article 5 TREATMENT OF IMPAIRED CLASSES............................................12

Article 6 DISPUTED CLAIMS; OBJECTIONS TO CLAIMS ............................15

Article 7 IMPLEMENTATION OF THE PLAN .................................................15

Article 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................17

Article 9 EFFECT OF CONFIRMATION ...................................................~~18~~17

Article 10 RETENTION OF JURISDICTION....................................................18

Article 11 ADMINISTRATIVE PROVISIONS...................................................19

Article 12 MISCELLANEOUS PROVISIONS....................................................20

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

15005 NW Cornell LLC, as debtor and debtor-in-possession ("NW Cornell") and Vahan M. Dinihanian, Jr., as debtor-in-possession ("Dinihanian") (collectively, the "Debtors"), propose this Joint Plan of Reorganization dated July 31, 2020 (the "Plan") pursuant to Section 1121(a) of Title 11 of the United States Code.

This Plan provides for the repayment in full of all obligations Debtors owe to their Creditors. A Disclosure Statement is enclosed herewith to assist you in understanding this Plan and making an informed judgment concerning its terms. All creditors are encouraged to read the Plan and the Disclosure Statement and their respective exhibits in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement and the exhibits attached thereto have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. The Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE 1

## DEFINITIONS

Definitions of certain terms used in this Plan are set forth below. Other terms are defined in the text of this Plan or the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in this Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Any

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

capitalized term that is not defined herein but is defined in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

**1.1** "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

**1.2** "Allowed" means, with respect to any Claim, proof of which has been properly Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or contingent, and, in either case, a Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent allowed by a Final Order.

**1.3** "Allowed Secured Claim" means an Allowed Claim that is secured by a lien, security interest or other charge against or interest in property in which one of the Debtors has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in Debtor's interest in such property or to the extent of the amount subject to setoff, as the case may be.

**1.4** "Allowed Unsecured Claim" means an Allowed Claim that is not an Allowed Secured Claim.

**1.5** "Bankruptcy Cases" means, collectively, the NW Cornell Bankruptcy Case and the Dinihanian Bankruptcy Case.

**1.6** "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

**1.7** "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Cases or any

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

proceeding therein, including the United States District Court for the District of Oregon, to the extent that the reference to the Bankruptcy Cases or any proceeding therein is withdrawn.

**1.8**    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

**1.9**    "Bateman Seidel Trust Deed" means the Trust Deed recorded as instrument number 2019-007750 in the real property records of Multnomah County, Oregon.

**1.10**    "Bateman Seidel Claim" means the Claim associated with the Bateman Seidel Trust Deed.

**1.11**    "Business Day" means a day other than a Saturday, Sunday or other day on which banks in Portland, Oregon are authorized or required by law to be closed.

**1.12**    "Cash" means lawful currency of the United States of America.

**1.13**    "Claim" means (a) any right to payment from Debtors arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy against Debtors arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.14**    "Class" means one of the classes of Claims defined in Article 3 hereof.

**1.15**    "Collateral" means any property in which Debtors has an interest that is subject to an unavoidable lien or security interest securing the payment of an Allowed Secured Claim.

**1.16**    "Columbia" means Columbia State Bank.

**1.17**    "Columbia Loan Documents" means all loan documents entered into by and between Columbia and Dinihanian, including:

Page 3 of 23    DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

(a) Commercial Promissory Note dated October 6, 2015, between Vahan M. Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Columbia Equipment Note");

(b) Commercial Promissory Note dated November 4, 2016, between Vahan Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Columbia Real Estate Note");

(c) Commercial Deed of Trust dated November 4, 2016, among Vahan 8340 NW Cornell LLC and Vahan 8344 NW Cornell LLC (as grantors), Fidelity National Title Company of Oregon (as trustee), and Columbia State Bank (as lender) (the "83rd Street Deed of Trust");

(d) Hypothecation Agreement Security Agreement-Pledge dated November 4, 2016, among Vahan Dinihanian, Jr. (as borrower), Vahan 8344 NW Cornell LLC (as pledger) and Columbia State Bank (as lender) (the "83rd Street Security Agreement");

(e) Commercial Guaranty dated August 12, 2015, among Columbia State Bank (lender), Vahan IV NW Tenth LLC (borrower), and Vahan Dinihanian, Jr. (guarantor) related to Loan No. XXXX1263 ("Columbia Guaranty One");

(f) Commercial Guaranty dated September 4, 2015, among Columbia State Bank (lender), Vahan IV NW Tenth LLC (borrower), and Vahan Dinihanian, Jr. (guarantor) related to Loan No. XXXX1472 ("Columbia Guaranty Two"); and

(g) Commercial Security Agreement dated October 6, 2015, between Vahan M. Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Equipment Security Agreement").

**1.18** The "Columbia Guaranty Documents" means, collectively, Columbia Guaranty One and Columbia Guaranty Two.

**1.19** "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

**1.20** "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.21** "Cornell Property" means the real estate and improvements located at 15005 NW Cornell Rd., City of Beaverton, State or Oregon, more particularly described in **Exhibit A** hereto.

**1.22** "Cornell Property Revesting Date" means that date upon which (a) all Claims have

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

been paid as provided under this Plan, and (b) NW Cornell has notified the Court it will not utilize the authority provided in Section 363(h) of the Bankruptcy Code.

**1.23** "Creditor" means any entity holding a Claim against Debtor.

**1.24** "Debtors" means, collectively, 15005 NW Cornell LLC., as Debtor and Debtor-in-Possession in the NW Cornell Bankruptcy Case and Vahan M. Dinihanian, Jr., as Debtor-in-Possession in the Dinihanian Bankruptcy Case.

**1.25** "Dinihanian Bankruptcy Case" means the Chapter 11 case filed by Vahan M. Dinihanian, Jr., Case No. 19-31886-dwh11, pending in the United States Bankruptcy Court for the District of Oregon.

**1.26** "Dinihanian Petition Date" means May 21, 2019, the date on which the petition commencing the Dinihanian Bankruptcy Case was filed.

**1.27** "Disclosure Statement" means Debtors' First Amended Disclosure Statement as amended, modified, restated or supplemented from time to time, pertaining to the Plan.

**1.28** "Disputed Claim" means a claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of such Claim. If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such claim shall be a Disputed Claim only to the extent of the objection.

**1.29** "Divorce Judgment" means the General Judgment of Dissolution of Marriage entered on or about March 22, 2016, in the matter of *Tasha L Dinihanian vs. Vahan M Dinihanian*, Circuit Court for the State of Oregon, Multnomah County Case Number 120868730.

**1.30** "Effective Date" means the eleventh day following the date the Confirmation Order is entered.

**1.31** "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**1.32** "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified, appealed or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

**1.33** "Guaranty Documents" means any documents evidencing contingent unsecured guaranty liabilities of Dinihanian.

**1.34** "Insider" shall have the meaning ascribed to it by Section 101(31) of the Bankruptcy Code.

**1.35** "Interests" means all rights of the owners of the membership interests of NW Cornell.

**1.36** "Lorenz Trust Deed" means the Trust Deed recorded as instrument number 2019-007750 in the real property records of Multnomah County, Oregon.

**1.37** "Lorenz Claim" means the claim associated with the Lorenz Trust Deed.

**1.38** "Net Proceeds" means the funds available to distribute to Allowed Claims after payment of all costs of sale, and liquidation of any item of Debtors' property after reduction for any and all fees and liquidation expenses at the closing of such sale, payments of any and all prior, valid encumbrances, taxes, fees and expenses, including legal and accounting, related to the sale.

**1.39** "NW Cornell" means 15005 NW Cornell LLC.

**1.40** "NW Cornell Bankruptcy Case" means the Chapter 11 case filed by 15005 NW Cornell LLC, Case No. 19-31883-dwh11 pending in the United States Bankruptcy Court for the District of Oregon.

**1.41** "NW Cornell Petition Date" means May 21, 2019, the date on which the petition commencing the NW Cornell Bankruptcy Case was filed.

**1.42** "Organizational Documents" means the governing documents for NW Cornell or any other applicable entity.

**1.43** "Other Priority Claim" means any Claim for an amount entitled to priority in right

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

of payment under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.44    "Plan" means this First Amended Joint Plan of Reorganization, as amended, modified, restated or supplemented from time to time.

1.45    "Plan Loan" means a secured credit facility obtained by NW Cornell as borrower, in an amount of not less than $5,500,000 secured by first-priority deeds of trust on NW Cornell's interest in the Cornell Property and the Mr. Dinihanian's interest in the Skyline Property and on terms otherwise provided in the applicable Plan Loan documents.

1.46    "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the secured status of the Claim.

1.47    "Reorganized NW Cornell" means NW Cornell from and after the Effective Date.

1.48    "Reorganized Dinihanian" means Dinihanian from and after the Effective Date.

1.49    "Reorganized Debtors" means both Debtors from and after the Effective Date.

1.50    "Restated Articles of Organization" means the restated articles of organization and restated operating agreement ("Organizational Document") of NW Cornell which shall modify and amend Debtor's Organizational Documents to prohibit the issuance of non-voting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code and make such other changes, as Reorganized NW Cornell may deem necessary or appropriate to carry out the purpose and intent of the Plan.

1.51    "Scheduled Amounts" means the amounts of any Claim appearing in Debtors' Schedules.

1.52    "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtors pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

1.53    "Secured Claim" means any Claim against either of the Debtors held by any entity, including, without limitation, an Affiliate or judgment creditor of Debtors, to the extent such Claim constitutes an unavoidable secured Claim under Sections 506(a) or 1111(b) of the

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Bankruptcy Code.

**1.54** "Skyline Property" means the real property located at 237 NW Skyline Blvd., Portland, Oregon 97210, including any and all improvements located thereon, all easements, all water rights and all other rights of every nature appurtenant to such real property.

**1.55** "Teherani-Ami Cornell Deed of Trust" means the Trust Deed, Security Agreement, Assignment of Leases, and Rents, and Fixture Filing recorded as instrument number 2016-008669 in the real property records of Washington County, Oregon.

**1.56** "Teherani-Ami Skyline Deed of Trust" means the Residential Trust Deed recorded as instrument number 2016-014522 in the real property records of Multnomah County, Oregon.

**1.57** "Trust" means the Sonja Dinihanian GST Trust DTS 1/1/11, which is an owner of 50 percent of the membership interest in Cornell LLC.

**1.58** "Trust Claim" means the specific performance Claim by the Trust for the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6.

**1.59** "Unsecured Claim" means an unsecured Claim that is not an Administrative Claim, a Secured Claim, an Other Priority Claim, or a Priority Tax Claim.

**1.60** "Unsecured Creditor" means a holder of an Allowable Unsecured Claim.

**ARTICLE 2**

**UNCLASSIFIED CLAIMS**

**2.1** <u>Administrative Expense Claims</u>.  Each holder of an Allowed Administrative Expense Claim shall be paid by Debtors in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree in writing to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute or regulation governing such Claim); *provided, however*, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtors during the Bankruptcy Case shall be paid by Debtors or

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Reorganized Debtors in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

      **2.2**    <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall be paid by Debtors the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D) within 30 days following the Effective Date or the date the claim is Allowed, whichever first occurs.

      **2.3**    <u>Other Priority Claims</u>. Each holder of an Other Priority Claim shall be paid in full in cash the amount of its Allowed Claim on the latest to occur of (1) the Effective Date, (2) the date such claim becomes an Allowed Claim or (3) the date that such claim becomes due and owing, unless such holder shall agree in writing or has agreed to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim).

      **2.4**    <u>Bankruptcy Fees</u>. Fees payable by Debtors under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date. After confirmation, Reorganized Debtors shall continue to pay quarterly fees of the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until this case is closed by the Court, dismissed or converted. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

**ARTICLE 3**

**CLASSIFICATION**

      For purposes of this Plan, Claims and Interests are classified as provided below. A Claim is classified in a particular Class only to the extent that such Claim qualifies within the description of such Class and is classified in a different Class to the extent that such Claim qualifies within the description of such different Class.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**3.1** <u>**Class 1 – Tasha Teherani-Ami's Secured Claim against Dinihanian**</u>.  Class 1 consists of the disputed Secured Claim of Tasha Teherani-Ami pursuant to the Teherani-Ami Skyline Trust Deed.

**3.2** <u>**Class 2 – General Unsecured Claims against NW Cornell**</u>.  Class 2 consists of all Allowed Unsecured Claims against NW Cornell, other than Administrative Expense Claims, and Priority Tax Claims.

**3.3** <u>**Class 3 – Trust Claim against NW Cornell**</u>.  Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment**.**

**3.4** <u>**Class 4 – Multnomah County Div. of Assessment, Recording and Taxation**</u>. Class 4 is the Allowed Secured Claim of Multnomah County for property taxes assessed against the Skyline Property.

**3.5** <u>**Class 5 – Tasha Teherani-Ami's Secured Claim against NW Cornell**</u>.  Class 5 consists of the Allowed Secured Claim of Tasha Teherani-Ami against Dinihanian pursuant to the Divorce Judgment and Teherani-Ami Cornell Trust Deed.

**3.6** <u>**Class 6 – Bateman Seidel Claim against Dinihanian**</u>.  Class 6 consists of the Allowed Claim of Bateman Seidel, PC against Dinihanian associated ~~by~~<u>with</u> the Bateman Seidel Trust Deed.

**3.7** <u>**Class 7 – Lorenz Claim against Dinihanian**</u>.  Class 7 consists of the Allowed Claim of Daniel Lorenz against Dinihanian associated by the Lorenz Trust Deed.

**3.8** <u>**Class 8 – Columbia Bank's Secured Claim against Dinihanian (Equipment)**</u>. Class 8 consists of the Allowed Secured Claim of Columbia State Bank against Dinihanian pursuant to the Columbia Equipment Note and the Equipment Security Agreement.

**3.9** <u>**Class 9 – Columbia Bank's Secured Claim against Dinihanian (Real Estate)**</u>. Class 9 consists of the Allowed Secured Claim of Columbia State Bank against Dinihanian pursuant to Columbia Real Estate Note, the 83rd Street Deed of Trust and the 83rd Street Security Agreement.

Page 10 of 23     DEBTORS' ~~FIRST~~<u>SECOND</u> AMENDED JOINT PLAN OF REORGANIZATION<u> DATED JULY 22, 2021</u>

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11     Doc 401     Filed 07/22/21

**3.10**  **Class 10 – Guaranty Claims against Dinihanian**.  Class 10 consists of the Allowed unsecured Guaranty Claims Dinihanian pursuant to the Columbia Guaranty Documents and other Guaranty Documents.

**3.11**  **Class 11 – General Unsecured Claims against Dinihanian**.  Class 11 consists of all Allowed Unsecured Claims against Dinihanian, other than Administrative Expense Claims, and Priority Tax Claims.

**3.12**  **Class 12 – Interests of NW Cornell**.  Class 12 consists of the Interests of the holders of NW Cornell's membership interests.

**3.13**  **Class 13 – Dinihanian's Interests in the Dinihanian Bankruptcy Case Estate**.  Class 13 consists of Dinihanian's interest in property of the estate of the Dinihanian Bankruptcy Case.

**ARTICLE 4**

**TREATMENT OF UNIMPAIRED CLASSES**

**4.1**  **Class 1 (Tasha Teherani-Ami's Secured Claim Against Dinihanian)**.  Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian.  The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, reasonable costs and attorney fees.  Class 1 is unimpaired under the Plan.

**4.2**  **Class 5 (Tasha Teherani-Ami's Secured Claim Against NW Cornell)**.  The Class 5 Claim consists of Tasha Teherani-Ami's allowed secured claim against NW Cornell pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed.  The Class 5 Claim represents the same debt as the Class 1 Claim.  The Class 5 Claim shall be paid at the same time and in the same manner as the Class 1 Claim, described above.  The Class 5 Claim is unimpaired under the Plan.

**4.3**  All other Classes of Claims against NW Cornell and Dinihanian are impaired under the Plan.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## ARTICLE 5

## TREATMENT OF IMPAIRED CLASSES

**5.1**     **Class 2 (General Unsecured Claims Allowed Against NW Cornell).**

Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise classified in the Plan. Each holder of a Class 2 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Effective Date) from and after the Effective Date, until paid in full, from the proceeds of the Plan Loan, not later than six months after the Effective Date. Class 2 Claims are impaired under the Plan.

**5.2**     **Class 3 (Trust Claim Against NW Cornell)**.

Class 3 consists of the disputed Trust Claim of the Sonja Dinihanian GST Trust DTS 1/1/11. The Class 3 Claim will (a) retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor or (b) receive such alternative relief as ordered by the Court, including in Adv. Pro. No. 20-03077, Adv. Pro. No. 20-03079 and the claim objection found at Docket No. 258, in full satisfaction of the Trust Claim. The Class 3 Claim is impaired under the Plan.

**5.3**     **Class 4 (Multnomah County Property Taxes)**.

Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property. The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date. The Class 4 Claim shall be paid as in the same manner as Class 2 claims.

**5.4**     **Class 6 (Bateman Seidel Claim Against Dinihanian)**. Class 6 consists of the claim of Bateman Seidel, PC, against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed. The Class 6 Claim shall be paid in at the same time and in the same manner as Class 2 Claims, described above.

**5.5**     **Class 7 (Lorenz Claim Against Dinihanian)**. Class 7 consists of the claim of Daniel Lorenz, against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed. The Class 7 Claim shall be paid in at the same time and in the same manner as Class 2 Claims, described above.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**5.6** **Class 8 (Columbia Bank – Equipment Loan)**. Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. Columbia's Class 8 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date. The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 7 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.7** **Class 9 (Columbia Bank – Real Estate Loan)**. Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note. The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.8** **Class 10 (Guaranty Claims against Dinihanian)**. Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents. Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date. The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated below:

- The following language shall be added to the end of Section X of the Columbia Guaranty Documents:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.9** **Class 11 (General Unsecured Claims against Dinihanian)**. Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan. Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full. The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

**5.10** **Class 12 (Interests in NW Cornell)**. Class 12 Interests in NW Cornell will retain their interest in Reorganized NW Cornell in which case the Trust's Class 12 Interests shall be redeemed.

**5.11** **Class 13 (Dinihanian's Interests)**. The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# ARTICLE 6

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

**6.1** <u>Disputed Claims; Objections to Claims</u>. Only Claims that are allowed shall be entitled to distributions under the Plan. Debtors reserve the right to contest and object to any claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtors currently believe is validly due and owing. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than Administrative Expense Claims) shall be Filed and served upon counsel for Debtors and the holder of the Claim objected to on or before the later of (a) thirty (30) days after the Effective Date or (b) sixty (60) days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection Claim. The last day for filing objections to Administrative Expense Claims shall be set pursuant to an order of the Bankruptcy Court. All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtors may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

# ARTICLE 7

## IMPLEMENTATION OF THE PLAN

**7.1** <u>Path of Implementation</u>. The Debtors will obtain the funds to pay Claims as provided in this Plan by borrowing sufficient funds through a Plan Loan to pay all Claims in full at the times and on the terms set forth herein. The Plan Loan is conditioned on the Plan providing that the Bankruptcy Court will retain jurisdiction to permit the Reorganized Debtor, until the Cornell Property Revesting Date, to pursue the authority under Section 363(h) of the Bankruptcy Code to sell the entirety of the Cornell Property, including the nondebtor portions, to permit the full implementation of the Plan and satisfaction of the terms of the Plan Loan.

**7.2** <u>Setoffs</u>. Debtors may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any nature

DEBTORS' ~~FIRST~~ SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

whatsoever which Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claim Debtors may have against such holder.

**7.3** <u>Corporate Action</u>. Upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the following: (a) the adoption and filing with the Secretary of State of the State of Oregon the Restated Articles of Organization, and (b) the execution, delivery and performance of all documents and agreements relating to the Plan and any of the foregoing. On the Effective Date, Reorganized Debtors, and the appropriate officers of Reorganized NW Cornell, are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Disclosure Statement in the name of and on behalf of the respective Reorganized Debtors. Both Reorganized Debtors may continue to act and make further amendments and elections as they may deem necessary or desirable.

**7.4** <u>Saturday, Sunday, or Legal Holiday</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**7.5** <u>Event of Default; Remedy</u>. Any material failure by Reorganized Debtors to perform any term of this Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default. Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, this Plan or any agreement between the holder of such Claim and Debtors or Reorganized Debtors. An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## ARTICLE 8

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** <u>Assumption</u>.  Except as may otherwise be provided, all executory contracts and unexpired leases of Debtors, which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by and assigned to Reorganized Debtors on the Effective Date.  The Confirmation Order shall constitute an order authorizing assumption and assignment of all executory contracts and unexpired leases except those otherwise specifically rejected or otherwise provided for or subject to other Court Order or pending motion.  Reorganized Debtors shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any defaults and assume the executory contracts.

**8.2** <u>Rejection Claims</u>.  Rejection Claims must be Filed no later than 30 days after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the Effective Date, whichever is sooner. Any such Rejection Claim not Filed within such time shall be forever barred from assertion against Debtor, Reorganized Debtor, and its property and estates.  Each Rejection Claim resulting from such rejection shall constitute a Class 2 Claim.

## ARTICLE 9

## EFFECT OF CONFIRMATION

**9.1** <u>Injunction</u>.  The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order, (b) the enforcement against either of the Reorganized Debtors or their assets of a judgment obtained before the Reorganized Debtors' respective petition dates, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon all or any part of the assets.

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**9.2**    <u>Discharge</u>.  Except as otherwise expressly provided herein, the confirmation of the Plan shall, as of the Effective Date, discharge all Claims, to the fullest extent authorized or provided for by the Bankruptcy Code, including, without limitation, to the extent authorized or provided for by Sections 524 and 1141 thereof.

**ARTICLE 10**

**RETENTION OF JURISDICTION**

**10.1**    <u>Jurisdiction of the Bankruptcy Court</u>.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and

(a)    to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

(b)    to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c)    to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d)    to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e)    to resolve controversies and disputes regarding the interpretation of this Plan,

(f)    to implement the provisions of this Plan, the Plan Loan and enter orders in aid of confirmation, including an action by the Reorganized Debtor Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

(g)    to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h)    to enter a final decree closing this Chapter 11 proceeding.

Page 18 of 23    DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

**10.2**   <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

# ARTICLE 11

## ADMINISTRATIVE PROVISIONS

**11.1**   <u>Modification or Withdrawal of the Plan</u>.  Debtors may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time that the Bankruptcy Court has signed the Confirmation Order.  After such time, and prior to the substantial consummation of the Plan, Debtors may, so long as the treatment of holders of Claims and Interests under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

**11.2**   <u>Revocation or Withdrawal of Plan</u>.  Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

**11.3**   <u>Effect of Withdrawal or Revocation</u>.  If Debtors revoke or withdraw the Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtors or any other Entity or to prejudice in any manner the rights of Debtors or any Entity in any further proceeding involving Debtors.

**11.4**   <u>Nonconsensual Confirmation</u>.  Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are met.

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1** <u>Revesting</u>. Except for NW Cornell's 50 percent tenant-in-common interest in the 37-acre Cornell Property, which interest shall remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, on the Effective Date, all property and assets of the estate of each of the Debtors shall revest in each of the respective Reorganized Debtors, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors arising on or before the Effective Date, and Reorganized Debtors may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

**12.2** <u>Rights of Action</u>. Except as otherwise expressly provided herein, any rights or causes of action (including, without limitation, any and all avoidance actions) accruing to Debtors shall remain assets of Reorganized Debtors. Reorganized Debtors may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for their benefit.

**12.3** <u>Governing Law</u>. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

**12.4** <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtors and Reorganized Debtors shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements. Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Reorganized Debtors may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable Reorganized Debtors to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**12.5** <u>Time</u>.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

**12.6** <u>Addresses and Notices</u>.  If an Event of Default occurs, written notice of such Default shall be provided at the addresses for notices set forth below:

<u>To NW Cornell</u>:

15005 NW Cornell
c/o Vahan M. Dinihanian, Jr.
237 NW Skyline Blvd.
Portland, OR 97210

<u>With a copy to</u>:

Douglas Pahl
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209

<u>To Dinihanian</u>:

Vahan M. Dinihanian, Jr.
237 NW Skyline Blvd.
Portland, OR 97210

<u>With a copy to</u>:

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204

**12.7** <u>Section 1146(c) Exemption</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real property of Debtors or Reorganized Debtors

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

pursuant to, in implementation of or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

**12.8** <u>Severability</u>. In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan. To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Debtors, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

**12.9** <u>Binding Effect</u>. The provisions of the Plan shall bind Debtors, Reorganized Debtors and all holders of Claims and Interests, and their respective successors, heirs and assigns.

**12.10** <u>Recordable Order</u>. The Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

**12.11** <u>Plan Controls</u>. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

**12.12** <u>Effectuating Documents and Further Transactions</u>. Debtors and Reorganized Debtors shall execute, deliver, file or record such contracts, instruments, assignments, and other agreements or documents, and take or direct such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

DATED this ~~31st~~22 day of July ~~2020~~2021.

DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Respectfully submitted,

PERKINS COIE LLP

By /s/ Douglas R. Pahl
    Douglas R. Pahl, OR Bar No. 950476
      Of Attorneys for Debtor 15005 NW Cornell LLC


MOTSCHENBACHER & BLATTNER LLP

By /s/ Nicholas J. Henderson
    Nicholas J. Henderson, OSB No. 074027
      Of Attorneys for Debtor Vahan M. Dinihanian, Jr

Page 23 of 23     DEBTORS' ~~FIRST~~SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11   Doc 401   Filed 07/22/21

# Exhibit 2
# Term Sheet



Term Sheet Date:                    October ~~14~~23, 2020

15005 NW Cornell, LLC
c/o Vahan M. Dinihanian, Jr.
237 NW Skyline Boulevard
Portland, Oregon 97210

**<u>Secured Exit Financing</u>**
**<u>Summary of Terms and Conditions</u>**


**Lender:**                 SORFI, LLC, its successors and/or assigns.

**Borrower:**               15005 NW Cornell, LLC, an Oregon limited liability company, a
                            Debtor-in-Possession under Chapter 11 of the Bankruptcy Code as
                            Case Number 19-31833-dwh11.

**Loan Amount:**            $5,600,000

**Collateral:**             All of the Borrower's rights, title and interest in the real property and
                            improvements located at 15005 NW Cornell Road, Beaverton,
                            Washington County, Oregon ("<u>Cornell Property</u>") <u>and</u> all of the
                            Limited Guarantor's rights, title and interest in the real property
                            located at 237 NW Skyline Road, Portland, Multnomah County,
                            Oregon ("<u>Skyline Property</u>")(collectively, the "<u>Collateral</u>"). <u>For the
                            avoidance of doubt, following any partition order entered in relation
                            to the Cornell Property, the Lender will accept the final,
                            non-appealable order of the court with respect to partitioning such
                            that the Collateral interest in the Cornell Property shall be limited to
                            that portion of the Cornell Property in which 15005 NW Cornell,
                            LLC retains a continuing post-partition interest.</u>

**Loan Term/Maturity:**     Seven hundred and thirty days (730) days commencing on the date
                            of funding of the Loan, at which date the Loan shall mature and
                            become payable in full.

**Extensions:**             Borrower shall have the right to extend the Loan Term for two (2)
                            additional six (6) month periods ("<u>Extended Loan Term</u>"), subject to
                            the following:

                            a)  Borrower shall not have been in default, including
                                applicable cure periods, at any time during the Loan Term
                                and any Extended Loan Term;
                            b)  There have been no material negative changes in the
                                Collateral, the Borrower, and the Limited Guarantor;
                            c)  Borrower shall notify Lender in writing not less than thirty
                                (30) days prior to expiration of the then current Loan Term
                                of its intent to extend the Loan (the "<u>Extension Notice</u>");

---

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

|  |  |
|---|---|
| | d) Borrower shall pay an "<u>Extension Fee</u>" equal to 1.00% of the Loan's outstanding principal balance concurrent with the Extension Notice; and |
| | e) Borrower shall replenish any necessary reserves required by Lender in Lenders sole discretion for the Extended Loan Term concurrent with the Extension Notice. |
| **Amortization:** | Interest Only. |
| **Payments:** | Interest will be payable monthly, in arrears, on the 1st day of each month until the Maturity Date, shall be prorated for any partial months and interest shall be drawn from the Development and Expense Reserve. |
| | The Loan Documents shall provide for (a) a late charge of 5.00% of any payment not received by the due date, (b) default interest of 24.00% upon and during an Event of Default, (c) the right of Lender to accelerate the Loan without notice or grace periods in the event of a payment default and (d) for additional remedies typical of a transaction of this nature. |
| **Interest Rate:** | 12.00% |
| **Origination Fee:** | Borrower shall pay Lender an Origination Fee equal to 2.00% of the Loan Amount. which shall be due and payable at Closing ("<u>Origination Fee</u>"). |
| **Underwriting Fee:** | Borrower shall pay Lender an Underwriting Fee equal to $15,000, which shall be due and payable at Closing ("<u>Underwriting Fee</u>"). |
| **Prepayment:** | During the Loan Term, Borrower will be allowed to prepay the Loan Amount, in full, at any time, provided Lender is repaid all outstanding principal, accrued interest through the date of such repayment, and any and all fees and expenses then due and owing. |
| **Assumption:** | The Loan may not be assumed. |
| **Transfer Provisions:** | The Borrower may not transfer, pledge, assign, hypothecate or encumber, in part or whole, any direct or indirect equity interests in the Borrower. |
| **Limited Guarantor:** | Vahan M. Dinihanian, Jr., ("<u>Dinihanian</u>") an individual and Debtor under Chapter 11 of the Bankruptcy Code as Case Number 19-31886-dwh11. The Loan will be non-recourse as to Dinihanian, subject to certain so called "Carve-outs" and his liability is limited to the extent of his interest in the Skyline Property. The loan documents will provide that Dinihanian and the Borrower will be personally liable for losses incurred by Lender as a result of fraud or intentional misrepresentation by Borrower or any guarantor in connection with the Loan; the gross negligence or willful |

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

misconduct of Borrower; the breach of any representation, warranty, covenant or indemnification concerning hazardous substances; the removal or disposal of any portion of the Property after the occurrence of a default; the misapplication or conversion by Borrower of any insurance proceeds or any awards in connection with the condemnation of the Properties; and failure by Borrower to pay charges for labor or materials or other charges that can create Liens on any portion of the Properties.

The Loan shall be fully recourse to Dinihanian and Borrower in the event that the first full monthly payment of principal and interest is not paid when due; Borrower fails to permit on-site inspections of the Property, fails to provide financial information or fails to maintain its status as a single purpose entity; Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property; Borrower fails to obtain Lender's prior consent to any assignment, transfer, or conveyance of the Property; Borrower files a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law or Borrower files an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against it under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law.

| | |
|---|---|
| **Security for Loan:** | The Loan shall be secured by a first deed of trust or first mortgage and a perfected first security interest in the Collateral, all leases, rents, income and profits therefrom, and all personal property, both tangible and intangible (including replacements, substitutions and after-acquired property) located thereon or used or intended to be used in connection therewith. |
| **Subordinate Financing:** | No secondary financing or encumbrance, either secured or unsecured, of any kind shall be permitted during the Loan Term other than trade payables incurred in the Borrower's normal course of business. |
| **Closing Date:** | Five business days after the Effective Date of Borrower's Joint Plan of Reorganization. |
| **Development and Expense Reserve:** | Lender shall reserve $1,538,000 of the Loan Amount for funding the payment of development costs, including but not limited to insurance premiums, real estate taxes and interest due under the Loan, according to a cost breakdown and schedule approved by Lender at Closing. The Development and Expense Reserve may be broken in to one or more reserves for payment of interest, property taxes, insurance premiums and development and construction costs, and each such reserve shall be used solely for the designated purpose. The Development and Expense Reserve <u>shall not</u> be deemed an advance at Closing and shall be disbursed monthly upon request according to the draw provisions of the Loan Documents. |

Conditions for disbursement of funds for costs incurred in connection with development and/or construction will include: The Lender receives a draw request no more often than once per month in a form and substance satisfactory to Lender; the Lender receives lien waivers acceptable to the Lender from all persons who supplied labor and/or materials to the Properties; the Lender receives date-down endorsements to its policy of title insurance showing no liens have been recorded against the Properties and no transfers or other instruments have been recorded in violation of the Loan Documents; no stop notice or lien claim or encumbrance has been filed with respect to the Properties; no event of default has occurred and is continuing; all representations and warranties of Borrower set forth in the Loan Documents are true and correct as of the date of Borrower's request; Borrower provides evidence that all hard and soft construction costs will be paid in full from the then current disbursement; and Lender determines that the Loan is "in balance" as will be more particularly defined in the Loan Documents.

**Material Adverse Change:**  Lender shall have no obligation to close and fund the Loan if, at any time prior to funding, Lender determines, in its sole judgment, that there shall exist any material adverse circumstances or conditions regarding, or shall have occurred any material adverse change with respect to, the Collateral or its tenants, or the operations, business, assets, liabilities or condition (financial or otherwise) of Borrower, Limited Guarantor or any of their affiliates.

**Interest Calculation:**  Interest will be calculated on the basis of a 360-day year but charged for the actual days elapsed.

**Closing Costs/Legal Fees:**  From the loan proceeds, Borrower shall pay at Closing, the out-of-pocket expenses incurred by Lender in connection with the proposed Loan. Expenses shall include, but not be limited to, the fees and expenses that Lender may incur for outside legal counsel, fees of all third parties relating to the due diligence review to be undertaken by Lender and its third party consultants, title insurance, insurance review costs, the costs of reviewing operating statements, the cost of an appraisal, environmental reports, engineering and structural reports, zoning reports, survey updating and certificate, construction review costs and travel costs of Lender's personnel and recordation costs.

**Brokers:**  Borrower represents and warrants to Lender that neither it, nor any affiliate has engaged any broker, agent or finder to procure the proposed Loan contemplated by this Term Sheet or to otherwise finance the Collateral. Borrower hereby agrees to indemnify and hold harmless Lender and its affiliates against any and all loss, cost, damage, liability or expense incurred by Lender or its affiliates arising out of, or in connection with, a breach of the representations and warranties set forth in this paragraph.

**Loan Documents:**    ~~All~~Not later than four weeks prior to the hearing on confirmation of the Borrower's Joint Plan of Reorganization., all loan documents, including without limitation, the promissory note, loan agreement, mortgage, deed of trust or security deed, fixture filing, assignment of leases and rents, pledge and security agreement, UCC financing statements, environmental and building laws indemnity and any other documents required by Lender (collectively, "Loan Documents"), shall be prepared by counsel for Lender and shall be in all respects in form and substance satisfactory to Lender in its sole discretion. The Loan Documents shall be filed with the Bankruptcy Court and served on parties requesting special notice. The Loan Documents will contain representations, warranties and covenants of Borrower appropriate or customary for similar transactions. The parties to this Term Sheet have included the primary terms of the anticipated loan facility and anticipate such terms will be included in the Loan Documents. No further agreements or documents pertaining to the secured credit facility described in this Term Sheet have been reached or exist.

**Events of Default:**    The Loan Documents will provide that certain acts, omissions or events constitute "Events of Default" including, but not limited to: the failure to pay the Loan in full by the Maturity Date; failure to make any required monthly payment of principal or interest or any other payment required under the Loan Documents when due; failure to perform any other covenant, agreement or obligation to be performed by Borrower under the Loan Documents if such failure is not cured within thirty (30) days after written notice thereof; the occurrence of any default by Borrower with respect to hazardous substances; the occurrence of any transfer of the Properties or interests in the Borrower without Lender's consent; any representation or warranty made by Borrower or Guarantor proves to be false or misleading in any material respect; The filing of a complaint for receivership or the filing of a voluntary or involuntary petition for bankruptcy or for reorganization with respect to Borrower or any Guarantor (other than the pending Bankruptcy Cases); a final judgment, order, or decree for the payment of money is rendered against Borrower or any Guarantor, and Borrower or such Guarantor does not satisfy and pay the same or cause it to be discharged within thirty (30) days from the entry thereof; Borrower fails to maintain any of the insurance coverage required under the Loan Documents; the occurrence of an uninsured casualty with respect to any material portion of the Properties; or the Properties or any part thereof is condemned or taken in any eminent domain or other like proceeding. Lender will have all rights and remedies under applicable law and agree, in the event of a foreclosure of the Cornell Property, to provide notice required by law, as well as to parties to the TIC agreement.

**Assignability:**    This Term Sheet may not be assigned, in whole or in part, by

Borrower, by operation of law or otherwise, and is intended for the benefit of the parties hereto and not for the benefit of any third parties.

**Governing Law:**          This Term Sheet and the Loan Documents shall be governed by, and construed in accordance with, the laws of the State of Oregon, without regard to principles of conflicts of laws.

**Conditions Precedent to Closing:**       Borrower shall grant to Sortis Real Estate, LLC, a right of first refusal to serve as the listing broker to market and sell the Cornell Property. The details of this right of first refusal have not been established. No further agreements or documents pertaining to the right of first refusal described in this Term Sheet have been reached or exist.

Borrower shall agree to (i) use its best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Lender, make a determination that completion of the partition litigation is not practicable within a reasonable time and Borrower should pursue, through a reservation of jurisdiction by the Bankruptcy Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. The criteria used by Borrowers and Lender will include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Borrower's efforts to finalize the partition of the Cornell Property. Beyond the preceding, the details of how such consultation shall occur have not been established. No further agreements or documents pertaining to the consultation described in this Term Sheet have been reached or exist.

# Exhibit 3
# Projected Use of Funds

Exhibit 3 -- Projected Use of Funds

| | |
|---|---|
| Teherani-Ami Claim | $~~3,000,000~~2,900,000 |
| Creditors, unsecured | $300,000 |
| Creditors, admin | $~~600,000~~800,000 |
| Loan Transaction Costs | $35,000 |
| Origination Fee | $112,000 |
| Underwriting Fee | $15,000 |
| Reserves / Future Development Costs / lender legal | $~~1,500,000~~1,438,000 |
| | |
| Total Use of Funds | $5,600,000 |

** Projections, subject to modification.

# Exhibit 4
# Liquidation Analysis

In re: 15005 NW Cornell, LLC
Case No. 19-31883-dwh11; and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11
(Jointly Administered)

Exhibit 1
Liquidation Analysis

| Exhibit 1: Dinihanian Liquidation Analysis | | | | | |
|---|---|---|---|---|---|
| Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # →→→→ | | | 101 [1] | | |
| 1. Total Value Real Property (Skyline and Welches Cabin): | $ 1,260,000.00 | A/B.28. Tax Refunds | $ - | | |
| Less: Anticipated Cost of Sale | $ (75,600.00) | A/B.29. Family Support | $ - | | |
| Less: Property Taxes | $ (28,093.70) | A/B.30. Amounts Owed to You | $ - | | |
| Less: Bateman Seidel Lien (Skyline only) | $ (182,238.71) | A/B.31. Insurance Policies (Cash Value) | $ - | | |
| Less: Teherani-Ami Lien (Skyline only) | $ (2,600,000.00) | A/B.32. Inheritance Interests | $ - | | |
| 2. Net Value, Sch. A property (not less than zero): | $ 244,400.00 | A/B.33. Claims Against Third-Parties | $ - | | |
| | | A/B.34. Other Claims | $ - | | |
| 3. Schedule B Property (Listed Below): | | A/B.35. Other Financial Assets (specify): | $ - | Notes on valuation: | |
| A/B.3. Vehicles | $ 76,500.00 | A/B.53. Other Property of Any Kind (specify): | | (1) Real estate valuation assumes 6% costs of sale. | |
| A/B.4. Watercraft | $ - | Claims related to DFPI [6] | $ 250,000.00 | | |
| A/B.6. Household goods and furnishings [2] | $ 10,150.00 | Claims against Kaine Group | $ 8,000.00 | (2) All valuations estimates are from Debtor's personal opinion of value, unless specifically stated otherwise. | |
| A/B.7. Electronics | $ 500.00 | Tax attributes (non-transferrable) | | | |
| A/B.8. Collectibles [3] | $ 2,500.00 | 4. Adjusted total, Sch. B property | $ 7,943,159.90 | | |
| A/B.9. Equipment for Sports/Hobbies | $ 500.00 | 5. Other (*e.g.*, avoidance actions-itemize) | $ - | | |
| A/B.10. Firearms | $ 500.00 | 6. Total Assets (ln.2+4+5) | $ 8,187,559.90 | | |
| A/B.11. Clothes | $ 500.00 | 7. Claims Senior to General Unsecured Claims | | Hypothetical chapter 7 trustee fees | |
| A/B.12. Jewelry | $ - | 7a. Secured claims not already accounted for: | $ - | $ 8,187,559.90 | Total disbursements |
| A/B.13. Non-farm Animals | $ 50.00 | 7b. Chapter 7: trustee fees (from sidebar) | $ 268,876.80 | | Minus exemptions |
| A/B.14. Other Personal and Household Items | $ - | 7c. Chapter 7: other costs of administration | $ - | | Minus adjustments* |
| A/B.16. Cash | $ 100.00 | 7d. Chapter 11: unpaid professionals' fees | $ 225,000.00 | $ 8,187,559.90 | = Net disbursements |
| A/B.17. Checking Account | $ 6,866.94 | 7e. Chapter 11: other administrative costs | $ - | | § 326 calculations |
| A/B.18. Stocks (Publicly Traded), Bonds, Etc. | $ 37,608.89 | 7f. Priority claims (bankruptcy Schedule E) | $ - | $ 5,000.00 | X 25%= | $ 1,250.00 |
| A/B.19. Closely Held Business Interests [4] | $ 7,549,384.07 | 7g. Debtor's exemptions (bankr. Sch.C) | | $ 45,000.00 | X 10%= | $ 4,500.00 |
| A/B.20. Gov. and Corp. Bonds | $ - | 7h. Other/adjustments (See Notes on valuation) | | $ 950,000.00 | X 5%= | $ 47,500.00 |
| A/B.21. Retirement Accounts | $ - | 8. Total Senior Claims (ln. 7a to 7h) | $ 493,876.80 | $ 7,187,559.90 | X 3%= | $ 215,626.80 |
| A/B.22. Security Deposits | $ - | 9. Net available for unsecured (ln.6-ln.8) | $ 7,693,683.10 | $ 8,187,559.90 | Totals | $ 268,876.80 |
| A/B.23. Annuities | $ - | 10a.Gen. unsecured claims | $ 351,881.25 | | | |
| A/B.24. Tuition Programs, Education IRAs | $ - | 10b.Other claims (if any) | | | Trustee Fee | $ 268,876.80 |
| A/B.25. Trusts | $ - | 11.Total gen. unsecured (ln.10a+10b) | $ 351,881.25 | *Adjustments would include, *e.g.*, estimated refunds, and non-estate funds/ assets returned to third parties. | | |
| A/B.26. Patents, copyrights, other IP [5] | $ - | 12. Ch. 7 Estimated Dividend (ln.9/ln.11) | 100% | | | |
| A/B.27. Licenses, Franchises, Other Intang. | $ - | 13. Plan Dividend | 100% | | | |

**NOTES:**

[1] Amended Schedules filed as Docket No. 101 in the case of In re Vahan M. Dinihanian Jr., Case No. 19-31886-dwh11

[2] Debtor is unsure about value of household goods and furnishings, and listed "Unknown" for value of such property in his Amended Schedules. For purposes of this liquidation analysis, Debtor has estimated a value of $10,000 for such property, although he believes that number is higher than the amount he could obtain if he were required to liquidate such property. Debtor included this estimated number to avoid continued accusations of undervaluation from certain parties in interest.

[3] Debtor is unsure of the value of his beer stein collection, and therefore listed "unknown" for the value of such property in his Amended Schedules. For purposes of this liqudation analysis, Debtor estiamted a value of $2,000, although that number is undoubtedly higher than the amount he could obtain if he were required to liquidate the property. Debtor included his estimate to avoid continued accusations of undervaluation from certain parties in interest.

[4] See Attached Exhibit 1-a.

[5] Debtor has no basis to value his intellectual property. Debtor has never tried to sell his intellectual property, and no standard market exists from which the Debtor can determine an estimated market value.

[6] "Claims related to DFPI" include contract and tort claims against other officers and shareholders of Dinihanian Floral Products, Inc., and banking institutions holding the corporation's funds in depository accounts. The amount owed to Debtor has not been determined, and is listed as "Unknown" in the schedules. For purposes of this liquidation analysis, Debtor has listed a value of $250,000

Exhibit 1 - Liquidation Analysis
Page 1 of 5

In re: 15005 NW Cornell, LLC
Case No. 19-31883-dwh11; and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11
(Jointly Administered)

Exhibit 1
Liquidation Analysis

## Exhibit 1-b: Liquidation Analysis - 15005 NW Cornell LLC

Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # →→→→ | 35 [1]

| | | | | |
|---|---|---|---|---|
| 1. Total Value Real Property (Skyline and Welches Cabin): | $ 13,500,000.00 | A/B.28. Tax Refunds | $ - | |
| Less: Anticipated Cost of Sale | (810,000.00) | A/B.29. Family Support | $ - | |
| Less: Propety Taxes | (28,093.70) | A/B.30. Amounts Owed to You | $ - | |
| Less: Teherani-Ami Lien | (2,600,000.00) | A/B.31. Insurance Policies (Cash Value) | $ - | |
| | | A/B.32. Inheritance Interests | | |
| 2. Net Value, Sch. A property (not less than zero): | $ 10,061,906.30 | A/B.33. Claims Against Third-Parties | $ - | |
| | | A/B.34. Other Claims | | |
| 3. Schedule B Property (Listed Below): | | A/B.35. Other Financial Assets (specify): | $ - | **Notes on valuation:** |
| A/B.3. Vehicles | $ - | A/B.53. Other Property of Any Kind (specify): | | (1) Real estate valuation assumes 6% costs of sale. |
| A/B.4. Watercraft | $ - | Equipment, Inventory and Supplies | $ 35,500.00 | (2) All valuations estimates are from Debtor's personal opinion of value, unless specifically stated otherwise. |
| A/B.6. Household goods and furnishings | $ - | | | |
| A/B.7. Electronics | $ - | **4. Adjusted total, Sch. B property** | 35,500.00 | |
| A/B.8. Collectibles | $ - | **5. Other (*e.g.,* avoidance actions-itemize)** | $ - | |
| A/B.9. Equipment for Sports/Hobbies | $ - | **6. Total Assets (In.2+4+5)** | $ 10,097,406.30 | |
| A/B.10. Firearms | $ - | **7. Claims Senior to General Unsecured Claims** | | **Hypothetical chapter 7 trustee fees** |
| A/B.11. Clothes | $ - | 7a. Secured claims not already accounted for: | $ - | $ 10,097,406.30 Total disbursements |
| A/B.12. Jewelry | $ - | 7b. Chapter 7: trustee fees (from sidebar) | $ 326,172.19 | $ - Minus exemptions |
| A/B.13. Non-farm Animals | $ - | 7c. Chapter 7: other costs of administration | $ - | $ - Minus adjustments* |
| A/B.14. Other Personal and Household Items | $ - | 7d. Chapter 11: unpaid professionals' fees | $ 400,000.00 | $ 10,097,406.30 = Net disbursements |
| A/B.16. Cash | $ - | 7e. Chapter 11: other administrative costs | $ - | § 326 calculations |
| A/B.17. Checking Account | $ - | 7f. Priority claims (bankruptcy Schedule E) | $ - | $ 5,000.00 X 25%= $ 1,250.00 |
| A/B.18. Stocks (Publicly Traded), Bonds, Etc. | $ - | 7g. Debtor's exemptions (bankr. Sch.C) | | $ 45,000.00 X 10%= $ 4,500.00 |
| A/B.19. Closely Held Business Interests | $ - | 7h. Other/adjustments (See Notes on valuation) | $ - | $ 950,000.00 X 5%= $ 47,500.00 |
| A/B.20. Gov. and Corp. Bonds | $ - | **8. Total Senior Claims (In. 7a to 7h)** | $ 726,172.19 | $ 9,097,406.30 X 3%= $ 272,922.19 |
| A/B.21. Retirement Accounts | $ - | **9. Net available for unsecured (In.6-In.8)** | $ 9,371,234.11 | $ 10,097,406.30 Totals $ 326,172.19 |
| A/B.22. Security Deposits | $ - | 10a.Gen. unsecured claims [2] | $ 307,268.78 | Adjustment (if any) $ - |
| A/B.23. Annuities | $ - | 10b.Other claims (if any) | | |
| A/B.24. Tuition Programs, Education IRAs | $ - | **11.Total gen. unsecured (In.10a+10b)** | $ 307,268.78 | Trustee Fee $ 326,172.19 |
| A/B.25. Trusts | $ - | **12. Ch. 7 Estimated Dividend (In.9/In.11)** | 100% | *Adjustments would include, *e.g.,* estimated refunds, and non-estate funds/ assets returned |
| A/B.26. Patents, copyrights, other IP | $ - | **13. Plan Dividend** | 100% | to third parties. |
| A/B.27. Licenses, Franchises, Other Intang. | $ - | | | |

**NOTES:**

[1] Amended Schedules filed as Docket No. 101 in the case of In re Vahan M. Dinihanian Jr., Case No. 19-31886-dwh11

[2] Amount listed includes disputed claim filed by Alexander LLC, Christiana LLC, and Cornell Road LLC (POC No. 05).

In re: 15005 NW Cornell LLC      **EXHIBIT 1-a: Closely Held Business Entity Detail**
Case No. 19-31883-dwh11, and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11 (Jointly Administered)

**15005 NW Cornell LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 13,500,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (2,600,000.00) |
| Cost of Sale (Assume 6%) | $ | (810,000.00) |
| Net Proceeds: | $ | 10,090,000.00 |
| Adj. Cost Basis: | $ | 771,572.00 |
| Est. Cap. Gains Tax: | $ | (3,169,378.57) |
| Net Value at Liquidation: | $ | 6,920,621.43 |

*Assumptions/Notes:*
*\* Value listed is 50% of Broker Opinion of Value from Norris & Stevens [ECF No. 250-2; Exhibit 21];*
*\* Value does not account for Trust's interest, if any, in the property.*
*\* "Liabilities" includes asserted lien of Tasha Teherani-Ami*

**2275 W Burnside LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 2,460,000.00 |
| Other Assets: | $ | - |
| Liabilities: ⁵ | $ | (1,831,635.77) |
| Cost of Sale (Assume 6%) | $ | (147,600.00) |
| Net Proceeds: | $ | 480,764.23 |
| Adj. Cost Basis: | $ | 1,468,831.00 |
| Est. Cap. Gains Tax: | $ | (246,028.63) |
| Net Value at Liquidation: | $ | 234,735.60 |

*Real Property Assets consist of:*
*\* 2001 Main Street, Forest Grove, OR*
*   \* Value: $1,460,000 (Adj. Basis: $651,664)*
*   \* Liens: $2,650,000 (see Note 5)*
*\* 14007 NE 3rd Ct., Vancouver, WA*
*   \* Value: $2,000,000 (Adj. Basis: $831,296)*
*   \* Liens: $1,100,000*

**933 Harrison Avenue Centralia LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 2,520,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (2,650,000.00) |
| Cost of Sale (Assume 6%) | $ | (151,200.00) |
| Net Proceeds: | $ | (281,200.00) |
| Adj. Cost Basis: | $ | 711,021.00 |
| Est. Cap. Gains Tax: | $ | (450,435.77) |
| Net Value at Liquidation: | $ | (731,635.77) |

*Real Property Assets consist of:*
*\* 933 Harrison Avenue, Centralia, WA*
*   \* Value: $2,520,000 (Adj. Basis: $711,021)*
*   \* Liens: $2,650,000 (cross-collateralized with 2001*
*    Main Street, Forst Grove, OR - owned*
*    by 2275 W Burnside)*

**Aurora Meridian LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 200,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 15%) | $ | (30,000.00) |
| Net Proceeds: | $ | 170,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | 170,000.00 |

*Assets consist of helicopter. Value unknown, but assumed to be $250,000 for purposes of this analysis. Debtor has previously attempted to sell the helicopter for a higher amount, but was unsuccessful. Helicopter is not airworthy due to deferred maintenance and inspections. Debtor estimates $75,000 in inspection fees must be incurred to be eligible for certification.*

**Eagle Holdings LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 35,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 15%) | $ | (5,250.00) |
| Net Proceeds: | $ | 29,750.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | (8,715.00) |
| Net Value at Liquidation: | $ | 21,035.00 |

*For purposes of this analysis, assets consist of tools and injection molding machine. Other assets belonging to Eagle Holdings, LLC, including other entities, are not included in this section, as they are already separately accounted for.*

**Vahan 8340 NW Cornell LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 400,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (350,000.00) |
| Cost of Sale (Assume 6%) | $ | (24,000.00) |
| Net Proceeds: | $ | 26,000.00 |
| Adj. Cost Basis: | $ | 73,156.00 |
| Est. Cap. Gains Tax: | $ | (81,384.16) |
| Net Value at Liquidation: | $ | (55,384.16) |

*Real Property Assets consist of:*
*\* 8340 NW Cornell Ave., Beaverton, OR*
*   \* Value: $400,000 (Adj. Basis: $73,156)*
*   \* Liens: $350,000*

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

**EXHIBIT 1-a: Closely Held Business Entity Detail**

**Vahan 8344 NW Cornell LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 400,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (350,000.00) |
| Cost of Sale (Assume 6%) | $ | (24,000.00) |
| Net Proceeds: | $ | 26,000.00 |
| Adj. Cost Basis: | $ | 31,341.00 |
| Est. Cap. Gains Tax: | $ | (91,796.09) |
| Net Value at Liquidation: | $ | (65,796.09) |

*Real Property Assets consist of:*
*\* 8344 NW Cornell Ave., Beaverton, OR*
*  \* Value: $400,000 (Adj. Basis: $31,341)*
*  \* Liens: $350,000*

**Vahan IV NW Tenth LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 2,430,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (998,000.00) |
| Cost of Sale (Assume 6%) | $ | (145,800.00) |
| Net Proceeds: | $ | 1,286,200.00 |
| Adj. Cost Basis: | $ | 1,158,948.00 |
| Est. Cap. Gains Tax: | $ | (316,491.95) |
| Net Value at Liquidation: | $ | 969,708.05 |

*Real Property Assets consist of:*
*\* 2031 Hawthorne Street, Portland, OR*
*  \* Value: $1,530,000 (Adj. Basis: $658,826)*
*  \* Liens: $525,000*
*\* 2150 NE 82nd Ave., Portland, OR*
*  \* Value: $900,000 (Adj. Basis: $500,122)*
*  \* Liens: $473,000*

**3Dauthority.net LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 20,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | (3,000.00) |
| Net Proceeds: | $ | 17,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | 17,000.00 |

*Assets consist of a 3D Printer and related equipment*

**Dinihanian Family Limited Partnership (50% interest)**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | - |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | - |
| Net Proceeds: | $ | - |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | - |

*Value unknown.*

**Dinihanian Floral Products, Inc. (50% interest)**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | - |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | - |
| Net Proceeds: | $ | - |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | - |

*Value unknown. Potential tort claims related to this entity are not listed in this section, as they are listed elsewhere in the liquidation analysis.*

**Vahan III SE Stark LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 100,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | (6,000.00) |
| Net Proceeds: | $ | 94,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | (24,900.00) |
| Net Value at Liquidation: | $ | 69,100.00 |

*Assets consist of a 1/6th membership interest in Meger SE Stark LLC, which owns the real property located at 8028 SE Stark St., Portland, OR.*

| | | |
|---|---|---|
| Total Net Value (Including 15005 NW Cornell LLC): | $ | 7,549,384.07 |
| Total Net Value (Excluding 15005 NW Cornell LLC): | $ | 628,762.64 |

In re: 15005 NW Cornell LLC        **EXHIBIT 1-a: Closely Held Business Entity Detail**
Case No. 19-31883-dwh11, and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11 (Jointly Administered)

**Notes / Assumptions:**

| |
|---|
| 1:  All real property values are based upon Debtor's estimates. |
| 2:  All real property values are estimated as of October 1, 2020.  Debtor has included estimated decreases in value related to COVID-19 and eviction moratoriums, which the Debtor believes impacts the marketability of the properties. |
| 3:  Costs of sale were estimated at 6% of gross sale prices for real property, and 15% of gross sale prices for personal property. |
| 4:  Capital gains are all assumed to be long-term, paid at 15% for federal tax purposes, and 9.9% for state tax purposes. |
| 5:  Value of "Liabilities" for 2275 W Burnside LLC were reduced to $1,831,635.77, which consists of $1,100,000 for the lien against the property located at 14007 NE 3rd Ct., Vancouver, WA, and $731,635.77, which is the estimated deficiency balance that would remain on the $2,650,000 lien if the property belonging to the property belonging to 933 Harrison Avenue Centralia LLC was liquidated first.  This calculation was done to ensure that the $2,650,000 lien was not double-counted. |

**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

    *Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

    *Of Attorneys for 15005 NW Cornell LLC*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>   15005 NW Cornell LLC; and<br>   Vahan M. Dinihanian, Jr.,<br><br>                Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>**SECOND AMENDED DEBTORS'<br>JOINT DISCLOSURE STATEMENT<br>DATED JULY 22, 2021** |

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ...................................................................1
   A.   Introduction................................................................................................1
   B.   Summary of the Plan...................................................................................3
        1.   General ...............................................................................................3
        2.   Secured Creditors ...............................................................................3
        3.   General Unsecured Creditors ..............................................................4
        4.   Equity Interests ..................................................................................4
        5.   Leases and Executory Contracts .........................................................4
        6.   Effective Date ....................................................................................4
        7.   Cramdown Election ............................................................................5
   C.   Brief Explanation of Chapter 11 .................................................................5

II.     VOTING PROCEDURES AND CONFIRMATION OF PLAN .........................5
   A.   Ballots and Voting Deadline .......................................................................5
   B.   Parties Entitled to Vote ..............................................................................7
   C.   Votes Required for Class Acceptance of the Plan ........................................8
   D.   "CramDown" of the Plan ............................................................................8
   E.   Confirmation Hearing .................................................................................9

III.    COMPANY BACKGROUND AND GENERAL INFORMATION ...........................9
   A.   Debtors........................................................................................................9
   B.   Dinihanian's Businesses ............................................................................10
   C.   Management OF NW Cornell......................................................................10
   D.   Washington County Litigation ...................................................................10

IV.     EVENTS LEADING TO THE BANKRUPTCY FILING .................................11

V.      SIGNIFICANT POST-PETITION EVENTS .....................................................11
   A.   Employment of Professionals ....................................................................13

VI.     ASSETS AND LIABILITIES ...........................................................................14
   A.   Assets ........................................................................................................14
        1.   NW Cornell's Real Property ..............................................................14
        2.   Dinihanian's Real Property ...............................................................14
        3.   Personal Property ..............................................................................14
   B.   Liabilities ..................................................................................................15
        1.   Tasha Teherani-Ami .........................................................................15
        2.   Bateman Seidel and Daniel Lorenz Trust Deed Claims ....................16
        3.   Columbia Bank ..................................................................................16
        4.   Unsecured Creditors..........................................................................16

VII.    DESCRIPTION OF PLAN ................................................................................19
   A.   Solicitation And Classification And Treatment Of Claims And Equity
        Securities...................................................................................................19
        1.   General ..............................................................................................19
        2.   Unclassified Claims ..........................................................................19

TABLE OF CONTENTS

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

|  |  | **3.** | Classified Claims | 21 |
|  | **B.** | Administrative Expenses | | 25 |
|  | **C.** | Executory Contracts | | 25 |
|  | **D.** | Implementation Of The Plan | | 27 |
|  | **E.** | Effect Of Confirmation | | 29 |
|  |  | **1.** | Binding Effect | 29 |
|  |  | **2.** | Revesting, Operation of Business | 30 |
|  |  | **3.** | Injunction | 30 |
|  |  | **4.** | Event of Default | 31 |
|  |  | **5.** | Modification of the Plan; Revocation or Withdrawal of the Plan | 31 |
|  |  | **6.** | Retention of Jurisdiction | 31 |
|  |  | **7.** | United States Trustee Fees | 32 |
| **VIII.** | LIQUIDATION ANALYSIS | | | 32 |
| **IX.** | POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | | 33 |
|  | **A.** | Tax Consequences to the Debtors. | | 34 |
|  | **B.** | General Tax Consequences on Creditors. | | 34 |
| **X.** | ACCEPTANCE AND CONFIRMATION OF THE PLAN | | | 35 |
|  | **A.** | Confirmation Hearing | | 35 |
|  | **B.** | Requirements of Confirmation | | 35 |
|  | **C.** | Cramdown | | 35 |
|  | **D.** | Feasibility | | 36 |
|  | **E.** | Alternatives to Confirmation of the Plan | | 36 |
| **XI.** | CONCLUSION | | | 37 |

TABLE OF CONTENTS

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## I.    INTRODUCTION AND SUMMARY

### A.    INTRODUCTION

On May 21, 2019, 15005 NW Cornell LLC ("NW Cornell") and Vahan M. Dinihanian, Jr. ("Dinihanian"), filed separate voluntary petitions under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On July 13, 2019, NW Cornell and Dinihanian (collectively, the "Debtors") filed this Second Amended Disclosure Statement (the "Disclosure Statement") with the U.S. Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") and their Second Amended Joint Plan of Reorganization (the "Plan"). The Plan is attached hereto as **Exhibit 1**.

This Disclosure Statement is being provided to you by Debtors to enable you to make an informed judgment about the Plan. This Disclosure Statement has been prepared to disclose information that in Debtors' opinion is material, important, and helpful to evaluate the Plan. Among other things, this Disclosure Statement describes the manner in which Claims and Equity Securities will be treated. This Disclosure Statement summarizes the Plan, explains how the Plan will be implemented, outlines the risks of and alternatives to the Plan, and outlines the procedures involved in confirmation of the Plan. The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself. If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan shall control. You are urged to review the Plan and, if applicable, consult with your own counsel about the Plan and its impact on your legal rights before voting on the Plan.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code. Factual information contained in this Disclosure Statement is the representation of Debtors only and not of their attorneys, consultants, or accountants. The information has been obtained from the books and records of Debtors as well as other sources deemed reliable. Debtors have prepared the information contained herein in good faith, based on information available to Debtors. The

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

information herein has not been subject to a verified audit.  No representation concerning Debtors or the Plan is authorized by Debtors other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the material relied on in preparation of this Disclosure Statement was compiled.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan.  Nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceeding involving Debtors or any other party or be deemed advice on the tax or other legal effects of the Plan on the holders of Claims or Equity Securities.

This Disclosure Statement has been approved by Order of the Bankruptcy Court (the "Order") as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of Claims or Interests of the relevant classes to make an informed judgment concerning the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan at the time and place set forth in the Order.  The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing on any adjournment thereof.

A ballot has been enclosed with this Disclosure Statement for use in voting on the Plan. In order to be tabulated for purposes of determining whether the Plan has been accepted or rejected, ballots must be <u>received</u> at the address indicated on the ballot no later than the ballot

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

deadline set forth in the Order. Debtors believe that confirmation of the Plan is in the best interests of the holders of Claims and urge you to accept the Plan.

This Disclosure Statement contains financial information and estimates that demonstrate the feasibility of the Plan of Reorganization and Debtors' ability to complete the steps envisioned by the Plan and the Plan Loan upon emergence from Bankruptcy. Debtors prepared such information for the limited purpose of furnishing information to Creditors to allow them to make an informed judgment regarding acceptance of the Plan of Reorganization. The estimates of value should not be regarded for the purpose of this Disclosure Statement as representations or warranties by Debtors as to the accuracy of such information or that any such projections or valuations will be realized. Actual values could vary significantly from these projections.

**B.    SUMMARY OF THE PLAN**

A copy of the Plan is attached and discussed in detail later in this Disclosure Statement. The following description of the Plan is intended as a summary only and is qualified in its entirety by reference to the Plan. Debtors urge each holder of a Claim to carefully review the entire Plan, together with this Disclosure Statement, before voting on the Plan.

**1.    General**

Generally, the Plan provides that Debtors will operate in the ordinary course and will obtain financing to pay and satisfy their obligations in full.

**2.    Secured Creditors**

Reorganized Dinihanian's secured Creditor, Columbia State Bank ("Columbia"), will be paid the full amount of its Allowed Secured Claims in accordance with the existing terms of its loans to Dinihanian, except as modified under the Plan with respect to certain loan terms and covenants set forth in the Plan.

Reorganized Dinihanian's secured Creditor, Tasha Teherani-Ami, will be paid on the Effective Date the full amount of her Allowed Secured Claim with interest as stated in the Divorce Judgment and actual costs and reasonable attorney fees.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor prepetition counsel Bateman Seidel and Daniel Lorenz in the face amount of $250,000 as security for legal fees advanced by such counsel.

### 3. General Unsecured Creditors

All General Unsecured Creditors will be paid in full, together with interest at the federal judgment rate in effect on the Effective Date, from and after the Effective Date, not later than six months after the Effective Date.

### 4. Equity Interests

The Plan provides that existing equity interests in NW Cornell, including that of the Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust"), will be left in place. The Plan provides that Dinihanian will retain his interests in assets of his bankruptcy estate. Depending on the outcome of certain adversary proceedings and claim objections described in Section V below, the Trust may forfeit its equity interest in favor of other relief.

### 5. Leases and Executory Contracts

All unexpired leases and executory contracts will be assumed by the respective Debtors through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned or rejected, or a motion seeking their assumption or rejection has been Filed before the Confirmation Date. Debtors are not aware of significant cure amounts associated with any of the executory contracts to be assumed.

### 6. Effective Date

The Effective Date of the Plan shall be the later of (a) the eleventh day following entry of the Confirmation Order and (b) the first business day following the entry of an order by the Bankruptcy Court establishing the reasonable attorney fees and costs for the Class 1 Claim.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

### 7. Cramdown Election

In the event any Class does not accept the Plan, Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

### C. BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization provision of the Bankruptcy Code. Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of Debtor, its creditors, and other parties in interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. A plan of reorganization sets forth the method for compensating the holders of claims and interests in a debtor. If a plan is confirmed by the Bankruptcy Court, it will be binding on a debtors, its creditors, and all other parties in interest. A claim or interest is impaired under a plan of reorganization if the plan provides that the legal, equitable, or contractual rights of the holder of such claim or interest are altered. A holder of an impaired claim or interest is entitled to vote to accept or reject the plan. Chapter 11 does not require all holders of claims and interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it. However, the Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve the plan. These tests are designed to protect the interests of holders of claims or interests who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy Court.

An Unsecured Creditors' Committee was not appointed by the U.S. Trustee's office in this case pursuant to 11 U.S.C. §§ 1102(a) and (b).

## II. VOTING PROCEDURES AND CONFIRMATION OF PLAN

### A. BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement. After carefully reviewing this Disclosure Statement and its exhibits,

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be <u>received</u> by Debtors no later than the time and date set forth in the Order accompanying this Disclosure Statement at the following address:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas J. Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR 97204-2099

or via facsimile transmission to Nicholas J. Henderson at (503) 417-0528.

Holders of each Claim scheduled by Debtors or for which a Proof of Claim has been Filed will receive ballots and are permitted to vote based on the amount of the Proof of Claim, except as discussed below.  If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by Debtors in their Schedules.  The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified, or suspended prior to computation of the vote on the Plan.  A Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection.  Holders of disputed Claims who have settled their dispute with Debtors are entitled to vote the settled amount of their Claim.  The Bankruptcy Code and rules provide that the Bankruptcy Court may, if timely requested to do so by the holder of such Claim, estimate or temporarily allow a disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one Class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class.  If you do not receive a ballot or if a ballot is damaged or lost, please contact:

> Motschenbacher & Blattner LLP
> Attention:  Nicholas Henderson
> 117 SW Taylor Street, Suite 300
> Portland, OR  97204-2099
> (503) 417-0508

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating, and signing the enclosed ballot and returning it, by First Class mail or hand delivery, to Debtors at the address indicated above. In order to be counted, all ballots must be executed and <u>received</u> at the above address no later than the time set forth in the Order. Any ballots received after the deadline set forth in the Order will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

Ballots may also be received by Debtors by facsimile transmission to Motschenbacher & Blattner LLP, Attention: Nicholas J. Henderson, at (503) 417-0501. Ballots sent by facsimile transmission will be counted if faxed to Mr. Henderson and received by the deadline set forth in the Order.

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim or an amount different from a timely Filed Proof of Claim, then the amount shall be as set forth on Debtor's Schedules or any timely Proof of Claim Filed with respect to such Claim or Order of the Bankruptcy Court.

## B. PARTIES ENTITLED TO VOTE

Pursuant to Section 1126 of the Bankruptcy Code, each Class of impaired Claims or Equity Security Holders that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of Claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (a) curing any defaults; (b) reinstating the maturity of such Claim; (c) compensating the holder of such Claim

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

for damages that result from the reasonable reliance on any contractual provision or law that allows acceleration of such Claim; and (d) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim. Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired. Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan. All Classes of Claims are impaired under Debtor's Plan except the Class 1 and Class 5 Claims of secured Creditor Tasha Teherani-Ami.

### C. VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cramdown of the Plan." In a "Cramdown," at least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those Claims actually voting to accept or reject the Plan. The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan. If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

### D. "CRAMDOWN" OF THE PLAN

If the Plan is not accepted by all of the impaired Classes of Claims and Interests of Debtors, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy Code's "Cramdown" provision if the Plan has been accepted by at least one

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Impaired Class of Claims, without counting the acceptances of any Insiders of Debtor, and the Bankruptcy Court determines, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting impaired Class of Claims or Interests. Debtors believe the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims and hereby request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(6) of the Bankruptcy Code or otherwise modify the Plan in the event any Class of Creditors does not accept the Plan.

### E.  CONFIRMATION HEARING

In the accompanying Order, the Bankruptcy Court has scheduled a hearing on confirmation of the Plan before the Honorable David W. Hercher, United States Bankruptcy Judge. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the Creditors of Debtors. Prior to the hearing, Debtors will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan. Any objections to confirmation of the Plan must be made in writing and Filed with the Bankruptcy Court and received by counsel for Debtors no later than the objection deadline set forth in the Order. Unless an objection to confirmation is timely Filed and received, it will not be considered by the Bankruptcy Court.

### III.  COMPANY BACKGROUND AND GENERAL INFORMATION

### A.  DEBTORS

NW Cornell is a manager-managed Oregon limited liability company owned equally by Eagle Holdings LLC and the Trust, which also asserts an equitable interest in the real property owned by NW Cornell, although such ownership is disputed. Dinihanian is the manager of NW Cornell and is authorized to take all actions on its behalf. Dinihanian is an individual residing in

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

the State of Oregon and is the sole member and manager of Eagle Holdings, LLC. NW Cornell's primary asset is its 50 percent tenant-in-common ownership interest in 37 acres of undeveloped real property located at 15005 NW Cornell Road, Beaverton, Oregon.

## B. DINIHANIAN'S BUSINESSES

Prior to the filing of the Bankruptcy Cases, Dinihanian's principal business was operating Eagle Holdings, LLC, which owns other real estate-centered limited liability companies and engages in enterprises regarding motor vehicles, the production of mechanical parts, and property management. Dinihanian intends to continue operating Eagle Holdings and its entities under their existing business models.

## C. MANAGEMENT OF NW CORNELL.

Reorganized NW Cornell will consist of the same owners and management as currently exists. NW Cornell does not have any employees. Depending on the path pursued under the Plan, NW Cornell will continue to own a 50 percent tenant-in-common interest in the Cornell Property, develop the Cornell Property in cooperation with non-debtor tenant-in-common owners, or it will possess the net proceeds from the sale of its interest in the property.

## D. WASHINGTON COUNTY LITIGATION

NW Cornell is the plaintiff in *15005 NW Cornell, LLC v. Cornell Rd. LLC, et al*., Case No. 18CV17059, pending in the Circuit Court for the State of Oregon for Washington County. NW Cornell commenced the partition proceeding because the other tenant-in-common owners of the Cornell Property would not cooperate in the development of the property or consent to NW Cornell borrowing against its interest in the property. The Washington County court in a memorandum opinion indicated that partitioning is an appropriate remedy, although it would require additional time-consuming land use master-planning procedures prior to such a partition being determined. No further action has occurred in the Washington County court after the Petition Date due to the fact that parties have opposed NW Cornell's applications to employ counsel for that action and the parties engaged in repeated discussions with participants in these

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

bankruptcy cases and with parties in the partition litigation toward the preferable objective of consensual settlement.

## IV.  EVENTS LEADING TO THE BANKRUPTCY FILING

Debtors' bankruptcy filings were precipitated by the scheduled foreclosure sales of the Skyline Property and the Cornell Property initiated by Creditor Tasha Teherani-Ami ("Teherani-Ami") based on deeds of trust recorded on both properties as provided in the General Judgment of Dissolution of Marriage (the "General Judgment") entered in the divorce case involving Teherani-Ami and Dinihanian, Multnomah County Circuit Court Case No. 1208-68730 (the "Divorce Case"). In the General Judgment obligated Dinihanian to make a significant settlement payment to Teherani-Ami in January 2018, and that payment was secured by the deeds of trust. When Dinihanian was unable to make that payment, Teherani-Ami initiated foreclosure proceedings on both the Skyline and the Cornell Property. In addition, Teherani-Ami filed an action compel Dinihanian to execute a deed, on behalf of NW Cornell, to half of NW Cornell's tenant-in-common interest in the Cornell Property or be held in contempt (Multnomah County Circuit Court Case No. 19-CN01457) (the "Contempt Proceeding").

Debtors had and continue to have insufficient funds with which to pay their creditors until the Cornell Property is sold or until Debtors can obtain financing secured by NW Cornell's interest in the Cornell Property and Dinihanian's interest in the Skyline Property, or both. As a result, Debtors were unable to avoid the imminent risks of foreclosure or the transfer of half of NW Cornell's interest in the Cornell Property and filed for Chapter 11 bankruptcy protection to prevent the loss of significant value in the Cornell Property and Skyline Property.

## V.  SIGNIFICANT POST-PETITION EVENTS

Debtors obtained an order to lift the automatic stay to reengage in the Washington County partition litigation. Debtors have not pursued that litigation for various reasons, primarily because the application to employ partition counsel has been blocked in the Bankruptcy Cases. Debtors have invested extensive efforts to arrange financing to finance the

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11     Doc 401     Filed 07/22/21

payments of Claims and facilitate the incremental development of some or all of the Cornell Property. Such financing has been arranged through lender SORFI, LLC, an affiliate of Sortis Capital (the "Plan Lender") and the Plan Loan described in the Plan.[1] The term sheet describing the Plan Loan's key terms is attached as Exhibit 2 hereto. The documents that will evidence the Plan Loan will be filed with the Bankruptcy Court not later than four weeks prior to the confirmation hearing set forth in the Order. Under the term sheet, Debtors will be obligated to grant Sortis Real Estate, LLC, an affiliate of the Plan Lender, a right of first refusal to serve as the listing broker to market and sell NW Cornell's rights, title and interest in the Cornell Property should the listing and marketing of NW Cornell's tenant-in-common interests become necessary and appropriate following Plan confirmation. For the avoidance of doubt, the listing agreement would pertain only to NW Cornell's interest in the Cornell Property, and not to the interests of parties other than NW Cornell. Other than the terms set forth in the term sheet, no agreement to specific terms have been reached between Debtors and SORFI, LLC or Sortis Capital with respect to the Plan Loan or right of first refusal set forth in this paragraph and no other documents exist.

Debtors have otherwise devoted the bulk of their efforts since the petition date preparing and proposing a plan of reorganization and disclosure statement and plan and then engaging in

---

[1] Debtors already have an indirect lender-borrower relationship. SORFI, LLC loaned 933 Harrison Blvd., LLC ("933 LLC") the amount of $1,250,000 in early 2020, to refinance 933 LLC's mortgage debt that had matured. The SORFI loan to 933 LLC was guaranteed by Eagle Holdings, LLC, but was not personally guaranteed by either of the Debtors. Later, in April of 2021, the SORFI loan was refinanced to payoff an existing $1,000,000 loan owed to Juniper by 2275 W Burnside, which was secured by the property located at 2001 N. Main Street, Forest Grove. The Juniper loan had matured and was in default. Additionally, at the time of the refinance, 933 LLC and 2275 W Burnside had defaulted on obligations to Columbia Bank and iQ Credit Union, due to decreased rental revenue caused by the COVID-19 pandemic. The new SORFI loan also cured those defaults. Dinihanian asserts that 100% of the outstanding membership interest in 933 LLC is owned by Eagle Holdings, LLC, a single member LLC in which Dinihanian owns 100% of the membership interest. Certain parties in interest dispute Dinihanian's assertions that Eagle Holdings owns 933 LLC, and allege that Dinihanian owns 933 LLC directly. Debtors believe this distinction is inaccurate, and, more importantly, Debtors believe that the distinction is irrelevant given that (i) Debtors' Plan proposes to pay 100%, and (ii) Dinihanian's liquidation analysis includes the value of 933 LLC and its assets.

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

numerous rounds of settlement discussions and mediation with Tasha Teherani-Ami, in her individual capacity and as trustee for the Trust, as well as the other tenant-in-common owners of the Cornell Property. To date, these efforts have been unsuccessful in reaching a resolution, leading Debtors to file and seek confirmation of the present Plan.

In addition, the Trust has filed an adversary proceeding (Adv. Pro. No. 20-03077) (the "Trust Complaint") seeking a declaratory judgment to enforce the terms of the Stipulated Judgment, specifically with respect to its asserted right to a deed from NW Cornell to a twenty-five percent tenant-in-common interest in the Cornell Property. The Trust also filed a proof of claim in the NW Cornell case (Claim 5-1, the "Claim"). NW Cornell has objected [Dkt. 258] to the Claim on various grounds, filed an answer to the Trust Complaint, and filed an adversary proceeding (Adv. Pro. No. 20-03079) (the "Cornell Avoidance Action"), to which the Trust has filed an answer.

NW Cornell instituted an adversary proceeding (Adv. Pro. No. 19-03096) (the "Teherani-Ami Adversary") against Teherani-Ami to avoid the Deed of Trust on the grounds that it constituted a fraudulent transfer. In light of the full payment provided for the Teherani-Ami Claim under the Plan, the Debtors will seek to abate the Teherani-Ami Adversary.

## A. EMPLOYMENT OF PROFESSIONALS

NW Cornell has retained Perkins Coie LLP as its general counsel in the NW Cornell Bankruptcy Case. Dinihanian has retained Motschenbacher & Blattner LLP as his general counsel in the Dinihanian Bankruptcy Case. Dinihanian also sought and obtained Bankruptcy Court approval for the employment of Delap as his accountant. NW Cornell has sought the approval for the employment of Bateman Seidel to serve as ordinary course counsel in the partition litigation, although no order has been entered by the Court due to objections asserted by the Trust and the partition litigation has therefore been unable to proceed.

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## VI. ASSETS AND LIABILITIES

### A. ASSETS

#### 1. NW Cornell's Real Property

As described above, NW Cornell's principal asset is a fifty-percent tenant-in-common interest in the Cornell Property, which is a 37-acre parcel located at 15005 NW Cornell Road, Beaverton, Oregon. NW Cornell estimates that the value of its half interest in the Cornell Property was approximately $13,500,000 as of the Petition Date. This is supported by a broker's price opinion dated February 26, 2019. It is difficult to assess what impact the pandemic currently afflicting the United States will have on the value of the Cornell Property or other properties in the greater Portland area. The non-debtor tenant-in-common owners are limited liability companies owned by Dinihanian's sister, Lillian Logan, and her two adult children. They assert that NW Cornell lacks the authority to enter into the Plan Loan, and that entering into the Plan Loan will, through an unauthorized transfer or otherwise, create a multi-million-dollar damages claim in favor of the non-debtor tenant-in-common owners under the tenant-in-common agreement. NW Cornell asserts that it has the authority to enter into the Plan Loan pursuant to Section 8 of the tenant-in-common agreement without violating any other provision of the agreement or creating a damages claim.

#### 2. Dinihanian's Real Property

Dinihanian owns real property and improvements at 237 NW Skyline, in Portland Oregon. The Skyline Property is Mr. Dinihanian's residence, as well as the location where Mr. Dinihanian conducts the business activities of Eagle Holdings. Dinihanian estimates that the total value of the residence was approximately $1,000,000 as of the Petition Date.

#### 3. Personal Property

As of the Petition Date, NW Cornell owned very few items of personal property. As of the Petition Date, Dinihanian's hard assets consisted of miscellaneous household goods and furnishings. Dinihanian also had checking accounts and brokerage accounts. Dinihanian also

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

owns all membership interests in Eagle Holdings, LLC, which in turn owns stock or membership interests in various entities that own commercial real estate. Dinihanian owned a half interest with his sister, Lillian Logan, in a cabin located in Welches, Oregon. A list of Dinihanian's assets can be found in Dinihanian's Amended Schedule A/B [ECF No. 60] (Dinihanian Case)[2]. The combined net values of Dinihanian's assets, including Eagle Holdings and the various stock or membership interests it owns, and the Welches cabin, fall far short of the funds necessary to pay the Claims and other amounts required to be paid under the Plan.

Dinihanian also has potential tort claims (potentially as derivative claims) against Lillian Logan, related to allegations of breach of fiduciary duty and oppression in connection with Dinihanian Floral Products, Inc., which is jointly owned by Dinihanian and Ms. Logan.

### B.    LIABILITIES

#### 1.    Tasha Teherani-Ami

Pursuant to the Divorce Judgment, Dinihanian owes Tasha Teherani-Ami $2,250,000, plus accrued interest at 4.5% per annum from the date of the Divorce Judgment, until paid, as well as actual and reasonable costs and attorney fees. As of June 1, 2021, Debtors believe the total amount owing to Teherani-Ami was approximately $2,855,000. Since June 1, 2021, Debtors have made monthly adequate protection payments of interest to Teherani-Ami. Such payments will continue through September 2021, at which time Teherani-Ami will be entitled to relief from stay to continue her foreclosure actions.

The Divorce Judgment is secured by a Residential Trust Deed against the Skyline Property and by a deed of trust against NW Cornell's interest in the Cornell Property. NW Cornell has commenced an adversary proceeding to avoid the transfer by which the deed of trust against the Cornell Property was delivered to Ms. Teherani-Ami.

---

[2] References to the "Dinihanian Case" refer to Bankruptcy Case No. 19-31886-dwh11.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 2. Bateman Seidel and Daniel Lorenz Trust Deed Claims

Dinihanian executed one or more trust deeds encumbering the Skyline Property in favor of NW Cornell's prepetition counsel, Bateman Seidel, and Dinihanian's prepetition counsel, Daniel Lorenz, in the collective face amount of $250,000 as security for legal fees advanced prepetition for the respective Debtors by such counsel.

### 3. Columbia Bank

Dinihanian owes Columbia Bank in connection with an equipment loan, and a real estate loan for commercial properties owned by two limited liability companies he controls. Dinihanian also has executed personal guaranties in connection with other loans made by Columbia Bank to entities controlled by Mr. Dinihanian.

### 4. Unsecured Creditors

The total amount of Unsecured Claims scheduled by Dinihanian is approximately $976,654. This amount includes the Columbia Bank claims described above. This amount does not include claims made by Lillian Logan [See Claim No. 4; Case No. 19-31886-dwh11].

### 5. Trust Claim

The Sonja Dinihanian GST Trust DTS 1/1/11 (the "Trust") seeks the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6. NW Cornell has commenced an adversary proceeding to avoid any obligation to make such a transfer of half of its assets or, to the extent such a transfer is deemed to have occurred without an executed deed, to avoid such a deemed transfer.

### 6. Other Asserted Hypothetical Claims

The co-owners of the Cornell Property have asserted arguments that they may be injured and suffer damages if (1) NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the proposed Plan Loan; or (2) the entire Cornell Property is ultimately

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

sold as a whole pursuant to Section 363(h) of the Bankruptcy Code. The co-owners argue that either type of transfer would result in a breach of the Tenancy in Common Agreement between NW Cornell and the co-owners. Further, in the event that a sale of the entire Cornell Property is sold pursuant to 11 U.S.C. § 363(h), the co-owners argue they may be damaged because the sale would result in taxable gains, which would impose tax liabilities upon them that would not exist but for a sale of the entire Cornell Property. Debtors deny the co-owners' arguments that Debtors would be liable under either scenario, for the reasons set forth below.

### a. Foreclosure of Plan Loan

First, in the event that NW Cornell's TIC interest in the Cornell Property is transferred as a result of foreclosure of the Plan Loan, the transfer would be an authorized transfer. The Tenancy in Common Agreement is written to preserve each co-owner's ability to pursue a 1031 exchange with respect to their prospective interests in the Cornell Property. Specifically, the Tenancy in Common Agreement is written in compliance with IRS Rev. Proc. 2002-22 in at least the following ways in that it:

- Provides that the title to the Cornell Property as a whole may not be held as an entity under state law (TIC Agreement, ¶ 1);

- Provides that the co-ownership may not file a partnership or corporate tax return (TIC Agreement);

- Indicates that each co-owner may encumber its share of the Cornell Property (TIC Agreement, ¶ 8); and,

- Indicates that each co-owner may transfer its respective interest in the Cornell Property, subject only to a right of first refusal in favor of the other co-owners (TIC Agreement, ¶ 10(a)).

Because these provisions are present in the Tenancy In Common Agreement, Debtors believe that the co-owners arguments are misplaced. Because the agreement authorizes NW Cornell to encumber its TIC Interest, the agreement implicitly consents to the risk that NW

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Cornell's interest may be transferred through foreclosure in the event of a default. Moreover, if the Debtors default on the Plan Loan after confirmation and funding of such loan, notice of any potential foreclosure sale can be provided to the co-owners in compliance with Section 10(b) of the TIC Agreement. Such notice would provide the co-owners the opportunity to purchase NW Cornell's TIC Interest prior to foreclosure. In the event that the co-owners fail to elect to purchase NW Cornell's TIC Interest, the TIC Agreement explicitly authorizes a transfer. In the event that Debtors are wrong about this position, and if foreclosure of the Plan Loan would result in a breach of the TIC Agreement, there is a risk that the Debtors will be liable to the co-owners, which could diminish the amount of Debtors' equity. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

### b. Sale of Entire Cornell Property

In the event of a sale of the entire property, Debtors believe the TIC co-owners would not have any claim against the Debtors, for breach of the TIC Agreement or otherwise. First, Debtors do not believe there is any controlling authority indicating that they bear any liability to the co-owners if Debtors successfully prove the elements of a claim under § 363(h). Second, Debtors believe the co-owners would be provided sufficient notice to enable them to minimize their respective taxes through a 1031 exchange, completely mitigating any potential damages. Finally, as is described above regarding foreclosure, co-owners would be provided notice of any potential sale of the entire property, and they would therefore have the ability to make an offer to purchase the Cornell Property, or even just NW Cornell's TIC Interest. There is a risk that, if Debtors are incorrect in these arguments, the equity Debtors will receive after a sale will be reduced by the amount of damages they are required to pay the co-owners. Debtors believe the risk to creditors is minimal, because claims will have already been paid under the Plan prior to any potential foreclosure. Thus, the majority of the risk is borne by Debtors themselves.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## VII.  DESCRIPTION OF PLAN

### A.  SOLICITATION AND CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY SECURITIES

#### 1.  General

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, a Plan of Reorganization must designate classes of Claims and classes of interest.  The Plan classifies all Claims and Interests into 13 classes.  The classification of Claims and Interests is made for the purpose of voting on the Plan and making distributions thereunder, and for ease of administration of the Plan.  A Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is entitled to vote in a particular Class and to receive distributions in such Class only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid prior to the Effective Date.  Under the Plan, a Claim or Interest is an Allowed Claim against, or an Allowed Interest in, Debtor to the extent that (a) a proof of the Claim or Interest was (1) timely Filed, or (2) deemed Filed under applicable law by reason of an order of the Bankruptcy Court; or (b) scheduled by Debtor on its Schedules of Liabilities as neither contingent, unliquidated, or disputed; and (c) (i) no party in interest has Filed an objection within the time fixed by the Bankruptcy Court, (ii) the Claim or Interest is allowed by Final Order; or (iii) with respect to an application for compensation or reimbursement of an Administrative Expense Claim, the amount of the Administrative Expense Claim has been approved by the Bankruptcy Court.

#### 2.  Unclassified Claims

Administrative Expense Claims and Priority Tax Claims are not classified.  An Administrative Expense Claim is a Claim against Debtors constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

estate and operating Debtors' business during the Bankruptcy Case; claims for the value of goods received by Debtors within 20 days before the Petition Date sold in the ordinary course of business; any indebtedness or obligations incurred by Debtors during the pendency of the Bankruptcy Case in connection with the provision of goods or services to Debtors; compensation for legal and other professional services and reimbursement of expenses; and statutory fees payable to the U.S. Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim. Each holder of an Allowed Priority Tax Claim shall be paid by Reorganized Debtors, within 30 days following the Effective Date or the date the Claim is Allowed, whichever is sooner, the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D). The IRS has Filed a Priority Tax Claim against Dinihanian in the amount of $6,084.70

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the later of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim unless such holder shall agree to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, statute, or regulation governing such Claim). However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold goods or furnished services to Debtors after the Petition Date), if any, will be paid in accordance with the terms and conditions of the particular transactions and any other agreements relating thereto. Debtors will include the estimated amount of such expenses in the Report of Administrative Expense Claims to be Filed prior to the hearing on confirmation.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

### 3. Classified Claims

The following summary of distributions under the Plan to Classified Claims does not purport to be complete and is subject to, and is qualified in its entirety by reference to, the Plan attached hereto as **Exhibit 1**.

(a) <u>Class 1 (Tasha-Teherani-Ami's Secured Claim Against Dinihanian)</u>. Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian. The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, and reasonable costs and attorney fees in an amount established by the Bankruptcy Court following application and hearing. Teherani-Ami will file an application her reasonable costs and attorney fees associated with the Class 1 Claim not later than 14 days after the entry of order confirming the Plan. Class 1 is unimpaired and will be deemed to accept the Plan. The Divorce Judgment shall be modified to extend the deadline for payment of the Class 1 Claim to the date on which the Class 1 Claim is to be paid under the terms of this Plan.

The Teherani-Ami Skyline Trust Deed shall be modified as follows:

- Section 1.2 shall be modified to read as follows:

  "Grantor will pay and perform all Obligations when due under the Joint Chapter 11 Plan dated July 30, 2020, filed in the Bankruptcy Case of *In re 15005 NW Cornell, LLC*, Bankruptcy Case No. 19-31883-dwh11 (jointly administered).

- The following language shall be added to the end of Article V:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11.

- Sections 1.8, 1.9, and all provisions referring those sections, shall be deleted.

All other provisions of the Teherani-Ami Skyline Trust Deed shall remain unmodified.

(b) <u>Class 2 (General Unsecured Claims Allowed Against NW Cornell)</u>. Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

classified in the Plan.  Each holder of a Class 2 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Effective Date) within six months after the Effective Date.

(c) <u>Class 3 (Trust Claim)</u>.  Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment.  The Class 3 Claim will (a) retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor or (b) receive such alternative relief as ordered by the Court, including in Adv. Pro. No. 20-03077, Adv. Pro. No. 20-03079 and the claim objection found at Docket No. 258, in full satisfaction of the Trust Claim.  The Class 3 Claim is impaired under the Plan.

(d) <u>Class 4 (Multnomah County Property Taxes)</u>.  Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property.  The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date.  The Class 4 Claim shall be paid in the same manner as Class 2 Claims.

(e) <u>Class 5 (Tasha Teherani-Ami)</u>. The Class 5 Claim consists of Tasha Teherani-Ami's disputed secured claim against NW Cornell, pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed.  The Class 5 Claim is the same debt as the Class 1 Claim and payment of the Class 1 Claim, described above, shall constitute full satisfaction of the Class 5 Claim.  The Class 5 Claim is unimpaired and is deemed to accept the Plan.

(f) <u>Class 6 (Bateman Seidel Claim)</u>. Class 6 consists of the Allowed secured Claim of Bateman Seidel, PC.  The Class 6 Claim shall be paid at the same time and in same manner as Class 2 Claims, described above.

(g) <u>Class 7 (Lorenz Claim)</u>. Class 7 consists of the Allowed secured Claim of Daniel Lorenz against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed.  The Class 7 Claim shall be paid in at the same time and in the same manner as the Class 2 Claims, described above.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(h) <u>Class 8 (Columbia Bank – Equipment Loans)</u>. Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. Columbia's Class 6 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date. The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 6 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

    "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(i) <u>Class 9 (Columbia Bank – Real Estate Loan)</u>. Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note. The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

"Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(j) <u>Class 10 (Guaranty Claims against Dinihanian)</u>. Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents. Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date. The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated:

- The following language in the Columbia Guaranty Documents shall be added to the end of Section X:

   "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

(k) <u>Class 11 (General Unsecured Claims against Dinihanian)</u>. Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan. Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full. The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

(l) <u>Class 12 (Interests in NW Cornell)</u>. Class 12 Interests in NW Cornell shall retain their interests in NW Cornell except as may be determined by the Bankruptcy Court with respect to Class 3 Claims referenced above.

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(m) Class 13 (Dinihanian's Interests). The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

B.     ADMINISTRATIVE EXPENSES

NW Cornell has retained the following professionals: (a) Perkins Coie LLP as its general counsel in this case and (b) Delap LLP as its accountants.  Currently, the total amount of Administrative Expense Claims is $460,000 and could be as high as $600,000 by the Effective Date depending on the extent of litigation with various parties in interest.  A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

Dinihanian has retained the following professionals: (a) Motschenbacher & Blattner LLP as his general bankruptcy counsel in this case and (b) Delap LLP as his accountants.  Currently, the total amount of Administrative Expense Claims is approximately $220,000 and could be as high as $300,000 depending on the extent of litigation with various parties in interest.  A statement of professional fees incurred in this case will be Filed with the Court prior to the confirmation hearing.

C.     EXECUTORY CONTRACTS

The Bankruptcy Code gives debtors the right, after commencement of their Chapter 11 Cases, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases.  Generally, an "executory contract" is a contract under which material performance (other than the payment of money) is still due by each party.  The Plan provides for the assumption by debtors of all executory contracts and unexpired leases that are not expressly rejected or subject to a motion for rejection Filed on or before the Confirmation Date.

If an executory contract or unexpired lease is or has been rejected, the other party to the agreement may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a Proof of Claim with respect to any such Claim must be Filed within 30 days of

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

approval of the Bankruptcy Court of the rejection of the relevant executory contract or unexpired lease. Any such Claim shall constitute a Class 2 Claim to the extent such Claim is finally treated as an Allowed Claim. To the extent a debtor rejects an unexpired lease of nonresidential real property, the Claim for damages resulting from such rejection will be limited to the amount allowed under the Bankruptcy Code.

Upon assumption of an executory contract or unexpired lease, debtors must cure or provide adequate assurance of prompt cure of any monetary defaults. The Plan provides that Reorganized Debtors will promptly cure all monetary defaults. Debtors do not believe any of the executory contracts being assumed will require significant cure payments.

The Trust asserts the NW Cornell limited liability operating agreement (the "Operating Agreement") is an executory contract that must be assumed and that, because it includes a personal services contract, the Trust contends, the contract cannot be assumed by NW Cornell without the Trust's consent, which will not be provided. The Trust further contends the Plan cannot be confirmed, and indeed the bankruptcy case must be dismissed, absent NW Cornell's assumption of the Operating Agreement. Specifically, the Trust argues NW Cornell's failure to execute a deed to the Trust of half of NW Cornell's tenant-in-common interest in the Cornell Property, pursuant to the Stipulated Judgment, is default under the Operating Agreement that must be cured as a condition of assumption.

The Debtors disagree with the Trust's argument on numerous grounds, including that the Operating Agreement is not an executory contract, that NW Cornell was not a party to the Stipulated Judgment that purports to require execution of a deed to the Trust, that NW Cornell received no consideration for such a transfer, among other arguments. These arguments are set forth and will be decided, in whole or in part, through NW Cornell's objection to the Trust's Claim, the Trust's Complaint, and the Cornell Avoidance Action.

If the Trust prevails and the Debtors do not, the Plan Lender may not fund the Plan Loan and the Plan may not be confirmable.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**D.     IMPLEMENTATION OF THE PLAN**

The Debtors will obtain the funds to pay Claims as provided in this Plan through borrowing under the Plan Loan. Repayment of the Plan Loan will be secured by an encumbrance on the Skyline Property. It will also be secured by an encumbrance on NW Cornell's tenant-in-common interest in the Cornell Property, not the interests of other owners of tenant-in-common interests in the Cornell Property . NW Cornell is authorized to such an encumbrance pursuant to Paragraph 8 of the Tenant-in-Common Agreement, which states: "Each owner shall have the right to encumber its undivided interest in the Property without the approval of any person and shall discharge the obligation secured by the encumbrance in accordance with its terms." Other tenant-in-common owners have challenged NW Cornell's right to agree to such an encumbrance. There is a risk that such a challenge will prevail and that the encumbrance will not be permitted. Under those conditions, the Plan Lender may not agree to fund the Plan Loan.

The Trust asserts NW Cornell must deliver to it a deed to a twenty-five percent tenant-in-common interest in the Cornell Property in exchange for the redemption of the Trust's fifty-percent membership interest in NW Cornell, an exchange provided for the Stipulated Judgment. NW Cornell rejects the Trust's position that it must deliver a deed on various grounds, including that NW Cornell was not a party to the Stipulated Judgment and received no consideration for such a deed. The Trust has commenced an adversary proceeding seeking a declaratory judgment that would result in the Trust owning half of NW Cornell's TIC interest in the Cornell Property. The Trust also argues that the Debtors must assume three executory contracts before Debtors have the authority to confirm the Plan and obtain the Plan Loan. The Trust asserts Debtors must obtain the Trust's consent, which will not be given, to assume a portion of the NW Cornell operating agreement. Debtors deny all of the Trust's claims.

NW Cornell is defending the adversary proceeding brought by the Trust and has commenced an adversary proceeding to avoid any obligation allegedly imposed upon NW Cornell to transfer a deed to the Trust. NW Cornell has also filed an objection to the Trust's

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

proof of claim. Debtors believe that the Trust's right to equitable relief would be eliminated if the objection to the proof of claim is sustained by the Bankruptcy Court. The Trust has argued that NW Cornell must succeed in both adversary proceedings and the proof of claim objection for the Plan to be successful. Debtors reject the Trust's arguments and believe the Plan may still be successful even if NW Cornell loses the claim objection and both adversary proceedings. Ultimately, however, the following risks exist: (i) the Debtors may lose the adversary proceedings and the proof of claim objection, (ii) losing one or more of the adversary proceedings and the proof of claim objection could require NW Cornell to grant a deed to the Trust; and (iii) the Plan Lender may not agree to fund the Plan Loan if the Trust is granted a deed, which would result in failure of the Plan.

The Trust also asserts, in light of its claims under the Stipulated Judgment, NW Cornell should not be permitted to grant an encumbrance on NW Cornell's half tenant-in-common interest in the Cornell Property. If the Trust's objection is sustained, the encumbrance on NW Cornell's fifty-percent tenant-in-common interest in the Cornell Property envisioned by Plan Lender will be diminished by half, and the Plan Lender may not agree to fund the Plan Loan.

As a condition of the Plan Loan, the Plan Lender will require the Debtors to agree to (i) use their best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Plan Lender, make a determination that completion of the partition litigation is not practicable within a reasonable time and the Debtors should pursue, through a reservation of jurisdiction by this Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. No documents exist that define or expand upon the precise meaning of "in consultation with," as referenced in this paragraph. The criteria used by Debtors would include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property, potentially including the Trust, oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Debtors' efforts to

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

finalize the partition of the Cornell Property. For the avoidance of doubt, the Debtors' agreement referenced above will be sufficient to permit the funding of the Plan Loan and the payment of Claims as set forth in the Plan.

The Debtors anticipate the $5.6 million in proceeds under the Plan Loan to be dedicated as set forth in Exhibit 3, Projected Use of Funds. One component of the Use of Funds is the reservation of $1.5 million (a) for completion of the partition litigation, (b) to complete the land use and entitlement process in Washington County, (c) if necessary, to prosecute an adversary proceeding under Section 363(h) of the Bankruptcy Code to obtain an order requiring the sale of the entire Cornell Property on the grounds that completion of the partition process will involve impracticable delays and obstruction, and (d) for initial design and development costs. In addition, counsel for the Reorganized Debtor in the partition action, whose employment application has been blocked by objections in these cases, will be permitted to proceed post-confirmation and be paid with proceeds of the Plan Loan. The actual timing and content of any future development of the Cornell Property or any partitioned portion thereof will depend on how the above elements evolve. The payment of creditors' Claims under the Plan will be funded by the Plan Loan and will not await or be dependent upon the resolution of any of the elements of uncertainty described in this paragraph.

The Debtors anticipate that the Plan Loan will be repaid at maturity by refinancing. If the Debtors are forced to seek relief under Section 363(h) of the Bankruptcy Code, the NW Cornell-owned as well as non-debtor interests in the Cornell Property will be sold. In this instance, the Plan Loan would be repaid with the proceeds of such sale.

### E. EFFECT OF CONFIRMATION

#### 1. Binding Effect

The treatment of, and consideration received by, holders of Allowed Claims and Interests pursuant to the Plan will be in full satisfaction of their respective Claims against or Interests in Debtors. The Confirmation Order shall bind Debtors and any Creditor, and discharge Debtors

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

from any liability that arose before the Effective Date, as provided in Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim based on such Creditor's debt or liability is Filed or deemed Filed under Section 501 of the Bankruptcy Code, (2) a Claim based on such debt or liability is Allowed, or (3) the holder of the Claim based on such debt or liability has accepted the Plan.

## 2. Revesting, Operation of Business

Except for the Cornell Property, which will remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, all property of the bankruptcy estates shall revest in each respective Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens, charges, encumbrances, and interests, except as otherwise specifically provided in the Plan. Except as otherwise set forth in the Plan, there are no limitations or restrictions on the post-confirmation activities or operations of Debtors.

## 3. Injunction

The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan, prior order of the Bankruptcy Court, or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding of any kind against Debtors or Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order; (2) the enforcement, attachment, collection, or recovery against Reorganized Debtors or its assets of any judgment, award, decree, or order obtained before the Petition Date; (3) any act to obtain possession of or to exercise control over, or to create, perfect, or enforce a lien upon all or any part of the assets of Reorganized Debtors; (4) asserting any setoff, or right of subrogation or recoupment of any kind against any obligation due to Debtors, Reorganized Debtors, or their property; and (5) proceeding in any manner in any place

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the Confirmation Order. For the avoidance of doubt, the injunction referenced above shall be applicable to the matters set forth in Section IV. Neither the injunction nor any provision of the Plan prohibits the Washington County Case to proceed to completion in state court including all appeals.

### 4. Event of Default

Any material failure by Reorganized Debtors to perform any term of the Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default. Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, the Plan or any agreement between the holder of such Claim and Debtors or Reorganized Debtors. An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

### 5. Modification of the Plan; Revocation or Withdrawal of the Plan

Subject to Section 1127 of the Bankruptcy Code, Debtors reserves the right to alter, amend, modify, or withdraw the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

### 6. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and:

(a) to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(b) to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c) to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d) to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e) to resolve controversies and disputes regarding the interpretation of this Plan,

(f) to implement the provisions of this Plan and enter orders in aid of confirmation, including an action by the Reorganized Debtors pursuant to Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

(g) to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h) to enter a final decree closing this Chapter 11 proceeding.

**7. United States Trustee Fees**

Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed. After confirmation, Reorganized Debtors shall serve on the United States Trustee a financial report for each quarter, or portion thereof, that the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

## VIII. LIQUIDATION ANALYSIS

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" or holders of Claims against, and Equity Security in, Debtors subject to such plan. The best interest test is satisfied if a plan provides each dissenting

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

or non-voting member of each impaired Class with a recovery not less than the recovery such member would receive if each Debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee. The Debtors are proposing to pay all creditors in full, and thus the best interest of creditors test is automatically satisfied.

Despite the fact that the Debtors' Plan of Reorganization proposes to pay all creditors in full and therefore satisfies best interest of creditors test, certain parties in interest have demanded that a liquidation analysis be provided. Attached as Exhibit 4 is a liquidation analysis provided by the Debtors for each Debtor separately. All asset values included in the liquidation analysis were based on the Debtors' opinions of value, based on Debtors' familiarity with their properties, and Debtors' experience in the area of commercial real estate. Parties in interest have asserted that the Debtors' statements of value have been inconsistent, but Debtors assert that any differing valuation numbers were due, in part, to the difference in the time periods when valuation estimates were prepared. Additionally, Debtors assert that inconsistency in valuation may also be due to differences in the type of valuation (i.e., liquidation vs. going concern value). The valuation estimates provided in the attached liquidation analysis are intended to be current fair market values as of the date of this disclosure statement.

## IX. POSSIBLE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following discussion summarizes in general terms certain federal income tax consequences of the implementation of the Plan based upon existing provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), court decisions, and current administrative rulings and practice. This summary does not address the federal income tax consequences of the Plan to holders of priority or secured claims, nor does it address any state, local or foreign tax matters or the federal income tax consequences to certain types of creditors

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

*Motschenbacher & Blattner LLP*
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(including financial institutions, life insurance companies, tax exempt organizations and foreign taxpayers) to which special rules may apply. No rulings or opinions have been or will be requested from the Internal Revenue Service with respect to any of the tax aspects of the Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR. Substantial differences in the tax implications are likely to be encountered by the creditors because of the difference in the nature of their Claims, their taxpayer status, their method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The following are the anticipated tax consequences of the Plan:

A.    **TAX CONSEQUENCES TO THE DEBTORS.**

The Debtors do not anticipate any extraordinary or unusual tax consequences because all claims are expected to be paid in full. Debtors will experience ordinary income from continued operations and earnings and will be entitled to deduct business expenses for any business-related expenses and interest expense. Debtors do not anticipate any cancellation of debt income. In the event NW Cornell sells its real property, NW Cornell shall pay any applicable capital gains taxes that result from the sale.

B.    **GENERAL TAX CONSEQUENCES ON CREDITORS.**

Creditors will likely not experience any unusual or extraordinary tax consequence following Confirmation of the Plan. Payments will be treated in the same manner as they were treated before Confirmation of the Plan. As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor that is unknown to the Debtors. As a result, the tax implications to specific creditors cannot be completely described herein

EACH INTEREST HOLDER IS URGED TO CONSULT SUCH INTEREST HOLDER'S OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO SUCH HOLDER UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND FOREIGN

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

TAX LAWS.  DEBTORS AND DEBTORS' COUNSEL EXPRESS NO OPINION AS TO THE
TAX CONSEQUENCES OF THE PLAN OR THE EFFECT THEREOF ON ANY
CLAIMANT.

## X.  ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A.  CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on the date
and at the time and place set forth in the accompanying Order and will be held before the
Honorable David W. Hercher, United States Bankruptcy Judge.  At that hearing, the Bankruptcy
Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code,
including whether it is feasible and whether it is in the best interest of Creditors and Interest
holders of Debtors.  Debtors will submit a report to the Bankruptcy Court prior to the hearing
concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote
thereon.  To be considered by the Court, any objection to confirmation of the Plan must be
timely filed on or before the deadline set in the Order.

### B.  REQUIREMENTS OF CONFIRMATION

At the hearing on confirmation, the Bankruptcy Court will determine whether the
provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions
of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan.  Debtors
believe the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code, that it
has complied or will have complied with all of the requirements of Chapter 11, and that the Plan
has been proposed and is made in good faith.

### C.  CRAMDOWN

A Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan
has been accepted by at least one impaired class of claims and the Plan meets the cramdown
requirements set forth in Section 1129(b) of the Bankruptcy Code.  In the event any impaired
Class of Claims does not accept the Plan, Debtor hereby requests the Bankruptcy Court to

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit Debtors to modify the Plan.

### D. FEASIBILITY

Debtors believe that confirmation of the Plan is not likely to be followed by the liquidation of either of the Reorganized Debtors or a need for a further financial reorganization of Reorganized Debtors. Debtors believe they can obtain financing through the Plan Loan in an amount sufficient to pay all creditors in full. The timing of the payments to Creditors will depend on the timing of the closing and the availability of funds under the Plan Loan.

### E. ALTERNATIVES TO CONFIRMATION OF THE PLAN

If a Plan is not confirmed, Debtors or another party in interest may attempt to formulate or propose a different Plan or Plans of Reorganization. Such Plans might involve the sale of Dinihanian's other assets, an orderly liquidation of NW Cornell's assets, or any combination thereof. If no Plan of Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

In a liquidation, a Chapter 7 trustee would be appointed with the purpose of liquidating the assets of Debtors. Typically, in liquidation, assets are sold for less than their going concern value and, accordingly, the return to Creditors and Interest holders is less than the return in a reorganization, which derives the value to be distributed in a Plan from the business as a going concern. Proceeds from liquidation would be distributed to Creditors and Interest holders of Debtors in accordance with the priorities set forth in the Bankruptcy Code.

Debtors believe there is no currently available alternative that would offer holders of Claims and Interests in Debtors greater than the Plan and urges all parties entitled to vote on the Plan to vote to accept the Plan.

SECOND AMENDED DEBTORS' JOINT DISCLOSURE STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## XI.    CONCLUSION

Please read this Disclosure Statement and the Plan carefully.  After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

DATED this 22 day of July 2021.

Respectfully submitted,

PERKINS COIE LLP

By */s/ Douglas Pahl*
        Douglas Pahl, OR Bar No. 950476
        Of Attorneys for Debtor 15005 NW Cornell LLC

MOTSCHENBACHER & BLATTNER LLP

By */s/ Nicholas J. Henderson*
        Nicholas J. Henderson, OSB No. 074027
          Of Attorneys for Debtor Vahan M. Dinihanian, Jr

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**EXHIBITS ATTACHED**:

<u>Exhibit 1</u>: Joint Plan of Reorganization

Exhibit 2:  Term Sheet

Exhibit 3: Projected Use of Funds

Exhibit 4: Liquidation Analysis

SECOND AMENDED DEBTORS' JOINT DISCLOSURE
STATEMENT DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# Exhibit 1
# Joint Plan of Reorganization

**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
MOTSCHENBACHER & BLATTNER, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

    *Of Attorneys for Vahan M. Dinihanian, Jr.*

**Douglas R. Pahl, OSB No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

    *Of Attorneys for 15005 NW Cornell LLC*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>   15005 NW Cornell LLC; and<br>   Vahan M. Dinihanian, Jr.,<br><br>                          Debtors. | Bankruptcy Case Nos.:<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh11<br><br>Jointly Administered Under<br>Case No. 19-31883-dwh11<br><br>**DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021** |

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

# TABLE OF CONTENTS

Article 1 DEFINITIONS..................................................................1

Article 2 UNCLASSIFIED CLAIMS ...................................................8

Article 3 CLASSIFICATION ...........................................................9

Article 4 TREATMENT OF UNIMPAIRED CLASSES ....................................11

Article 5 TREATMENT OF IMPAIRED CLASSES ......................................12

Article 6 DISPUTED CLAIMS; OBJECTIONS TO CLAIMS .............................15

Article 7 IMPLEMENTATION OF THE PLAN .........................................15

Article 8 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................17

Article 9 EFFECT OF CONFIRMATION ...............................................17

Article 10 RETENTION OF JURISDICTION..........................................18

Article 11 ADMINISTRATIVE PROVISIONS..........................................19

Article 12 MISCELLANEOUS PROVISIONS...........................................20

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

15005 NW Cornell LLC, as debtor and debtor-in-possession ("NW Cornell") and Vahan

M. Dinihanian, Jr., as debtor-in-possession ("Dinihanian") (collectively, the "Debtors"), propose

this Joint Plan of Reorganization dated July 31, 2020 (the "Plan") pursuant to Section 1121(a) of

Title 11 of the United States Code.

This Plan provides for the repayment in full of all obligations Debtors owe to their

Creditors.  A Disclosure Statement is enclosed herewith to assist you in understanding this Plan

and making an informed judgment concerning its terms.  All creditors are encouraged to read the

Plan and the Disclosure Statement and their respective exhibits in their entirety before voting to

accept or reject the Plan.  No materials other than the Disclosure Statement and the exhibits

attached thereto have been authorized by the Bankruptcy Court for use in soliciting acceptances

or rejections of the Plan.  The Debtors reserve the right to alter, amend, modify, revoke or

withdraw this Plan prior to its substantial consummation.

## ARTICLE 1

## DEFINITIONS

Definitions of certain terms used in this Plan are set forth below.  Other terms are defined

in the text of this Plan or the text of the Disclosure Statement.  In either case, when a defined

term is used, the first letter of each word in the defined term is capitalized.  Terms used and not

defined in this Plan or the Disclosure Statement shall have the meanings given in the Bankruptcy

Code or Bankruptcy Rules, or otherwise as the context requires.  The meanings of all terms shall

be equally applicable to both the singular and plural, and masculine and feminine, forms of the

terms defined.  The words "herein," "hereof," "hereto," "hereunder," and others of similar

import, refer to the Plan as a whole and not to any particular section, subsection or clause

contained in the Plan.  Captions and headings to articles, sections and exhibits are inserted for

convenience of reference only and are not intended to be part of or to affect the interpretation of

the Plan.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

Rule 9006(a) shall apply. Any capitalized term that is not defined herein but is defined in the Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

**1.1** "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

**1.2** "Allowed" means, with respect to any Claim, proof of which has been properly Filed or, if no Proof of Claim was so Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed or contingent, and, in either case, a Claim as to which no objection to the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to estimate for purposes of allowance, shall have been so Filed, to the extent allowed by a Final Order.

**1.3** "Allowed Secured Claim" means an Allowed Claim that is secured by a lien, security interest or other charge against or interest in property in which one of the Debtors has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan, or if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the holder of such Claim in Debtor's interest in such property or to the extent of the amount subject to setoff, as the case may be.

**1.4** "Allowed Unsecured Claim" means an Allowed Claim that is not an Allowed Secured Claim.

**1.5** "Bankruptcy Cases" means, collectively, the NW Cornell Bankruptcy Case and the Dinihanian Bankruptcy Case.

**1.6** "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States Code.

**1.7** "Bankruptcy Court" means the United States Bankruptcy Court for the District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Cases or any

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

proceeding therein, including the United States District Court for the District of Oregon, to the extent that the reference to the Bankruptcy Cases or any proceeding therein is withdrawn.

**1.8** "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

**1.9** "Bateman Seidel Trust Deed" means the Trust Deed recorded as instrument number 2019-007750 in the real property records of Multnomah County, Oregon.

**1.10** "Bateman Seidel Claim" means the Claim associated with the Bateman Seidel Trust Deed.

**1.11** "Business Day" means a day other than a Saturday, Sunday or other day on which banks in Portland, Oregon are authorized or required by law to be closed.

**1.12** "Cash" means lawful currency of the United States of America.

**1.13** "Claim" means (a) any right to payment from Debtors arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy against Debtors arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.14** "Class" means one of the classes of Claims defined in Article 3 hereof.

**1.15** "Collateral" means any property in which Debtors has an interest that is subject to an unavoidable lien or security interest securing the payment of an Allowed Secured Claim.

**1.16** "Columbia" means Columbia State Bank.

**1.17** "Columbia Loan Documents" means all loan documents entered into by and between Columbia and Dinihanian, including:

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

(a)    Commercial Promissory Note dated October 6, 2015, between Vahan M. Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Columbia Equipment Note");

(b)    Commercial Promissory Note dated November 4, 2016, between Vahan Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Columbia Real Estate Note");

(c)    Commercial Deed of Trust dated November 4, 2016, among Vahan 8340 NW Cornell LLC and Vahan 8344 NW Cornell LLC (as grantors), Fidelity National Title Company of Oregon (as trustee), and Columbia State Bank (as lender) (the "83rd Street Deed of Trust");

(d)    Hypothecation Agreement Security Agreement-Pledge dated November 4, 2016, among Vahan Dinihanian, Jr. (as borrower), Vahan 8344 NW Cornell LLC (as pledger) and Columbia State Bank (as lender) (the "83rd Street Security Agreement");

(e)    Commercial Guaranty dated August 12, 2015, among Columbia State Bank (lender), Vahan IV NW Tenth LLC (borrower), and Vahan Dinihanian, Jr. (guarantor) related to Loan No. XXXX1263 ("Columbia Guaranty One");

(f)    Commercial Guaranty dated September 4, 2015, among Columbia State Bank (lender), Vahan IV NW Tenth LLC (borrower), and Vahan Dinihanian, Jr. (guarantor) related to Loan No. XXXX1472 ("Columbia Guaranty Two"); and

(g)    Commercial Security Agreement dated October 6, 2015, between Vahan M. Dinihanian, Jr. (borrower) and Columbia State Bank (lender) (the "Equipment Security Agreement").

**1.18**    The "Columbia Guaranty Documents" means, collectively, Columbia Guaranty One and Columbia Guaranty Two.

**1.19**    "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

**1.20**    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**1.21**    "Cornell Property" means the real estate and improvements located at 15005 NW Cornell Rd., City of Beaverton, State or Oregon, more particularly described in **Exhibit A** hereto.

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**1.22** "Cornell Property Revesting Date" means that date upon which (a) all Claims have been paid as provided under this Plan, and (b) NW Cornell has notified the Court it will not utilize the authority provided in Section 363(h) of the Bankruptcy Code.

**1.23** "Creditor" means any entity holding a Claim against Debtor.

**1.24** "Debtors" means, collectively, 15005 NW Cornell LLC., as Debtor and Debtor-in-Possession in the NW Cornell Bankruptcy Case and Vahan M. Dinihanian, Jr., as Debtor-in-Possession in the Dinihanian Bankruptcy Case.

**1.25** "Dinihanian Bankruptcy Case" means the Chapter 11 case filed by Vahan M. Dinihanian, Jr., Case No. 19-31886-dwh11, pending in the United States Bankruptcy Court for the District of Oregon.

**1.26** "Dinihanian Petition Date" means May 21, 2019, the date on which the petition commencing the Dinihanian Bankruptcy Case was filed.

**1.27** "Disclosure Statement" means Debtors' First Amended Disclosure Statement as amended, modified, restated or supplemented from time to time, pertaining to the Plan.

**1.28** "Disputed Claim" means a claim with respect to which a Proof of Claim has been timely Filed or deemed timely Filed under applicable law, and as to which an objection, timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely motion by the holder of such Claim. If an objection related to the allowance of only a part of a Claim has been timely Filed or deemed timely Filed, such claim shall be a Disputed Claim only to the extent of the objection.

**1.29** "Divorce Judgment" means the General Judgment of Dissolution of Marriage entered on or about March 22, 2016, in the matter of *Tasha L Dinihanian vs. Vahan M Dinihanian*, Circuit Court for the State of Oregon, Multnomah County Case Number 120868730.

**1.30** "Effective Date" means the eleventh day following the date the Confirmation Order is entered.

Page 5 of 23      DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**1.31** "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

**1.32** "Final Order" means an order or judgment entered on the docket by the Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties that has not been reversed, stayed, modified, appealed or amended and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing shall have expired.

**1.33** "Guaranty Documents" means any documents evidencing contingent unsecured guaranty liabilities of Dinihanian.

**1.34** "Insider" shall have the meaning ascribed to it by Section 101(31) of the Bankruptcy Code.

**1.35** "Interests" means all rights of the owners of the membership interests of NW Cornell.

**1.36** "Lorenz Trust Deed" means the Trust Deed recorded as instrument number 2019-007750 in the real property records of Multnomah County, Oregon.

**1.37** "Lorenz Claim" means the claim associated with the Lorenz Trust Deed.

**1.38** "Net Proceeds" means the funds available to distribute to Allowed Claims after payment of all costs of sale, and liquidation of any item of Debtors' property after reduction for any and all fees and liquidation expenses at the closing of such sale, payments of any and all prior, valid encumbrances, taxes, fees and expenses, including legal and accounting, related to the sale.

**1.39** "NW Cornell" means 15005 NW Cornell LLC.

**1.40** "NW Cornell Bankruptcy Case" means the Chapter 11 case filed by 15005 NW Cornell LLC, Case No. 19-31883-dwh11 pending in the United States Bankruptcy Court for the District of Oregon.

**1.41** "NW Cornell Petition Date" means May 21, 2019, the date on which the petition commencing the NW Cornell Bankruptcy Case was filed.

**1.42** "Organizational Documents" means the governing documents for NW Cornell or

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

any other applicable entity.

**1.43**  "Other Priority Claim" means any Claim for an amount entitled to priority in right of payment under Section 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

**1.44**  "Plan" means this First Amended Joint Plan of Reorganization, as amended, modified, restated or supplemented from time to time.

**1.45**  "Plan Loan" means a secured credit facility obtained by NW Cornell as borrower, in an amount of not less than $5,500,000 secured by first-priority deeds of trust on NW Cornell's interest in the Cornell Property and the Mr. Dinihanian's interest in the Skyline Property and on terms otherwise provided in the applicable Plan Loan documents.

**1.46**  "Priority Tax Claim" means a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the secured status of the Claim.

**1.47**  "Reorganized NW Cornell" means NW Cornell from and after the Effective Date.

**1.48**  "Reorganized Dinihanian" means Dinihanian from and after the Effective Date.

**1.49**  "Reorganized Debtors" means both Debtors from and after the Effective Date.

**1.50**  "Restated Articles of Organization" means the restated articles of organization and restated operating agreement ("Organizational Document") of NW Cornell which shall modify and amend Debtor's Organizational Documents to prohibit the issuance of non-voting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code and make such other changes, as Reorganized NW Cornell may deem necessary or appropriate to carry out the purpose and intent of the Plan.

**1.51**  "Scheduled Amounts" means the amounts of any Claim appearing in Debtors' Schedules.

**1.52**  "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by Debtors pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated or supplemented from time to time.

**1.53**  "Secured Claim" means any Claim against either of the Debtors held by any

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

entity, including, without limitation, an Affiliate or judgment creditor of Debtors, to the extent such Claim constitutes an unavoidable secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.

1.54    "Skyline Property" means the real property located at 237 NW Skyline Blvd., Portland, Oregon 97210, including any and all improvements located thereon, all easements, all water rights and all other rights of every nature appurtenant to such real property.

1.55    "Teherani-Ami Cornell Deed of Trust" means the Trust Deed, Security Agreement, Assignment of Leases, and Rents, and Fixture Filing recorded as instrument number 2016-008669 in the real property records of Washington County, Oregon.

1.56    "Teherani-Ami Skyline Deed of Trust" means the Residential Trust Deed recorded as instrument number 2016-014522 in the real property records of Multnomah County, Oregon.

1.57    "Trust" means the Sonja Dinihanian GST Trust DTS 1/1/11, which is an owner of 50 percent of the membership interest in Cornell LLC.

1.58    "Trust Claim" means the specific performance Claim by the Trust for the immediate transfer of a deed to half of NW Cornell's undivided tenant-in-common interest in the Cornell Property in exchange for redemption of the Trust's half membership interest in NW Cornell, pursuant to the Divorce Judgment and as set forth in late-filed Claim No. 6.

1.59    "Unsecured Claim" means an unsecured Claim that is not an Administrative Claim, a Secured Claim, an Other Priority Claim, or a Priority Tax Claim.

1.60    "Unsecured Creditor" means a holder of an Allowable Unsecured Claim.

## ARTICLE 2

## UNCLASSIFIED CLAIMS

2.1    <u>Administrative Expense Claims</u>.  Each holder of an Allowed Administrative Expense Claim shall be paid by Debtors in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree in writing to a different treatment of such Claim (including, without limitation, any different treatment that

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

may be provided for in any documentation, statute or regulation governing such Claim);

*provided, however*, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtors during the Bankruptcy Case shall be paid by Debtors or Reorganized Debtors in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto.

  2.2 <u>Priority Tax Claims</u>.  Each holder of an Allowed Priority Tax Claim shall be paid by Debtors the full amount of its Allowed Priority Tax Claim as allowed by 11 U.S.C. § 1129(a)(9)(C) and (D) within 30 days following the Effective Date or the date the claim is Allowed, whichever first occurs.

  2.3 <u>Other Priority Claims</u>.  Each holder of an Other Priority Claim shall be paid in full in cash the amount of its Allowed Claim on the latest to occur of (1) the Effective Date, (2) the date such claim becomes an Allowed Claim or (3) the date that such claim becomes due and owing, unless such holder shall agree in writing or has agreed to a different treatment of such Claim (including, without limitation, any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim).

  2.4 <u>Bankruptcy Fees</u>.  Fees payable by Debtors under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date.  After confirmation, Reorganized Debtors shall continue to pay quarterly fees of the Office of the United States Trustee and file quarterly reports with the Office of the United States Trustee until this case is closed by the Court, dismissed or converted.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

## ARTICLE 3

## CLASSIFICATION

  For purposes of this Plan, Claims and Interests are classified as provided below.  A Claim is classified in a particular Class only to the extent that such Claim qualifies within the

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

description of such Class and is classified in a different Class to the extent that such Claim qualifies within the description of such different Class.

      3.1    **Class 1 – Tasha Teherani-Ami's Secured Claim against Dinihanian**.  Class 1 consists of the disputed Secured Claim of Tasha Teherani-Ami pursuant to the Teherani-Ami Skyline Trust Deed.

      3.2    **Class 2 – General Unsecured Claims against NW Cornell**.  Class 2 consists of all Allowed Unsecured Claims against NW Cornell, other than Administrative Expense Claims, and Priority Tax Claims.

      3.3    **Class 3 – Trust Claim against NW Cornell**.  Class 3 consists of the Disputed Trust Claim to ownership in the Cornell Property as a result of the Divorce Judgment**.**

      3.4    **Class 4 – Multnomah County Div. of Assessment, Recording and Taxation**.  Class 4 is the Allowed Secured Claim of Multnomah County for property taxes assessed against the Skyline Property.

      3.5    **Class 5 – Tasha Teherani-Ami's Secured Claim against NW Cornell**.  Class 5 consists of the Allowed Secured Claim of Tasha Teherani-Ami against Dinihanian pursuant to the Divorce Judgment and Teherani-Ami Cornell Trust Deed.

      3.6    **Class 6 – Bateman Seidel Claim against Dinihanian**.  Class 6 consists of the Allowed Claim of Bateman Seidel, PC against Dinihanian associated with the Bateman Seidel Trust Deed.

      3.7    **Class 7 – Lorenz Claim against Dinihanian**.  Class 7 consists of the Allowed Claim of Daniel Lorenz against Dinihanian associated by the Lorenz Trust Deed.

      3.8    **Class 8 – Columbia Bank's Secured Claim against Dinihanian (Equipment)**.  Class 8 consists of the Allowed Secured Claim of Columbia State Bank against Dinihanian pursuant to the Columbia Equipment Note and the Equipment Security Agreement.

      3.9    **Class 9 – Columbia Bank's Secured Claim against Dinihanian (Real Estate)**.  Class 9 consists of the Allowed Secured Claim of Columbia State Bank against Dinihanian

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

pursuant to Columbia Real Estate Note, the 83rd Street Deed of Trust and the 83rd Street Security Agreement.

**3.10** **Class 10 – Guaranty Claims against Dinihanian**. Class 10 consists of the Allowed unsecured Guaranty Claims Dinihanian pursuant to the Columbia Guaranty Documents and other Guaranty Documents.

**3.11** **Class 11 – General Unsecured Claims against Dinihanian**. Class 11 consists of all Allowed Unsecured Claims against Dinihanian, other than Administrative Expense Claims, and Priority Tax Claims.

**3.12** **Class 12 – Interests of NW Cornell**. Class 12 consists of the Interests of the holders of NW Cornell's membership interests.

**3.13** **Class 13 – Dinihanian's Interests in the Dinihanian Bankruptcy Case Estate**. Class 13 consists of Dinihanian's interest in property of the estate of the Dinihanian Bankruptcy Case.

**ARTICLE 4**

**TREATMENT OF UNIMPAIRED CLASSES**

**4.1** **Class 1 (Tasha Teherani-Ami's Secured Claim Against Dinihanian)**. Class 1 consists of Tasha Teherani-Ami's Secured Claim against Dinihanian. The Class 1 Claim will be paid in full on the Effective Date, together with interest at the rate of 4.5% per annum from and after the Petition Date, reasonable costs and attorney fees. Class 1 is unimpaired under the Plan.

**4.2** **Class 5 (Tasha Teherani-Ami's Secured Claim Against NW Cornell)**. The Class 5 Claim consists of Tasha Teherani-Ami's allowed secured claim against NW Cornell pursuant to the Divorce Judgment and the Teherani-Ami Cornell Trust Deed. The Class 5 Claim represents the same debt as the Class 1 Claim. The Class 5 Claim shall be paid at the same time and in the same manner as the Class 1 Claim, described above. The Class 5 Claim is unimpaired under the Plan.

**4.3** All other Classes of Claims against NW Cornell and Dinihanian are impaired under the Plan.

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# ARTICLE 5

## TREATMENT OF IMPAIRED CLASSES

**5.1**     **Class 2 (General Unsecured Claims Allowed Against NW Cornell).**

Class 2 consists of all Allowed Unsecured Claims against NW Cornell that are not otherwise classified in the Plan. Each holder of a Class 2 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Effective Date) from and after the Effective Date, until paid in full, from the proceeds of the Plan Loan, not later than six months after the Effective Date. Class 2 Claims are impaired under the Plan.

**5.2**     **Class 3 (Trust Claim Against NW Cornell).**

Class 3 consists of the disputed Trust Claim of the Sonja Dinihanian GST Trust DTS 1/1/11. The Class 3 Claim will (a) retain its prepetition membership interest in Cornell LLC as the Reorganized Debtor or (b) receive such alternative relief as ordered by the Court, including in Adv. Pro. No. 20-03077, Adv. Pro. No. 20-03079 and the claim objection found at Docket No. 258, in full satisfaction of the Trust Claim. The Class 3 Claim is impaired under the Plan.

**5.3**     **Class 4 (Multnomah County Property Taxes).**

Class 4 consists of Multnomah County's secured property tax claim against Dinihanian, secured by the Skyline Property. The Class 4 Claim shall be paid in full, together with interest at the rate of 16% per annum from and after the Petition Date. The Class 4 Claim shall be paid as in the same manner as Class 2 claims.

**5.4**     **Class 6 (Bateman Seidel Claim Against Dinihanian).** Class 6 consists of the claim of Bateman Seidel, PC, against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed. The Class 6 Claim shall be paid in at the same time and in the same manner as Class 2 Claims, described above.

**5.5**     **Class 7 (Lorenz Claim Against Dinihanian).** Class 7 consists of the claim of Daniel Lorenz against Dinihanian for legal services provided to Dinihanian and evidenced by a trust deed. The Class 7 Claim shall be paid in at the same time and in the same manner as Class 2 Claims, described above.

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**5.6** **Class 8 (Columbia Bank – Equipment Loan)**. Class 8 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Equipment Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. Columbia's Class 8 Claim will be paid in full together with interest at the non-default rate under the Columbia Equipment Note, on the same terms and payments as set forth in the Columbia Equipment Note, commencing with the first payment due 60 days after the Effective Date. The Columbia Equipment Note will remain in effect except as stated below:

- The maturity date will be delayed for the amount of time between the Petition Date and the date on which the first payment is due to the Class 7 Claim under the terms of this Plan.

- The Columbia Equipment Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.7** **Class 9 (Columbia Bank – Real Estate Loan)**. Class 9 consists of the Allowed Secured Claim of Columbia Bank, relating to the Columbia Real Estate Note. Any default that exists under the Columbia Loan Documents shall be deemed cured or waived as of the Effective Date. The Class 9 Claim will be paid in full together with interest at the non-default rate under the Columbia Real Estate Note, on the same terms and payments as set forth in the Columbia Real Estate Note. The Columbia Real Estate Note will remain in effect except as stated below:

- The Columbia Real Estate Note shall be amended to delete any reference to the note being payable on demand.

- The following language shall be added to the end of Section X:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.8**     **Class 10 (Guaranty Claims against Dinihanian)**.  Class 10 consists of all allowed Guaranty Claims, including Columbia's Allowed Claims related to the Columbia Guaranty Documents, and those related to other Guaranty Documents.  Any default that exists under the Columbia Guaranty Documents or other Guaranty Documents shall be deemed cured or waived as of the Effective Date.  The Columbia Guaranty Documents and other Guaranty Documents shall remain in effect, except as stated below:

- The following language shall be added to the end of Section X of the Columbia Guaranty Documents:

  "Notwithstanding the foregoing, the Obligations shall not be accelerated as a result of Grantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31886-dwh11, or Guarantor's filing of a bankruptcy petition on May 21, 2019, commencing Bankruptcy Case Number 19-31883-dwh11."

**5.9**     **Class 11 (General Unsecured Claims against Dinihanian)**.  Class 11 consists of all Allowed unsecured claims against Dinihanian not otherwise classified in this Plan.  Each holder of a Class 11 Claim shall be paid in full together with interest at the federal judgment rate (fixed at the rate in effect on the Petition Date) from and after the Petition Date, until paid in full.  The Class 11 Claims shall be paid at the same time and in the same manner as the Class 2 claim.

**5.10**     **Class 12 (Interests in NW Cornell)**.  Class 12 Interests in NW Cornell will retain their interest in Reorganized NW Cornell in which case the Trust's Class 12 Interests shall be redeemed.

**5.11**     **Class 13 (Dinihanian's Interests)**.  The Class 13 interest holder is Dinihanian, who shall retain his interests in property of the bankruptcy estate of the Dinihanian Bankruptcy Case.

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# ARTICLE 6

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

**6.1** <u>Disputed Claims; Objections to Claims</u>. Only Claims that are allowed shall be entitled to distributions under the Plan. Debtors reserve the right to contest and object to any claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a different amount than the Debtors currently believe is validly due and owing. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than Administrative Expense Claims) shall be Filed and served upon counsel for Debtors and the holder of the Claim objected to on or before the later of (a) thirty (30) days after the Effective Date or (b) sixty (60) days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection Claim. The last day for filing objections to Administrative Expense Claims shall be set pursuant to an order of the Bankruptcy Court. All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a) Debtors may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the Bankruptcy Court may otherwise order.

# ARTICLE 7

## IMPLEMENTATION OF THE PLAN

**7.1** <u>Path of Implementation</u>. The Debtors will obtain the funds to pay Claims as provided in this Plan by borrowing sufficient funds through a Plan Loan to pay all Claims in full at the times and on the terms set forth herein. The Plan Loan is conditioned on the Plan providing that the Bankruptcy Court will retain jurisdiction to permit the Reorganized Debtor, until the Cornell Property Revesting Date, to pursue the authority under Section 363(h) of the Bankruptcy Code to sell the entirety of the Cornell Property, including the nondebtor portions, to permit the full implementation of the Plan and satisfaction of the terms of the Plan Loan.

**7.2** <u>Setoffs</u>. Debtors may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

nature whatsoever which Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claim Debtors may have against such holder.

      **7.3**   <u>Corporate Action</u>.  Upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan), including, without limitation, the following: (a) the adoption and filing with the Secretary of State of the State of Oregon the Restated Articles of Organization, and (b) the execution, delivery and performance of all documents and agreements relating to the Plan and any of the foregoing.  On the Effective Date, Reorganized Debtors, and the appropriate officers of Reorganized NW Cornell, are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Disclosure Statement in the name of and on behalf of the respective Reorganized Debtors. Both Reorganized Debtors may continue to act and make further amendments and elections as they may deem necessary or desirable.

      **7.4**   <u>Saturday, Sunday, or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

      **7.5**   <u>Event of Default; Remedy</u>.  Any material failure by Reorganized Debtors to perform any term of this Plan, which failure continues for a period of fifteen Business Days following receipt by Reorganized Debtors of written notice of such default from the holder of an Allowed Claim to whom performance is due, shall constitute an Event of Default.  Upon the occurrence of an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all rights and remedies granted by law, this Plan or any agreement between the holder of such Claim and Debtors or Reorganized Debtors.  An Event of Default with respect to one Claim shall not be an Event of Default with respect to any other Claim.

***Motschenbacher & Blattner LLP***
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

## ARTICLE 8

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1**    <u>Assumption</u>.  Except as may otherwise be provided, all executory contracts and unexpired leases of Debtors, which are not otherwise subject to a prior Bankruptcy Court order or pending motion before the Bankruptcy Court are assumed by and assigned to Reorganized Debtors on the Effective Date.  The Confirmation Order shall constitute an order authorizing assumption and assignment of all executory contracts and unexpired leases except those otherwise specifically rejected or otherwise provided for or subject to other Court Order or pending motion.  Reorganized Debtors shall promptly pay all amounts required under Section 365 of the Bankruptcy Code to cure any defaults and assume the executory contracts.

**8.2**    <u>Rejection Claims</u>.  Rejection Claims must be Filed no later than 30 days after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the Effective Date, whichever is sooner. Any such Rejection Claim not Filed within such time shall be forever barred from assertion against Debtor, Reorganized Debtor, and its property and estates.  Each Rejection Claim resulting from such rejection shall constitute a Class 2 Claim.

## ARTICLE 9

## EFFECT OF CONFIRMATION

**9.1**    <u>Injunction</u>.  The effect of confirmation shall be as set forth in Section 1141 of the Bankruptcy Code.  Except as otherwise provided in the Plan or in the Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to entities against (a) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Reorganized Debtors that was or could have been commenced before the entry of the Confirmation Order, (b) the enforcement against either of the Reorganized Debtors or their assets of a judgment obtained before the Reorganized Debtors' respective petition dates, and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon all or any part of the assets.

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**9.2**    Discharge.  Except as otherwise expressly provided herein, the confirmation of the Plan shall, as of the Effective Date, discharge all Claims, to the fullest extent authorized or provided for by the Bankruptcy Code, including, without limitation, to the extent authorized or provided for by Sections 524 and 1141 thereof.

## ARTICLE 10

## RETENTION OF JURISDICTION

**10.1**    Jurisdiction of the Bankruptcy Court.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code and

(a)    to classify the Claim or interest of any Creditor or stockholder, reexamine Claims or Interests which have been owed for voting purposes and determine any objections that may be Filed to Claims or Interests,

(b)    to determine requests for payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate,

(c)    to avoid liens, transfers, or obligations or to subordinate Claims under Chapter 5 of the Bankruptcy Code,

(d)    to approve the assumption, assignment or rejection of an executory contract or an unexpired lease pursuant to this Plan,

(e)    to resolve controversies and disputes regarding the interpretation of this Plan,

(f)    to implement the provisions of this Plan, the Plan Loan and enter orders in aid of confirmation, including an action by the Reorganized Debtor Section 363(h) of the Bankruptcy Code brought prior to the Cornell Property Revesting Date,

(g)    to adjudicate adversary proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case, and

(h)    to enter a final decree closing this Chapter 11 proceeding.

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**10.2** <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

# ARTICLE 11

# ADMINISTRATIVE PROVISIONS

**11.1** <u>Modification or Withdrawal of the Plan</u>. Debtors may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the time that the Bankruptcy Court has signed the Confirmation Order. After such time, and prior to the substantial consummation of the Plan, Debtors may, so long as the treatment of holders of Claims and Interests under the Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

**11.2** <u>Revocation or Withdrawal of Plan</u>. Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

**11.3** <u>Effect of Withdrawal or Revocation</u>. If Debtors revoke or withdraw the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtors or any other Entity or to prejudice in any manner the rights of Debtors or any Entity in any further proceeding involving Debtors.

**11.4** <u>Nonconsensual Confirmation</u>. Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are met.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1**    _Revesting._  Except for NW Cornell's 50 percent tenant-in-common interest in the 37-acre Cornell Property, which interest shall remain property of the estate of the NW Cornell bankruptcy until the Cornell Property Revesting Date, on the Effective Date, all property and assets of the estate of each of the Debtors shall revest in each of the respective Reorganized Debtors, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors arising on or before the Effective Date, and Reorganized Debtors may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

**12.2**    _Rights of Action._  Except as otherwise expressly provided herein, any rights or causes of action (including, without limitation, any and all avoidance actions) accruing to Debtors shall remain assets of Reorganized Debtors.  Reorganized Debtors may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for their benefit.

**12.3**    _Governing Law._  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

**12.4**    _Withholding and Reporting Requirements._  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtors and Reorganized Debtors shall comply with all withholding, reporting, certification and information requirements imposed by any federal, state, local or foreign taxing authorities and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification and information requirements.  Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Reorganized Debtors may reasonably require to ensure compliance with such withholding and

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

reporting requirements, and to enable Reorganized Debtors to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

     **12.5**    <u>Time</u>.  Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of the next succeeding day which is a Business Day.

     **12.6**    <u>Addresses and Notices</u>.  If an Event of Default occurs, written notice of such Default shall be provided at the addresses for notices set forth below:

<u>To NW Cornell</u>:

15005 NW Cornell
c/o Vahan M. Dinihanian, Jr.
237 NW Skyline Blvd.
Portland, OR 97210

<u>With a copy to</u>:

Douglas Pahl
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209

<u>To Dinihanian</u>:

Vahan M. Dinihanian, Jr.
237 NW Skyline Blvd.
Portland, OR 97210

<u>With a copy to</u>:

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204

     **12.7**    <u>Section 1146(c) Exemption</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or

DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real property of Debtors or Reorganized Debtors pursuant to, in implementation of or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any city, county or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

     **12.8**   <u>Severability</u>.  In the event that any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provisions of the Plan.  To the extent that any provision of the Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the Confirmation Order, the Bankruptcy Court, on the request of Debtors, may modify or amend such provision, in whole or in part, as necessary to cure any defect or remove any impediment to the confirmation of the Plan existing by reason of such provision.

     **12.9**   <u>Binding Effect</u>.  The provisions of the Plan shall bind Debtors, Reorganized Debtors and all holders of Claims and Interests, and their respective successors, heirs and assigns.

     **12.10**   <u>Recordable Order</u>.  The Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

     **12.11**   <u>Plan Controls</u>.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

     **12.12**   <u>Effectuating Documents and Further Transactions</u>.  Debtors and Reorganized Debtors shall execute, deliver, file or record such contracts, instruments, assignments, and other

DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION DATED JULY 22, 2021

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

agreements or documents, and take or direct such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

DATED this 22 day of July 2021.

Respectfully submitted,

PERKINS COIE LLP

By /s/ Douglas R. Pahl
    Douglas R. Pahl, OR Bar No. 950476
      Of Attorneys for Debtor 15005 NW Cornell LLC


MOTSCHENBACHER & BLATTNER LLP

By /s/ Nicholas J. Henderson
    Nicholas J. Henderson, OSB No. 074027
      Of Attorneys for Debtor Vahan M. Dinihanian, Jr

Page 23 of 23    DEBTORS' SECOND AMENDED JOINT PLAN OF
REORGANIZATION DATED JULY 22, 2021

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

# Exhibit 2
# Term Sheet



Term Sheet Date:              October 23, 2020

15005 NW Cornell, LLC
c/o Vahan M. Dinihanian, Jr.
237 NW Skyline Boulevard
Portland, Oregon 97210

**<u>Secured Exit Financing</u>**
**<u>Summary of Terms and Conditions</u>**

| | |
|---|---|
| **Lender:** | SORFI, LLC, its successors and/or assigns. |
| **Borrower:** | 15005 NW Cornell, LLC, an Oregon limited liability company, a Debtor-in-Possession under Chapter 11 of the Bankruptcy Code as Case Number 19-31833-dwh11. |
| **Loan Amount:** | $5,600,000 |
| **Collateral:** | All of the Borrower's rights, title and interest in the real property and improvements located at 15005 NW Cornell Road, Beaverton, Washington County, Oregon ("<u>Cornell Property</u>") <u>and</u> all of the Limited Guarantor's rights, title and interest in the real property located at 237 NW Skyline Road, Portland, Multnomah County, Oregon ("<u>Skyline Property</u>")(collectively, the "<u>Collateral</u>"). For the avoidance of doubt, following any partition order entered in relation to the Cornell Property, the Lender will accept the final, non-appealable order of the court with respect to partitioning such that the Collateral interest in the Cornell Property shall be limited to that portion of the Cornell Property in which 15005 NW Cornell, LLC retains a continuing post-partition interest. |
| **Loan Term/Maturity:** | Seven hundred and thirty days (730) days commencing on the date of funding of the Loan, at which date the Loan shall mature and become payable in full. |
| **Extensions:** | Borrower shall have the right to extend the Loan Term for two (2) additional six (6) month periods ("<u>Extended Loan Term</u>"), subject to the following:<br><br>a) Borrower shall not have been in default, including applicable cure periods, at any time during the Loan Term and any Extended Loan Term;<br>b) There have been no material negative changes in the Collateral, the Borrower, and the Limited Guarantor;<br>c) Borrower shall notify Lender in writing not less than thirty (30) days prior to expiration of the then current Loan Term of its intent to extend the Loan (the "<u>Extension Notice</u>"); |

> d) Borrower shall pay an "<u>Extension Fee</u>" equal to 1.00% of the Loan's outstanding principal balance concurrent with the Extension Notice; and
>
> e) Borrower shall replenish any necessary reserves required by Lender in Lenders sole discretion for the Extended Loan Term concurrent with the Extension Notice.

**Amortization:**     Interest Only.

**Payments:**     Interest will be payable monthly, in arrears, on the 1st day of each month until the Maturity Date, shall be prorated for any partial months and interest shall be drawn from the Development and Expense Reserve.

The Loan Documents shall provide for (a) a late charge of 5.00% of any payment not received by the due date, (b) default interest of 24.00% upon and during an Event of Default, (c) the right of Lender to accelerate the Loan without notice or grace periods in the event of a payment default and (d) for additional remedies typical of a transaction of this nature.

**Interest Rate:**     12.00%

**Origination Fee:**     Borrower shall pay Lender an Origination Fee equal to 2.00% of the Loan Amount. which shall be due and payable at Closing ("<u>Origination Fee</u>").

**Underwriting Fee:**     Borrower shall pay Lender an Underwriting Fee equal to $15,000, which shall be due and payable at Closing ("<u>Underwriting Fee</u>").

**Prepayment:**     During the Loan Term, Borrower will be allowed to prepay the Loan Amount, in full, at any time, provided Lender is repaid all outstanding principal, accrued interest through the date of such repayment, and any and all fees and expenses then due and owing.

**Assumption:**     The Loan may not be assumed.

**Transfer Provisions:**     The Borrower may not transfer, pledge, assign, hypothecate or encumber, in part or whole, any direct or indirect equity interests in the Borrower.

**Limited Guarantor:**     Vahan M. Dinihanian, Jr., ("<u>Dinihanian</u>") an individual and Debtor under Chapter 11 of the Bankruptcy Code as Case Number 19-31886-dwh11. The Loan will be non-recourse as to Dinihanian, subject to certain so called "Carve-outs" and his liability is limited to the extent of his interest in the Skyline Property. The loan documents will provide that Dinihanian and the Borrower will be personally liable for losses incurred by Lender as a result of fraud or intentional misrepresentation by Borrower or any guarantor in connection with the Loan; the gross negligence or willful misconduct

of Borrower; the breach of any representation, warranty, covenant or indemnification concerning hazardous substances; the removal or disposal of any portion of the Property after the occurrence of a default; the misapplication or conversion by Borrower of any insurance proceeds or any awards in connection with the condemnation of the Properties; and failure by Borrower to pay charges for labor or materials or other charges that can create Liens on any portion of the Properties.

The Loan shall be fully recourse to Dinihanian and Borrower in the event that the first full monthly payment of principal and interest is not paid when due; Borrower fails to permit on-site inspections of the Property, fails to provide financial information or fails to maintain its status as a single purpose entity; Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property; Borrower fails to obtain Lender's prior consent to any assignment, transfer, or conveyance of the Property; Borrower files a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law or Borrower files an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against it under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law.

| | |
|---|---|
| **Security for Loan:** | The Loan shall be secured by a first deed of trust or first mortgage and a perfected first security interest in the Collateral, all leases, rents, income and profits therefrom, and all personal property, both tangible and intangible (including replacements, substitutions and after-acquired property) located thereon or used or intended to be used in connection therewith. |
| **Subordinate Financing:** | No secondary financing or encumbrance, either secured or unsecured, of any kind shall be permitted during the Loan Term other than trade payables incurred in the Borrower's normal course of business. |
| **Closing Date:** | Five business days after the Effective Date of Borrower's Joint Plan of Reorganization. |
| **Development and Expense Reserve:** | Lender shall reserve $1,538,000 of the Loan Amount for funding the payment of development costs, including but not limited to insurance premiums, real estate taxes and interest due under the Loan, according to a cost breakdown and schedule approved by Lender at Closing. The Development and Expense Reserve may be broken in to one or more reserves for payment of interest, property taxes, insurance premiums and development and construction costs, and each such reserve shall be used solely for the designated purpose. The Development and Expense Reserve <u>shall not</u> be deemed an advance at Closing and shall be disbursed monthly upon request according to the draw provisions of the Loan Documents. |

|                          | Conditions for disbursement of funds for costs incurred in connection with development and/or construction will include: The Lender receives a draw request no more often than once per month in a form and substance satisfactory to Lender; the Lender receives lien waivers acceptable to the Lender from all persons who supplied labor and/or materials to the Properties; the Lender receives date-down endorsements to its policy of title insurance showing no liens have been recorded against the Properties and no transfers or other instruments have been recorded in violation of the Loan Documents; no stop notice or lien claim or encumbrance has been filed with respect to the Properties; no event of default has occurred and is continuing; all representations and warranties of Borrower set forth in the Loan Documents are true and correct as of the date of Borrower's request; Borrower provides evidence that all hard and soft construction costs will be paid in full from the then current disbursement; and Lender determines that the Loan is "in balance" as will be more particularly defined in the Loan Documents. |

**Material Adverse Change:** Lender shall have no obligation to close and fund the Loan if, at any time prior to funding, Lender determines, in its sole judgment, that there shall exist any material adverse circumstances or conditions regarding, or shall have occurred any material adverse change with respect to, the Collateral or its tenants, or the operations, business, assets, liabilities or condition (financial or otherwise) of Borrower, Limited Guarantor or any of their affiliates.

**Interest Calculation:** Interest will be calculated on the basis of a 360-day year but charged for the actual days elapsed.

**Closing Costs/Legal Fees:** From the loan proceeds, Borrower shall pay at Closing, the out-of-pocket expenses incurred by Lender in connection with the proposed Loan. Expenses shall include, but not be limited to, the fees and expenses that Lender may incur for outside legal counsel, fees of all third parties relating to the due diligence review to be undertaken by Lender and its third party consultants, title insurance, insurance review costs, the costs of reviewing operating statements, the cost of an appraisal, environmental reports, engineering and structural reports, zoning reports, survey updating and certificate, construction review costs and travel costs of Lender's personnel and recordation costs.

**Brokers:** Borrower represents and warrants to Lender that neither it, nor any affiliate has engaged any broker, agent or finder to procure the proposed Loan contemplated by this Term Sheet or to otherwise finance the Collateral. Borrower hereby agrees to indemnify and hold harmless Lender and its affiliates against any and all loss, cost, damage, liability or expense incurred by Lender or its affiliates arising out of, or in connection with, a breach of the representations and warranties set forth in this paragraph.

| **Loan Documents:** | Not later than four weeks prior to the hearing on confirmation of the Borrower's Joint Plan of Reorganization., all loan documents, including without limitation, the promissory note, loan agreement, mortgage, deed of trust or security deed, fixture filing, assignment of leases and rents, pledge and security agreement, UCC financing statements, environmental and building laws indemnity and any other documents required by Lender (collectively, "<u>Loan Documents</u>"), shall be prepared by counsel for Lender and shall be in all respects in form and substance satisfactory to Lender in its sole discretion. The Loan Documents shall be filed with the Bankruptcy Court and served on parties requesting special notice. The Loan Documents will contain representations, warranties and covenants of Borrower appropriate or customary for similar transactions. The parties to this Term Sheet have included the primary terms of the anticipated loan facility and anticipate such terms will be included in the Loan Documents. No further agreements or documents pertaining to the secured credit facility described in this Term Sheet have been reached or exist. |
|---|---|
| **Events of Default:** | The Loan Documents will provide that certain acts, omissions or events constitute "Events of Default" including, but not limited to: the failure to pay the Loan in full by the Maturity Date; failure to make any required monthly payment of principal or interest or any other payment required under the Loan Documents when due; failure to perform any other covenant, agreement or obligation to be performed by Borrower under the Loan Documents if such failure is not cured within thirty (30) days after written notice thereof; the occurrence of any default by Borrower with respect to hazardous substances; the occurrence of any transfer of the Properties or interests in the Borrower without Lender's consent; any representation or warranty made by Borrower or Guarantor proves to be false or misleading in any material respect; The filing of a complaint for receivership or the filing of a voluntary or involuntary petition for bankruptcy or for reorganization with respect to Borrower or any Guarantor (other than the pending Bankruptcy Cases); a final judgment, order, or decree for the payment of money is rendered against Borrower or any Guarantor, and Borrower or such Guarantor does not satisfy and pay the same or cause it to be discharged within thirty (30) days from the entry thereof; Borrower fails to maintain any of the insurance coverage required under the Loan Documents; the occurrence of an uninsured casualty with respect to any material portion of the Properties; or the Properties or any part thereof is condemned or taken in any eminent domain or other like proceeding. Lender will have all rights and remedies under applicable law and agree, in the event of a foreclosure of the Cornell Property, to provide notice required by law, as well as to parties to the TIC agreement. |

**Assignability:**

This Term Sheet may not be assigned, in whole or in part, by Borrower, by operation of law or otherwise, and is intended for the benefit of the parties hereto and not for the benefit of any third parties.

**Governing Law:**

This Term Sheet and the Loan Documents shall be governed by, and construed in accordance with, the laws of the State of Oregon, without regard to principles of conflicts of laws.

**Conditions Precedent to Closing:**

Borrower shall grant to Sortis Real Estate, LLC, a right of first refusal to serve as the listing broker to market and sell the Cornell Property. The details of this right of first refusal have not been established. No further agreements or documents pertaining to the right of first refusal described in this Term Sheet have been reached or exist.

Borrower shall agree to (i) use its best efforts to complete or otherwise resolve the partition litigation pending in Washington County or (ii), in consultation with the Lender, make a determination that completion of the partition litigation is not practicable within a reasonable time and Borrower should pursue, through a reservation of jurisdiction by the Bankruptcy Court, the sale of the entire Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. The criteria used by Borrowers and Lender will include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property oppose partition, appeal any judgment in the partition litigation, or if the co-owners otherwise try to block or thwart Borrower's efforts to finalize the partition of the Cornell Property. Beyond the preceding, the details of how such consultation shall occur have not been established. No further agreements or documents pertaining to the consultation described in this Term Sheet have been reached or exist.

# Exhibit 3
# Projected Use of Funds

Exhibit 3 -- Projected Use of Funds

| | |
|---|---|
| Teherani-Ami Claim | $2,900,000 |
| Creditors, unsecured | $300,000 |
| Creditors, admin | $800,000 |
| Loan Transaction Costs | $35,000 |
| Origination Fee | $112,000 |
| Underwriting Fee | $15,000 |
| Reserves / Future Development Costs / lender legal | $1,438,000 |
| | |
| Total Use of Funds | $5,600,000 |

** Projections, subject to modification.

# Exhibit 4
# Liquidation Analysis

In re: 15005 NW Cornell, LLC
Case No. 19-31883-dwh11; and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11
(Jointly Administered)

Exhibit 1
Liquidation Analysis

**Exhibit 1: Dinihanian Liquidation Analysis**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # ——→ | | | 101 [1] | | | | |
| **1. Total Value Real Property (Skyline and Welches Cabin):** | $ 1,260,000.00 | A/B.28. Tax Refunds | $ - | | | | |
| Less: Anticipated Cost of Sale | $ (75,600.00) | A/B.29. Family Support | $ - | | | | |
| Less: Property Taxes | $ (28,093.70) | A/B.30. Amounts Owed to You | $ - | | | | |
| Less: Bateman Seidel Lien (Skyline only) | $ (182,238.71) | A/B.31. Insurance Policies (Cash Value) | $ - | | | | |
| Less: Teherani-Ami Lien (Skyline only) | $ (2,600,000.00) | A/B.32. Inheritance Interests | $ - | | | | |
| **2. Net Value, Sch. A property (not less than zero):** | $ 244,400.00 | A/B.33. Claims Against Third-Parties | $ - | | | | |
| | | A/B.34. Other Claims | $ - | | | | |
| **3. Schedule B Property (Listed Below):** | | A/B.35. Other Financial Assets (specify): | $ - | | **Notes on valuation:** | | |
| A/B.3. Vehicles | $ 76,500.00 | A/B.53. Other Property of Any Kind (specify): | | | (1) Real estate valuation assumes 6% costs of sale. | | |
| A/B.4. Watercraft | $ - | Claims related to DFPI [6] | $ 250,000.00 | | | | |
| A/B.6. Household goods and furnishings [2] | $ 10,150.00 | Claims against Kaine Group | $ 8,000.00 | | (2) All valuations estimates are from Debtor's personal opinion of value, unless specifically stated otherwise. | | |
| A/B.7. Electronics | $ 500.00 | Tax attributes (non-transferrable) | | | | | |
| A/B.8. Collectibles [3] | $ 2,500.00 | **4. Adjusted total, Sch. B property** | $ 7,943,159.90 | | | | |
| A/B.9. Equipment for Sports/Hobbies | $ 500.00 | **5. Other (e.g., avoidance actions-itemize)** | $ - | | | | |
| A/B.10. Firearms | $ 500.00 | **6. Total Assets (ln.2+4+5)** | $ 8,187,559.90 | | | | |
| A/B.11. Clothes | $ 500.00 | **7. Claims Senior to General Unsecured Claims** | | | **Hypothetical chapter 7 trustee fees** | | |
| A/B.12. Jewelry | $ - | 7a. Secured claims not already accounted for: | $ - | | $ 8,187,559.90 | Total disbursements | |
| A/B.13. Non-farm Animals | $ 50.00 | 7b. Chapter 7: trustee fees (from sidebar) | $ 268,876.80 | | $ - | Minus exemptions | |
| A/B.14. Other Personal and Household Items | $ - | 7c. Chapter 7: other costs of administration | $ - | | $ - | Minus adjustments* | |
| A/B.16. Cash | $ 100.00 | 7d. Chapter 11: unpaid professionals' fees | $ 225,000.00 | | $ 8,187,559.90 | = Net disbursements | |
| A/B.17. Checking Account | $ 6,866.94 | 7e. Chapter 11: other administrative costs | $ - | | § 326 calculations | | |
| A/B.18. Stocks (Publicly Traded), Bonds, Etc. | $ 37,608.89 | 7f. Priority claims (bankruptcy Schedule E) | $ - | | $ 5,000.00 | X 25%= | $ 1,250.00 |
| A/B.19. Closely Held Business Interests [4] | $ 7,549,384.07 | 7g. Debtor's exemptions (bankr. Sch.C) | $ - | | $ 45,000.00 | X 10%= | $ 4,500.00 |
| A/B.20. Gov. and Corp. Bonds | $ - | 7h. Other/adjustments (See Notes on valuation) | $ - | | $ 950,000.00 | X 5%= | $ 47,500.00 |
| A/B.21. Retirement Accounts | $ - | **8. Total Senior Claims (ln. 7a to 7h)** | $ 493,876.80 | | $ 7,187,559.90 | X 3%= | $ 215,626.80 |
| A/B.22. Security Deposits | $ - | **9. Net available for unsecured (ln.6-ln.8)** | $ 7,693,683.10 | | $ 8,187,559.90 | Totals | $ 268,876.80 |
| A/B.23. Annuities | $ - | 10a.Gen. unsecured claims | $ 351,881.25 | | | | |
| A/B.24. Tuition Programs, Education IRAs | $ - | 10b.Other claims (if any) | | | Adjustment (if any) | $ - | |
| A/B.25. Trusts | $ - | **11.Total gen. unsecured (ln.10a+10b)** | $ 351,881.25 | | Trustee Fee | $ 268,876.80 | |
| A/B.26. Patents, copyrights, other IP [5] | $ - | **12. Ch. 7 Estimated Dividend (ln.9/ln.11)** | 100% | | *Adjustments would include, e.g., estimated refunds, and non-estate funds/ assets returned to third parties. | | |
| A/B.27. Licenses, Franchises, Other Intang. | $ - | **13. Plan Dividend** | 100% | | | | |

**NOTES:**

[1] Amended Schedules filed as Docket No. 101 in the case of In re Vahan M. Dinihanian Jr., Case No. 19-31886-dwh11

[2] Debtor is unsure about value of household goods and furnishings, and listed "Unknown" for value of such property in his Amended Schedules. For purposes of this liquidation analysis, Debtor has estimated a value of $10,000 for such property, although he believes that number is higher than the amount he could obtain if he were required to liquidate such property. Debtor included this estimated number to avoid continued accusations of undervaluation from certain parties in interest.

[3] Debtor is unsure of the value of his beer stein collection, and therefore listed "unknown" for the value of such property in his Amended Schedules. For purposes of this liqudation analysis, Debtor estiamted a value of $2,000, although he believes that number is undoubtedly higher than the amount he could obtain if he were required to liquidate the property. Debtor included his estimate to avoid continued accusations of undervaluation from certain parties in interest.

[4] See Attached Exhibit 1-a.

[5] Debtor has no basis to value his intellectual property. Debtor has never tried to sell his intellectual property, and no standard market exists from which the Debtor can determine an estimated market value.

[6] "Claims related to DFPI" include contract and tort claims against other officers and shareholders of Dinihanian Floral Products, Inc., and banking institutions holding the corporation's funds in depository accounts. The amount owed to Debtor has not been determined, and is listed as "Unknown" in the schedules. For purposes of this liquidation analysis, Debtor has listed a value of $250,000

Exhibit 1 - Liquidation Analysis
Page 1 of 5

In re: 15005 NW Cornell, LLC
Case No. 19-31883-dwh11; and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11
(Jointly Administered)

Exhibit 1
Liquidation Analysis

| | | | Exhibit 1-b: Liquidation Analysis - 15005 NW Cornell LLC | | |
|---|---|---|---|---|---|
| Itemized below are any *changes* to the most recent bankruptcy Schedules A&B, attached/at docket # ⟶⟶⟶ | | | 35 [1] | | |
| **1. Total Value Real Property (Skyline and Welches Cabin):** | $ 13,500,000.00 | | A/B.28. Tax Refunds | $ - | |
| Less: Anticipated Cost of Sale | | (810,000.00) | A/B.29. Family Support | $ - | |
| Less: Propety Taxes | $ | (28,093.70) | A/B.30. Amounts Owed to You | $ - | |
| Less: Teherani-Ami Lien | $ | (2,600,000.00) | A/B.31. Insurance Policies (Cash Value) | $ - | |
| | | | A/B.32. Inheritance Interests | | |
| **2. Net Value, Sch. A property (not less than zero):** | $ | 10,061,906.30 | A/B.33. Claims Against Third-Parties | $ - | |
| | | | A/B.34. Other Claims | | |
| **3. Schedule B Property (Listed Below):** | | | A/B.35. Other Financial Assets (specify): | $ - | **Notes on valuation:** |
| A/B.3. Vehicles | $ | - | A/B.53. Other Property of Any Kind (specify): | | (1) Real estate valuation assumes 6% costs of |
| A/B.4. Watercraft | | | Equipment, Inventory and Supplies | $ 35,500.00 | sale. |
| A/B.6. Household goods and furnishings | $ | - | | | (2) All valuations estimates are from Debtor's |
| A/B.7. Electronics | $ | - | | | personal opinion of value, unless specifically |
| A/B.8. Collectibles | $ | - | **4. Adjusted total, Sch. B property** | $ 35,500.00 | stated otherwise. |
| A/B.9. Equipment for Sports/Hobbies | $ | - | **5. Other (*e.g.*, avoidance actions-itemize)** | $ - | |
| A/B.10. Firearms | $ | - | **6. Total Assets (ln.2+4+5)** | $ 10,097,406.30 | |
| A/B.11. Clothes | $ | - | **7. Claims Senior to General Unsecured Claims** | | **Hypothetical chapter 7 trustee fees** |
| A/B.12. Jewelry | $ | - | 7a. Secured claims not already accounted for: | $ - | $ 10,097,406.30 | Total disbursements |
| A/B.13. Non-farm Animals | $ | - | 7b. Chapter 7: trustee fees (from sidebar) | $ 326,172.19 | $ - | Minus exemptions |
| A/B.14. Other Personal and Household Items | $ | - | 7c. Chapter 7: other costs of administration | $ - | $ - | Minus adjustments* |
| A/B.16. Cash | $ | - | 7d. Chapter 11: unpaid professionals' fees | $ 400,000.00 | $ 10,097,406.30 | = Net disbursements |
| A/B.17. Checking Account | $ | - | 7e. Chapter 11: other administrative costs | $ - | **§ 326 calculations** | |
| A/B.18. Stocks (Publicly Traded), Bonds, Etc. | $ | - | 7f. Priority claims (bankruptcy Schedule E) | $ - | $ 5,000.00 | X 25%= | $ 1,250.00 |
| A/B.19. Closely Held Business Interests | $ | - | 7g. Debtor's exemptions (bankr. Sch.C) | | $ 45,000.00 | X 10%= | $ 4,500.00 |
| A/B.20. Gov. and Corp. Bonds | $ | - | 7h. Other/adjustments (See Notes on valuation) | $ - | $ 950,000.00 | X 5%= | $ 47,500.00 |
| A/B.21. Retirement Accounts | $ | - | **8. Total Senior Claims (ln. 7a to 7h)** | $ 726,172.19 | $ 9,097,406.30 | X 3%= | $ 272,922.19 |
| A/B.22. Security Deposits | $ | - | **9. Net available for unsecured (ln.6-ln.8)** | $ 9,371,234.11 | $ 10,097,406.30 | Totals | $ 326,172.19 |
| A/B.23. Annuities | $ | - | 10a.Gen. unsecured claims [2] | $ 307,268.78 | | Adjustment (if any) | $ - |
| A/B.24. Tuition Programs, Education IRAs | $ | - | 10b.Other claims (if any) | | | Trustee Fee | $ 326,172.19 |
| A/B.25. Trusts | $ | - | **11.Total gen. unsecured (ln.10a+10b)** | $ 307,268.78 | | | |
| A/B.26. Patents, copyrights, other IP | $ | - | **12. Ch. 7 Estimated Dividend (ln.9/ln.11)** | 100% | *Adjustments would include, *e.g.*, estimated | | |
| A/B.27. Licenses, Franchises, Other Intang. | $ | - | **13. Plan Dividend** | 100% | refunds, and non-estate funds/ assets returned to third parties. | | |

**NOTES:**
[1] Amended Schedules filed as Docket No. 101 in the case of In re Vahan M. Dinihanian Jr., Case No. 19-31886-dwh11
[2] Amount listed includes disputed claim filed by Alexander LLC, Christiana LLC, and Cornell Road LLC (POC No. 05).

Exhibit 1 - Liquidation Analysis
Page 2 of 5

In re: 15005 NW Cornell LLC   **EXHIBIT 1-a:  Closely Held Business Entity Detail**
Case No. 19-31831-dwh11, and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11 (Jointly Administered)

**15005 NW Cornell LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | 13,500,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (2,600,000.00) |
| Cost of Sale (Assume 6%) | $ | (810,000.00) |
| Net Proceeds: | $ | 10,090,000.00 |
| Adj. Cost Basis: | $ | 771,572.00 |
| Est. Cap. Gains Tax: | $ | (3,169,378.57) |
| Net Value at Liquidation: | $ | 6,920,621.43 |

*Assumptions/Notes:*
*\* Value listed is 50% of Broker Opinion of Value from Norris & Stevens [ECF No. 250-2; Exhibit 21];*
*\* Value does not account for Trust's interest, if any, in the property.*
*\* "Liabilities" includes asserted lien of Tasha Teherani-Ami*

**2275 W Burnside LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | 2,460,000.00 |
| Other Assets: | $ | - |
| Liabilities: <sup>5</sup> | $ | (1,831,635.77) |
| Cost of Sale (Assume 6%) | $ | (147,600.00) |
| Net Proceeds: | $ | 480,764.23 |
| Adj. Cost Basis: | $ | 1,468,831.00 |
| Est. Cap. Gains Tax: | $ | (246,028.63) |
| Net Value at Liquidation: | $ | 234,735.60 |

*Real Property Assets consist of:*
*\* 2001 Main Street, Forest Grove, OR*
*   \* Value: $1,460,000 (Adj. Basis: $651,664)*
*   \* Liens: $2,650,000 (see Note 5)*
*\* 14007 NE 3rd Ct., Vancouver, WA*
*   \* Value: $2,000,000 (Adj. Basis: $831,296)*
*   \* Liens: $1,100,000*

**933 Harrison Avenue Centralia LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | 2,520,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (2,650,000.00) |
| Cost of Sale (Assume 6%) | $ | (151,200.00) |
| Net Proceeds: | $ | (281,200.00) |
| Adj. Cost Basis: | $ | 711,021.00 |
| Est. Cap. Gains Tax: | $ | (450,435.77) |
| Net Value at Liquidation: | $ | (731,635.77) |

*Real Property Assets consist of:*
*\* 933 Harrison Avenue, Centralia, WA*
*   \* Value: $2,520,000 (Adj. Basis: $711,021)*
*   \* Liens: $2,650,000 (cross-collateralized with 2001*
*     Main Street, Forst Grove, OR - owned*
*     by 2275 W Burnside)*

**Aurora Meridian LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 200,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 15%) | $ | (30,000.00) |
| Net Proceeds: | $ | 170,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | 170,000.00 |

*Assets consist of helicopter.  Value unknown, but assumed to be $250,000 for purposes of this analysis. Debtor has previously attempted to sell the helicopter for a higher amount, but was unsuccessful.  Helicopter is not airworthy due to deferred maintenance and inspections.  Debtor estimates $75,000 in inspection fees must be incurred to be eligible for certification.*

**Eagle Holdings LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 35,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 15%) | $ | (5,250.00) |
| Net Proceeds: | $ | 29,750.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | (8,715.00) |
| Net Value at Liquidation: | $ | 21,035.00 |

*For purposes of this analysis, assets consist of tools and injection molding machine.  Other assets belonging to Eagle Holdings, LLC, including other entities, are not included in this section, as they are already separately accounted for.*

**Vahan 8340 NW Cornell LLC**

| | | |
|---|---|---:|
| Real Property Assets: | $ | 400,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (350,000.00) |
| Cost of Sale (Assume 6%) | $ | (24,000.00) |
| Net Proceeds: | $ | 26,000.00 |
| Adj. Cost Basis: | $ | 73,156.00 |
| Est. Cap. Gains Tax: | $ | (81,384.16) |
| Net Value at Liquidation: | $ | (55,384.16) |

*Real Property Assets consist of:*
*\* 8340 NW Cornell Ave., Beaverton, OR*
*   \* Value: $400,000 (Adj. Basis: $73,156)*
*   \* Liens: $350,000*

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

In re: 15005 NW Cornell LLC  **EXHIBIT 1-a: Closely Held Business Entity Detail**
Case No. 19-31883-dwh11, and
In re: Vahan M. Dinihanian Jr.
Case No. 19-31886-dwh11 (Jointly Administered)

**Vahan 8344 NW Cornell LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 400,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (350,000.00) |
| Cost of Sale (Assume 6%) | $ | (24,000.00) |
| Net Proceeds: | $ | 26,000.00 |
| Adj. Cost Basis: | $ | 31,341.00 |
| Est. Cap. Gains Tax: | $ | (91,796.09) |
| Net Value at Liquidation: | $ | (65,796.09) |

*Real Property Assets consist of:*
*\* 8344 NW Cornell Ave., Beaverton, OR*
*  \* Value: $400,000 (Adj. Basis: $31,341)*
*  \* Liens: $350,000*

**Vahan IV NW Tenth LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | 2,430,000.00 |
| Other Assets: | $ | - |
| Liabilities: | $ | (998,000.00) |
| Cost of Sale (Assume 6%) | $ | (145,800.00) |
| Net Proceeds: | $ | 1,286,200.00 |
| Adj. Cost Basis: | $ | 1,158,948.00 |
| Est. Cap. Gains Tax: | $ | (316,491.95) |
| Net Value at Liquidation: | $ | 969,708.05 |

*Real Property Assets consist of:*
*\* 2031 Hawthorne Street, Portland, OR*
*  \* Value: $1,530,000 (Adj. Basis: $658,826)*
*  \* Liens: $525,000*
*\* 2150 NE 82nd Ave., Portland, OR*
*  \* Value: $900,000 (Adj. Basis: $500,122)*
*  \* Liens: $473,000*

**3Dauthority.net LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 20,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | (3,000.00) |
| Net Proceeds: | $ | 17,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | 17,000.00 |

*Assets consist of a 3D Printer and related equipment*

**Dinihanian Family Limited Partnership (50% interest)**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | - |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | - |
| Net Proceeds: | $ | - |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | - |

*Value unknown.*

**Dinihanian Floral Products, Inc. (50% interest)**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | - |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | - |
| Net Proceeds: | $ | - |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | - |
| Net Value at Liquidation: | $ | - |

*Value unknown. Potential tort claims related to this entity are not listed in this section, as they are listed elsewhere in the liquidation analysis.*

**Vahan III SE Stark LLC**

| | | |
|---|---|---|
| Real Property Assets: | $ | - |
| Other Assets: | $ | 100,000.00 |
| Liabilities: | $ | - |
| Cost of Sale (Assume 6%) | $ | (6,000.00) |
| Net Proceeds: | $ | 94,000.00 |
| Adj. Cost Basis: | $ | - |
| Est. Cap. Gains Tax: | $ | (24,900.00) |
| Net Value at Liquidation: | $ | 69,100.00 |

*Assets consist of a 1/6th membership interest in Meger SE Stark LLC, which owns the real property located at 8028 SE Stark St., Portland, OR.*

| | | |
|---|---|---|
| Total Net Value (Including 15005 NW Cornell LLC): | $ | 7,549,384.07 |
| Total Net Value (Excluding 15005 NW Cornell LLC): | $ | 628,762.64 |

Case 19-31883-dwh11    Doc 401    Filed 07/22/21

**Notes / Assumptions:**

| |
|---|
| 1:  All real property values are based upon Debtor's estimates. |
| 2:  All real property values are estimated as of October 1, 2020.  Debtor has included estimated decreases in value related to COVID-19 and eviction moratoriums, which the Debtor believes impacts the marketability of the properties. |
| 3:  Costs of sale were estimated at 6% of gross sale prices for real property, and 15% of gross sale prices for personal property. |
| 4:  Capital gains are all assumed to be long-term, paid at 15% for federal tax purposes, and 9.9% for state tax purposes. |
| 5:  Value of "Liabilities" for 2275 W Burnside LLC were reduced to $1,831,635.77, which consists of $1,100,000 for the lien against the property located at 14007 NE 3rd Ct., Vancouver, WA, and $731,635.77, which is the estimated deficiency balance that would remain on the $2,650,000 lien if the property belonging to the property belonging to 933 Harrison Avenue Centralia LLC was liquidated first.  This calculation was done to ensure that the $2,650,000 lien was not double-counted. |