1  Bruce H Orr, OSB No. 813297
   Email: bho@wysekadish.com
2  Wyse Kadish LLP
   900 SW Fifth Ave, Ste 2000
3  Portland, OR 97204
   Phone: 503 228-8448
4  Fax: 503 273-9135

5  Attorney for Tasha Teherani-Ami, in her capacity as
   the trustee of the Sonja Dinihanian GST Trust DTS 1/1/11

6

7

8

9

10
                    UNITED STATES BANKRUPTCY COURT
11
                     FOR THE DISTRICT OF OREGON
12
In re:                              )  Case Nos.
13                                  )  19-31883-dwh11 (Lead case)
15005 NW Cornell LLC and            )  19-31886-dwh11
14                                  )
Vahan M. Dinihanian, Jr.            )  Jointly Administered Under
15                                  )  19-31883-dwh11
                Debtor(s).          )
16                                  )  EXHIBIT LIST FOR TASHA
                                    )  TEHERANI-AMI, IN HER CAPACITY
17                                  )  AS THE TRUSTEE OF THE SONJA
                                    )  DINIHANIAN GST TRUST DTS 1/1/11
18                                  )  RE: OBJECTION TO CLAIMS
                                    )
19                                  )  Date of Hearing: November 22, 2021
                                    )  Time of Hearing: 9:00 a.m.
20 _____)  Judge: Hon. David W. Hercher

21        Tasha Teherani-Ami, in her capacity as the Trustee of the Sonja Dinihanian GST Trust

22 DTS 1/1/11 (hereinafter the "Trust") by and through her attorney Bruce H. Orr, of Wyse Kadish

23 LLP, submits the following exhibit list and will file each exhibit on the docket as attachments to

24 this exhibit list.

25 ///

26 ///

PAGE 1- EXHIBIT LIST FOR TASHA TEHERANI-AMI, IN HER          WYSE KADISH LLP
CAPACITY AS THE TRUSTEE OF THE SONJA DINIHANIAN GST                Suite 2000
                                                             900 SW Fifth Avenue
TRUST DTS 1/1/11 RE: OBJECTION TO CLAIMS                    Portland, Oregon 97204
                                                               (503) 228-8448
                                                           Facsimile: (503) 273-9135

**TRUST'S EXHIBIT LIST**

| Exhibit Ltr: | Description | Ex or Dkt | Stip'd | Offered | Admit'd |
|---|---|---|---|---|---|
| J | Transcript of April 8, 2019 hearing in Partition Action (Wa Co Case No 18CV17059 | | | | |
| J-1 | DEBTORS' APPLICATION TO EMPLOY BATEMAN SEIDEL P.C. AS ATTORNEYS IN WASHINGTON COUNTY CASE NO. 18CV17059 | | | | |
| J-2 | RULE 2014 VERIFIED STATEMENT FOR PROPOSED PROFESSIONAL signed by Gregory J. Miner, Bateman Seidel P.C. | | | | |

The Trust reserves the right to submit additional exhibits at the time of trial for purposes of impeachment and/or rebuttal.

Submitted this November 19, 2021

WYSE KADISH LLP
 /s/ Bruce H. Orr
Bruce H. Orr, OSB No. 813297
*bho@wysekadish.com*
Attorneys for Tasha Teherani-Ami in her capacity as the trustee of the Sonja Dinihanian GST Trust DTS 1/1/11

PAGE 2- EXHIBIT LIST FOR TASHA TEHERANI-AMI, IN HER CAPACITY AS THE TRUSTEE OF THE SONJA DINIHANIAN GST TRUST DTS 1/1/11 RE: OBJECTION TO CLAIMS

WYSE KADISH LLP
Suite 2000
900 SW Fifth Avenue
Portland, Oregon 97204
(503) 228-8448
Facsimile: (503) 273-9135

Case 19-31883-dwh11    Doc 493    Filed 11/22/21

1          IN THE CIRCUIT COURT OF THE STATE OF OREGON

2               FOR THE COUNTY OF WASHINGTON

3

4   15005 NW CORNELL LLC, an          )
    Oregon Limited Liability          )
5   company,                          )
                                      )
6              Plaintiff,             )
                                      )
7   v.                                ) Case No. 18CV17059
                                      )
8                                     )
                                      )
9   CORNELL RD. LLC, CHRISTIANA       )
    LLC, ALEXANDER LLC, Oregon        )
10  Limited Liability companies,      )
    and TASHA L. DINIHANIAN (nka      )
11  Tasha Teherani-Ami), an           )
    individual,                       )
12                                    )
               Defendants.            )
13

14              TRANSCRIPT OF PROCEEDINGS

15          BE IT REMEMBERED THAT, the above-entitled Court

16  and Cause came on regularly for hearing before the Honorable

17  Danielle J. Hunsaker, on Monday, April 8, 2019, at the

18  Washington County Courthouse, Courtroom 301-C, Hillsboro,

19  Oregon.

20

21

22

23

24  Proceedings recorded by digital sound recording; transcript

25  provided by Professional Reporter.

```
 1                        APPEARANCES

 2   BATEMAN SEIDEL MINER BLOMGREN CHELLIS & GRAM, PC
     By: Gregory J. Miner; gminer@batemanseidel.com
 3   888 SW Fifth Avenue, Suite 1250
     Portland, Oregon 97204
 4   (503)972-9920
     Counsel for Plaintiff
 5

 6   TIMOTHY J. MURPHY
     By: Timothy J Murphy; tim@murphylawfirm.biz
 7   811 SW Naito Parkway, Suite 500
     Portland, Oregon 97204
 8   (503)295-9550
     Counsel for Defendant Tasha L. Dinihanian (aka Tasha
 9   Teherani-Ami)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Monday, April 8, 2019, 8:34 a.m.)

2              P R O C E E D I N G S

3   (Whereupon, the following proceedings were held in open

4   court:)

5        THE COURT:  All right.  We're on the record for

6   15005 NW Cornell, LLC v. Cornell Road, LLC, et al; this is

7   18CV17059.

8        We're here this morning, for a hearing that I

9   required, to address the former Ms. Dinihanian's scheduled

10  trustee sale of 15005 NW Cornell LLC's interest in the

11  subject property in this partition action.

12       I have read the objection that was filed by the

13  former Ms. Dinihanian's attorney.  I'm not gonna have you

14  reiterate everything that's in that briefing.  I'm familiar

15  with your arguments; spent some time over the weekend with

16  it.  I have some specific questions that I'm gonna ask, and

17  then I'll give you a few minutes to tell me anything that

18  you think I've missed or that you want to reiterate, from

19  your clients' positions.

20       Before I do that, I do want to explain a little

21  bit, it was clear to me from the objection that was filed

22  that there's some confusion as to why we're here, because we

23  are in a sort of unusual procedural posture in this case.

24  And this is why.

25       After your client, the former Ms. Dinihanian,

1  decided not to participate in the trial, it was argued to
2  me, as part of the trial, that I had the equitable
3  authority, sitting in this partition action, to enjoin the
4  trustee sale, and that I should do so, as a matter of
5  equity.
6          And I also noted that she had filed a counterclaim
7  in this action; although, that was dismissed, I think, on
8  the eve of trial, or very shortly before the trial started.
9  So I was uncomfortable with the idea of taking any actions
10  related to a party that was not present when that argument
11  was made to me.
12          It was also suggested to me that perhaps the
13  former Ms. Dinihanian would not object to postponing the
14  sale of -- postponing the trustee sale, given all the
15  various family relationships at issue in this case and the
16  daughter's trust involved and other circumstances.
17          And so for those reasons, it was important to me
18  to be able to hear from Ms. Dinihanian and her interests and
19  -- and her position here.  And so that's why we're here
20  today.
21          I recognize, as I said, that this is a pretty
22  unusual procedural posture to be in, but it was important to
23  me, in terms of making decisions to at least hear her
24  position and understand where she's coming from and what
25  issues I need to be aware of, from her point of view.

1          So with that, I have reviewed, as I said, your

2  objection to the suggestion that the Court might postpone or

3  temporarily stay the foreclosure sale.

4          I have reviewed the -- the judgment that was

5  issued by the family law court in Multnomah County, and sort

6  of how we get here.  I think it's clear to me, from the

7  trial, that the whole reason that this is teed up now is

8  because of the need to pay off the judgment that is owed, as

9  required under the family law judgment.

10          So here are my questions.

11          And I'm not sure that you're the right counsel to

12  answer these questions.  They probably relate more to her

13  family law attorney, but I'm hoping that you can give me

14  some insight on them.

15          First one is, under the terms of that judgment, it

16  was clear that the daughter's trust was to get a deed,

17  confirming the trust's 25 percent undivided interest in this

18  property.

19          And let me pull -- what was the trigger?

20          MR. MINER:  It would -- if I may, Your Honor?

21          THE COURT:  Nope, hold on.

22          MR. MINER:  Okay.

23          THE COURT:  So the trigger there was, if the other

24  owners didn't want to buy out Mr. Dinihanian, that that was

25  to happen; that the daughter's trust was to get the deed for

1   a 25 percent interest, because this judgment clearly

2   contemplates, the judgment is an obligation of

3   Mr. Dinihanian; and the judgment clearly understands and

4   contemplates that his interest in the property we're talking

5   about is a 25 percent interest; not a 50 percent interest,

6   because the other 25 percent is held by the daughter's

7   trust.

8           So my question -- this is all a large lead up

9   to -- the question is:  Why did your client not insist that

10  the 25 percent deed to the daughter's trust happen years

11  ago?

12          MR. MURPHY:  May I respond to that, Your Honor?

13          THE COURT:  Yes.

14          MR. MURPHY:  Your Honor, I -- I believe she has

15  recently requested that that happen.  I don't know what the

16  delay was in those intervening years.  I believe she can

17  testify to it, Your Honor, but -- but I believe she was

18  hoping that Mr. Dinihanian would -- would fulfill his

19  obligations under the judgment.

20          We've asked him to do that, Your Honor, and I have

21  a warranty deed right here.  He can sign it right here.  He

22  can take it --

23          THE COURT:  Well, I read the letter from Mr. Miner

24  responding to the request, and that is a recent request,

25  like last month, recent, March 2019.

1          MR. MURPHY:  Yes, Your Honor.

2          THE COURT:  And his -- one of his primary

3    responses to that is, well, you -- your client already has a

4    50 percent deed of trust interest that she's in the middle

5    of foreclosing, so why would he then do this second deed

6    when she's foreclosing on a 50 percent interest?

7          So I'm back to, really confused, why does she have

8    a 50 percent deed, at all, when the judgment indicated that

9    Mr. Dinihanian's interest in this property is 25 percent?

10          MR. MURPHY:  Your Honor, I -- I didn't negotiate

11    that; I can't tell you for sure.  But it was intended by the

12    Court that Mr. Dinihanian convey -- caused the plaintiff

13    here, in this case, the LLC --

14          THE COURT:  Right.

15          MR. MURPHY:  -- to convey out a 25 percent

16    undivided interest to the trust.  We've asked him to do

17    that.  Through his attorney, Mr. Dinihanian responded that

18    he's not going to do that.  And I've -- I've --

19          THE COURT:  So if he was to do that today --

20          MR. MURPHY:  Yes.

21          THE COURT:  -- what does that do for your trustee

22    sale that's scheduled for June?

23          MR. MURPHY:  The -- the sale -- the sale still

24    remains on, but the important part is that, what Judge

25    Meisenheimer contemplated in the decree is that

1  Mr. Dinihanian would separate out the daughter's trust

2  interest in the property so that the foreclosure wouldn't

3  impact the daughter's trust.  That's what would have -- that

4  was the --

5        THE COURT:  So how would you accomplish that,

6  though?  Because she's in the middle of foreclosing a deed

7  of trust, that if he was to execute this 25 interest to the

8  daughter's trust, the deed of trust that you're executing is

9  inaccurate.  She can't go forward and foreclose on

10 50 percent of the property if 25 percent of it has already

11 been conveyed to the trust.

12       MR. MURPHY:  What she can do, Your Honor, she can

13 revise the amount of property that's gonna be foreclosed.

14 She can revise the notice to say that it's a 25 percent

15 interest that's being foreclosed.

16       THE COURT:  And is that statutorily allowed --

17       MR. MURPHY:  And it -- well, actually --

18 actually --

19       THE COURT:  -- midstream?

20       MR. MURPHY:  -- Your Honor, that doesn't even need

21 to happen, because once -- once the plaintiff conveys out

22 the 25 percent interest to the trust, then there's no

23 problem with the foreclosure going forward, because the

24 daughter's interest in it has been conveyed back to the --

25 to the trust.  And that's what we're trying to accomplish

1   with this deed.

2           If Mr. Dinihanian signs that deed right now, that

3   will take the daughter's trust completely out of the

4   equation, and the foreclosure, at that point, will be all of

5   the property that -- that Cornell, that 150 --

6           THE COURT:  The LLC holds.

7           MR. MURPHY:  That the LLC --

8           THE COURT:  Right?

9           MR. MURPHY:  -- holds, that -- that foreclosure

10  will foreclose that property.

11          Once the property's deeded out, it won't be

12  foreclosed; or if it is, my client, as trustee, of course,

13  is -- is -- or my client, individually, as a judgment

14  creditor, is free to release the lien of -- of the -- the

15  trust deed and the foreclosure, as to that partial.

16          THE COURT:  So I'm back to, why hasn't your client

17  gone back to Multnomah County and filed an action to enforce

18  the judgment to make that happen?  Because under the

19  judgment, Multnomah County has jurisdiction for that, and

20  they specifically retain jurisdiction for that.

21          MR. MURPHY:  Yes, I understand, Your Honor.

22          THE COURT:  And your own briefing indicates, I

23  don't have jurisdiction to do anything here.

24          MR. MURPHY:  I -- I wouldn't say, you don't have

25  jurisdiction to do anything; I would say, you don't have

1  jurisdiction to issue a chokehold on your own motion.

2  But in answer to your question, Your Honor, we

3  made a request to Mr. Dinihanian last month to execute the

4  deed; that request was rejected.  And in response, my client

5  has filed a contempt action in Multnomah County.  It's

6  pending.  There's a hearing coming up.

7  THE COURT:  When did that get filed?

8  MR. MURPHY:  That got filed I -- I don't know the

9  exact date.  It was -- it was last week.

10  THE COURT:  And when is the contempt hearing

11  scheduled?

12  MR. MURPHY:  May 22nd, Your Honor.

13  THE COURT:  All right.  So I'm gonna -- you can

14  sit down for a second, and I'm gonna turn to Mr. Miner.

15  Why isn't your client willing to convey the

16  25 percent interest of the daughter's trust like he was

17  ordered to under the judgment?

18  MR. MINER:  Right.  Let me just say this, Your

19  Honor:  A year ago, April of 2018, when I first met

20  Mr. Dinihanian, I saw that he had sent out the notice, under

21  the Tenancy-in-Common Agreement, to sell his interest, and

22  no one was -- and no one was interested.

23  I also knew from speaking with him that he had

24  tried after that to sell the whole property, with the

25  consent of Ms. Logan, and for reasons that the Court already

1  knows, it couldn't go forward.  And that happened in 2017 to
2  2018, to sell it as a whole.

3        So when I was familiar with the partition
4  statutes, I thought, because of that acrimony, it needed to
5  be split.  I knew from the operating agreement of 15005,
6  that the authority is there in Section 6, for Mr. Dinihanian
7  to -- to go ahead with a 50/50; to keep it -- to keep to
8  together, and not divide it into three or four parts, but
9  two, 'cause it seemed like the best interest of both
10 Ms. Logan and my client.

11       So the first thing I did is, I probably spent too
12 much time, Judge, between April and September, to try to
13 convince Mr. Ramis, first, and then Mr. Trompke, when he
14 came onboard, to sell as a whole.  That's what my complaint
15 says, the third amended complaint, is sell as a whole.

16       I was hopeful because, before Ms. Dinihanian, when
17 she filed her answer and counterclaim, said nothing about a
18 deed, a warranty deed.  I knew -- I knew it existed, and I
19 knew of the judgment, but didn't say nothing about it.

20       I went over to Mr. Murphy's office in October, and
21 I said, are you gonna cooperate with this case?  'Cause
22 here's what I want to do.  And what I heard back was nothing
23 about the deed, but they are gonna foreclose, if my client
24 doesn't pay on January 6, 2019, and they're not gonna give
25 us an extension and they're not gonna take partial payments.

1    So I thought, okay, I need to get a trial date.

2           So when -- when calendaring -- so we were set to

3    go in January of this year, January 2019, but I had trouble

4    getting ref -- I filed a motion to appoint three referees,

5    Judge, and -- and the other side didn't answer.

6           THE COURT:  So I'm not sure -- I mean, I -- I get

7    this history --

8           MR. MINER:  I (indiscernible) --

9           THE COURT:  -- but I'm not sure it's answering my

10   question.

11          MR. MINER:  Okay.

12          THE COURT:  I mean, the judgment required that he

13   give this -- I mean, here's what I got to say, on both

14   sides, I'm concerned that -- does the daughter have her own

15   lawyer, who's giving -- making sure her interests are being

16   watched out for?  'Cause I'm not convinced, where everybody

17   is trying to push this through, as quick as possible.  It

18   seems like both, the former Ms. Dinihanian, and your client,

19   want me to do this as quick as possible so that this

20   judgment can get paid.  To hell with the impact on anyone

21   else, is how it's feeling to me.

22          And so I'm curious, under these circumstances, if

23   the daughter or the daughter's trust, has -- has legal

24   counsel that's looking out for their interest; whereas, this

25   deed hasn't been conveyed?

1    On the other side of this case, we have the sister
2  and her children, they have their own interests already in
3  the property, directly.  That's not the circumstance on your
4  client's side of the case.  He's got it all under the LLC
5  right now, even though the judgment, the family law
6  judgment, indicated that that needed to happen long ago.  I
7  don't have no idea why nobody is making that happen.
8    MR. MINER:  Well, all I can say is this, Your
9  Honor:  I know from talking to my client, that when he was
10 trying to get money to pay off the award, the money award,
11 that he couldn't get anyone -- any lender, interested, as
12 you -- as you heard at trial, in using his collateral, the
13 -- you know, the undivided member interest of the plaintiff.
14    THE COURT:  That doesn't answer the question I'm
15 asking.
16    MR. MINER:  Why didn't he sign it?  The only thing
17 I can say is because I thought that I could -- I could act
18 in the best interest of both parties with a partition,
19 50/50.  And when the other side didn't say anything for a
20 year -- the other side -- the former Ms. Dinihanian, didn't
21 say anything for a year af -- until after trial, Your Honor.
22 I feel like I've been hoodwinked.  I don't even know about
23 the May 22nd contempt.  I don't know about that.  That's the
24 first I've heard of it.
25    Now, I'm not a marital lawyer, Your Honor, but for

 1   one year, I've worked on this to, first, sell it as a whole,

 2   and then partition, Your Honor.  And I'm sorry, I just --

 3        THE COURT:  Well, for the last many weeks you've

 4   known that she's gonna go forward, enforcing her deed of

 5   trust on 50 percent of the property when, under the

 6   dissolution agreement, it's pretty clear that her judgment

 7   is only to be satisfied out of his sale of 25 percent

 8   interest.

 9        So why hasn't the daughter's trust, 25 percent

10   interest, been taken off the table?

11        MR. MINER:  'Cause I don't -- Your Honor, because

12   there's a -- there's a security interest, you know, the deed

13   of trust, against the whole 50 percent, which is gonna be

14   sold.  When they sent out the notice of sale, which

15   surprised me in January, that they were gonna do that, with

16   the partition scheduled for trial in March.  I mean, I --

17   Your Honor, all I thought was, since they hadn't objected,

18   then I could go forward.

19        If they had objected and said, hand -- you know,

20   give us the deed, then -- I mean, you're right, it would

21   have been fruitless for me to continue; but we went all the

22   way through trial, and they never said anything until post

23   trial.

24        THE COURT:  Well, they -- they're going forward on

25   foreclosing 50 percent of the interest in the property.

1          MR. MINER:  I know.  And that's -- I'm sure -- and

2   that's why I know I put -- I didn't -- you know, I put the

3   pressure on.  I'll -- I'll admit that; I'll take

4   responsibility for that, because I tried and I couldn't get

5   them to wait until they -- "them," meaning Ms. Dini --

6   Dinihanian, the former -- to wait until, right, this trial

7   occurred, and this was resolved.  I couldn't get them to do

8   that, so they went ahead.

9          So I'm -- you're right, I put the time pressure on

10  this, and -- because it was the only thing that I could do.

11  I still --

12         THE COURT:  Well, I'm -- I'm still -- okay, I

13  understand all of that; I understand the history here.

14         I'm still back to, is your client still taking the

15  position that he's unwilling to -- consistent with the

16  dissolution judgment, convey that 25 percent out of the LLC

17  to the daughter's trust?  Because he's right:  The

18  judgment -- or the deed of trust that she's seeking to

19  foreclose, is foreclosing the LLC's interest.

20         If the LLC has done, as the judgment in the family

21  law case directs, and conveys the 25 percent to the

22  daughter's trust, then that 25 percent interest can't be

23  foreclosed 'cause it no longer belongs to the LLC.  And her

24  only right is to foreclose the LLC's property interest.

25         So why can't that be done?

1          MR. MINER:  I would just -- Your Honor, I'll just

2     repeat what I said before, which is, I've gone through this,

3     including at trial, to partition this, and they did not

4     object; they didn't say one thing.  They -- the subject of

5     executing the deed never came up until March 27th, when the

6     letter was sent to me by Mr. Murphy.  It did not.

7          THE COURT:  Has your client gotten independent

8     legal advice about his obligations to the daughter's trust?

9          MR. MINER:  He has a lawyer, who's now in South

10    Africa, doing some charitable work.  His name is Dan Lorenz,

11    in -- in the domestic case.  I'm -- I'm not his lawyer in

12    that, and so I -- I have to believe that the answer to that

13    is yes.  But -- but that's where his lawyer is.

14          And he sent a letter out to all -- you know, to

15    Mr. Murphy and to others in March, when he was leaving for

16    six weeks.  And that's why I said that at the beginning of

17    my -- my recent letter, Your Honor.

18          THE COURT:  I mean, I just don't -- the

19    explanation and the answer you're giving me doesn't make

20    sense, that they didn't object.  They -- what do they have

21    to object to?  She has a deed of trust of 50 percent of the

22    interest that she's foreclosing.  That's a better deal for

23    her than the judgment even allows.

24          MR. MURPHY:  Well, because it -- you know, it

25    splits it again, right?  It splits it again.  It's an

```
 1  undivided --
 2          THE COURT:  It's an undivided.
 3          MR. MURPHY:  Right.
 4          THE COURT:  It's not a split; it's not a
 5  partition; it's an undivided interest, just like the sister
 6  and the sister's children have, which is not causing
 7  anybody's -- any problems, as far as I understand.
 8          MR. MINER:  Right.  I mean, the original -- the --
 9  the -- the -- Mr. Dinihanian formed the trust, as the
10  trustor, and gave --
11          THE COURT:  I thought that -- the former
12  Ms. Dinihanian --
13          MR. MURPHY:  Yeah.
14          THE COURT:  -- is the trustee?
15          MR. MURPHY:  She's -- she's the trustee.  He -- he
16  funded, so to speak --
17          THE COURT:  Right.
18          MR. MURPHY:  -- the trust, with a half membership,
19  member interest, in 15005, right, in 2011.
20          And so, you're right, it's different than the
21  other four LLC owners, because the trust is not on -- on
22  title.  That's right.  That's right.
23          And the only answer I can give you, Your Honor,
24  is, I knew it was there, and I didn't know what the answer
25  of the other side was gonna be, when I filed the partition
```

1   suit.

2          But I thought, again, with the authority that he

3   had, and -- and not to split it in, you know, four ways,

4   that it was best to go forward on a 50/50 basis, when I

5   couldn't get the other side to agree to sell it as a whole.

6          THE COURT:  And I'm not -- and I want to be clear

7   here:  I'm not suggesting that we partition, to further

8   divide up this property.  I'm suggesting that I think

9   that -- that both sides, sitting here at the tables today,

10  have ethical issues, and fiduciary responsibilities, in her

11  role as trustee of the daughter's trust, and in your

12  client's role, as managing member of the LLC, which he's not

13  the sole owner of, the daughter's trust is a half owner

14  there.

15         MR. MINER:  Right.

16         THE COURT:  I think they both have fiduciary

17  obligations to make sure the daughter's trust is being

18  protected.  And if we march forward, under current

19  circumstances, to this trustee sale, I'm not sure that --

20  I'm not sure that those fiduciary obligations are being paid

21  attention to.

22         So I'm raising that issue because, ultimately, I

23  don't -- I'll just tell you, I don't think I have the

24  authority to stop this sale.  I don't think I do.  I didn't

25  think I did before.  And I wanted to hear the agreements,

1    but I don't think that I have the authority to stop that

2    sale.

3           But I think that there are serious problems if

4    that sale goes forward under current circumstances, which is

5    why I am asking you, very pointedly, and I'm -- frankly, I'm

6    not hearing an answer that makes any sense, why the

7    judgment, as contemplated in the family law case, hasn't

8    been followed through to make sure that the daughter's trust

9    interest in this property is taken out of this foreclosure

10   sale process?

11          And I guess -- I mean, there's nothing I'm gonna

12   do about it here, but I'm flagging this as a problem for --

13          MR. MINER:  Well, if you give me --

14          THE COURT:  -- for the parties, if that -- if we

15   just go forward, how it's going.

16          MR. MINER:  Two things, Your Honor:  If you give

17   me -- I know you've got another docket, but give me an

18   opportunity to talk my -- to my client about the question

19   you asked me about signing the deed, number one.

20          And number two, if he does that, in my judgment,

21   then the plaintiff, in the partition case in front of Your

22   Honor, is asking for a partition of 25 percent from

23   75 percent.

24          THE COURT:  Right.

25          MR. MINER:  That's totally different than the

1  trial in this case.

2          THE COURT:  Well, I think we can amend to conform

3  to the circumstances.  I don't think there would even be an

4  objection to that.  I mean, we could -- we could clarify

5  this, but I'm not sure there would be.  And then we would be

6  back to -- I mean, as everyone knows, the whole reason we're

7  here is because he needs to pay off his judgment.  Under the

8  terms of the judgment, only the 25 percent interest in this

9  property is subject to that, not half of it.  I don't think

10 that was the contemplation of the parties.  That's not how

11 this is written out.

12          It's that the husband, which is your client's

13 interest in the property was to be used as security for this

14 two-plus million-dollar judgment.  And, yet, we're in a

15 situation where that's not the practicality of what's

16 happening.

17          MR. MINER:  No.  And -- and as you pointed out,

18 Your Honor, the deed of trust was there since January of

19 2016.

20          THE COURT:  Exactly.  And as I told you in the

21 closing argument, I'm pretty convinced that the -- the time

22 pressure here is not my problem.  Like, this needed -- steps

23 needed to be taken much before now to avoid this emergency

24 situation.  And that we're in an emergency situation does

25 not mean that I'm gonna railroad this through, because there

1   are many parties who have an interest here, and my job is to
2   make sure the equity happens for everybody, not just for
3   your client so that he can get the money that he needs to
4   pay off, that he's known he's needed to pay off, for many
5   years.  That's where we are.
6           So I mean, I think I've tried to forecast this in
7   several different ways, and the reality is, the practicality
8   is, that even if we're gonna get to a partition, which I've
9   said, I think that's the only remedy here that makes sense,
10  I don't think it's happening under the time frame that your
11  client needs, because there are other people's interests
12  here that have to be factored into.
13          So I mean, we're getting beyond what we're here
14  for today.  Give me one second; look at my notes.
15                      (Pause in proceedings.)
16          THE COURT:  All right.
17          MR. MURPHY:  Your Honor, could I -- I'm sorry,
18  could I --
19          THE COURT:  Yeah.  I told you I'd give you a few
20  minutes to --
21          MR. MURPHY:  Okay.
22          THE COURT:  -- tell me anything else you want me
23  to know about the situation, so I'll do that.
24          MR. MURPHY:  I just want to weigh in on some of
25  the questions that Your -- Your Honor's asked.

1       First of all, my understanding is that, in the --
2  in the family law case in Multnomah County, that an attorney
3  was appointed for -- for Sonja Dinihanian, the daughter.
4  His name is Chris O'Neill.  I don't know if he's still on
5  the case, but at -- but at the time that this judgment was
6  negotiated, apparently, he was counsel for the daughter,
7  Sonja Dinihanian.
8       In terms of my client's duties as a trustee, if --
9  if -- if she is allowed to take the stand and testify, she
10 will testify that the entire reason that this judgment was
11 structured the way it was, was to permit plenty of time to
12 get Sonja's interest carved out from Mr. Dinihanian's
13 interest, and to separate those two.
14      THE COURT:  Which was -- which was the impetus for
15 my questions of why hasn't your client made that happen.
16 Because if she goes forward and forecloses 50 percent
17 interest on this property, she's doing that on her own name,
18 not in the trust's name.
19      MR. MURPHY:  Right.  And Your -- Your Honor, she's
20 aware of that.  That's why she filed a motion for contempt;
21 that's why we've asked Mr. Dinihanian to sign off on this
22 judgment; that's why I printed it -- we -- we weren't -- it
23 wasn't our responsibility to print a deed up and provide it
24 to Mr. Dinihanian; it was their responsibility to execute
25 the judgment.

1          THE COURT:  Well --

2          MR. MURPHY:  To execute the deed, Your Honor.

3          THE COURT:  Well, okay, fine.  But it's been --

4          MR. MURPHY:  We provided them with the

5    opportunity --

6          THE COURT:  It's been four years, so your client

7    has some responsibility, as trustee of that trust, to make

8    sure that its interests are being protected.  And for the

9    last several years, she's done nothing to make sure that

10   that 25 percent interest gets conveyed to the trust, that I

11   can tell.  You're telling me that she hasn't done that.

12         MR. MURPHY:  Your Honor, she -- she --

13   Mr. Dinihanian can sign this deed right now, and take all

14   these issues off the table.  And he should sign it right now

15   'cause he's obligated under the Multnomah County judgment to

16   do so.  He can solve a lot of problems simply by complying

17   with the judgment right now, right here, today.  There's no

18   reason he -- there's no reason for him to avoid doing that.

19         Your Honor, I do want to point out, the stated

20   reason for his not doing that is -- is that -- is that the

21   plaintiff wants to obtain a loan secured by its divided

22   parcel to pay off the money award.  That means the 50

23   percent parcel.  That means Mr. Dinihanian wants to use the

24   daughter's 25 percent interest as collateral for a personal

25   loan to him to pay a debt to my client.

1       THE COURT:  I'm aware of that.

2       MR. MURPHY:  And -- and the evidence would --

3  would show that he has millions of dollars in assets.  And

4  the -- the allegation, that he included in his third amended

5  complaint, that he needed to sell his property or -- or to

6  take a loan out on his property to pay my client off, is --

7  is false.  He could sell his motorcycle collection that's

8  worth a million dollars; he could sell his helicopter that's

9  worth a million dollars.  On and on and on.  I mean, it --

10  the -- I -- I do not believe that's an accurate

11  representation that was made to the Court.

12       MR. MINER:  Your -- Your Honor, I'll just say one

13  thing, 'cause I know you're busy, and that is, the Burnside

14  property that was in an exhibit, that was a 1031 exchange,

15  and the money went into the Forest Grove property that my

16  client testified about at trial.  He doesn't -- he doesn't

17  have cash from that.

18       He also testified about what he's done to try to

19  pay off the money awards.  It's true that the only way that

20  he has to do it is this property, this Cornell property.

21  Thank you.

22       THE COURT:  All right.  Well, as I said, I'm not

23  gonna stop this sale.  I have flagged, for both parties,

24  some problems that I think are there for both of them, if it

25  goes forward as it's currently structured.  But I don't --

1  I'm not comfortable with -- I'm not convinced that I even

2  have the authority to stop this sale, under the current

3  posture of this case, and how this is all arising; and I'm

4  not sure that it would be equitable to do so, even if I had

5  the authority, and so I'm not going to do that.

6       And so I guess we're in recess at this point.

7            MR. MINER:  Thank you, Your Honor.

8            MR. MURPHY:  Your Honor, could I ask one more

9  thing?

10            THE COURT:  Briefly.

11            MR. MURPHY:  We're asking that you order

12  Mr. Dinihanian to sign that deed.

13            THE COURT:  No.

14            MR. MURPHY:  Okay.

15            THE COURT:  The Multnomah County -- under the

16  judgment, the Multnomah County court retained jurisdiction

17  over enforcement of that judgment.  You're in the wrong

18  court for that.

19                 (End of recording at 9:01 a.m.)

20

21

22

23

24

25

1                          GENERAL INDEX

2                                                        PAGE NO.

3   April 8, 2019, Proceedings                                  3

4   Reporter's Certificate                                     27

5

6                          WITNESS INDEX

7                            (None.)

8

9                          EXHIBITS INDEX

10                        (None marked.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              REPORTER'S CERTIFICATE

2          I, Chantell S. Halsted, a Court Reporter and

3    Notary Public in and for the State of Oregon, certify that I

4    transcribed in stenotype the foregoing proceedings from the

5    record provided to me on data CD in the above-entitled case;

6          I further certify that my stenotype notes were

7    reduced to transcript form by Computer-Aided Transcription

8    under my direction;

9          And I further certify that pages 1-27 contain a

10   full, true, and accurate record of my stenotype notes.

11         Witness my hand at Portland, Oregon, this 17th day

12   of September, 2021.

13                       _____

14                       Chantell S. Halsted
                         Notary Public No.: 991529
15                       My Commission Expires: 09-08-20

16

17

18

19

20

21

22

23

24

25

**1**

**1031** 24:14

**150** 9:5

**15005** 3:6,10
11:5 17:19

**18CV17059** 3:7

**2**

**2011** 17:19

**2016** 20:19

**2017** 11:1

**2018** 10:19 11:2

**2019** 3:1 6:25
11:24 12:3 26:3

**22nd** 10:12
13:23

**25** 5:17 6:1,5,6,
10 7:9,15 8:7,
10,14,22 10:16
14:7,9 15:16,
21,22 19:22
20:8 23:10,24

**27** 26:4

**27th** 16:5

**3**

**3** 26:3

**5**

**50** 6:5 7:4,6,8
8:10 14:5,13,25
16:21 22:16
23:22

**50/50** 11:7
13:19 18:4

**6**

**6** 11:6,24

**7**

**75** 19:23

**8**

**8** 3:1 26:3

**8:34** 3:1

**9**

**9:01** 25:19

**A**

**a.m.** 3:1 25:19

**accomplish**
8:5,25

**accurate** 24:10

**acrimony** 11:4

**act** 13:17

**action** 3:11 4:3,
7 9:17 10:5

**actions** 4:9

**address** 3:9

**admit** 15:3

**advice** 16:8

**af** 13:21

**Africa** 16:10

**agree** 18:5

**agreement**
10:21 11:5 14:6

**agreements**
18:25

**ahead** 11:7
15:8

**allegation** 24:4

**allowed** 8:16
22:9

**amend** 20:2

**amended**
11:15 24:4

**amount** 8:13

**answering**
12:9

**anybody's**
17:7

**apparently**
22:6

**appoint** 12:4

**appointed** 22:3

**April** 3:1 10:19
11:12 26:3

**argued** 4:1

**argument** 4:10
20:21

**arguments**
3:15

**arising** 25:3

**assets** 24:3

**attention** 18:21

**attorney** 3:13
5:13 7:17 22:2

**authority** 4:3
11:6 18:2,24
19:1 25:2,5

**avoid** 20:23
23:18

**award** 13:10
23:22

**awards** 24:19

**aware** 4:25
22:20 24:1

**B**

**back** 7:7 8:24
9:16,17 11:22
15:14 20:6

**basis** 18:4

**beginning**
16:16

**belongs** 15:23

**bit** 3:21

**briefing** 3:14
9:22

**Briefly** 25:10

**Burnside**
24:13

**busy** 24:13

**buy** 5:24

**C**

**calendaring**
12:2

**carved** 22:12

**case** 3:23 4:15
7:13 11:21
13:1,4 15:21
16:11 19:7,21
20:1 22:2,5
25:3

**cash** 24:17

**caused** 7:12

**causing** 17:6

**Certificate**
26:4

**charitable**
16:10

**children** 13:2
17:6

**chokehold**
10:1

**Chris** 22:4

**circumstance**
13:3

**circumstances**
4:16 12:22
18:19 19:4 20:3

**clarify** 20:4

**clear** 3:21 5:6,
16 14:6 18:6

**client** 3:25 6:9
7:3 9:12,13,16
10:4,15 11:10,
23 12:18 13:9
15:14 16:7
19:18 21:3,11
22:15 23:6,25
24:6,16

**client's** 13:4
18:12 20:12
22:8

**clients'** 3:19

**closing** 20:21

**collateral**
13:12 23:24

**collection** 24:7

**comfortable**
25:1

**complaint**
11:14,15 24:5

**completely** 9:3

**complying**
23:16

**concerned**
12:14

**confirming**
5:17

**conform** 20:2

**confused** 7:7

**confusion** 3:22

**consent** 10:25

**consistent**
15:15

**contemplated**
7:25 19:7

**contemplates**
6:2,4

**contemplation**
20:10

**contempt** 10:5,
10 13:23 22:20

**continue** 14:21

**convey** 7:12,15
10:15 15:16

**conveyed**
8:11,24 12:25
23:10

**conveys** 8:21
15:21

**convince**
11:13

**convinced**
12:16 20:21
25:1

**cooperate**
11:21

**Cornell** 3:6,10
9:5 24:20

**counsel** 5:11
12:24 22:6

**counterclaim**
4:6 11:17

**County** 5:5
9:17,19 10:5
22:2 23:15
25:15,16

**court** 3:4,5 5:2,
5,21,23 6:13,23
7:2,12,14,19,21
8:5,16,19 9:6,8,
16,22 10:7,10,
13,25 12:6,9,12
13:14 14:3,24
15:12 16:7,18
17:2,4,11,14,17
18:6,16 19:14,
24 20:2,20
21:16,19,22
22:14 23:1,3,6
24:1,11,22
25:10,13,15,16,
18

**creditor** 9:14

**curious** 12:22

**current** 18:18
19:4 25:2

**D**

**Dan** 16:10

**date** 10:9 12:1

**daughter**
12:14,23 22:3,6

**daughter's**
4:16 5:16,25
6:6,10 8:1,3,8,
24 9:3 10:16
12:23 14:9
15:17,22 16:8
18:11,13,17
19:8 23:24

**deal** 16:22

**debt** 23:25

**decided** 4:1

**decisions** 4:23

**decree** 7:25

**deed** 5:16,25
6:10,21 7:4,5,8
8:6,8 9:1,2,15
10:4 11:18,23
12:25 14:4,12,
20 15:18 16:5,
21 19:19 20:18
22:23 23:2,13
25:12

**deeded** 9:11

**delay** 6:16

**Dini** 15:5

**Dinihanian**
3:25 4:13,18
5:24 6:3,18
7:12,17 8:1 9:2
10:3,20 11:6,16
12:18 13:20
15:6 17:9,12
22:3,7,21,24
23:13,23 25:12

**Dinihanian's**
3:9,13 7:9
22:12

**directly** 13:3

**directs** 15:21

**dismissed** 4:7

Case 19-31883-dwh11    Doc 493    Filed 11/22/21

**dissolution** 14:6 15:16

**divide** 11:8 18:8

**divided** 23:21

**docket** 19:17

**dollars** 24:3,8,9

**domestic** 16:11

**duties** 22:8

**E**

**emergency** 20:23,24

**end** 25:19

**enforce** 9:17

**enforcement** 25:17

**enforcing** 14:4

**enjoin** 4:3

**entire** 22:10

**equation** 9:4

**equitable** 4:2 25:4

**equity** 4:5 21:2

**et al** 3:6

**ethical** 18:10

**eve** 4:8

**evidence** 24:2

**exact** 10:9

**exchange** 24:14

**execute** 8:7 10:3 22:24 23:2

**executing** 8:8 16:5

**exhibit** 24:14

**EXHIBITS** 26:9

**existed** 11:18

**explain** 3:20

**explanation** 16:19

**extension** 11:25

**F**

**factored** 21:12

**false** 24:7

**familiar** 3:14 11:3

**family** 4:15 5:5, 9,13 13:5 15:20 19:7 22:2

**feel** 13:22

**feeling** 12:21

**fiduciary** 18:10,16,20

**filed** 3:12,21 4:6 9:17 10:5,7,8 11:17 12:4 17:25 22:20

**fine** 23:3

**flagged** 24:23

**flagging** 19:12

**forecast** 21:6

**foreclose** 8:9 9:10 11:23 15:19,24

**foreclosed** 8:13,15 9:12 15:23

**forecloses** 22:16

**foreclosing** 7:5,6 8:6 14:25 15:19 16:22

**foreclosure** 5:3 8:2,23 9:4, 9,15 19:9

**Forest** 24:15

**formed** 17:9

**forward** 8:9,23 11:1 14:4,18,24 18:4,18 19:4,15 22:16 24:25

**frame** 21:10

**frankly** 19:5

**free** 9:14

**front** 19:21

**fruitless** 14:21

**fulfill** 6:18

**funded** 17:16

**G**

**gave** 17:10

**GENERAL** 26:1

**give** 3:17 5:13 11:24 12:13 14:20 17:23 19:13,16,17 21:14,19

**giving** 12:15 16:19

**Grove** 24:15

**guess** 19:11 25:6

**H**

**half** 17:18 18:13 20:9

**hand** 14:19

**happen** 5:25 6:10,15 8:21 9:18 13:6,7 22:15

**happened** 11:1

**happening** 20:16 21:10

**hear** 4:18,23 18:25

**heard** 11:22 13:12,24

**hearing** 3:8 10:6,10 19:6

**held** 3:3 6:6

**helicopter** 24:8

**hell** 12:20

**history** 12:7 15:13

**hold** 5:21

**holds** 9:6,9

**Honor** 5:20 6:12,14,17,20 7:1,10 8:12,20 9:21 10:2,12,19 13:9,21,25 14:2,11,17 16:1,17 17:23 19:16,22 20:18

**Honor's** 21:25

**hoodwinked** 13:22

**hopeful** 11:16

**hoping** 5:13 6:18

**husband** 20:12

**I**

**idea** 4:9 13:7

**impact** 8:3 12:20

**impetus** 22:14

**important** 4:17,22 7:24

**inaccurate** 8:9

**included** 24:4

**including** 16:3

**independent** 16:7

**INDEX** 26:1,6,9

**indiscernible** 12:8

**individually** 9:13

**insight** 5:14

**insist** 6:9

**intended** 7:11

**interest** 3:10 5:17 6:1,4,5 7:4,6,9,16 8:2, 7,15,22,24 10:16,21 11:9 12:24 13:13,18 14:8,10,12,25 15:19,22,24 16:22 17:5,19 19:9 20:8,13 21:1 22:12,13, 17,18,20 25:16

**interested** 10:22 13:11

**interests** 4:18 12:15 13:2 21:11 23:8

**intervening** 6:16

**involved** 4:16

**issue** 4:15 10:1 18:22

**issued** 5:5

**issues** 4:25 18:10 23:14

**J**

**January** 11:24 12:3 14:15 20:18

**job** 21:1

**Judge** 7:24 11:12 12:5

**judgment** 5:4, 8,9,15 6:1,2,3, 19 7:8 9:13,18, 19 10:17 11:19 12:12,20 13:5,6 14:6 15:16,18, 20 16:23 19:7, 20 20:7,8,14 22:5,10,22,25 23:15,17 25:16, 17

**June** 7:22

**jurisdiction** 9:19,20,23,25 10:1 25:16

**K**

**knew** 10:23 11:5,18,19 17:24

**L**

**large** 6:8

**law** 5:5,9,13 13:5 15:21 19:7 22:2

**lawyer** 12:15 13:25 16:9,11, 13

**lead** 6:8

**leaving** 16:15

**legal** 12:23 16:8

**lender** 13:11

**letter** 6:23 16:6, 14,17

**lien** 9:14

**LLC** 3:6 7:13 9:6,7 13:4 15:16,20,23 17:21 18:12

**LLC's** 3:10 15:19,24

**loan** 23:21,25 24:6

**Logan** 10:25 11:10

**long** 13:6

**longer** 15:23

**Lorenz** 16:10

**lot** 23:16

**M**

**made** 4:11 10:3 22:15 24:11

**make** 9:18 16:19 18:17 19:8 21:2 23:7, 9

**makes** 19:6 21:9

**making** 4:23 12:15 13:7

**managing** 18:12

**march** 6:25 14:16 16:5,15 18:18

**marital** 13:25

**marked** 26:10

**matter** 4:4

**meaning** 15:5

**means** 23:22, 23

**Meisenheimer** 7:25

**member** 13:13 17:19 18:12

**membership** 17:18

**met** 10:19

**middle** 7:4 8:6

**midstream** 8:19

www.LNScourtreporting.com

Case 19-31883-dwh11    Doc 493    Filed 11/22/21

**million** 24:8,9

**million-dollar** 20:14

**millions** 24:3

**Miner** 5:20,22 6:23 10:14,18 12:8,11 13:8,16 14:11 15:1 16:1,9 17:8 18:15 19:13,16, 25 20:17 24:12 25:7

**minutes** 3:17 21:20

**missed** 3:18

**monday** 3:1

**money** 13:10 21:3 23:22 24:15,19

**month** 6:25 10:3

**morning** 3:8

**motion** 10:1 12:4 22:20

**motorcycle** 24:7

**Multnomah** 5:5 9:17,19 10:5 22:2 23:15 25:15,16

**Murphy** 6:12, 14 7:1,10,15, 20,23 8:12,17, 20 9:7,9,21,24 10:8,12 16:6, 15,24 17:3,13, 15,18 21:17,21, 24 22:19 23:2, 4,12 24:2 25:8, 11,14

**Murphy's** 11:20

**N**

**needed** 11:4 13:6 20:22,23 21:4 24:5

**negotiate** 7:10

**negotiated** 22:6

**noted** 4:6

**notes** 21:14

**notice** 8:14 10:20 14:14

**number** 19:19, 20

**NW** 3:6,10

**O**

**O'NEILL** 22:4

**object** 4:13 16:4,20,21

**objected** 14:17,19

**objection** 3:12, 21 5:2 20:4

**obligated** 23:15

**obligation** 6:2

**obligations** 6:19 16:8 18:17,20

**obtain** 23:21

**occurred** 15:7

**October** 11:20

**office** 11:20

**onboard** 11:14

**open** 3:3

**operating** 11:5

**opportunity** 19:18 23:5

**order** 25:11

**ordered** 10:17

**original** 17:8

**owed** 5:8

**owner** 18:13

**owners** 5:24 17:21

**P**

**paid** 12:20 18:20

**parcel** 23:22,23

**part** 4:2 7:24

**partial** 9:15 11:25

**participate** 4:1

**parties** 13:18 19:14 20:10 21:1 24:23

**partition** 3:11 4:3 11:3 13:18 14:2,16 16:3 17:5,25 18:7 19:21,22 21:8

**parts** 11:8

**party** 4:10

**pause** 21:15

**pay** 5:8 11:24 13:10 20:7 21:4 23:22,25 24:6, 19

**payments** 11:25

**pending** 10:6

**people's** 21:11

**percent** 5:17 6:1,5,6,10 7:4, 6,8,9,15 8:10, 14,22 10:16 14:5,7,9,13,25 15:16,21,22 16:21 19:22,23 20:8 22:16 23:10,23,24

**permit** 22:11

**personal** 23:24

**plaintiff** 7:12 8:21 13:13 19:21 23:21

**plenty** 22:11

**point** 4:25 9:4 23:19 25:6

**pointed** 20:17

**pointedly** 19:5

**position** 4:19, 24 15:15

**positions** 3:19

**post** 14:22

**postpone** 5:2

**postponing** 4:13,14

**posture** 3:23 4:22 25:3

**practicality** 20:15 21:7

**present** 4:10

**pressure** 15:3, 9 20:22

**pretty** 4:21 14:6 20:21

**primary** 7:2

**print** 22:23

**printed** 22:22

**problem** 8:23 19:12 20:22

**problems** 17:7 19:3 23:16 24:24

**procedural** 3:23 4:22

**proceedings** 3:3 21:15 26:3

**process** 19:10

**property** 3:11 5:18 6:4 7:9 8:2,10,13 9:5, 10 10:24 13:3 14:5,25 15:24 18:8 19:9 20:9, 13 22:17 24:5, 6,14,15,20

**property's** 9:11

**protected** 18:18 23:8

**provide** 22:23

**provided** 23:4

**pull** 5:19

**push** 12:17

**put** 15:2,9

**Q**

**question** 6:8,9 10:2 12:10 13:14 19:18

**questions** 3:16 5:10,12 21:25 22:10

**quick** 12:17,19

**R**

**railroad** 20:25

**raising** 18:22

**Ramis** 11:13

**read** 3:12 6:23

**reality** 21:7

**reason** 5:7 20:6 22:10 23:18,20

**reasons** 4:17 10:25

**recent** 6:24,25 16:17

**recently** 6:15

**recess** 25:6

**recognize** 4:21

**record** 3:5

**recording** 25:19

**ref** 12:4

**referees** 12:4

**reiterate** 3:14, 18

**rejected** 10:4

**relate** 5:12

**related** 4:10

**relationships** 4:15

**release** 9:14

**remains** 7:24

**remedy** 21:9

**repeat** 16:2

**Reporter's** 26:4

**representation** 24:11

**request** 6:24 10:3,4

**requested** 6:15

**required** 3:9 5:9 12:12

**resolved** 15:7

**respond** 6:12

**responded** 7:17

**responding** 6:24

**response** 10:4

**responses** 7:3

**responsibilitie s** 18:10

**responsibility** 15:4 22:23,24 23:7

**retain** 9:20

**retained** 25:16

**reviewed** 5:1,4

**revise** 8:13,14

**Road** 3:6

**role** 18:11,12

**S**

**sale** 3:10 4:4,14 5:3 7:22,23 14:7,14 18:19, 24 19:2,4,10 24:23 25:2

**satisfied** 14:7

**scheduled** 3:9 7:22 10:11 14:16

**Section** 11:6

**secured** 23:21

**security** 14:12 20:13

**seeking** 15:18

**sell** 10:21,24 11:2,14,15 14:1 18:5 24:5,7,8

**sense** 16:20 19:6 21:9

**separate** 8:1 22:13

**September** 11:12

**set** 12:2

**shortly** 4:8

**show** 24:3

**side** 12:5 13:1, 4,19,20 17:25 18:5

**sides** 12:14 18:9

**sign** 6:21 13:16 22:21 23:13,14 25:12

**signing** 19:19

www.LNScourtreporting.com

signs 9:2

5:2

simply 23:16

sister 13:1 17:5

sister's 17:6

sit 10:14

sitting 4:3 18:9

situation 20:15,24 21:23

sold 14:14

sole 18:13

solve 23:16

Sonja 22:3,7

Sonja's 22:12

sort 3:23 5:5

South 16:9

speak 17:16

speaking 10:23

specific 3:16

specifically 9:20

spent 3:15 11:11

split 11:5 17:4 18:3

splits 16:25

stand 22:9

started 4:8

stated 23:19

statutes 11:4

statutorily 8:16

stay 5:3

steps 20:22

stop 18:24 19:1 24:23 25:2

structured 22:11 24:25

subject 3:11 16:4 20:9

suggested 4:12

suggesting 18:7,8

suggestion

suit 18:1

surprised 14:15

———

T

table 14:10 23:14

tables 18:9

taking 4:9 15:14

talk 19:18

talking 6:4 13:9

teed 5:7

telling 23:11

temporarily 5:3

Tenancy-in-common 10:21

terms 4:23 5:15 20:8 22:8

testified 24:16, 18

testify 6:17 22:9,10

thing 11:11 13:16 15:10 16:4 24:13 25:9

things 19:16

thought 11:4 12:1 13:17 14:17 17:11 18:2

time 3:15 11:12 15:9 20:21 21:10 22:5,11

title 17:22

today 4:20 7:19 18:9 21:14 23:17

told 20:20 21:19

totally 19:25

trial 4:1,2,8 5:7 12:1 13:12,21 14:16,22,23 15:6 16:3 20:1 24:16

trigger 5:19,23

Trompke 11:13

trouble 12:3

true 24:19

trust 4:16 5:16, 25 6:7,10 7:4, 16 8:1,3,7,8,11, 22,25 9:3,15 10:16 12:23 14:5,9,13 15:17,18,22 16:8,21 17:9, 18,21 18:11,13, 17 19:8 20:18 23:7,10

trust's 5:17 22:18

trustee 3:10 4:4,14 7:21 9:12 17:14,15 18:11,19 22:8 23:7

trustor 17:10

turn 10:14

two-plus 20:14

———

U

ultimately 18:22

uncomfortable 4:9

understand 4:24 9:21 15:13 17:7

understanding 22:1

understands 6:3

undivided 5:17 7:16 13:13 17:1,2,5

unusual 3:23 4:22

unwilling 15:15

———

V

———

view 4:25

———

W

———

wait 15:5,6

wanted 18:25

warranty 6:21 11:18

watched 12:16

ways 18:3 21:7

week 10:9

weekend 3:15

weeks 14:3 16:16

weigh 21:24

work 16:10

worked 14:1

worth 24:8,9

written 20:11

wrong 25:17

———

Y

———

year 10:19 12:3 13:20,21 14:1

years 6:10,16 21:5 23:6,9

www.LNScourtreporting.com

1  Douglas Pahl, OR Bar No. 950476
   DPahl@perkinscoie.com
2  Matthew Mertens, OR Bar No. 146288
   MMertens@perkinscoie.com
3  PERKINS COIE LLP
   1120 N.W. Couch Street, 10th Floor
4  Portland, OR  97209-4128
   Telephone:  503.727.2000
5  Facsimile:  503.727.2222

6  Counsel for Debtor and Debtor-in-Possession
   *15005 NW Cornell LLC*

7
   Nicholas J. Henderson, OSB No. 074027
8  nhenderson@portlaw.com
   Motschenbacher & Blattner, LLP
9  117 SW Taylor St., Suite 300
   Portland, OR 97204
10 Telephone: (503) 417-0508
   Facsimile: (503) 417-0528
11
   Counsel for Debtor and Debtor-in-Possession
12 *Vahan M. Dinihanian, Jr.*

13              UNITED STATES BANKRUPTCY COURT

14               FOR THE DISTRICT OF OREGON

15 | In re | Bankruptcy Case Nos.: |
16 | 15005 NW CORNELL LLC, and | 19-31883-dwh11 (Lead Case) |
17 | VAHAN M. DINIHANIAN, JR. | 19-31886-dwh11 |
18 | Debtors.[1] | Jointly Administered Under Case No. 19-31883-dwh11 |
19
20 **DEBTORS' APPLICATION TO EMPLOY BATEMAN SEIDEL P.C. AS ATTORNEYS IN WASHINGTON COUNTY CASE NO. 18CV17059**
21

22      Debtors and debtors-in-possession 15005 NW Cornell LLC ("***Cornell***") and Vahan M.

23  Dinihanian, Jr. ("***Dinihanian***," collectively, "***Debtors***"), hereby apply to the Court for an order approving

24  the employment of Bateman Seidel P.C. ("***Bateman Seidel***") as counsel for Debtors in the property

25  _____

26  [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
    number, are: 15005 NW Cornell LLC (5523) and Vahan M. Dinihanian, Jr. (0871).

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit J-1
1 of 20

1  partition litigation in Washington County Circuit Court, Case No. 18CV17059 (the "***Partition Case***").

2  Debtors make this Application pursuant to 11 USC § 327(e), and Federal Rule of Bankruptcy Procedure

3  2014, and respectfully represents as follows.

4    1.    This Court has jurisdiction over this matter pursuant to 28 USC §§ 1334 and 157.  This

5  matter is a core proceeding pursuant to 28 USC § 157(b)(2)(A) and (O).  Venue of this proceeding is

6  proper in this District pursuant to 28 USC §§ 1408 and 1409.  The statutory predicates for the relief

7  requested herein are 11 USC §§ 105(a) and 327.

8    2.    On May 21, 2019 (the "***Petition Date***"), Debtors filed Voluntary Petitions for relief under

9  Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***").

10    3.    Cornell is a non-operating business pursuant to 11 USC §§ 1107 and 1108 of the Code.

11  Dinihanian is an individual chapter 11 debtor.  No trustee or examiner has been requested or appointed in

12  Debtors' cases.

13    4.    Debtors have provided notice of this Application to their 20 largest unsecured creditors,

14  their secured creditor(s), and the Office of the United States Trustee.  No unsecured creditors' committee

15  has been appointed in this case.  Because of the nature of the relief requested, Debtors respectfully submit

16  that no further notice of the relief requested is necessary or required under the circumstances.

17    5.    Cornell is an Oregon member-managed limited liability company that owns, as a tenant-

18  in-common, a fifty-percent interest in approximately 38 acres of unimproved property located at 15005

19  NW Cornell Road, Beaverton, Oregon (the "***Property***").  Dinihanian is the managing member of Cornell.

20  Eagle Holdings LLC, an Oregon limited liability company that is wholly owned by Dinihanian, is the half

21  owner of Cornell.  The other half owner is the Sonja Dinihanian GST Trust DTS 1/1/11.

22    6.    The property is currently the subject of the Partition Case, initiated by Cornell against

23  limited liability companies owned or controlled by Lilian Logan, Mr. Dinihanian's sister, and her children.

24  Evidence adduced in the partition action indicates Cornell's interest in the Property possesses a value

25  sufficient to pay all of Cornell's scheduled creditors in full.  Prior to the completion of the Partition Case,

26  however, borrowing against or selling the Property to pay creditors was not practicable.

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Exhibit J-1
2 of 20

Case 19-31883-dwh11    Doc 498    Filed 09/22/19

1  7.  Debtors desire to retain and employ Bateman Seidel to continue to represent Cornell as

2  ordinary course special counsel in the Partition Case, pursuant to subsection 327(e) of the Code.

3  8.  Debtors believe Bateman Seidel is well suited for this representation as it served as

4  prepetition counsel to Cornell in the Partition Case.  Gregory Miner will be the professional primarily

5  responsible for providing services to the Debtors in the Partition Case and has experience in all aspects of

6  the law that may apply in completing the Partition Case.  In particular, Gregory Miner has substantial

7  litigation, real property and partition law expertise.  Gregory Miner's professional biography is attached

8  hereto as **Exhibit A**.

9  9.  The professional services that Gregory Miner is expected to render include: advancing the

10  Partition Case toward conclusion, including but not limited to taking steps toward the preparation of a

11  partition-in-kind judgment, and generally assisting the Debtors in real property, master planning and land

12  use matters as Debtors may require.

13  10.  Subject to Court approval, Debtors have agreed to compensate Bateman Seidel on an

14  hourly basis in accordance with Bateman Seidel's ordinary and existing hourly rates in effect on the dates

15  services are rendered.  Bateman Seidel's services will be billed to the estates for payment as administrative

16  expenses under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.  Gregory Miner's current billing

17  rate is as follows:

| Name | Hourly Rate |
|---|---|
| Gregory Miner | $400.00 |

18

19

20  11.  Bateman Seidel will maintain detailed, contemporaneous time records of expenses

21  incurred, with the rendering of accounting services described above by category and nature of services

22  rendered.  While Bateman Seidel customarily renders litigation services for clients based on an hourly

23  billing rate, Bateman Seidel expects that the Debtors' total expenditures for its services will not exceed

24  $25,000.00 but not including appeal fees and costs, subject of course to further adjustments as may be

25  necessary and approved by the Court.

26

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit J-1
3 of 20

Case 19-31883-dwh11  Doc 498  Filed 09/22/19

1    12.    Bateman Seidel has not agreed to any variations from, or alterations to, his standard or

2  customary billing arrangements for this engagement.

3    13.    Bateman Seidel has not varied its rate based on the geographic location of these bankruptcy

4  cases.

5    14.    Within the 12-month period preceding the Petition Date, Bateman Seidel has represented

6  Cornell in the Partition Case.  For such prepetition representation, Bateman Seidel is owed a total of

7  $170,071.78, plus $2,160.00 on the other non-partition matter.  Bateman Seidel intends to retain this

8  prepetition claim pursuant to subsection 327(e).

9    15.    Other than as set forth herein and in the concurrently submitted Rule 2014 Verified

10  Statement filed with this Application, to the best of Debtors' knowledge, Bateman Seidel does not have

11  any connection with Debtors, its creditors, any other party in interest, or their respective attorneys or

12  accountants.

13    16.    A proposed Order Authorizing the Employment of Bateman Seidel is attached hereto and

14  incorporated by reference herein as **Exhibit B**.

15    For the reasons stated in this Application, Debtors respectfully request that the Court enter an order

16  authorizing the employment of Bateman Seidel to represent Debtors as special ordinary course counsel in

17  the Partition Case, with compensation and reimbursement of expenses to be paid as an administrative

18  expense in such amounts as may be allowed by this Court after notice and hearing pursuant to Section 330

19  of the Bankruptcy Code or as otherwise provided by Court order.

20    Dated:  September 24, 2019            15005 NW CORNELL LLC

21                                By: _____

22                                   Vahan Megar Dinihanian, Jr.

23

24

25

26

PAGE  4-    DEBTORS' APPLICATION TO EMPLOY GREGORY
            MINER OF BATEMAN SEIDEL P.C. AS ATTORNEYS
            IN WASHINGTON COUNTY CASE NO. 18CV17059

134541-0001/145332360.3

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    Presented by:

2    Dated:  September 24, 2019                   **PERKINS COIE LLP**

3                                     By: */s/ Douglas R. Pahl*

4                                        Douglas R. Pahl, OSB No. 950476
                                        DPahl@perkinscoie.com

5                                        Matthew J. Mertens, OSB No. 146288
                                        MMertens@perkinscoie.com

6                                        PERKINS COIE LLP
                                        1120 N.W. Couch Street, Tenth Floor

7                                        Portland, OR  97209-4128
                                        Telephone:  503.727.2000

8                                        Facsimile:  503.727.2222

9                                  Counsel for Debtor and Debtor-in-Possession
                                  *15005 NW Cornell LLC*

10

11   DATED:  September 24, 2019                  **MOTSCHENBACHER & BLATTNER, LLP**

12                                   By: */s/ Nicholas J. Henderson*

13                                        Nicholas J. Henderson, OSB No. 074027
                                        nhenderson@portlaw.com

14                                       Motschenbacher & Blattner, LLP
                                        117 SW Taylor St., Suite 300

15                                       Portland, OR 97204
                                        Telephone: (503) 417-0508

16                                       Facsimile: (503) 417-0528

17                                Counsel for Debtor and Debtor-in-Possession
                                *Vahan M. Dinihanian, Jr.*

18

19

20

21

22

23

24

25

26

PAGE  5-   DEBTORS' APPLICATION TO EMPLOY GREGORY
MINER OF BATEMAN SEIDEL P.C. AS ATTORNEYS
IN WASHINGTON COUNTY CASE NO. 18CV17059

134541-0001/145332360.3

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 19-31883-dwh11   Doc 490   Filed 09/22/20

Exhibit J-1
5 of 20

# Exhibit A

# Greg Miner's Professional Biography



# Gregory J. Miner

Shareholder
Practice Groups: Litigation: Business, Commercial, Construction, Real Estate

## Bateman Seidel

Bateman Seidel Miner Blomgren Chellis & Gram, P.C.
888 SW Fifth Avenue, Suite 1250
Portland, Oregon 97204
Tel: 503 972 9932 / Fax: 503 972 9952
E-mail: gminer@batemanseidel.com

Greg Miner is one of six founding shareholders of Bateman Seidel and has 37 years of litigation experience, including 29 years in the federal and state courts in Oregon and Washington. Previously, he also practiced in the District of Columbia, Maryland, and Virginia.

His litigation practice has always involved jury and judge trials, as well as arbitration. His experience and focus is primarily on complex business, commercial, construction, and real estate disputes involving contracts, personal injury, property damage, and premises liability claims and defenses. He has represented plaintiffs and defendants in litigating these matters. He has acted as a sole arbitrator in commercial, real estate, construction, and personal injury cases pending in Multnomah County (Oregon) Circuit Court under the mandatory arbitration program for claims up to $50,000.00.

In real estate, Greg has represented owners, developers, lenders, and brokers in the full range of real estate related claims, both commercial and residential, in trials and arbitrations. This litigation experience includes disputes over purchase and sale agreements, property interests and title, access to property, real estate valuation, property management and broker agreements, as well as partition, condemnation, and foreclosure claims. He has primarily defended property owners in serious personal injury and premises liability claims, and has prosecuted significant property damages claims on behalf of owners.

In business and complex commercial litigation, Greg has represented shareholders, members, and partners in a wide variety of business disputes, as well as in management, buyout, valuation, and dissolution matters. He has represented manufacturers, distributors, and dealers in contract, franchise, and business tort litigation defending and prosecuting these types of claims, and in trade secrets, non-compete and non-solicitation agreement disputes.

In construction, Greg has extensive experience in commercial, industrial, and residential construction contract and performance disputes. He has represented owners, general contractors, subcontractors, suppliers and design professionals in litigation and has both prosecuted and defended against claims involving construction and design issues. His experience includes federal and state public contract disputes and bid protests.

In natural resources litigation, Greg has represented the interests of the forest products and the public power industries, especially in federal court, involving claims under The National

Environmental Policy Act, The Endangered Species Act, and other environmental laws. This litigation took place in federal and state agencies and in federal and state courts addressing forest practices and timber contracts, as well as involving threatened or endangered wildlife and salmon species. He has defended against civil and criminal claims of timber theft and log scaling fraud, and defended wrongful death claims arising out of past timber harvesting practices.

## COURT AND BAR ADMISSIONS

- <u>Current</u>:  State and Federal Courts: Oregon and Washington

- AV Rated

- <u>Former</u>: District of Columbia, Maryland, and Virginia

## PROFESSIONAL MEMBERSHIPS, BAR ASSOCIATION VOLUNTEER ACTIVITIES, AND AWARDS

- Multnomah County Bar Association, 1986 - present

- Oregon State Bar Association, 1986 - present

- Washington State Bar Association, 2004 - present

- U.S. District Court of Oregon Historical Society, Executive Committee 2007-2013; Chair, Oral History Committee 2008-2013

- Federal Bar Association, Oregon Chapter, Member of Board of Directors, 1996-2001, Secretary 1997-98, Vice-President 1998-99, President-Elect 1999-2000, President 2000-2001, Editor of Oregon Chapter newsletter 1997-99

- Federal Bar Association, Oregon Chapter, Vice-President for Ninth Circuit 2001-2005

- 2004 - Received Hon. James M. Burns Federal Practice Award, Oregon Chapter, Federal Bar Association

- 2012 - Received Oregon State Bar President's Special Award of Appreciation (as volunteer Oregon State Bar trial counsel in attorney ethics violation prosecutions) 1999-2012

- State of Oregon Judicial Disabilities Commission (volunteer trial counsel) 2005-2007

- American Bar Association, Member of Sections on Litigation, Torts and Insurance, and Construction Law

## LAW FIRM EXPERIENCE

- Founder/Shareholder, Bateman Seidel, 2005-present (Portland, Oregon)

- Partner, Preston, Gates & Ellis, LLP, 1999-2005 (Portland, Oregon)

- Partner, Bogle & Gates P.L.L.C., 1989-99 (Portland, Oregon)

- Associate/Partner, Saltman & Stevens P.C. (Portland, Oregon 1986-89; Washington, D.C. 1984-86)

- Associate/Partner, Rhodes, Dunbar & Lomax, Chtd., 1979-84 (Washington, D.C.)

EDUCATION

J.D., The Catholic University of America, Columbus School of Law, 1978

B.A., Canisius College, 1971

GREGORY J. MINER
SELECTED RECENT LITIGATION
(2009-2019)

## Real Estate Litigation

- Reported case – *Tri-County Center Trust v. Martin,* 225 Or App 417, 201 P3d 293 (2009); *rev. den.* 346 Or 258, 210 P3d 906 (2009) — prevailed at trial in Washington County Circuit Court and on appeal to partition in kind 16 acres of family real estate in Washington County.

- Reported case – *Britton v. Brown,* Supreme Court of Montana, 368 Mont. 379, 300 P3d 667 (2013) — acted as special real estate partition litigation counsel for co-tenant property owner involving substantial pristine lakefront acreage in Montana; included successful appeal of the partition referees' and the trial court judge's partition decision to the Montana Supreme Court, obtaining reversal on due process grounds and leading to full evidentiary trial and successful partition-in-kind judgment for client.

- Reported case – *Tri-County Center Trust v. Oregon Department of State Lands,* 298 Or 835, 445 P3d 953 (2019) — contested case trial and appeal of compensatory wetland mitigation designation to deny removal/fill permit and cause unlawful "taking" of property.

- Reported case – *Butler Block, LLC v. Agni Group, LLC,* 240 Or App 548, 250 Or App 548 (2011) — successfully reversed California real estate developer's purchase of Portland commercial property for apartment development, which was wrongly based on undervalued appraisal as purchase price, by prevailing both at trial in Multnomah County Circuit Court and on appeal including obtaining recovery of attorney fees for client.

- Reported case – *Coast Equities, LLC v. Right Buy Properties, LLC, et al.,* 2015 WL 1477901 (D. Or. 2015) — obtained dismissal of all fraud claims against resident alien clients in Oregon federal court action asserted by alleged purchaser of 200+ properties in Florida on grounds of lack of personal jurisdiction and improper venue in Oregon.

- Reported case – *PNC Multifamily Capital Institutional Fund XXXIV Limited Partnership, et al. v. AOH-Regent Limited Partnership, et al.,* 262 Or App 503, 329 P3d 773 (2014) – represented investor limited partner at trial in Multnomah County Circuit Court and in appellate court involving three Florida multifamily housing projects prosecuting claims for required repurchase of investor partner's interest due to general partner's breaches of the operating agreement, including obtaining appellate court decision reversing the lack of personal jurisdiction ruling of the trial court.

- *Lone Rock Timber Management Co. v. Oregon State Land Board and Oregon Department of State Lands,* Case No. 17CV27826—successful prosecution and settlement of claims against the State in Marion County Circuit Court for cancellation of the sale of Elliott State Forest (2017-2019).

1

- *McLoughlin Neighborhood Association, et al. v. City of Oregon City,* Case No. 16CV24270 —successful defense at trial in Clackamas County Circuit Court of park dedication claims of neighborhood organization involving City's public works operations center and buildings and 100-year history of City property.

- Represented retail tenant in lease payment disputes with former landlord, and in second case with current landlord over collecting tenant's sales revenues from consignment, including obtaining recovery of all attorney fees for client (2014 – 2015).

- Obtained outright dismissal of landlord's claim against tenant (a national life insurance company) for alleged untimely exercise of option to early terminate commercial lease (2014).

Bank and Commercial Litigation

- Obtained dismissal of all claims by plaintiff developer in in Deschutes County Circuit Court against international bank for lender liability, tortious interference, and aiding and abetting involving high-end golf and condominium resort in Central Oregon - *Pronghorn Properties, LLC v. Societe Generale S.A., et al./Pronghorn Development Company, LLC, et al. v. Scott Denney, et al.,* Deschutes County Circuit Court Case No. 10CV1191SF (2014).

- Successfully prosecuted over 3 ½ years in Clark County, Washington state court the contract claims of large international financial institution on California real estate development for payment of debt and defended against developer's counterclaims for breach of contract and fiduciary duties – *Holland Partners Glo, LLC, et al. v. Capmark Finance, LLC,* Clark County Superior Court Case No. 12-2-00793-8 (2012-2015).

- Represented major national lenders/banks (Bank of America and Bank of New York Mellon) in successfully prosecuting numerous residential and commercial real estate foreclosures and in defending against counterclaims for lender liability and statutory violations in both federal and state courts in Oregon, Washington, and Nevada (2011-2012).

- Reported case – *Wells Fargo Bank, N.A. v. The Ash Organization, Inc.,* 2010 WL 2681675 (D. Or. 2015) — successfully prosecuted in Oregon federal court commercial property foreclosure for national loan servicer/lender and defended against lender liability and tort counterclaims by landowner involving one of the largest blocks of undeveloped land located along I–5 corridor in Portland Metropolitan area (2010-2011).

- Defended Portland automobile dealership against claims of breach of dealer/franchise agreement by major international auto manufacturer, and obtained restraining order against manufacturer in Oregon federal District Court, leading to favorable settlement – *Auto Town Buick GMC, Inc. v. General Motors LLC,* United States District Court Case No. 3:12-cv-01977-HZ (2012-2013).

2

Construction Defect Litigation

- Successfully prosecuted numerous significant property damage and construction defect claims of owners of single-family homes in Oregon and Washington state courts against contractors and design professionals to produce favorable settlements; successfully co-prosecuted claims of owners of multi-family housing projects in Oregon against contractors and design professionals for negligence and breach of contract in construction, including complex insurance coverage and statute of limitation issues, leading to successful mediated settlements and recovery of property damages (2010 – 2015).

- Successfully defended national investor/lender in Washington state court against general contractor claims for cost overruns from extensive construction defects on Native American housing project – *Matthew Lewis v. Tulalip Housing Limited Partnership No. 3,* Snohomish County Superior Court Case No. 11-2-06451-2 (2011-2012).

Personal Injury/Premises Liability

- *Appleyard v. Portland of Portland,* Multnomah County Circuit Court Case No. 16CV05139 — successful jury trial defense (2017) of airport authority in premises liability claim for trip-and-fall (on appeal).

- Reported case – *Helland v. Hoffman Construction Company of Oregon,* 2013 WL 5937001 (D. Or. 2013) – defended major Oregon airport authority and general contractor in Oregon federal court in obtaining dismissal of Employer Liability Act and Safe Employment Act claims of construction worker for permanent personal injury on airport construction project, leading to minimal settlement (2013-2014).

- Obtained outright dismissal of plaintiff's slip-and-fall and permanent injury claim against Oregon airport authority in Oregon state court (2013).

- Successfully defended Oregon airport authority in arbitration against public utility's claim of property damages at airport (2012).

- Successfully/prosecuted property damages claim (water damage) in Oregon state court (Marion County) on behalf of national industrial gas supplier against roofing contractor including recovery of all client's attorney fees.

- Prosecuted claims of homeowner against general contractor and subcontractor in Washington state court for property damages caused by work-related landslide, leading to successful mediated settlement (2015).

Shareholder/Partnership Litigation

- Successfully defended managing 50% shareholder in multiple week court trial in Oregon state court and defeated other 50% shareholder's oppression and forced removal claims involving closely-held forest products company, leading to compromise buyout and avoidance of takeover or LLC dissolution – *Lynn Meier v. John Taylor, et al,* Linn County Circuit Court Case No. 083689 (2010).

3

- Successfully restrained/enjoined other partner in closely-held Washington partnership from disposing of sales proceeds of dozens of properties purchased at auction and resold, and obtained full accounting of proceeds, leading to favorable settlement – *Silverland Properties, LLC, et al. v. Nylund Homes, Inc., et al.,* Clark County Superior Court Case No. 09-2-02958-3.

- Represented investor limited partners in numerous disputes with general partners in limited partnerships on affordable multi-family housing projects in Oregon and Washington (low-income housing tax credit financed), including state and federal court litigation to remove general partner and/or developer on several projects for breach of contract/fiduciary duties (2010 – 2015).

H:\L Reed\GJM\GJM Recent Litigation.Docx

4

# Exhibit B

**Proposed Order Granting Debtors' Application to Employ Bateman Seidel P.C. as Attorneys in Washington County Case No. 18CV17059**

1

2

3

4

5

6

7

8

9

10                    UNITED STATES BANKRUPTCY COURT

11                      FOR THE DISTRICT OF OREGON

12   In re                              Bankruptcy Case Nos.:

13   15005 NW CORNELL LLC, and          19-31883-dwh11 (Lead Case)

14   VAHAN M. DINIHANIAN, JR.           19-31886-dwh11

15          Debtors.[2]                 Jointly Administered Under
                                        Case No. 19-31883-dwh11
16

17                                      **ORDER GRANTING DEBTORS'**
                                        **APPLICATION TO EMPLOY BATEMAN**
18                                      **SEIDEL P.C. AS ATTORNEYS IN**
                                        **WASHINGTON COUNTY CASE NO.**
19                                      **18CV17059**

20          THIS MATTER having come before the Court for a hearing on the application (the "***Application***")

21   of 15005 NW Cornell LLC ("***Cornell***"), and Vahan M. Dinihanian, Jr. ("***Dinihanian***") debtors and

22   debtors-in-possession (collectively, "***Debtors***"), for an Order to Employ Bateman Seidel P.C. as Attorneys

23   in Washington County Case No. 18CV17059 (the "***Partition Case***"); the Court having reviewed the

24   Application and accompanying statement, and being otherwise duly advised; now, therefore,

25   _____

26   [2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
     number, are: 15005 NW Cornell LLC (5523) and Vahan M. Dinihanian, Jr. (0871).

1    IT IS HEREBY ORDERED that the Application is approved and Debtors be and hereby are

2    authorized to employ Bateman Seidel P.C., pursuant to subsection 327(e) of the Bankruptcy Code, as

3    special ordinary course counsel in the property partition litigation pending in the Partition Case, and is

4    further authorized to pay said attorneys a reasonable fee for its services upon application and order of the

5    Court.

6                                                    ###

7    Presented By:

8    **PERKINS COIE LLP**

9    By: */s/ Douglas R. Pahl*
10   Douglas R. Pahl, OSB No. 950476
     DPahl@perkinscoie.com
11   Matthew J. Mertens, OSB No. 146288
     MMertens@perkinscoie.com
12   PERKINS COIE LLP
     1120 N.W. Couch Street, Tenth Floor
13   Portland, OR  97209-4128
     Telephone:  503.727.2000
14   Facsimile:  503.727.2222

15   Counsel for Debtor and Debtor-in-Possession
     *15005 NW Cornell LLC*

16

17   **MOTSCHENBACHER & BLATTNER, LLP**

18   By: */s/ Nicholas J. Henderson*
     Nicholas J. Henderson, OSB No. 074027
19   nhenderson@portlaw.com
     Motschenbacher & Blattner, LLP
20   117 SW Taylor St., Suite 300
     Portland, OR 97204
21   Telephone: (503) 417-0508
     Facsimile: (503) 417-0528

22   Counsel for Debtor and Debtor-in-Possession
     *Vahan M. Dinihanian, Jr.*

23

24

25

26

ORDER GRANTING DEBTORS' APPLICATION TO
EMPLOY BATEMAN SEIDEL P.C. AS ATTORNEYS
IN WASHINGTON COUNTY CASE NO. 18CV17059

**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# Rule 2014 Verified Statement for Proposed Professional

In re                     )

**15005 NW CORNELL LLC, and**   )   Case No.   **19-31883-dwh11**
**VAHAN M. DINIAHNIAN, JR.**     )
                               )   **19-31886-dwh**
                               )   RULE 2014 VERIFIED STATEMENT
Debtor(s)              )   FOR PROPOSED PROFESSIONAL

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:
   **Prepetition fees of $170,071.78 plus $2,160.00.**

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**As set forth in response to paragraph 1, Applicant is listed as a creditor on the debtors' schedules and, with Debtors' agreement, Applicant will seek payment of such unpaid prepetition fees.**

1114 (11/30/09)    Page 1 of 3

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:

**One partial payment of $50,000.00 was made on March 13, 2019 by Eagle Holdings LLC or Vahan M. Dinihanian, Jr. on the partition case.**

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)). Please list and explain the relationship between the debtor and the affiliate:

**Vahan Megar Dinihanian, Jr. - Managing Member**

**Eagle Holdings LLC - Affiliate**

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

**Applicant has also represented Vahan M. Dinihanian, Jr. in preparing for a mediation (not yet taken place) to resolve other non-partition disputes with his sister.**

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

**Applicant was initially engaged by Vahan M. Dinihanian, Jr. as the managing member of 15005 NW Cornell LLC and as the sole member of Eagle Holdings, LLC. Applicant represented 15005 NW Cornell LLC as the plaintiff in the state partition case and wishes to continue to do so. Vahan M. Dinihanian Jr. agreed to a Line of Credit Deed of Trust to be placed on his Skyline Blvd real estate which is to secure payment of attorney fees, and was recorded**
**in January 2019.**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

**Vahan M. Dinihanian, Jr. signed on January 14, 2019 a Line of Credit Deed of Trust in the amount not to exceed $250,000 with Bateman Seidel as one of the beneficiaries (Daniel C. Lorenz is the other beneficiary) to secure payment of attorney fees owed and to be owed by 15005 NW Cornell LLC and by him personally. The real property subject to the Deed of Trust is 237 NW Skyline Blvd., Portland, Oregon 97210 (Document No. 2019-007750).**

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

I verify that the above statements are true to the extent of my present knowledge and belief.

**Gregory J. Miner, Bateman Seidel P.C.**
Applicant

In re )
**15005 NW CORNELL LLC, and** ) Case No. __19-31883-dwh11__
**VAHAN M. DINIAHNIAN, JR.** ) __19-31886-dwh__
) RULE 2014 VERIFIED STATEMENT
Debtor(s) ) FOR PROPOSED PROFESSIONAL

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:
   **Prepetition fees of $170,071.78 plus $2,160.00.**

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**As set forth in response to paragraph 1, Applicant is listed as a creditor on the debtors' schedules and, with Debtors' agreement, Applicant will seek payment of such unpaid prepetition fees.**

14.  The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15.  Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:

**One partial payment of $50,000.00 was made on March 13, 2019 by Eagle Holdings LLC or Vahan M. Dinihanian, Jr. on the partition case.**

16.  The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)).  Please list and explain the relationship between the debtor and the affiliate:

**Vahan Megar Dinihanian, Jr.  - Managing Member**

**Eagle Holdings LLC - Affiliate**

17.  The applicant is not an affiliate of the debtor.

18.  Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):

**Applicant has also represented Vahan M. Dinihanian, Jr. in preparing for a mediation (not yet taken place) to resolve other non-partition disputes with his sister.**

19.  The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20.  List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

**Applicant was initially engaged by Vahan M. Dinihanian, Jr. as the managing member of 15005 NW Cornell LLC and as the sole member of Eagle Holdings, LLC. Applicant represented 15005 NW Cornell LLC as the plaintiff in the state partition case and wishes to continue to do so. Vahan M. Dinihanian Jr. agreed to a Line of Credit Deed of Trust to be placed on his Skyline Blvd real estate which is to secure payment of attorney fees, and was recorded**
**in January 2019.**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

**Vahan M. Dinihanian, Jr. signed on January 14, 2019 a Line of Credit Deed of Trust in the amount not to exceed $250,000 with Bateman Seidel as one of the beneficiaries (Daniel C. Lorenz is the other beneficiary) to secure payment of attorney fees owed and to be owed by 15005 NW Cornell LLC and by him personally. The real property subject to the Deed of Trust is 237 NW Skyline Blvd., Portland, Oregon 97210 (Document No. 2019-007750).**

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

**Applicant has been informed that the information provided in Perkins Coie LLP's and Motschenbacher & Blattner, LLP's Rule 2014 Verified Statement for Proposed Professional, are accurate and is incorporated herein.**

I verify that the above statements are true to the extent of my present knowledge and belief.

**Gregory J. Miner, Bateman Seidel P.C.**
Applicant

1 **CERTIFICATE OF SERVICE**

2    On November 22, 2021, I served copies of

3 EXHIBIT LIST FOR TASHA TEHERANI-AMI, IN HER CAPACITY AS THE TRUSTEE OF
   THE SONJA DINIHANIAN GST TRUST DTS 1/1/11 EXHIBIT LIST FOR TASHA
4 TEHERANI-AMI, IN HER CAPACITY AS THE TRUSTEE OF THE SONJA DINIHANIAN
   GST TRUST DTS 1/1/11 RE: OBJECTION TO CLAIMS

5
   on the following entitled to notice:
6
      1)  through CM/ECF:
7

8  Douglas R. Pahl                          Nicholas J. Henderson
      Attorney for debtor 15005 NW Cornell LLC   Troy Sexton
9                                              Attorneys for debtor Vahan M. Dinihanian

   Stephen P. Arnot                         Eleanor A. Dubay
10    U.S. Trustee                             Attorney for creditor Tasha Teherani-Ami

11 Russell D. Garrett                       Daniel L. Steinberg
      Attorney for Alexander LLC, et al.       Attorney for Cornell Road LLC; Lillian
12                                           Logan

13 Travis W. Hall, OSB No. 984513
   thall@batemanseidel.com
14 Bateman Seidel PC
   1000 SW Broadway, Suite 1910
15 Portland, OR 97205

16    DATED: November 22, 2021

17                                          */s/ Bruce H. Orr*
                                           Bruce H. Orr, OSB No. 813297
18                                          *bho@wysekadish.com*

19

20

21

22

23

24

25

26