UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Case No. **19-31883-dwh11; and 19-31886-dwh11**

Amended

**Notice of Final Hearing on Motion [*Check One*]**

**For Use of Cash Collateral**

Debtor(s)

**To Obtain Credit**

YOU ARE NOTIFIED THAT:

1. The undersigned moving party, _____,
   filed a Motion     For Use of Cash Collateral     To Obtain Credit (check one).  The
   motion is attached and includes the statement required by Local Bankruptcy Form
   (LBF) 541.5, Procedures re: Motions for Use of Cash Collateral or to Obtain Credit.

2. The name and service address of the moving party's attorney (or moving party, if no
   attorney) are:_____
   _____

3. A final hearing on the motion, at which testimony will be received if offered and
   admissible, will be held as follows:

   **Date: _____     Time: _____**

   **Location**:

   Courtroom #_____, _____

   Telephone Hearing [*See LBF 888, Telephone Hearing Requirements*.]

   **Call In Number:** (888) 684-8852

   **Access Code:**     5870400 for Judge David W. Hercher (dwh)

                        1238244 for Judge Peter C. McKittrick (pcm)

                        4950985 for Judge Teresa H. Pearson (thp)

                        3388495 for Judge Thomas M. Renn (tmr)

   Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

**541 (10/4/2021)**          Page 1 of 2

4. If you wish to object to the motion, you must, within 14 days of the service date shown in paragraph 5 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401: (1) a written response which states the facts upon which you will rely, and (2) a certificate showing the response has been served on the U.S. Trustee and the attorney or party named in paragraph 2 above.

5. I certify that on _____ this notice and the motion were served pursuant to Federal Rule of Bankruptcy Procedure (FRBP) 7004 on the debtor(s), any debtor's attorney, any trustee, any trustee's attorney, members of any committee appointed under 11 U.S.C. § 1102 or elected pursuant to 11 U.S.C. § 705 or its authorized agent (or, if no committee in a chapter 11 case, on all creditors listed on the list filed pursuant to FRBP 1007(d)), any creditors' committee attorney, the U.S. Trustee, and all entities with any interest in the cash collateral subject to this motion, whose names and addresses used for service are as follows:

_____
Signature of Moving Party or Attorney                                   OSB#

_____
(If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

_____

**541 (10/4/2021)**                          Page 2 of 2

Label Matrix for local noticing
0979-3
Case 19-31883-dwh11
District of Oregon
Portland
Fri Jan 28 14:13:00 PST 2022

15005 NW Cornell LLC
237 NW Skyline Blvd
Portland, OR 97210-1053

ODR Bkcy
955 Center St NE
Salem, OR 97301-2555

Sortis Holdings, Inc.
co/Joe FIeld
Field Jerger, LLP
621 SW Morrison St., Ste. 510
Portland, OR 97205-3808

US Trustee, Portland
1220 SW 3rd Ave., Rm. 315
Portland, OR 97204-2829

1050 SW 6th Ave. #700
Portland, OR 97204-1160

Alexander LLC
Attn: Alexander Logan
19830 W Dixie Mt. Rd
North Plains OR 97133-8215

Alexander LLC
Lillian Logan, c/o Daniel L. Steinberg
Two Centerpointe Drive, 6th Floor
Lake Oswego, OR 97035-8618

Attorney General of the US
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington DC 20530-0001

Bateman Seidel PC
Gregory J. Miner
1000 SW Broadway, Suite 1910
Portland, OR 97205-3061

Beaverton Chamber of Commerce
12600 SW Crescent St #160
Beaverton, OR 97005-1769

Christiana LLC
Attn: Christiana Logan
19830 W Dixie Mt. Rd
North Plains OR 97133-8215

Cornell Rd LLC
Attn: Lillian Logan
19830 W Dixie Mt. Rd
North Plains OR 97133-8215

Dan Logan
19830 W Dixie Mt. Rd
North Plains OR 97133-8215

Daniel Lorenz
521 SW Clay
Portland, OR 97201-5407

Daniel Lorenz
521 SW Clay St.
Portland OR 97201-5407

Eagle Holdings LLC
237 NW Skyline Blvd
Portland OR 97210-1053

Gregory Miner
888 SW 5th Ave, Suite 1250
Portland OR 97204-2026

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Office of the Attorney General
Oregon Department of Justice
1162 Court St. NE
Salem OR  97301-4096

Oregon Department of Revenue
955 Center Street NE
Salem OR 97301-2555

Oregon Dept. of Consumer
& Business Services
350 Winter St NE 2nd Floor
Salem OR 97301-3875

Oregon Secretary of State
Public Service Building
255 Capitol St. NE, Suite 151
Salem OR 97310-1304

Tasha Teherani-Ami
c/o Eleanor A. DuBay
121 SW Morrison St., Suite 1850
Portland, OR 97204-3120

Tasha Teherani-Ami, as trustee for the Sonja
900 SW 5th Ave, Suite 2000
Portland, OR 97204-1229

Washington County
Dept of HHS - Code Enforcement
155 N. First Ave, MS 5A
Hillsboro OR 97124-3001

Washington County Assessment
& Taxation
155 N. First Ave
Hillsboro OR 97124-3001

DOUGLAS R PAHL
1120 NW Couch St 10th Fl
Portland, OR 97209-4128

NICHOLAS J HENDERSON
Motschenbacher & Blattner, LLP
117 SW Taylor Street
Ste 300
Portland, OR 97204-3029

Vahan M. Dinihanian Jr.
237 NW Skyline Blvd.
Portland, OR 97210-1053

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Alexander LLC                    (u)Bateman Seidel                   (u)Christiana LLC

(u)Columbia State Bank              (u)Cornell Rd LLC                   (u)Delap LLP

(u)Lillian Logan                    (u)Tasha Teherani-Ami              (u)Tasha Teherani-Ami,   in her capacity as th

End of Label Matrix
Mailable recipients      29
Bypassed recipients       9
Total                    38

**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

*Of Attorneys for Vahan M. Dinihanian, Jr*

**Douglas Pahl, OR Bar No. 950476**
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Of Attorneys for 15005 NW Cornell LLC*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>15005 NW CORNELL LLC; and<br>VAHAN M. DINIHANIAN, JR.,<br><br>    Debtors. | Bankruptcy Case Nos.<br><br>19-31883-dwh11 (Lead Case)<br>19-31886-dwh 11<br><br>Jointly Administered Under Case No.<br>19-31883-dwh11<br><br>JOINT MOTION TO OBTAIN<br>FINANCING |

Debtors and Debtors-In-Possession 15005 NW Cornell LLC ("**15005 LLC**") and Vahan

M. Dinihanian, Jr. ("**Dinihanian**") (collectively, "**Debtors**") hereby move this Court for the entry

of a interim order authorizing Debtors to obtain credit for the purposes and on the terms set forth

herein (the "**Motion**").  In support of the Motion, Debtor incorporates the statements contained in

the Declaration of Vahan M. Dinihanian Jr. (the "**Dinihanian Decl.**") and the Declaration of

Page 1 of 6   JOINT MOTION TO OBTAIN FINANCING

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00385603:1}

Samuel J. Ross (the "***Ross Decl.***") filed contemporaneously herewith, and further respectfully state as follows:

1.      Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 21, 2019 (the "***Petition Date***").

2.      Debtors have continued in possession of their properties and have continued to operate and manage their businesses as Debtors-in-Possession pursuant to § § 1107(a) and 1108 of the Bankruptcy code.  No request has been made for the appointment of a trustee or examiner in these cases.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      The bases for the relief requested herein are Sections 105 and 364 of the Bankruptcy Code, and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      By this Motion, Debtors request entry of an interim order pursuant to 11 U.S.C. § 364(c)(2), authorizing Debtors, with 15005 LLC as borrower and Dinihanian and Eagle Holdings LLC as guarantors, to (a) enter into the loan agreement, promissory note, deeds of trust, guaranty and associated documents attached to the Ross Declaration as **Exhibits C-I** (with any other necessary documents, collectively, the "***Loan Documents***"), prepared in accordance with the term sheet attached to the Ross Decl. as **Exhibit A** (the "***Term Sheet***"); and (b) obtain post-petition financing consisting of loans and advances from SORFI, LLC, or its successors or assigns ("***SORFI***") on a secured basis allowable under 11 U.S.C. §§ 364(c)(2) and 503(b)(1) as an administrative expense.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00385603:1}

7.     15005 LLC is the grantor of a deed of trust against 15005's 25% undivided interest in the Cornell Property.  The deed of trust was recorded February 8, 2016 in the Washington County land records as filing number 2016-008669 (the "**Deed of Trust**").  The Deed of Trust secures Dinihanian's obligation to pay approximately $3,144,051, plus *per diem* interest of $277.40 and certain additional costs and fees (the "**Cure Amount**").

8.     Debtors need to obtain financing on an expedited basis to pay the Cure Amount to prevent the pending trust deed foreclosure sale of 15005 LLC's right, title and interest in the real property and improvements located at 15005 NW Cornell Road, Beaverton, Washington County, Oregon (the "**Foreclosure Sale**").  The Foreclosure Sale is scheduled to occur on February 9, 2022 at 11:00 am.

9.     Pursuant to the Term Sheet, SORFI has agreed to make advances in amounts totaling up to $4,960,000 (the "**Loan**"), available upon entry of an order approving this Motion.

10.     The terms of the loan are summarized in the Term Sheet, attached as Exhibit A to the Ross Decl., and are set forth in detail in the Loan Documents, attached as Exhibits C through I of the Ross Decl.  The Loan will accrue interest at 12% per annum and will be payable on the 730th day following the closing.

11.     SORFI's secured claim under Section 364(c)(2) of the Bankruptcy Code is to be secured by: 1) all of the Borrower 15005 LLC's rights, title and interest (a 25% tenant in common interest) in the real property and improvements located at 15005 NW Cornell Road, Beaverton, Washington County, Oregon (the "**Cornell Property**"); and 2) all of Guarantor Dinihanian's rights, title and interest in the real property located at 237 NW Skyline Road, Portland, Multnomah County, Oregon (the "**Skyline Property**") (collectively, the "**Collateral**").  Such security shall be recorded and perfected following the payment in full of amounts owing

Page 3 of 6   JOINT MOTION TO OBTAIN FINANCING

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00385603:1}

under the Deed of Trust.  Eagle Holdings LLC will also execute a guaranty in support of the Loan.

12.     It is in the best interest of Debtors and their estates to be authorized to obtain credit from SORFI on a secured basis pursuant to the terms set forth in the Term Sheet and the Loan Documents.  Such financing at this critical time will enable Debtors to pay the Cure Amounts of the outstanding amounts due under the Trust Deed, thereby avoiding the complete loss by 15005 LLC of its interest in the Cornell Property as a result of foreclosure.  Debtors believe the Loan from SORTIS will preserve the value of the Cornell Property for the benefit of all creditors with significant value remaining for equity.  In addition, the preservation of the Cornell Property permitted by the Motion will enable Debtors to pursue a Section 363(h) process to sell the entire Cornell Property, including the interests of co-owners, under far more economically favorable conditions.  Debtors believe such a process will permit them to fully repay their creditors, including SORFI, and preserve excess value for equity.

## SUMMARY OF MATERIAL TERMS

13.     The material terms of the Loan Documents, as summarized by the Term Sheet, are:

A. <u>Loan</u>.  The Loan facility will be comprised of a committed, secured line of credit in an aggregate principal amount not to exceed $4,960,000.

i.     <u>Interest Rate</u>.  Outstanding advances under the Loan shall accrue interest at the rate of 12% per annum.  Term Sheet, page 2.

ii.     <u>Maturity</u>.  The loan matures 730 days after the closing of the Loan but may be extended by two additional six-month periods, in exchange for an extension fee of 1% of the Loan's outstanding balance at the time of the extension.  Term Sheet, pages 1-2.

Page 4 of 6   JOINT MOTION TO OBTAIN FINANCING

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

iii. <u>Events of Default</u>. The Term Sheet indicates that the Loan Agreement shall provide for late charges of 5% of any payment not received by the due date, (b) default interest of 24.00% upon and during an Event of Default, (c) the right of SOFI to accelerate the Loan without notice or grace periods in the event of a payment default and (d) for additional remedies typical of a transaction of this nature. Specific Events of Default are included in the Loan Agreement and other Loan Documents. Term Sheet, page 2, 5.

iv. <u>Liens</u>. The Term sheet provides that the Loan will be secured by first position liens against the Cornell Property and the Skyline Property. Term Sheet, page 1. The Loan provides sufficient amounts to pay all recorded liens, including those of Teherani-Ami, Bateman Seidel, Dan Lorenz and Columbia Bank. Any existing liens that remain against the Collateral would be repaid from Loan proceeds or would remain by agreement.

v. <u>Borrowing Conditions</u>. The conditions to closing the Loan and obtaining the advances are Bankruptcy Court approval of the Motion and the Loan Documents; and 15005 LLC granting to SORTIS the right to approve the listing broker of the Cornell Property. Term Sheet, page 5. Borrower is also required to agree to promptly determine (i) whether it is practicable to complete or otherwise resolve the partition litigation pending in Washington County within a reasonable period of time or (ii) whether to instead pursue the sale of the entirety of the Cornell Property pursuant to Section 363(h) of the Bankruptcy Code. Term Sheet, page 6.

14. This Motion does not contain any of the "Discouraged Provisions" listed in LBF 541.5. The Motion seeks approval under section 364(c)(2) only.

{00385603:1}

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

WHEREFORE, Debtors request the Court grant the Motion and enter an order granting the relief requested herein in the proposed order attached hereto as Exhibit 1, and for such other and further relief as the Court may deem proper.

Dated: January 28, 2022

MOTSCHENBACHER & BLATTNER LLP

By: */s/ Nicholas J. Henderson*
  Nicholas J. Henderson, OSB No. 074027
  nhenderson@portlaw.com
  Motschenbacher & Blattner, LLP
  117 SW Taylor St., Suite 300
  Portland, OR 97204
  Telephone: (503) 417-0508
  Facsimile: (503) 417-0528

  *Of Attorneys for Vahan M. Dinihanian, Jr.*


Dated: January 28, 2022

PERKINS COIE LLP

By: */s/ Douglas R. Pahl*
  Douglas R. Pahl, OSB No. 950476
  DPahl@perkinscoie.com
  Matthew J. Mertens, OSB No. 146288
  MMertens@perkinscoie.com
  PERKINS COIE LLP
  1120 N.W. Couch Street, Tenth Floor
  Portland, OR 97209-4128
  Telephone: 503.727.2000
  Facsimile: 503.727.2222

  *Of Attorneys for 15005 NW Cornell LLC*

{00385603:1}

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**EXHIBIT 1**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re:

15005 NW CORNELL LLC; and
VAHAN M. DINIHANIAN, JR.,

                Debtors.

Bankruptcy Case Nos.

19-31883-dwh11 (Lead Case)
19-31886-dwh 11

Jointly Administered Under Case No.
19-31883-dwh11

ORDER AUTHORIZING DEBTORS TO
OBTAIN FINANCING

THIS MATTER having come before the Court on February 2, 2022, upon the Joint

Motion for Authority to Obtain Financing (the "***Motion***"); notice of the Motion having been

given pursuant to Bankruptcy Rule 4001(c) and LBR 4001-1(c); the Court having considered the

arguments of counsel and all relevant pleadings, exhibits, and documents of record in this case,

and the representation of counsel at the time of hearing; now, therefore,

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

**FINDINGS**

The Court finds as follows:

1)      Debtors 15005 NW Cornell LLC ("***15005 LLC***") and Vahan M. Dinihanian ("***Debtors***") each filed a voluntary petition (the "***Bankruptcy Cases***") for relief under Chapter 11 of the Bankruptcy Code on May 21, 2019 (the "***Petition Date***").

2)      Debtors continue in possession of their property and are continuing to operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  15005 LLC's primary asset is its 25% tenant in common interest in the real property and improvements located at 15005 NW Cornell Road, Beaverton, Oregon (the "***Cornell Property***").

3)      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4)      SORFI, LLC ("***SORFI***") has agreed to extend a post-petition loan (the "***Loan***") to Debtors on a secured basis pursuant to 11 U.S.C. § 364(c)(2) on the terms set forth in the Term Sheet attached hereto as **Exhibit A** (the "***Term Sheet***") and the Loan Documents attached hereto as **Exhibits C through I** (the "***Loan Documents***").

5)      SORFI is financially capable of funding the Loan on the terms stated in the Loan Documents.  Such capability is demonstrated by **Exhibit B** hereto.

6)      Debtors contend the Loan is necessary to fund the cure of amounts due under a trust deed that is secured by 15005 LLC's tenant in common interest in the Cornell Property.  The foreclosure of 15005 LLC's interest in the Cornell Property is scheduled to occur on February 9, 2022 at 11:00 am (the "***Foreclosure Sale***").  The Foreclosure Sale, if it is completed, will result

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

in the loss of the primary property owned by the 15005 LLC bankruptcy estate, the loss of Debtors' ability to fund payments to their creditors and the loss of any potential value for equity.

7) Debtors are able to obtain funding in the form of the Loan from SORFI sufficient to cure the amounts due under the trust deed and prevent the Foreclosure Sale. Debtors are unable to obtain adequate financing on equal or more favorable terms than those offered by SORFI.

8) Debtors believe the proposed terms and conditions of the financial accommodations provided in the Term Sheet and Loan Documents are fair and equitable, and in the best interest of Debtors' estates.

9) Absent the Loan and the ability to cure the trust deed to prevent the Foreclosure Sale, the Debtors' estates are likely to suffer immediate and irreparable harm.

Based on the foregoing, good cause exists to grant the Motion on an interim basis and to enter this Interim Order. Now, therefore,

IT IS HEREBY ORDERED as follows:

a) The Motion is GRANTED;

b) Debtors are authorized to execute, if not previously executed, and deliver to SORFI, the Loan Documents and other loan documents incidental thereto;

c) Debtors are authorized to incur indebtedness under the terms of the Loan Documents and otherwise make such payments and perform such obligations as required or permitted under the terms of the Loan Documents, *specifically including* payments of amounts necessary to cure the trust deed and to terminate the February 9, 2022 trust deed Foreclosure Sale of the 15005 LLC's tenant in common interest in the Cornell Property;

d) Debtors are granted authority, pursuant to Section 364(c)(2) of the Bankruptcy Code, to execute and deliver deeds of trust or other security documents to SORFI, to provide

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00385603:1}

liens against the Collateral, as specified in the Term Sheet and the Loan Documents;

e) If any or all provisions of this Order are hereafter reversed, modified, vacated or stayed by any subsequent order of this Court, such reversal, modification, vacation or stay shall not affect the validity of any obligation to SORFI that is or was incurred by Debtors pursuant to this Order, and that is or was incurred prior to the effective date of such reversal, modification, vacation or stay. Such reversal, modification, vacation or stay shall not affect the validity and enforceability of any priority authorized or granted by this Order; and

f) Until the Bankruptcy Cases are closed, the Debtors, in their monthly operating reports under FRBP 2015, shall include a summary of the amounts advanced by SORFI pursuant to this Order, the date(s) of such advances, and the outstanding balance owed to SORFI.  ###

{00385603:1}

Page 4 of 5   ORDER AUTHORIZING DEBTORS TO OBTAIN FINANCING

{00385603:1}

**Motschenbacher & Blattner LLP**
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

Case 19-31883-dwh11    Doc 573    Filed 02/28/22

We certify that we have complied with the requirements of LBR 9021-1(a)(2)(A).

PRESENTED BY:

MOTSCHENBACHER & BLATTNER LLP

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
nhenderson@portlaw.com
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

*Of Attorneys for Vahan M. Dinihanian, Jr.*

PERKINS COIE LLP

By: /s/ Douglas R. Pahl
Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

*Of Attorneys for 15005 NW Cornell LLC*

PARTIES TO SERVE:

**VIA CM/ECF:**

All CM/ECF participants.

**VIA FIRST-CLASS MAIL:**

All parties listed on the most current mailing matrix maintained by the Court.

{00385603:1}
Page 5 of 5   ORDER AUTHORIZING DEBTORS TO OBTAIN FINANCING

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, Oregon 97204
Phone: 503-417-0500
Fax: 503-417-0501
www.portlaw.com

{00385603:1}

Case 19-31883-dwh11   Doc 573   Filed 02/20/22

# Exhibit A



Term Sheet Date:                    January 28, 2022

15005 NW Cornell, LLC
c/o Vahan M. Dinihanian, Jr.
237 NW Skyline Boulevard
Portland, Oregon 97210

## Secured Financing
## Summary of Terms and Conditions

**Lender:**              SORFI, LLC, its successors and/or assigns.

**Borrower:**            15005 NW Cornell, LLC, an Oregon limited liability company, a Debtor-in-Possession under Chapter 11 of the Bankruptcy Code as Case Number 19-31833-dwh11.

**Guarantor:**           Vahan M. Dinihanian, Jr., ("Dinihanian") an individual and Debtor under Chapter 11 of the Bankruptcy Code as Case Number 19-31886-dwh11 and Eagle Holdings LLC.

**Bankruptcy Cases:**    Case Number 19-31833-dwh11 and Case Number 31886-dwh11.

**Loan Amount:**         $4,960,000

**Collateral:**          All of the Borrower's rights, title and interest in the real property and improvements located at 15005 NW Cornell Road, Beaverton, Washington County, Oregon ("Cornell Property") (currently a twenty-five percent tenant in common interest), and all of the Limited Guarantor's rights, title and interest in the real property located at 237 NW Skyline Road, Portland, Multnomah County, Oregon ("Skyline Property") (collectively, the "Collateral"). For the avoidance of doubt, following any partition order entered in relation to the Cornell Property, the Lender will accept the final, non-appealable order of the court with respect to partitioning such that the Collateral interest in the Cornell Property shall be limited to that portion of the Cornell Property in which Borrower retains a continuing post-partition interest.

**Loan Term/Maturity:**  Seven hundred and thirty days (730) days commencing on the date of funding of the Loan, at which date the Loan shall mature and become payable in full.

**Extensions:**          Borrower shall have the right to extend the Loan Term for two (2) additional six (6) month periods ("Extended Loan Term"), subject to the following:

<table>
<tr><td></td><td>a)</td><td>Borrower shall not have been in default, including applicable cure periods, at any time during the Loan Term and any Extended Loan Term;</td></tr>
<tr><td></td><td>b)</td><td>There have been no material negative changes in the Collateral, the Borrower, and the Guarantor;</td></tr>
<tr><td></td><td>c)</td><td>Borrower shall notify Lender in writing not less than thirty (30) days prior to expiration of the then current Loan Term of its intent to extend the Loan (the "<u>Extension Notice</u>");</td></tr>
<tr><td></td><td>d)</td><td>Borrower shall pay an "<u>Extension Fee</u>" equal to 1.50% of the Loan's outstanding principal balance concurrent with the Extension Notice; and</td></tr>
<tr><td></td><td>e)</td><td>Borrower shall replenish any necessary reserves required by Lender in Lenders sole discretion for the Extended Loan Term concurrent with the Extension Notice.</td></tr>
</table>

| | |
|---|---|
| **Amortization:** | Interest Only. |
| **Payments:** | Interest will be payable monthly, in arrears, on the 1st day of each month until the Maturity Date, shall be prorated for any partial months and interest shall be drawn from the Interest Reserve. |
| | The Loan Documents shall provide for (a) a late charge of 5.00% of any payment not received by the due date, (b) default interest of 24.00% upon and during an Event of Default, (c) the right of Lender to accelerate the Loan without notice or grace periods in the event of a payment default and (d) for additional remedies typical of a transaction of this nature. |
| **Interest Rate:** | 12.00% |
| **Origination Fee:** | Borrower shall pay Lender an Origination Fee equal to 3.00% of the Loan Amount. which shall be due and payable at Closing ("<u>Origination Fee</u>"). |
| **Exit Fee:** | Borrower shall pay Lender an Exit Fee equal to 3.00% of the Loan Amount. which shall be due and payable upon the earlier of (i) the Maturity Date, or (ii) the earlier acceleration of the Loan ("<u>Exit Fee</u>"). |
| **Underwriting Fee:** | Borrower shall pay Lender an Underwriting Fee equal to $15,000, which shall be due and payable at Closing ("<u>Underwriting Fee</u>"). |
| **Prepayment:** | During the Loan Term, Borrower will be allowed to prepay the Loan Amount, in full, at any time, provided Lender is repaid all outstanding principal, accrued interest through the date of such repayment, and any and all fees and expenses then due and owing. |
| **Assumption:** | The Loan may not be assumed. |

| | |
|---|---|
| **Transfer Provisions:** | The Borrower may not transfer, pledge, assign, hypothecate or encumber, in part or whole, any direct or indirect equity interests in the Borrower. |
| **Guarantor:** | The Loan will be full recourse as to both Eagle Holdings and Dinihanian. The loan documents will provide that Dinihanian and the Borrower will be personally liable for losses incurred by Lender as a result of fraud or intentional misrepresentation by Borrower or any guarantor in connection with the Loan; the gross negligence or willful misconduct of Borrower; the breach of any representation, warranty, covenant or indemnification concerning hazardous substances; the removal or disposal of any portion of the Property after the occurrence of a default; the misapplication or conversion by Borrower of any insurance proceeds or any awards in connection with the condemnation of the Properties; and failure by Borrower to pay charges for labor or materials or other charges that can create Liens on any portion of the Properties.
|
| | The Loan shall be fully recourse to Dinihanian and Borrower in the event that the first full monthly payment of principal and interest is not paid when due; Borrower fails to permit on-site inspections of the Property, fails to provide financial information or fails to maintain its status as a single purpose entity; Borrower fails to obtain Lender's prior consent to any subordinate financing or other voluntary Lien encumbering the Property; Borrower fails to obtain Lender's prior consent to any assignment, transfer, or conveyance of the Property; Borrower files a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law or Borrower files an answer consenting to or otherwise acquiescing in or joining in any involuntary petition filed against it under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law (other than the Bankruptcy Cases). |
| **Security for Loan:** | The Loan shall be secured by a first deed of trust or first mortgage and a perfected first security interest in the Collateral, all leases, rents, income and profits therefrom, and all personal property, both tangible and intangible (including replacements, substitutions and after-acquired property) located thereon or used or intended to be used in connection therewith. |
| **Subordinate Financing:** | No secondary financing or encumbrance, either secured or unsecured, of any kind shall be permitted during the Loan Term other than trade payables incurred in the Borrower's normal course of business. |
| **Closing Date:** | One business day after the entry of an order of the Bankruptcy Court authorizing the financing described herein. |
| **Interest Reserve:** | Lender shall reserve $1,210,000 of the Loan Amount for funding the payment of interest due under the Loan. |

| | |
|---|---|
| **Working Capital Reserve:** | Lender shall reserve $100,000 of the Loan Amount for funding the payment of development costs, including but not limited to insurance premiums, real estate taxes, studies, reports, surveys, and other costs deemed necessary to preserve, maintain or support the value of the Collateral. |
| **Material Adverse Change:** | Lender shall have no obligation to close and fund the Loan if, at any time prior to funding, Lender determines, in its sole judgment, that there shall exist any material adverse circumstances or conditions regarding or shall have occurred any material adverse change with respect to, the Collateral or its tenants, or the operations, business, assets, liabilities or condition (financial or otherwise) of Borrower, Limited Guarantor or any of their affiliates. |
| **Interest Calculation:** | Interest will be calculated on the basis of a 360-day year but charged for the actual days elapsed. |
| **Closing Costs/Legal Fees:** | From the loan proceeds, Borrower shall pay at Closing, the out-of-pocket expenses incurred by Lender in connection with the proposed Loan. Expenses shall include, but not be limited to, the fees and expenses that Lender may incur for outside legal counsel, fees of all third parties relating to the due diligence review to be undertaken by Lender and its third party consultants, title insurance, insurance review costs, the costs of reviewing operating statements, the cost of an appraisal, environmental reports, engineering and structural reports, zoning reports, survey updating and certificate, construction review costs and travel costs of Lender's personnel and recordation costs. |
| **Brokers:** | Borrower represents and warrants to Lender that neither it, nor any affiliate has engaged any broker, agent or finder to procure the proposed Loan contemplated by this Term Sheet or to otherwise finance the Collateral. Borrower hereby agrees to indemnify and hold harmless Lender and its affiliates against any and all loss, cost, damage, liability or expense incurred by Lender or its affiliates arising out of, or in connection with, a breach of the representations and warranties set forth in this paragraph. |
| **Loan Documents:** | Not later than three (3) days after execution of this Term Sheet, all loan documents, including without limitation, the promissory note, loan agreement, mortgage, deed of trust or security deed, fixture filing, assignment of leases and rents, pledge and security agreement, UCC financing statements, environmental and building laws indemnity and any other documents required by Lender (collectively, "<u>Loan Documents</u>"), shall be prepared by counsel for Lender and shall be in all respects in form and substance satisfactory to Lender in its sole discretion. The Loan Documents shall be filed with the Bankruptcy Court and served on parties requesting special notice. The Loan Documents will contain representations, warranties and |

covenants of Borrower appropriate or customary for similar transactions. The parties to this Term Sheet have included the primary terms of the anticipated loan facility and anticipate such terms will be included in the Loan Documents. No further agreements or documents pertaining to the secured credit facility described in this Term Sheet have been reached or exist.

**Events of Default:** The Loan Documents will provide that certain acts, omissions or events constitute "Events of Default" including, but not limited to: the failure to pay the Loan in full by the Maturity Date; failure to make any required monthly payment of principal or interest or any other payment required under the Loan Documents when due; failure to perform any other covenant, agreement or obligation to be performed by Borrower under the Loan Documents if such failure is not cured within thirty (30) days after written notice thereof; the occurrence of any default by Borrower with respect to hazardous substances; the occurrence of any transfer of the Properties or interests in the Borrower without Lender's consent; any representation or warranty made by Borrower or Guarantor proves to be false or misleading in any material respect; the filing of a complaint for receivership or the filing of a voluntary or involuntary petition for bankruptcy or for reorganization with respect to Borrower or any Guarantor (other than the Bankruptcy Cases); a final judgment, order, or decree for the payment of money is rendered against Borrower or any Guarantor, and Borrower or such Guarantor does not satisfy and pay the same or cause it to be discharged within thirty (30) days from the entry thereof; Borrower fails to maintain any of the insurance coverage required under the Loan Documents; the occurrence of an uninsured casualty with respect to any material portion of the Properties; or the Properties or any part thereof is condemned or taken in any eminent domain or other like proceeding. Lender will have all rights and remedies under applicable law and agree, in the event of a foreclosure of the Cornell Property, to provide notice required by law, as well as to parties to the TIC agreement.

**Assignability:** This Term Sheet may not be assigned, in whole or in part, by Borrower, by operation of law or otherwise, and is intended for the benefit of the parties hereto and not for the benefit of any third parties.

**Governing Law:** This Term Sheet and the Loan Documents shall be governed by, and construed in accordance with, the laws of the State of Oregon, without regard to principles of conflicts of laws.

**Conditions Precedent to Closing:** Should Borrower receive approval to sell its interest in the Cornell Property, Borrower shall grant to Lender the right to approve the listing broker to market and sell the Cornell Property in connection with a 363(h) sale.

Borrower shall agree to promptly determine (i) whether it is practicable to complete or otherwise resolve the partition litigation

pending in Washington County within a reasonable period of time or (ii) whether to instead pursue the sale of the entirety of the real property located at 15005 NW Cornell Road, Beaverton, Oregon, pursuant to Section 363(h) of the Bankruptcy Code. The criteria used will include the length of time required to complete the proposed partition, the difficulty and expense involved in pursuing the partition if the co-owners of the Cornell Property oppose partition, the appeal of any judgment in the partition litigation, or if the co-owners otherwise seek to block or thwart Borrower's efforts to finalize the partition of the Cornell Property in state court or before Washington County officials.

# Exhibit B

# Account Summary

**SORTIS HOLDINGS INC - SORTIS**



| SUMMARY TOTALS (2 ACCOUNTS) | | | 01/27/2022 - 01/27/2022 |
|---|---|---|---|
| **Opening Ledger** | **Total Credits (0)** | **Total Debits (2)** | **Closing Ledger** |
| 9,537,959.45 | 0.00 | 110,000.00 | 9,427,959.45 |

| ACCOUNT: x1068 Sortis Income Fund LLC USD | | | BANK ID: 053100300 |
|---|---|---|---|
| **Opening Ledger** | **Total Credits (0)** | **Total Debits (1)** | **Closing Ledger** |
| 172,136.89 | 0.00 | 10,000.00 | 162,136.89 |

| | FIRST DAY (01/27/2022) | LAST DAY (01/27/2022) |
|---|---|---|
| Opening Ledger | 172,136.89 | - |
| One Day Float | 0.00 | 0.00 |
| Two or more Days Float | 0.00 | 0.00 |
| Total Credits | 0.00 | 0.00 |
| Total Debits | 10,000.00 | 10,000.00 |
| Closing Ledger | - | 162,136.89 |
| Closing Available | - | 162,136.89 |

| TRANSACTIONS: x1068 Sortis Income Fund LLC USD | | | | | 01/27/2022 - 01/27/2022 |
|---|---|---|---|---|---|
| **Posted** | **Transaction Description** | **Status** | **Bank Reference** | **Transaction Type** | **Amount** |
| | **Customer Reference** | **Debit/Credit** | | **Detail** | |
| 01/27/2022 | CHECK PAID | Cleared | 005500095838 | CHECKS PAID | -10,000.00 |
| | 0000001551 | Debit | | | |

**Continued**

Case 19-31883-dwh11    Doc 583    Filed 02/20/22

# Account Summary

**SORTIS HOLDINGS INC - SORTIS**



---

**ACCOUNT: x1639 Sortis REIT USD**      **BANK ID: 053100300**

| Opening Ledger | Total Credits (0) | Total Debits (1) | Closing Ledger |
|---|---|---|---|
| 9,365,822.56 | 0.00 | 100,000.00 | 9,265,822.56 |

|  | FIRST DAY (01/27/2022) | LAST DAY (01/27/2022) |
|---|---|---|
| Opening Ledger | 9,365,822.56 | - |
| One Day Float | 0.00 | 0.00 |
| Two or more Days Float | 0.00 | 0.00 |
| Total Credits | 0.00 | 0.00 |
| Total Debits | 100,000.00 | 100,000.00 |
| Closing Ledger | - | 9,265,822.56 |
| Closing Available | - | 9,265,822.56 |

---

**TRANSACTIONS: x1639 Sortis REIT USD**      **01/27/2022 - 01/27/2022**

| Posted | Transaction Description / Customer Reference | Status / Debit/Credit | Bank Reference | Transaction Type / Detail | Amount |
|---|---|---|---|---|---|
| 01/27/2022 | OUTGOING MONEY TRANSFER | Cleared Debit | | MONEY TRANSFER WIRE TRANSFER REF NUMBER = 000555 0 | -100,000.00 |

---

Case 19-31883-dwh11    Doc 583    Filed 02/20/22

## Account Balance Summary for 01/27/2022 - 01/27/2022

### Account Sort: Account Name

01/27/2022

|  | Closing Ledger |
|---|---|
| ABA321081669 | |
| SORTIS INCOME FUND LLC 5871 | |
| 80008095871 | $5,352,824.99 |
| ABA321081669 | |
| SORTIS REIT | |
| 80009573868 | $428,558.31 |
| **Totals** | **$5,781,383.30** |

01/28/2022 11:34:15

# Exhibit C

# LOAN AGREEMENT

between

**15005 NW CORNELL LLC,**
an Oregon limited liability company,
and

**Vahan M. Dinihanian, Jr.,**
an individual,

as Borrower,



and



**SORFI, LLC,**
an Oregon limited liability company,

as Lender

<u>**LOAN AGREEMENT**</u>

THIS LOAN AGREEMENT ("***Agreement***") is entered into as of February ___, 2022, between **SORFI, LLC,** an Oregon limited liability company ("***Lender***"), and **15005 NW CORNELL LLC,** an Oregon limited liability company, and **Vahan M. Dinihanian, Jr.** (collectively, the "***Borrower***").

<u>**Recitals**</u>

Borrower has applied to Lender for a loan ("***Loan***") in the *maximum* principal amount of **Four Million Nine Hundred and Sixty Thousand and 00/100 Dollars ($4,960,000.00)**.  Lender is willing to make the Loan to Borrower on the terms and conditions set out in this Agreement.

<u>**Agreement**</u>

NOW THEREFORE, the parties agree as follows:

1.     <u>**Definitions.**</u>

The following terms used in this Agreement are defined as follows:

1.1.     ***Affiliate*** means, with respect to a specified Person, any individual, partnership, corporation, limited liability company, trust, unincorporated organization, association or other entity which, directly or indirectly, through one or more intermediaries, Controls or is Controlled by or is under common Control with such Person, including, without limitation, any general or limited partnership in which such Person is a partner.  Affiliate also means, with respect to a specified individual, the immediate family members of such Person including, without limitation, their parents, children and siblings.

1.2.     ***Anti-Terrorism Laws*** means any law, rule or regulation relating to terrorism or money laundering, including, but not limited to, the Anti-Terrorism Order and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Public Law 107-56.

1.3.     ***Anti-Terrorism Order*** means Executive Order No. 13,224, 66 Fed. Reg. 49,079 (2001), issued by the President of the United States of America (Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism).

1.4.     ***Authorized Representative*** is defined in Section 10.6 of this Agreement.

1.5.     ***Bankruptcy Code*** is defined in Section 4.5 of this Agreement.

1.6.     ***Borrower Closing Expenses*** is defined in Section 10.11 of this Agreement.

1.7.     ***Business Day*** means any day that is not a Saturday, Sunday or a banking holiday in Portland, Oregon.

1.8.     ***Closing*** means the date the Deed of Trust is recorded.

1.9. **Condemnation** means any taking of title to, use of, or any other interest in the Property under the exercise of the power of condemnation or eminent domain, whether temporarily or permanently, by any governmental authority or by any other Person acting under or for the benefit of a governmental authority.

1.10. **Condemnation Awards** means any and all judgments, awards of damages (including severance and consequential damages), payments, proceeds, settlements, amounts paid for a taking in lieu of Condemnation, or other compensation heretofore or hereafter made, including interest thereon, and the right to receive the same, as a result of, or in connection with, any Condemnation or threatened Condemnation.

1.11. **Control** means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise and "Controlling" or "Controlled" have meanings correlative thereto.

1.12. **Creditor's Rights Law** is defined in Section 4.5 of this Agreement.

1.13. **Cultivating** is defined in Section 4.17 of this Agreement.

1.14. **Cornell Deed of Trust** means the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith from Borrower as grantor, to the Title Company as trustee in favor of Lender as beneficiary, encumbering the Cornell Property as security for the Obligations.

1.15. **Skyline Deed of Trust** means the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith from Borrower as grantor, to the Title Company as trustee in favor of Lender as beneficiary, encumbering the Skyline Property as security for the Obligations.

1.16. **Default** means any event, circumstance or condition which with notice or the passage of time or both would be an Event of Default under this Agreement.

1.17. **Default Rate** means a per annum rate equal to twenty-four percent (24%).

1.18. **Environmental Law** means any federal, state, or local statute, ordinance, rule, regulation, or other law relating to environmental protection, contamination or cleanup.

1.19. **ERISA** means the Employee Retirement Income Security Act of 1974, as amended.

1.20. **Event of Default** is defined in Section 8.1 of this Agreement.

1.21. **Expense Deposit** is defined in Section 10.11 of this Agreement.

1.22. **Grace Period** is defined in Section 2.9 of this Agreement.

1.23. **Guarantor** means Eagle Holdings, LLC, an Oregon limited liability company, and Vahan M. Dinihanian, Jr., jointly and severally.

1.24.    ***Guaranty*** means the Guaranty by Guarantor in favor of Lender of even date herewith from Guarantor.

1.25.    ***Hazardous Substance*** means any substance or material which is now or hereafter becomes regulated under any Environmental Law.

1.26.    ***Indebtedness*** means as to any Person, without duplication: (i) indebtedness for borrowed money or for the deferred purchase price of property or services (other than non-delinquent trade payables on terms of sixty (60) days or less incurred in the ordinary course of business), (ii) the principal portion of obligations as lessee under leases which have been or should be, in accordance with GAAP, recorded as capital leases, (iii) all contingent obligations of such Person, (iv) at the date of determination thereof, the aggregate amount which may then be drawn under, plus the aggregate amount of all unreimbursed drawings in respect of, letters of credit issued for the account of such Person, and (v) all indebtedness, obligations or other liabilities of such Person or of others for borrowed money secured by a lien on any property of such Person, whether or not such indebtedness, obligations or liabilities are assumed by such Person.

1.27.    ***Indemnified Party*** is defined in Section 10.3 of this Agreement.

1.28.    ***Indemnity Agreement*** means the Environmental and Building Laws Agreement and Indemnity of even date herewith from Borrower in favor of Lender.

1.29.    ***Insurance Proceeds*** means the insurance claims under and the proceeds of any and all policies of insurance covering the Property or any part thereof, including all returned and unearned premiums with respect to any insurance relating to the Property, in each case whether now or hereafter existing or arising.

1.30.    ***Late Charge*** is defined in Section 2.9 of this Agreement.

1.31.    ***Laws*** means all federal, state and local laws, ordinances, regulations, and rules relating to the development and operation of the Property, including without limitation all building, zoning, planning, subdivision, fire, traffic, safety, health, disability, labor, discrimination, environmental, air quality, wetlands, shoreline, and flood plain laws, ordinances, regulations and rules and all government and private covenants, conditions and restrictions applicable to the Property.

1.32.    ***Leases*** mean all leases and occupancy agreements now or hereafter in effect with respect to the Improvements.

1.33.    ***Lender*** is defined in the opening paragraph of this Agreement and includes Lender's successors and assigns.

1.34.    ***Liens*** is defined in Section 9.7 of this Agreement.

1.35.    ***Loan*** is defined in the Recitals.

1.36.    ***Loan Documents*** means the Note, this Agreement, the Deed of Trust, the Guaranty, the Indemnity Agreement and all other documents and instruments now or hereafter executed by Borrower or Guarantor to evidence, secure or guaranty the Loan; provided, however, that even though the Guaranty and the Indemnity Agreement are included in the definition of Loan Documents and notwithstanding any other provision of this Agreement or any other Loan

Document, the obligations of Guarantor under the Guaranty and the obligations of Borrower under the Indemnity Agreement are not secured by the Deed of Trust or any other collateral for the Obligations.

1.37. **_Loan Party_** means Borrower, each Guarantor, any general partner of Borrower and any manager of Borrower.

1.38. **_Marijuana_** is defined in Section 4.17 of this Agreement.

1.39. **_Marijuana Related Business_** is defined in Section 4.17 of this Agreement.

1.40. **_Material Adverse Change_** means a change in the business prospects, operations or financial condition of a person, entity or property that occurs after the Closing of the Loan that could impair the value of Lender's security for the Loan, prevent timely repayment of the Loan, or otherwise prevent the applicable Person from timely performing any of its material obligations under the Loan Documents, all as determined by Lender in its reasonable discretion.

1.41. **_Maturity Date_** is defined in Section 2.5 of this Agreement.

1.42. **_Note_** is defined in Section 2.4(a) of this Agreement.

1.43. **_Notice_** is defined in Section 10.8 of this Agreement.

1.44. **_Obligations_** mean all amounts now or hereafter payable by Borrower under the Loan Documents and any and all obligations of Borrower to Lender under or related to any Loan Document. Notwithstanding the foregoing or any other provision of this Agreement or any other Loan Document, none of the obligations of Borrower under the Indemnity Agreement are secured by the Deeds of Trust or any other collateral for the Obligations.

1.45. **_Organizational Documents_** means, with (a) respect to any limited liability company, its Certificate of Formation or Articles of Organization and its Limited Liability Company Operating Agreement, (b) with respect to any limited partnership, its Certificate of Limited Partnership and Limited Partnership Agreement, (c) with respect to any corporation, its Articles of Incorporation and Bylaws, (d) with respect to any general partnership, its partnership agreement, (e) with respect to any trust, its trust agreement and any trust certificate, (f) with respect to any tenancy in common, its tenancy in common agreement, and (g) with respect to each entity, a certificate of good standing from the state of organization, a certificate of qualification to conduct business in the state where the Property is located, and such authorizing resolutions, incumbency certificates and other documents as Lender may require to evidence the due organization and authority of Borrower, each of its constituent members, managers or partners, and the authority of each person signing the Loan Documents on behalf of such entity.

1.46. **_Person_** means an individual, a corporation, a partnership, a joint venture, a limited liability company, a trust, an unincorporated association, any governmental authority or any other entity.

1.47. **_Cornell Property_** means the real property and personal property encumbered by the Cornell Deed of Trust. The real property included in the Property is legally described on <u>Exhibit A</u> to this Agreement.

1.48.   **Skyline Property** means the real property and personal property encumbered by the Skyline Deed of Trust.  The real property included in the Property is legally described on <u>Exhibit A</u> to this Agreement.

1.49.   **Property** means both the Cornell Property and Skyline Property.

1.50.   **Related Obligation** means any other loan or financial accommodation owing to Lender by Borrower or Guarantor or any Affiliate of Borrower or Guarantor.

1.51.   **Title Company** is defined in Section 3.2 of this Agreement.

1.52.   **Title Policy** is defined in Section 3.2 of this Agreement.

1.53.   **Transfer** is defined in Section 7 of this Agreement.

## 2.   Terms of Loan.

### 2.1.   Agreement to Lend.

Lender agrees to make the Loan to Borrower and Borrower agrees to borrow the Loan from Lender on the terms and conditions set out in this Agreement.

### 2.2.   Disbursement of Loan.

Except as provided herein with respect to the Trust Buy-Out Reserve, Lender shall disburse the entire proceeds of the Loan to or for the account of Borrower upon Closing of the Loan. Lender's obligation to disburse the Loan proceeds to Borrower is subject to satisfaction of all of the terms and conditions set forth in this Agreement.  Borrower acknowledges that it has no right to disbursement of the Loan proceeds if such terms and conditions are not satisfied.

### 2.3.   Purpose of Loan.

The proceeds of the Loan shall be used by Borrower to refinance the Property and for the payment of transaction costs and other expenses of Borrower as reflected on the Schedule of Sources and Uses attached as <u>Exhibit B</u> to this Agreement and for such other purposes as have been approved by Lender.

### 2.4.   Loan Documents.

The Loan shall be evidenced, secured and guaranteed by the following Loan Documents each of which shall be duly executed and delivered to Lender on or before the Closing of the Loan:

(a)   A Promissory Note ("**Note**") payable by Borrower to Lender in the amount of the Loan.

(b)   The Cornell Deed of Trust which shall be a first lien on Borrower's fee-simple title to the Cornell Property, all fixtures and personal property (tangible or intangible) now or hereafter used or acquired by Borrower in connection with the ownership, development, operation or maintenance of the Property, and all leases, rents, revenues, and cash collateral of the Cornell Property.

(c)     The Skyline Deed of Trust which shall be a first lien on Borrower's fee-simple title to the Skyline Property, all fixtures and personal property (tangible or intangible) now or hereafter used or acquired by Borrower in connection with the ownership, development, operation or maintenance of the Property, and all leases, rents, revenues, and cash collateral of the Cornell Property.

(d)     The Guaranty from Guarantor.

(e)     The Indemnity Agreement from Borrower.

(f)     Such other documents, instruments or certificates as Lender may reasonably require, including such documents as Lender deems necessary or appropriate to effectuate the terms and conditions of this Agreement and the Loan Documents, and to comply with the laws of the State of Oregon.

Borrower authorizes Lender to file such UCC financing statements as Lender determines are advisable or necessary to perfect or notify third parties of the security interests intended to be created by the Loan Documents, which financing statements may describe the collateral as "all assets" of Borrower.

### 2.5.     <u>Maturity.</u>

The Loan shall be due and payable in full on February 1, 2024.

### 2.6.     <u>Interest.</u>

(a)     <u>Interest Rate</u>.  From the date of this Agreement through the Maturity Date, interest on the outstanding principal balance of the Loan will accrue at Twelve and 00/100 percent (12.0%) per annum.

(b)     <u>Deposit into Escrow</u>.  For any Loan proceeds that are disbursed into escrow to be released to Borrower at Closing, interest on such funds shall accrue from the date Lender deposits such funds into escrow, regardless of whether and when Borrower satisfies all conditions for release of such funds from escrow.  Lender shall have no obligation to require the escrow agent to deposit escrowed funds in an interest-bearing account.

(c)     <u>Computation</u>.  Interest on the Loan will accrue on so much of the principal balance as is outstanding from time to time and shall be computed on the basis of a 360-day year and the actual number of days elapsed in the period for which interest is payable.

### 2.7.     <u>Payments.</u>

(a)     <u>Interest Payments</u>.  On the first day of each month during the term of the Loan, Borrower shall pay all interest accrued on the Loan through the last day of the preceding month.

(b)     <u>Payment at Maturity</u>.  On the Maturity Date, the unpaid principal balance of the Loan, all unpaid accrued interest and all other sums then due and owing pursuant to the Note or the other Loan Documents shall be due and payable in full.

(c)     <u>Application of Payments</u>.  Except as applicable Law or the Deed of Trust may otherwise provide, all payments received by Lender under the Loan Documents shall be

applied by Lender in the following order of priority: (i) expenses incurred by Lender or the trustee under the Deed of Trust in any efforts to enforce any terms of the Deed of Trust; (ii) interest payable on advances made to protect Lender's security; (iii) principal of such advances; (iv) interest and late charges payable on the Note; (v) principal of the Note; and (vi) any other obligations secured by the Deed of Trust in such order as Lender, at its option, may determine; provided, however, that Lender may, at its option, apply any such payments received to interest on or principal of the Note prior to applying such payments to interest on and principal of advances made to protect the security of the Deed of Trust.

### 2.8. Prepayment.

Borrower may prepay the Loan in whole, but not in part, upon thirty (30) days' prior written notice to Lender, subject to payment of all interest that would accrue on the Loan through the date of repayment and the Exit Fee. Any applicable prepayment fee shall be due in the event of prepayment for any reason, including but not limited to an Event of Default, acceleration after an Event of Default or upon non-judicial or judicial foreclosure, deed in lieu or otherwise in Lender's sole discretion.

### 2.9. Late Charge.

If any monthly payment due under Section 2.7 above is not received by Lender by the end of business on the fifty (5th) day of the month, at the option of Lender, without waiving such Event of Default or any remedies, a late charge shall be added to the delinquent payment in the amount of five percent (5%) of the full payment not timely paid (the "***Late Charge***"). The grace period shall not be construed as in any way extending the due date of any payment. Any such Late Charge shall be due and payable on demand. If a Late Charge is not paid within ten (10) days of Lender's demand, the Late Charge may be added to the principal balance of the Loan, and it shall bear interest at the same rate as the principal balance of the Loan. Any payment to Lender by check, draft or other item shall be received by Lender subject to collection and will constitute payment when collected not when received. The Late Charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment and to compensate Lender for the loss of use of such funds and is in addition to, and not in lieu of, any other remedy Lender may have and is in addition to any fees and charges of any agents or attorneys which Lender may employ upon the occurrence of an Event of Default, whether authorized herein or by Law.

### 2.10. Default Interest.

After the occurrence of an Event of Default, Lender, in Lender's sole discretion and without notice or demand, may raise the rate of interest accruing on the outstanding principal balance to the Default Rate, independent of whether Lender elects to accelerate the outstanding principal balance of the Loan.

### 2.11. Reserves.

(a)     Insurance Reserve.     Unless waived by Lender, Lender shall reserve and hold in escrow a portion of the Loan proceeds in amount deemed by Lender to be sufficient for funding payments of insurance premiums related to the Property when such premiums become due. If Lender determines at any time during the Loan term that the amounts held in such reserve are insufficient to pay insurance premiums as they become due, Borrower shall, upon demand of Lender, pay such additional amounts into the reserve as Lender determines in its discretion.

- 7 -

(b)     Tax Reserve.    Unless waived by Lender, Lender shall reserve and hold in escrow a portion of the Loan proceeds in amount deemed by Lender to be sufficient for funding payments of property taxes related to the Property when such taxes become due.  If Lender determines at any time during the Loan term that the amounts held in such reserve are insufficient to pay property taxes as they become due, Borrower shall, upon demand of Lender, pay such additional amounts into the reserve as Lender determines in its discretion.

(c)     Debt Service Reserve.    Lender shall reserve and hold in escrow a portion of the Loan proceeds in the amount of One Million Two Hundred Thousand and no/100 Dollars ($1,200,000.00) to be disbursed to Lender in payment of monthly installments of interest due with respect to the Loan.   If, at any time during the term of the Loan, the Debt Service is not adequate for payment of interest then due with respect to the Loan, Borrower shall pay all such amount when due.

(d)     Working Capital Reserve.     Lender shall reserve and hold in escrow a portion of the Loan proceeds in the amount of One Hundred Thousand  and 00/100 Dollars ($100,000.00) to be disbursed to Lender in payment of certain development, insurance, property tax, studies, reports and operating expenses approved by Lender. Lender shall have no obligation to make disbursements from the Working Capital Reserve until (i) Borrower has established a working capital budget acceptable to Lender in its sole discretion, and (ii) Borrower has provided evidence satisfactory to Lender that the expenditures for which Borrower request funding are ordinary and necessary expenses of Borrower's business.

### 2.12.   **Borrower's Obligations Unconditional.**

All sums payable by Borrower under this Agreement or any other Loan Document shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Borrower hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction of or any Condemnation or similar taking of the Property or any part thereof; (ii) any restriction or prevention of or interference by any third party with any use of the Property or any part thereof; (iii) any title defect or encumbrance or any eviction from the Property or any part thereof by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Lender, or any action taken with respect to the Loan by any trustee or receiver of Lender, or by any court, in any such proceeding; (v) any claim which Borrower has or might have against Lender; (vi) any default or failure on the part of Lender to perform or comply with any of the terms hereof or of any other agreement with Borrower; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing and whether or not Borrower shall have notice or knowledge of any of the foregoing.  Except as expressly provided herein, Borrower waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any Obligation.

### 2.13   **Extension Options.**

Borrower shall have two (2) options to extend (the "Options to Extend") the term of the Loan from the Maturity Date (as may have been extended) to a date that is six (6) months following

the then applicable Maturity Date, upon satisfaction of each and every one of the following conditions precedent:

(a) Notice. Borrower shall provide Lender with written notice of Borrower's request to exercise the Option to Extend not less than thirty (30) days prior to the then-applicable Maturity Date;

(b) No Default. As of the date of Borrower's delivery of notice of request to exercise the Option to Extend, and as of the then-applicable Maturity Date, no Event of Default shall have occurred and be continuing beyond the expiration of any applicable cure period;

(c) No Adverse Circumstances. No event or circumstance affecting Borrower, Guarantor or the Property shall have caused a Material Adverse Effect on such Party's ability to perform its obligations under the Loan Documents;

(d) Extension Fee. Simultaneously with notice by Borrower according to Section 2.13(b), Borrower shall pay to Lender an extension fee in the amount of 1.50% of the principal amount of the Loan that is outstanding or will be outstanding on the first day of the extended term following the then-applicable Maturity Date; and

(e) Replenish Reserves. Borrower shall, prior to the then applicable Maturity Date, replenish any necessary reserves for taxes, insurance premiums and debt service, as may be required by Lender in its discretion.

**3.  Conditions Precedent to Closing.**

Lender shall have no obligation to close the Loan or advance any proceeds of the Loan unless each of the following conditions has been satisfied by the date of this Agreement. Each of the conditions is for the benefit of Lender and may be waived by Lender, but only if the waiver is in writing and signed by Lender. All of the documents and agreements required below shall be in form and substance satisfactory to Lender in its sole discretion.

**3.1.  Loan Documents.**

The Loan Documents shall have been duly executed by all parties thereto and where appropriate delivered, filed and recorded.

**3.2.  Title Insurance.**

Lender shall have received the Title Company's unconditional commitment to issue an ALTA lender's extended coverage title insurance policy in the full amount of the Loan, insuring Lender as the holder of the Deed of Trust with first lien priority on the fee simple title to the Property, together with such re-insurance and co-insurance agreements as Lender may require (the "***Title Policy***"). The Title Policy shall be issued by a title company acceptable to Lender (the "***Title Company***") and shall contain such endorsements as Lender may require. Any title exceptions will be subject to Lender's approval. Without limiting the foregoing, the Title Policy shall insure that (i) the Property is free of the possibility of any prior mechanic's or material supplier liens, and (ii) all taxes and assessments affecting the Property that were due and payable on or before the date of Closing of the Loan have been paid in full.

**3.3.**    **Property Documents.**

Lender shall have received and approved all of the following:

(a)    **Appraisal**. If required by Lender, a current Appraisal of the Property.

(b)    **Survey**. If required by Lender or if required by the Title Company to issue the Title Policy in the form required by Lender, an ALTA/NSPS land title survey of the Property certified by a licensed surveyor or engineer, which shall be in form and content acceptable to the Title Company to remove the survey exception to the Title Policy and issue all endorsements required by Lender. The survey shall show the compass bearing, the legal description, the dimensions, boundaries and total square foot area of the Property, the location of any existing improvements, all interior lot lines, easements, and utilities, the location of adjoining streets, and the distance to and the name of the nearest intersecting street.

(c)    **Environmental Report**. If required by Lender, a Phase I Environmental Report prepared in accordance with ASTM's Standard Practices for Environmental Assessments from a geotechnical engineer or other Person approved by Lender verifying that, after investigation into the prior uses of the Property, there is no material possibility that the Property is contaminated by Hazardous Substances, or that Hazardous Substances have been generated, stored or disposed of on or under the Property in an unlawful or potentially dangerous manner.

(d)    **Soil Report**. If required by Lender, a soils and/or seismic report with respect to the Property.

(e)    **Property Condition Report**. If required by Lender, a report from an engineer or architect approved by Lender regarding the condition and structural integrity of building improvements.

(f)    **Permits**. Copies of all permits, approvals and clearances required for Borrower's current or planned operation, use and occupancy of the Property.

(g)    **Utilities**. Evidence that all utilities, including water, sewer, gas and electric power, are available to the Property and are of sufficient size and capacity to serve the Property.

(h)    **Subdivision Compliance**. Evidence that the Property is one or more legal lots and otherwise in compliance with all applicable laws, ordinances and regulations respecting subdivision and platting.

(i)    **Abutting Streets**. Evidence that all streets adjoining the Property have been completed, dedicated and accepted for maintenance and public use by the appropriate governmental authorities and the Property is contiguous to a publicly dedicated street, road or highway, or that an easement creating a perpetual right of public access to a publicly dedicated street, road or highway is in effect.

(j)    **Zoning**. Evidence that the Property is zoned for its current and intended use.

### 3.4. __Insurance Requirements.__

Lender shall have received and approved such documentation and information as it may require to assure that Borrower is fully in compliance with the insurance requirements set out in Section 5 below.

### 3.5. __Organizational Documents.__

Lender shall have received and approved Organizational Documents for Borrower, all entity Guarantors, and such direct and indirect partners, members and managers of Borrower and any entity Guarantor as Lender may require. Without limiting the general nature of the foregoing, Lender shall have received copies of a fully executed membership interest purchase agreement, a fully executed assignment of membership interest and a fully executed amendment to, or amended and restated operating agreement, all pertaining to the Borrower and evidencing the transfer of membership interests such that the sole remaining member of Borrower is Eagle Holdings LLC, an Oregon limited liability company. Delivery of the originals of such documents shall be contingent only upon payment of a fixed sum from the proceeds of the Loan.

### 3.6. __Financial Information.__

Lender shall have received and approved current financial statements of Borrower and all Guarantors, certified as complete and correct by Borrower or such Guarantor, as applicable, together with such other financial information as Lender may request regarding Borrower and Guarantors.

### 3.7. __No Litigation.__

Other than the Borrower's bankruptcy cases and the partition action in Washington County, there shall be no litigation pending against Borrower or any Guarantor, which in the sole opinion of Lender, could result in a material adverse effect on the Property or on Borrower's or any Guarantor's ability to perform its obligations under the Loan Documents.

### 3.8. __No Condemnation or Casualty.__

No eminent domain proceeding that in any way affects the Property shall be pending or threatened and there shall have been no material damage to the Property from any casualty.

### 3.9. __Payment of Origination Fee.__

Borrower shall have paid Lender an origination fee in the amount of three percent (3.0%) of the principal amount of the Loan.

### 3.10. __Payment of Underwriting Fee.__

Borrower shall have paid Lender an underwriting fee in the amount of Fifteen Thousand and 00/100 Dollars ($15,000.00).

### 3.11. __Payment of Lender's Expenses.__

Borrower has paid, or will pay at Closing, in immediately available funds, all legal, appraisal, and inspection fees; title insurance and survey costs; recording and filing fees; real estate

commissions; hazard and liability insurance premiums and property taxes and assessments on the Property; and any and all other charges or expenses incurred by Lender in connection with the Loan or the preparation of the Loan Documents. Borrower shall indemnify, defend with counsel selected by Lender in its sole discretion, and hold Lender harmless from and against any and all claims for such fees, charges, commissions, taxes, or other expenses of any kind in any way connected with the Loan.

### 3.12. <u>No Adverse Change.</u>

At the date of Closing of the Loan, the financial condition and credit of Borrower and each Guarantor and all information relating to the Property and the condition of the Property shall be as represented to Lender without any material adverse change and there shall have been no material adverse change in the current or prospective value of the Property as set out in the Appraisal.

### 3.13. <u>Representations and Warranties.</u>

All of Borrower's and Guarantor's representations and warranties to Lender contained in this Agreement and the other Loan Documents shall be true in all material respects.

### 3.14. <u>Absence of any Default.</u>

Borrower and Guarantor shall be in full compliance with all of their covenants and obligations under the Loan Documents and there shall be no Default or Event of Default.

### 3.15. <u>Other Documents and Information.</u>

Lender shall have received and approved such other documents and information as it may require regarding the Property, or any Loan Party.

## 4. <u>Borrower's Representations and Warranties.</u>

Borrower makes the following representations and warranties to Lender which shall be true as of the date of this Agreement and as of the date of any disbursement of the proceeds of the Loan:

### 4.1. <u>Organization.</u>

Borrower is a limited liability company duly organized and validly existing under the laws of the State of Oregon. Borrower is managed by Vahan M. Dinihanian, Jr., who is the only manager of such Borrower. As of the date of this Agreement, the only member of Borrower is Eagle Holdings LLC, an Oregon limited liability company.

### 4.2. <u>Financial Statements; Indebtedness.</u>

Borrower and each Guarantor have furnished to Lender (i) current financial statements that have been prepared in accordance with generally accepted accounting principles consistently followed (or such variations thereof as may have been explained to and approved by Lender in writing), and (ii) Liquidity statements, tax returns and such other financial information as may be required by Lender, and such information is true and correct, fairly presents the financial condition of Borrower and each Guarantor as of the applicable date and the results of its operations for the applicable period. Borrower and each Guarantor have filed all federal, state, and other tax returns required to be filed by them. The IRS has not asserted any liability for taxes in excess of those

already paid by Borrower and each Guarantor and their assets are free of any federal or state tax liens. As of the date of this Agreement, except as has been disclosed to Lender in writing, neither Borrower nor any Guarantor has any Indebtedness other than the Indebtedness shown on such financial statements. There has been no Material Adverse Change in the financial condition of Borrower or Guarantor since the date of the financial statements provided to Lender.

### 4.3. No Litigation; No Default.

Other than the Borrower's bankruptcy cases and the partition action in Washington County, there are no litigation or administrative proceedings pending, nor to the knowledge of Borrower threatened, which could adversely affect any Loan Party or the Property, and no Loan Party is in default with respect to any contract, agreement, or other instrument, or any order, writ, injunction, decree, or demand of any court or administrative agency.

### 4.4. Taxes.

Borrower and each Guarantor have paid all license, franchise, and other taxes, fees, duties or charges, levied, assessed or imposed upon them, or upon any of their properties, of whatsoever kind or description, which are due and payable.

### 4.5. Financial Condition; Solvency.

No Loan Party has entered into the transaction evidenced by this Agreement or executed the Note, this Agreement or any other Loan Documents with the actual intent to hinder, delay or defraud any present or future creditor of such Loan Party and each Loan Party has received reasonably equivalent value in exchange for its obligations under the Loan Documents. No Loan Party (a) is "insolvent" as that term is defined in Section 101(32) of the United States Bankruptcy Code, Title 11 U.S.C. (the "***Bankruptcy Code***"), Section 2 of the Uniform Fraudulent Transfer Act ("***UFTA***") or Section 2 of the Uniform Fraudulent Conveyance Act ("***UFCA***"), (b) has "unreasonably small capital," as that term is used in Section 548(a)(1)(B)(ii)(II) of the Bankruptcy Code or Section 5 of the UFCA, (c) is engaged or about to engage in a business or a transaction for which its remaining property is "unreasonably small" in relation to such business or transaction as that term is used in Section 4 of the UFTA, or (d) is unable to pay its debts as they mature or become due, within the meaning of Section 548(a)(1)(B)(ii)(II) of the Bankruptcy Code, Section 4 of the UFTA and Section 6 of the UFCA. (As used in this Section, all terms used or defined in the Bankruptcy Code, UFTA or UFCA shall be subject to the statutory definitions and interpretive case law applicable thereto.) No petition in bankruptcy has been filed against any Loan Party in the last ten (10) years, and no Loan Party in the last ten (10) years has taken advantage of any law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, receivership, arrangement, adjustment, winding-up, liquidation, dissolution, assignment for the benefit of creditors, composition or other relief with respect to its debts or debtors ("***Creditors Rights Laws***"). No Loan Party is contemplating either the filing of a petition by it under any Creditors Rights Laws or the liquidation of all or the majority of the present fair market value of its assets or property, and no Loan Party has any knowledge nor has any reason to believe that any of its creditors will exercise or is contemplating exercising any of such creditor's rights under any Creditors Rights Laws.

### 4.6. Enforceability of Loan Documents.

The Loan and the execution, delivery, and performance of the Loan Documents have been duly authorized by all necessary action, and the obligations of Borrower and each Guarantor under

the Loan Documents constitute the legal, valid, and binding obligations of Borrower and each Guarantor, enforceable in accordance with their terms.

**4.7.**     **No Conflict.**

The execution, delivery, and performance of the Loan Documents by Borrower and each Guarantor do not conflict with or violate any federal, state or local law or regulation, or any contract, agreement, or other instrument applicable to Borrower or to which Borrower is bound.

**4.8.**     **No Consents.**

No consent, approval, authorization, or order of any court or governmental agency is required for the performance by Borrower or any Guarantor of their obligations under the Loan Documents which has not been obtained.

**4.9.**     **No Commencement of Construction.**

At the date of recordation of the Deed of Trust no construction has commenced and no materials have been delivered which would give anyone the right to claim a lien against the Property.

**4.10.**     **Services.**

All streets, easements, utilities, and related services necessary for the intended use of the Property purpose are available, including water, storm and sanitary sewers, electric and telephone facilities, and garbage removal.

**4.11.**     **Subdivision.**

The Property consists of one or more legally subdivided and segregated lots and may be mortgaged, conveyed, and otherwise dealt with as a separate lot or parcel.

**4.12.**     **No Condemnation or Casualty**.

Borrower has received no notice of pending or threatened eminent domain proceedings that in any way affect the Property and there has been no material damage to the Property from any casualty.

**4.13.**     **Permits.**

To the best of Borrower's knowledge, all certificates of occupancy and other licenses and approvals necessary or required in connection with the use and occupancy of the Property have been validly issued and are in full force and effect.

**4.14.**     **Use of the Property.**

To the best of Borrower's knowledge, the Property and the use of the Property is currently in compliance with and does not violate any Laws, building permits, restrictions of record, or agreements affecting the Property or any part thereof. To the best of Borrower's knowledge, no zoning authorization, approval or variance, nor any other right to operate or to use the Property, is to any extent dependent upon or related to any real estate other than the Property other than rights provided through easements appurtenant to the Property.

- 14 -

**4.15.** **Improvement District.**

To Borrower's knowledge, except as disclosed to Lender in writing, the Property is not situated within any metropolitan, local, special, or other improvement district and Borrower has no knowledge of any proposal under which the Property is to be placed in any such improvement district.

**4.16.** **No Encroachment.**

Except as disclosed on a survey provided to Lender, no building or other improvement constructed on the Property encroaches upon any property line, building line, setback line, side yard line or any recorded or visible easement (or other easement of which Borrower is aware or has reason to believe may exist) with respect to the Property.

**4.17.** **Illegal Activity.**

No portion of the Property has been or will be purchased, improved, equipped or furnished with proceeds of any illegal activity and there are not now and at no time during the term of the Loan will there be any illegal activities or any activities relating to any controlled substance (as defined by applicable federal, state and local law) on the Property. No part of the Property is being used for the cultivating, planting, growing or harvesting (collectively, "***Cultivating***") of any variety or species of a cannabis, hemp or marijuana plant or flower (collectively, "***Marijuana***") or for the processing, storage, sale or production of Marijuana or any Marijuana based products or merchandise (collectively with Cultivating, "***Marijuana Related Business***").

**4.18.** **Separate Tax Lot.**

The Property is assessed for real estate tax purposes as one or more wholly independent tax lot or lots, separate from any adjoining land or improvements not constituting a part of such lot or lots, and no other land or improvements are assessed and taxed together with the Property or any portion thereof.

**4.19.** **Disclosure of Information.**

All material information concerning the Borrower or Property known to Borrower, or which should have been known to Borrower in the exercise of reasonable care, has been disclosed to Lender. There are no facts or information known to Borrower, or which should have been known to Borrower in the exercise of reasonable care, that would make any of the information furnished to Lender by Borrower inaccurate, incomplete, or misleading in any material respect.

**4.20.** **Other Documents.**

To the best of Borrower's knowledge after diligent investigation, the documents submitted to Lender in connection with Borrower's application for the Loan are complete and accurate.

**4.21.** **No Default.**

There exists no Default or Event of Default.

**4.22.** **Use of Loan Proceeds.**

The proceeds of the Loan shall be applied to and are intended solely for business or commercial purposes, and not for personal, family, or household purposes.

**4.23.** **Other Financing.**

Borrower has not received other financing for the Property, except as has been specifically disclosed to Lender in writing prior to the execution of this Agreement.

**4.24.** **Other Liens and Indebtedness.**

There are no claims for social security, unemployment compensation, or other obligations to or claimed by any Person, that are or could become liens on the Property and no ad valorem taxes or assessments against the Property are delinquent.

**4.25.** **Representations and Warranties.**

All representations and warranties of each Loan Party in the other Loan Documents are true and correct in all material respects.

**4.26.** **Anti-Terrorism Laws.**

(a)     Neither Borrower nor any Guarantor nor any Affiliate of Borrower or any Guarantor is in violation of any Anti-Terrorism Laws.

(b)     Neither Borrower nor any Guarantor nor any Affiliate of Borrower or any Guarantor, nor any of their brokers or other agents acting or benefiting in any capacity in connection with the Loan is any of the following:  (i) a Person that is listed in the Annex to, or is otherwise subject to the provisions of, the Anti-Terrorism Order; (ii) a Person owned or controlled by, or acting for or on behalf of, any Person that is listed in the Annex to, or is otherwise subject to the provisions of, the Anti-Terrorism Order; (iii) a Person with whom any Lender is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law; (iv) a Person who commits, threatens or conspires to commit or supports "terrorism" as defined in the Anti-Terrorism Order; or (v) a Person that is named as a "specially designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list.

(c)     Neither Borrower nor any Guarantor nor any Affiliate of Borrower or any Guarantor nor any of their brokers or other agents acting in any capacity in connection with the Loan (i) conducts any business or engages in making or receiving any contribution of funds, goods or services to or for the benefit of any person described in Section 4.26(b) above, (ii) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Anti-Terrorism Order, or (iii) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.

**4.27.** **ERISA Representations.**

As of the date hereof and throughout the term of the Loan: (a) Borrower is not and will not be (i) an "employee benefit plan," as defined in Section 3(3) of ERISA, (ii) a "governmental plan"

within the meaning of Section 3(32) of ERISA, or (iii) a "plan" within the meaning of Section 4975(e) of the Code; (b) the assets of Borrower do not and will not constitute "plan assets" within the meaning of the United States Department of Labor Regulations set forth in Section 2510.3-101 of Title 29 of the Code of Federal Regulations; (c) transactions by or with Borrower are not and will not be subject to state statutes applicable to Borrower regulating investments of fiduciaries with respect to governmental plans; and (d) Borrower will not engage in any transaction that would cause any Obligation or any action taken or to be taken hereunder (or the exercise by Lender of any of its rights under the Deed of Trust or any of the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under ERISA or Section 4975 of the Code.  Borrower agrees to deliver to Lender such certifications or other evidence of compliance with the provisions of this Section as Lender may from time to time reasonably request.

### 4.28.  Foreign Person.

Borrower is not a "foreign person" within the meaning of Section 1445 or 7701 of the Internal Revenue Code.

### 4.29.  Single Purpose Entity Covenants.

Borrower is in full compliance with the single purpose entity representations, warranties and covenants set out in Section 9.13 of this Agreement.

### 4.30.  Brokerage Fees.

No brokerage fees or commissions are payable by or to any Person in connection with the Loan to be disbursed hereunder that have not been approved in writing by Lender.

### 4.31.  Survival.

All representations, warranties and covenants contained in this Section shall survive the delivery of the Note and the Loan Documents, and the making of the Loan evidenced hereby until the Obligations are satisfied in full and any investigation at any time made by or on behalf of Lender shall not diminish its rights to rely on all of such representations and warranties.

## 5.  Insurance and Condemnation Provisions.

### 5.1.  Required Insurance Coverage.

Borrower shall at all times be in compliance with the following requirements:

(a)  **Property Insurance**.  Borrower, at its sole cost and expense, shall keep the Property insured against loss or damage by fire and against loss or damage by other risks now embraced by "Special Form" or "All Risk" coverage, so called, (including without limitation, riot and civil commotion, vandalism, malicious mischief, water, fire, burglary and theft) without any exclusion for losses due to terrorism, windstorm (including named storm), hail, boiler and machinery/equipment breakdown (if applicable), flood and/or earthquake (if applicable), all as may be required by Lender, in amounts at all times sufficient to prevent Lender from becoming a co-insurer within the terms of the applicable policies and under applicable insurance law, providing for deductibles (not to exceed $25,000), maintained in an amount not less than 100% of the full replacement cost of the Property (equivalent to the insurable value of the Property as determined by an appraisal acceptable to Lender), on an agreed amount basis, without deduction for

depreciation and without reference to co-insurance (an insurance to value provision is not permitted in the policy).

(b) **Liability and Other Insurance**. Borrower shall also provide commercial general liability insurance naming Lender as an additional insured. Such insurance shall provide coverage for personal injury liability, and liability for bodily injury, death, and damage to property, products and completed operations, against any and all claims, including all legal liability to the extent insurable and imposed upon Lender, and all court costs, legal fees and expenses. The limits of liability for such insurance coverage shall be in an amount not less than One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) in the aggregate, and shall be without a deductible or self-insured retention, together with excess/umbrella liability coverage of not less than Five Million Dollars ($5,000,000) per occurrence. Upon request, Borrower shall also carry additional insurance or additional amounts of insurance covering Borrower or the Property as Lender shall reasonably require.

(c) **Flood Insurance**. If any portion of any structure on the Property is now, or hereafter becomes, situated in a federally designated special flood hazard area, then Borrower shall obtain and maintain at all times thereafter, a policy of flood insurance on the structure and Borrower-owned contents, providing for deductibles (not to exceed $10,000), in such amount as Lender may, from time to time require, but in no event shall the amount be less than the amount sufficient to meet the requirements of applicable Law as such requirements may from to time to time be in effect, and shall otherwise comply with the requirements of the National Flood Insurance Program. A Life of Loan Flood Hazard Certificate shall be provided to Lender identifying the Flood Hazard Zone in which the Property is situated.

(d) **Law and Ordinance Insurance**. Borrower shall obtain an "Ordinance or Law Coverage" or "Enforcement" endorsement, which shall include coverage for (A) loss of value (in an amount no less than 100% of the full replacement cost of the Improvements), (B) demolition and debris removal costs (in an amount not less than 10% of the policy limit or insured value), and (C) increased costs of construction (in an amount not less than 10% of the policy limit or insured value).

(e) **Builder's Risk Insurance**. At all times during which a n y structural construction, material repairs or alterations are being made with respect to the Property, to the extent required by Lender, Borrower shall also maintain (A) owner's contingent or protective liability insurance covering claims related to construction and not covered by or under the terms or provisions of the above-mentioned commercial general liability insurance policy; and (B) the insurance provided for in Section 5.1(a) above written in a so-called builder's risk completed value form on a non-reporting basis, including permission to occupy the Property, an agreed amount endorsement waiving co-insurance provisions, a soft cost endorsement in an amount required by Lender, coverage for materials in transit or storage, and delay in completion coverage in an amount required by Lender.

(f) **Workers' Compensation Insurance**. If Borrower has employees, Borrower shall also maintain workers' compensation insurance, subject to the statutory limits of the state where the Property is located, and employer's liability insurance with a limit of at least $1,000,000 per accident and per disease per employee, with respect to any work or operations on or about the Property.

(g) **Contractor Insurance**. If at any time there are construction activities on the Property, Borrower shall cause each general contractor and each other contractor with whom

Borrower contracts directly to provide and maintain comprehensive (commercial) general liability insurance, protective liability insurance and workers' compensation insurance for all employees of such contractor meeting such of the requirements of subsections (b) and (g) above as may be required by Lender.

(h)   **Other Insurance**.  Borrower shall maintain such other, different and additional insurance coverage as Lender may require from time to time in accordance with its underwriting guidelines in effect from time to time.

## 5.2.   **Insurance Policy Requirements.**

(a)   The original policy or policies and renewals thereof (or, at the sole option of Lender, duplicate originals or certified copies thereof), together with receipts evidencing payment in full, without financing, of the premium therefor, shall be deposited with Lender within sixty (60) days after the Closing of the Loan and with respect to any required renewals or required additional coverage, by the time required below.  Borrower assigns to Lender the proceeds of each such policy or policies as security for the Obligations.  Insurance required under Section 5.1 above may be provided in one policy or separate policies for hazard insurance, rental or business income insurance, general liability, terrorism, windstorm/hail, earthquake, environmental or flood (or other special perils) insurance.  In the event Borrower elects to obtain separate policies for the Property and special perils coverage required herein, each such separate policy shall include loss of rents/business income coverage provisions or endorsements.  Each such policy of insurance shall contain a non-contributing loss payable clause and a mortgagee clause in favor of and in form acceptable to Lender for property policies and naming Lender as an additional insured for liability policies and shall provide for not less than thirty (30) days prior written notice to Lender of any intent to modify, cancel, rescind, or terminate the policy or policies or the expiration of such policies of insurance, and must include a Lender's Loss Payable endorsement and such other endorsements as required by Lender, including replacement cost, agreed amount and inflation guard endorsements.  If the insurance required hereunder or any portion thereof is maintained pursuant to a blanket policy, Borrower shall furnish to Lender a certified copy of such policy including a schedule of values for all insured properties and together with an original Evidence of Insurance (in form satisfactory to Lender) indicating that Lender (and its successors and/or assigns) is an insured under such policy in regard to the Property and showing the amount of coverage apportioned to the Property which coverage shall be in an amount sufficient to satisfy the requirements hereof.  Not less than thirty (30) days prior to the expiration dates of each policy required of Borrower hereunder, Borrower will deliver to Lender a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment and renewal satisfactory to Lender.  In the event of foreclosure of the Deed of Trust or deed in lieu of foreclosure of the Deed of Trust, any successor in title through foreclosure or deed in lieu of foreclosure shall succeed to all rights of Borrower, including, without limitation, any rights to unearned premiums, in and to all insurance policies assigned and delivered to Lender hereunder.

(b)   Each insurance policy required under Section 5.1 above shall be issued by an insurance company authorized to do business in the state where the Property is located, approved by Lender, and must have and maintain a current financial strength rating of "A- VI" (or higher) from A.M. Best or equivalent (or, if a rating by A.M. Best is no longer available, then a similar rating from a similar or successor service).

(c)   Each insurance policy required under Section 5.1 above shall include a waiver of subrogation provision acceptable to Lender.  Borrower for itself, and on behalf of its insurers, hereby waives and releases any and all right to claim or recover against Lender, its

officers, employees, agents and representatives, for any loss of or damage to Borrower, other Persons, the Property, Borrower's property or the property of other Persons from any cause required to be insured against by the provisions of this Agreement or otherwise insured against by Borrower.

**5.3.**     <u>**Application of Insurance Proceeds.**</u>

(a)     In the event of any loss, Borrower shall give prompt written Notice thereof to the insurance carrier and Lender. Borrower hereby authorizes Lender as Borrower's attorney-in-fact to make proof of loss, to adjust and compromise any claim, to commence, appear in and prosecute, in Lender's or Borrower's name, any action relating to any claim, and to collect and receive Insurance Proceeds; provided, however, that Lender shall have no obligation to do so. Within ten (10) days after Borrower's receipt of any Insurance Proceeds, Borrower shall deliver the same to Lender in the form in which they were received, together with any endorsements or documents that may be necessary to effectively negotiate or transfer the same to Lender. Lender shall apply any Insurance Proceeds received by it hereunder first to the payment of the costs and expenses incurred in the collection thereof and then, in its absolute discretion and without regard to the adequacy of its security, to the payment of the Loan, whether then due and payable or not. Any such application of Insurance Proceeds to principal of the Loan shall be without imposition of any prepayment fee otherwise payable under this Agreement, but shall not extend or postpone the due dates of any installment payments required hereunder or change the amounts thereof.

(b)     Notwithstanding Section 5.3(a) above, Lender will make Insurance Proceeds available to Borrower to reimburse Borrower, under Lender's prescribed disbursement control procedures, for the cost of restoration or repair of the Property, provided the following conditions are satisfied:

(i)     There is then no Default or Event of Default under this Agreement.

(ii)     Borrower shall have furnished to Lender and Lender shall have approved a detailed budget and cost breakdown for the restoration and rebuilding work, describing the nature and type of expenses and the cost thereof estimated by Borrower for such restoration and rebuilding work, including without limitation, the cost of materials and supplies, architect's, engineer's and designer's fees, general contractor's fees, and the anticipated monthly disbursement schedule.

(iii)     Lender shall have reviewed and approved the construction contract for the repair and restoration, and if required by Lender, Lender shall have received and approved payment and performance bonds with dual obligee rider.

(iv)     Lender shall have received satisfactory evidence that the Insurance Proceeds are adequate to pay all of the direct and indirect costs of restoring the Property to its condition immediately prior to the casualty, and if the proceeds are insufficient, Lender shall have received from Borrower the amount of the deficiency in immediately available funds for disbursement prior to disbursement of the Insurance Proceeds and such funds shall constitute security for the Obligations. If at any time or from time to time during restoration of the Property Lender determines that the undisbursed Insurance Proceeds and other undisbursed funds deposited by Borrower with Lender are insufficient to pay all of the remaining direct and indirect costs of restoration, Borrower will deposit the deficiency with Lender in immediately available funds within ten (10) days after demand.

(v)     Lender shall have received evidence satisfactory to it that Borrower has funds available to it sufficient to pay all operating expenses, taxes, debt service and other carrying costs of the Property through the period of repair or restoration.

(vi)     Borrower shall have furnished to Lender and Lender shall have approved plans and specifications for the restoration or rebuilding work, and written evidence satisfactory to it that the same have been approved by all governmental authorities having jurisdiction over the Property.

(vii)     In Lender's judgment, the rebuilding and restoration work can be completed at least six (6) months prior to the Maturity Date of the Note.

(viii)     Lender must be satisfied that the Leases of the Property will remain in full force and effect pending the completion of the work, or Lender shall have received evidence satisfactory to it that upon completion of the work, the Property will produce sufficient income and be of sufficient value to be adequate security for the Obligations.

(ix)     Borrower executes and delivers to Lender such additional security documents and instruments as Lender deems reasonably necessary to continue and perfect Lender's security interest in the Property.

(c)     Lender may, at its option, condition disbursements under Section 5.3(b) above on Lender's approval of the plans and specifications for the reconstruction, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and material suppliers, and such other evidence of costs, percentage completion of construction, application of payments and satisfaction of liens as Lender may require in accordance with Lender's customary disbursement procedures for construction loans.

(d)     Borrower's obligations under the Deed of Trust to repair and restore the Property in the event of any casualty are not conditioned on the availability or adequacy of Insurance Proceeds to pay for such repair and restoration.

### 5.4.     <u>Force-Placed Insurance.</u>

If Borrower fails to provide, maintain, keep in force or deliver to Lender the policies of insurance required by this Agreement, Lender may (but shall have no obligation to) procure such insurance or single-interest insurance for such risks covering Lender's interest, and Borrower will pay all premiums thereon and reimburse Lender for all amounts paid or incurred by Lender in connection therewith promptly upon demand by Lender, and until such payment is made by Borrower, the amount of all such premiums shall be added to the Obligations and shall bear interest at the Default Rate.

### 5.5.     <u>Condemnation.</u>

(a)     **Proceedings**.  Borrower shall promptly notify Lender of any action or proceeding relating to any Condemnation (including without limitation any change in the grade of the Property), whether direct or indirect, of the Property or part thereof or interest therein, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any Condemnation and to settle or compromise any claim in connection with such

Condemnation; provided, however, that Lender will not act under such power of attorney except upon the occurrence and during the continuation of an Event of Default. Whether or not there is then any uncured Event of Default, Borrower will not settle or compromise any claim in connection with any Condemnation without Lender's prior written consent which will not be unreasonably withheld. All Condemnation Awards are assigned to Lender and all Condemnation Awards shall be paid to Lender. If Borrower receives any Condemnation Award, Borrower shall deliver the same to Lender in the form received, together with any endorsements or documents that may be necessary to effectively negotiate or transfer the same to Lender.

(b) **Application of Condemnation Awards**. Lender shall apply any Condemnation Awards in the manner and upon the terms and conditions set forth in Section 5.3(a) and 5.3(b) of this Agreement relating to the application of Insurance Proceeds.

### 5.6. Further Assurances.

Borrower agrees to execute and deliver from time to time, upon the request of Lender, such further instruments or documents as may be requested by Lender to confirm the grant and assignment to Lender of any Condemnation Awards or Insurance Proceeds.

## 6. Leasing Covenants.

### 6.1. Restrictions.

(a) Without the prior written consent of Lender, Borrower and Borrower's agents shall not (i) enter into any Lease, (ii) materially modify, amend, or terminate any Lease, or (iii) accept any rental payment more than one (1) month in advance of its due date. Borrower shall provide Lender with a copy of all new Leases, Lease modifications, and Lease extensions no less than ten (10) days prior to execution of such documents.

(b) Lender shall provide written consent or denial to any proposed Lease or any material modification, amendment or termination of a Lease within seven (7) Business Days after Lender's actual receipt of the proposed Lease, modification, amendment, or termination and any additional information requested by Lender in connection therewith. If Lender does not respond to Borrower during such seven (7) Business Day period, Borrower shall send Lender a second written request for Lender's consent to the proposed Lease, material modification, amendment or termination. If Lender does not respond to Borrower within five (5) Business Days after Lender's actual receipt of such second request, Lender shall be deemed to have approved the proposed Lease, modification, amendment or termination. Borrower shall, in any event, provide Lender with a copy of the fully executed original of all Leases promptly following their execution. At Lender's request, Borrower shall cause each new tenant under a Lease to execute subordination, non-disturbance and attornment agreements and tenant estoppel certificates reasonably satisfactory to Lender. Lender reserves the right to subordinate the Deed of Trust to any Lease.

## 7. Transfer Restrictions.

Borrower acknowledges and agrees that the identity of Borrower and its partners, members, managers, and employees, and of Guarantor, and the relationship between Borrower and Lender, Borrower's and Guarantor's creditworthiness, business expertise, financial condition, and continued control of the Property were material inducements upon which Lender relied in making the Loan. Accordingly, Borrower shall not: (i) sell, convey, assign, lease, encumber, or otherwise transfer, assign, hypothecate or encumber any of its right, title, or interest in and to the Property or any

portion thereof, (ii) sell, assign, transfer or encumber its interest as Borrower under the Loan, or (iii) transfer or encumber or allow the transfer, encumbrance or issuance of any stock, membership, partnership or other direct or indirect ownership interest in Borrower, whether such transfer, issuance or encumbrance is voluntary or by operation of law, or (iv) take any other action which results or could result in Guarantor no longer being in Control of Borrower (any or all of the foregoing being referred to herein as a "***Transfer***").  Any attempted Transfer without Lender's prior written consent shall constitute an immediate Event of Default by Borrower under this Agreement and the other Loan Documents and the Obligations shall immediately become due and payable in full without the requirement of any Notice from Lender.

**8.    Default and Remedies.**

**8.1.    Events of Default.**

The occurrence of any one or more of the following shall be an "***Event of Default***" under this Agreement and the other Loan Documents:

(a)    Failure to pay the Loan and all amounts owing under the Loan Documents in full by the Maturity Date;

(b)    Failure to make any required monthly payment of principal or interest on the Loan within five (5) days of the date when due hereunder;

(c)    Failure to make any other payment required under this Agreement or the other Loan Documents if such failure is not cured within five (5) days after the date on which such payment is due;

(d)    Failure to perform any other covenant, agreement or obligation to be performed by Borrower under this Agreement if such failure is not cured within thirty (30) days after written Notice thereof has been given by Lender to Borrower (or if the failure is such that the cure cannot be completed within said thirty (30) day period, failure by Borrower to commence the cure within said thirty (30) day period and thereafter continue the cure with diligence and complete the cure within ninety (90) days after such written Notice);

(e)    The occurrence of an Event of Default as defined in any other Loan Document;

(f)    The occurrence of any default by Borrower under the Indemnity Agreement;

(g)    The occurrence of any Transfer;

(h)    Any representation or warranty made by Borrower or Guarantor to Lender proves to be false or misleading in any material respect;

(i)    The filing of a complaint for receivership or the filing of a voluntary or involuntary petition for bankruptcy or for reorganization under any Creditor's Rights Law (unless such complaint or petition is released or discharged within forty-five (45) days of such filing), with respect to Borrower or any Guarantor;

(j)     Borrower or any Guarantor admits in writing the inability to pay its debts when due, becomes insolvent, makes a general assignment for the benefit of creditors, consents to the appointment of a receiver of all or any material portion of its property or assets, or voluntarily suspends its usual business (unless such event occurs with respect to a Guarantor, and within thirty (30) days thereafter, Borrower provides a cure that is acceptable to Lender, including but not limited to providing a replacement guarantor acceptable to Lender);

(k)     Any action is pending or threatened against Borrower, any Guarantor, or the Property at any time during the term of the Loan and, in Lender's reasonable opinion, such action jeopardizes its security for the Loan, Borrower's ability to repay the Loan, or such Guarantor's ability to satisfy its obligations under its Guaranty;

(l)     A final judgment, order, or decree for the payment of money is rendered against Borrower or any Guarantor, and Borrower or such Guarantor does not satisfy and pay the same or cause it to be discharged within thirty (30) days from the entry thereof, or fails to appeal therefrom and secure a stay of execution pending such appeal, or there is an attachment, execution, or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged or bonded against to Lender's reasonable satisfaction within thirty (30) days;

(m)     Borrower fails to maintain any of the insurance coverage required under Section 5.1 or Section 5.2 above or fails to provide proof of coverage or copies of insurance policies within the time required under Section 5.1 or Section 5.2 above;

(n)     Any default by Borrower in any of its obligations under Section 9.7 below [Unauthorized Liens and Encumbrances];

(o)     The occurrence of a Material Adverse Change with respect to Borrower, Guarantor, or the Property;

(p)     There is an uninsured casualty with respect to any material portion of the Property and Borrower fails to immediately repair such damage (whether or not Lender has disbursed any available Insurance Proceeds for such repair), Borrower fails to satisfy the conditions set forth in this Agreement for the release of Insurance Proceeds or any Condemnation Award, or, whether or not Lender has received and applied Insurance Proceeds or any Condemnation Award to the obligations arising under the Loan Documents in accordance with this Agreement, Lender reasonably determines that its security is impaired by such casualty or Condemnation, and Borrower fails to immediately deposit with Lender an amount determined by Lender as necessary to restore such security;

(q)     The Property or any part thereof is condemned or taken in any eminent domain or other like proceeding, or such proceeding is pending that, in Lender's judgment, would have a material adverse effect on the Property;

(r)     Any individual Guarantor dies, provided, however, that such Guarantor's death shall not trigger a default if, within one hundred twenty (120) days thereafter, a substitute guarantor satisfactory to Lender in its sole discretion executes a substitute guaranty in a form satisfactory to Lender in its sole discretion;

(s)     Any default by Borrower in any of its obligations under Section 9.13 below [Single Purpose Entity Covenants];

- 24 -

(t)     Any failure to comply with or violation of Section 9.18 [Prohibition on Marijuana Related Business]; or

(u)     The occurrence of any default on any Related Obligation which is not cured within any applicable cure period or grace period under the documents evidencing such Related Obligation.

**8.2.  Remedies.**

(a)     Upon the occurrence of an Event of Default, Lender shall have no further obligation to disburse any proceeds of the Loan.

(b)     Upon the occurrence of any Event of Default under Section 8.1(i) or Section 8.1(j) above, and without any further action of Lender, the Obligations shall immediately become due and payable in full without presentment, demand, protest or other notice of any kind, all of which are expressly waived by each Loan Party.  Upon the occurrence of any other Event of Default hereunder, the Obligations shall, at the option of Lender, become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are expressly waived by each Loan Party.  In either case, Lender may proceed with every remedy available at law or in equity or provided for herein or in any other Loan Document and all expenses incurred by Lender in connection with any remedy shall be deemed indebtedness of Borrower to Lender and a part of the Obligations.  Lender may apply any funds held by it as security for the Obligations or the proceeds from any collateral for the Obligations against any of the Obligations in such order as Lender may determine in its sole and absolute discretion.

(c)     Upon the occurrence of any Event of Default, Lender shall have the right, but not the obligation, in person or by agent and in its own name or the name of Borrower, to take possession of the Property and perform any and all work and labor necessary to protect and maintain Lender's interest in the Property in accordance with this Agreement.  Borrower hereby irrevocably constitutes and appoints Lender as its true and lawful attorney-in-fact with full power of substitution (exercisable only after an Event of Default) to operate the Property in the name of Borrower and to (i) employ such contractors, subcontractors, agents, architects and inspectors as shall be required for such purposes; (ii) pay, settle or compromise all existing bills and claims which may be liens against the Property or as may be necessary or desirable for the operation of the Property or for clearance of title; (iii) prosecute and defend all actions or proceedings in connection with the Property; and (iv) do any and every act which Borrower might do in its own behalf in order to operate the Property.  The power of attorney granted hereby shall be deemed to be a power coupled with an interest and irrevocable.

(d)     Upon the occurrence of any Event of Default, Lender may, with or without entering upon the Property, (i) exclude Borrower and any Person from the Property without liability for trespass, damages, or otherwise; (ii) take possession of, and Borrower shall surrender on demand, all books, records, and accounts relating to the Property; (iii) give notice to tenants or any Person, make demand for, collect, receive, sue for, and recover in its own name all rents and cash collateral derived from the Property; (iv) use, operate, manage, preserve, control, and otherwise deal with every aspect of the Property including (A) conducting its business, (B) insuring it, (C) making all repairs, renewals, replacements, alterations, additions, and improvements to or on it, (D) completing the construction of any improvements in manner and form as Lender deems advisable, and (E) executing, modifying, enforcing, and terminating new and existing Leases on such terms as Lender deems advisable and evicting any tenants in default; (v) apply the receipts from the Property to payment of the Obligations, in any order or priority determined by Lender,

- 25 -

after first deducting all costs, expenses, and liabilities incurred by Lender in connection with the foregoing operations and all amounts needed to pay impositions and other expenses of the Property, as well as just and reasonable compensation for the services of Lender and its attorneys, agents, and employees; and/or (vi) in every case in connection with the foregoing, exercise all rights and powers of Borrower or Lender with respect to the Property, either in Borrower's name or otherwise.

(e)     All amounts advanced by Lender for the foregoing purposes shall be deemed to be advances under the Note and shall be part of the Obligations, notwithstanding that such advances may cause the total amount advanced under the Note to exceed the principal amount of the Loan, and Borrower shall reimburse Lender upon demand for such advances, together with interest at the Default Rate.

### 8.3.    <u>No Remedy Exclusive.</u>

No remedy conferred upon or reserved to Lender under this Agreement or the other Loan Documents shall be exclusive of any other remedy provided in the Loan Documents or by law or in equity, and each shall be cumulative and shall be in addition to every other remedy given Lender under any of the Loan Documents or now or hereafter existing at law or in equity or by statute. Lender at its sole option, without limiting or affecting any rights and remedies hereunder, may exercise any of the rights and remedies to which it may be entitled under the Loan Documents concurrently or in such order as Lender may determine. The exercise of any rights of Lender shall not in any way constitute a cure or waiver of an Event of Default or invalidate any act done pursuant to any notice of default or prejudice Lender in the exercise of any of its rights. No delay or failure of Lender in the exercise of any right or remedy provided under this Agreement or any other Loan Document shall be deemed a waiver of the right by Lender, and no exercise or partial exercise or waiver of any right or remedy shall be deemed a waiver of any further exercise of such right or remedy or of any other right or remedy that Lender may have. The enforcement of any rights of Lender as to any security for the Obligations shall not affect the rights of Lender to enforce payment of the Loan and to recover judgment for any portion thereof remaining unpaid.

### 8.4.    <u>Right of Set-Off.</u>

Borrower grants to Lender a contractual security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. In addition to any rights and remedies of Lender provided by law, if an Event of Default exists or the Loan has been accelerated, Lender is authorized at any time and from time to time, without prior notice to Borrower, any such notice being waived by Borrower to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held by, and other indebtedness at any time owing by Lender to Borrower, against the Obligations now or hereafter existing, irrespective of whether or not Lender shall have made demand under this Agreement or any Loan Document and although such obligations may be contingent or unmatured. Lender agrees promptly to notify Borrower after any such set-off and application made by Lender; <u>provided</u>, <u>however</u>, that the failure to give such notice shall not affect the validity of such set-off and application.

**8.5.** **Inapplicability of Cure Periods.**

All cure periods provided in this Agreement shall be inapplicable if, in Lender's sole judgment, the Default is not capable of being cured within the time allowed, or a delay in Lender's enforcement of its rights and remedies may result in a material impairment of its security.

**9.** **Other Covenants.**

**9.1.** **Financial Reporting.**

For as long as Borrower or its Affiliates has any outstanding loans with Lender, any obligations to Lender in connection with the Loan, or intends to continue to seek financing from Lender, Borrower and/or such Affiliate agree to provide to Lender the following financial information in a form and substance satisfactory to Lender within the applicable deadlines set forth below. For so long as Borrower has any continuing obligations under the Loan Documents or with respect to any Related Obligations, such reporting requirements shall survive the repayment of the Loan. Each financial statement shall be prepared in accordance with generally accepted accounting principles or prepared in accordance with the accounting principles used in the preparation of the financial statement submitted to and approved by Lender in connection with its initial approval of the Loan, and certified as correct by Borrower.

(a)     As soon as available and in any event within fifteen (15) days after the end of each calendar month, starting with February, 2022, a copy of the monthly financial statements for Borrower for the preceding calendar month, including balance sheet, related statements of earnings, income and expense statements and cash flow statement, accurately reflecting its financial condition and certified to be true and correct in all material respects, without qualification or exception, by Borrower.

(b)     As soon as available and in any event within ninety (90) days after the end of each calendar year, starting with the 2022 calendar year, a copy of the annual financial statements for Borrower for the preceding year, including balance sheet, related statements of earnings, income and expense statements and cash flow statement, accurately reflecting its financial condition and certified to be true and correct in all material respects, without qualification or exception, by Borrower.

(c)     If requested by Lender, a proposed operating budget for the Properties for the then-current year, by not later than January 31st of such year.

(d)     Such other financial information regarding Borrower or the Properties as Lender may reasonably request from time to time.

**9.2.** **Financial Covenants.**

(a)     Borrower will maintain a standard system of accounting, established and administered in accordance with sound accounting practices and on a consistent basis under a method of accounting approved by Lender, and will maintain accurate and proper books of account and other records relating to the Properties.

### 9.3.  Maintenance of Existence.

Until the Obligations are fully paid and satisfied, Borrower shall: (a) maintain its existence in the form under which it currently operates and preserve in full force and effect all its rights having a material effect upon its business or the ownership of its properties; and (b) give prompt Notice to Lender of any material change in Borrower's or any Guarantor's business or financial position, any change in any location where Borrower's or any Guarantor's accounts and/or assets are maintained, the location of any new places of business of Borrower or any Guarantor, the changing or closing of any of its existing places of business, and any change in Borrower's or any Guarantor's name.

### 9.4.  Compliance With Laws and Permits.

Borrower will keep all permits, licenses and approvals for the operation of the Property in full force and effect and will fully comply with all of its obligations thereunder and under any Laws applicable to the Property and the operation thereof.

### 9.5.  Other Agreements.

Borrower will timely pay and perform all of its obligations under all contracts or agreements relating to the ownership and operation of the Property. Without Lender's prior written consent, which shall not be unreasonably withheld, conditioned or delayed, Borrower shall enter into no material contract or agreement relating to the ownership or operation of the Property.

### 9.6.  Inspections.

Lender or its representatives shall at all times have the right of entry and free access to the Property, and the right to inspect all work done, labor performed and materials furnished on or about the Property. Lender or its representative shall at all times have the right to access and inspect all books, records, contracts, sub-contracts, invoices, bills and statements of Borrower wherever located, including any supporting or related vouchers or other instruments. If Lender so requires, copies of such items shall be delivered to Lender or its representatives for audit, examination, inspection, and photocopying. Borrower acknowledges and agrees that all inspections by Lender or its representatives are solely for the purpose of protecting the security of Lender. Borrower shall at all times cooperate and cause each and every one of its agents, contractors, subcontractors and material suppliers to cooperate with the representatives of Lender in connection with or in aid of the performance of Lender's functions under this Agreement. No such inspection shall constitute approval of any certification or representation given to Lender or relieve any Person making such certification or representation from the responsibility therefor.

### 9.7.  Unauthorized Liens and Encumbrances.

Borrower shall keep the Property free from all liens, judgments, encumbrances and other title exceptions of any kind ("***Liens***"), whether or not superior to the Deed of Trust. If any Lien is filed or placed against the Property, Borrower shall cause such Lien to be removed within twenty (20) days of such filing; provided, however, that if Borrower is contesting any Lien in good faith and by appropriate proceedings, Lender will not require the Lien to be released and removed so long as the proceedings contesting the Lien prevent enforcement of the Lien while such contest is pending and so long as Borrower provides security against such Lien in such amount and form as Lender may require in its sole discretion. If Borrower does not cause the Lien to be released, secured against, or bonded over within said twenty (20) days, Lender may disburse funds to pay

such Lien, and all amounts so advanced by Lender, together with interest on such amounts at the Default Rate, shall be due and payable on demand, shall be part of the Obligations and shall be secured by the Deed of Trust and any other collateral for the Obligations. Lender's rights under this section shall not be affected by any claim of Borrower that the Lien is invalid, it being understood that the decision of Lender to pay or withhold is to be made by Lender in its sole discretion.

### 9.8. <u>No Restrictive Covenants.</u>

No restrictive covenant, zoning change or other restriction affecting the Property may be entered into, requested by or consented to by Borrower without the prior written consent of Lender.

### 9.9. <u>Distributions, Dividends and Compensation.</u>

Borrower shall not declare, pay, set aside funds for or make any distribution or dividend, in cash or assets or trust, to or for the benefit of any of Borrower's shareholders, members, equity holders, partners or other beneficial owners until the Loan has been repaid in full.

### 9.10. <u>Other Indebtedness.</u>

Borrower shall not incur any Indebtedness other than the Loan and customary trade payables which (i) are paid in full within sixty (60) days after the date incurred, and (ii) do not in the aggregate amount outstanding at any time exceed four percent (4%) of the amount of the Loan.

### 9.11. <u>Amendments to Organizational Documents.</u>

Borrower will not suffer or permit any material amendment to its Organizational Documents or the Organizational Documents of any manager/managing member/general partner of Borrower nor shall Borrower nor any manager/managing member/general partner of Borrower permit any termination or dissolution of its existence or any merger or consolidation with any other entity.

### 9.12. <u>Management Agreements</u>

Without Lender's prior written consent, which shall not be unreasonably withheld, conditioned or delayed, Borrower will not (a) enter into or amend any property management agreement or development agreement for the Property, or (b) enter into or amend any other material agreement relating to the Property.

### 9.13. <u>Single Purpose Entity Covenants.</u>

Borrower hereby agrees and acknowledges that, as a condition of Lender's agreements and performance of its obligations hereunder, Lender is relying on the status of Borrower as a legal entity separate and apart from any affiliate or any other Person or entity and has required that Borrower maintain such status, and Borrower hereby acknowledges such reliance and requirement. Accordingly, Borrower represents, warrants and covenants as of the Closing and at all times that the Loan Documents are in effect, that Borrower has not and will not:

        (a)     engage in any business or activity other than the ownership, operation and maintenance of the Properties, and activities incidental thereto;

(b)     acquire or own any assets other than the Properties and such incidental other property as may be necessary for the operation of the Properties;

(c)     fail to observe all organizational formalities, or fail to preserve its existence as an entity duly organized, validly existing and in good standing under the applicable legal requirements of the jurisdiction of its organization or formation, or fail to comply with the provisions of its organizational documents;

(d)     own any subsidiary, or make any investment in, any entity;

(e)     commingle its assets with the assets of any other entity;

(f)     incur any Indebtedness other than the Loan and trade payables in the ordinary course of its business of owning and operating the Properties, provided that any such trade payable (i) is not evidenced by a note, (ii) is paid within sixty (60) days of the date incurred, (iii) does not exceed in the aggregate four percent (4%) of the amount of the Loan, and (iv) is payable to trade creditors and in amounts as are normal and reasonable under the circumstances;

(g)     fail to maintain its records, books of account, bank accounts, accounting records and other entity documents separate and apart from those of any other entity;

(h)     enter into any contract or agreement with any general partner, member, shareholder, principal, or any Affiliate of any of the foregoing, except upon terms and conditions that are fully documented in writing, intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arm's-length basis with unaffiliated third parties;

(i)     assume or guaranty the debts of any other Person, hold itself out to be responsible for the debts of any other Person, or otherwise pledge its assets for the benefit of any other Person or hold out its credit as being available to satisfy the obligations of any other Person;

(j)     make any loans or advances to any Person;

(k)     fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or to conduct its business solely in its own name or fail to correct any known misunderstanding regarding its separate identity; or

(l)     acquire obligations or securities of its partners, members, shareholders or other affiliates, as applicable.

**9.14.   Compliance with Anti-Terrorism Laws.**

At all times while any Obligations are outstanding, Borrower and each other Loan Party shall be in full compliance with all Anti-Terrorism Laws and all representations in Section 4.26 shall be true and correct.

**9.15.   ERISA Covenants.**

At all times while any Obligations are outstanding, all of the ERISA Representations in Section 4.27 of this Agreement will be true and correct.

**9.16.    Furnishing Reports.**

Upon Lender's request, Borrower shall provide Lender with copies of all inspections, reports, test results, and other information received by any Borrower that in any way relate to the Property.

**9.17.    Compliance with Laws.**

Borrower shall comply with all applicable requirements (including applicable Laws) of any governmental authority having jurisdiction over Borrower or the Property.

**9.18.    Prohibition on Marijuana Related Business.**

Borrower covenants and agrees: (i) no part of the Property shall be used by any Person for Marijuana Related Business; (ii) Lender, its agents, representatives, and designees may make or cause to be made periodic entries upon and inspections of the Property to confirm that no Marijuana Related Business is occurring on or at any part of the Property;(iii) Lender shall have the right to make such periodic entries or inspections without notice to Borrower or any tenant occupying any part of the Property at any time during normal business hours or at any other reasonable time; and (iv) Borrower shall provide Lender's inspector(s) with access to all areas of the Property as Lender's inspector(s) may require to complete such inspection.  Any violation of or noncompliance with any provision of this Section   shall constitute an immediate Event of Default under the Loan Documents, and a default under all other agreements between Borrower and Lender (if any). Nothing in this Section shall be deemed to limit, reduce, or replace any other provision hereunder, or any of Lender's other rights, interests, or remedies under this Agreement or the other Loan Documents.

**9.19.    Appraisals.**

In the event of: (i) an Event of Default under the Loan, (ii) a material change in market conditions or the physical aspects of the Property, or (iii) a failure of the Property to achieve the performance expectations of the original Appraisal, or as may otherwise be required by any applicable Laws or the requirements of any regulatory authority, Lender may obtain an Appraisal or Appraisal update for all or any part of the Property prepared in accordance with written instructions from Lender by a third party appraiser engaged directly by Lender.  Each such appraiser and Appraisal (or appraisal update) shall be satisfactory to Lender (including satisfaction of applicable regulatory requirements). If Lender obtains an Appraisal (or appraisal update), Borrower will fully cooperate with Lender and the appraiser, and will provide the information necessary to prepare the Appraisal (or appraisal update).  Borrower will pay the cost of any such Appraisal or appraisal update within ten (10) days following demand by Lender; provided, however, that Borrower's obligation for appraisal costs shall not exceed one Appraisal within any 12-month period unless an Event of Default has occurred.

**9.20.    Accounts.**

Borrower shall cause all Loan disbursement accounts, operating accounts, tenant security deposit accounts and other accounts related to the ownership and operation of the Property to be maintained with Lender throughout the term of the Loan.

**9.21. Proceeds of Collateral.**

Without limiting or impairing any of the other covenants and restrictions in this Agreement, including, without limitation, those regarding Transfers, Insurance Proceeds and Condemnation Proceeds, if Borrower receives any payment of any nature whatsoever relating to any grant or disposition of any interest in the Property (such as an easement), Borrower will promptly give Notice to Lender of such receipt and will, if required by Lender, pay the same to Lender to be held by Lender as security for the Obligations.

**10. General Provisions.**

**10.1. Assignments and Participations by Lender.**

(a)     Lender shall have the right, at any time and from time to time, to assign or sell the Loan, and/or enter into one or more participations in the Loan, accompanied by an assignment and/or delegation of any or all related rights or obligations of Lender under the Loan Documents, without the need for any form of consent from Borrower or Guarantor.  Borrower agrees to cooperate with Lender's efforts to do any of the foregoing, to provide such further or additional financial or other documentation as Lender may reasonably request in connection with any such sale, assignment or participation, and to execute all documents reasonably required by Lender in connection therewith that do not materially adversely affect Borrower's rights under the Loan Documents, and provided such cooperation shall be at no material expense or liability to Borrower.

(b)     Borrower acknowledges and agrees that Lender, without any requirement of further consent from Borrower or Guarantor, may provide to any prospective assignee or participant originals or copies of this Agreement, any other Loan Document and any other documents, instruments, certificates, opinions, insurance policies, letters of credit, reports, requisitions, financial statements and credit information regarding Borrower and Guarantor, and other materials and information of every nature or description, and may communicate all oral information, at any time submitted by or on behalf of Borrower or Guarantor or received by any Lender in connection with the Loan or with respect to Borrower or Guarantor, provided that prior to any such delivery or communication, any such prospective assignee or participant shall agree to preserve the confidentiality of any of the foregoing to the same extent that Lender has agreed or is required by law to preserve such confidentiality.

**10.2. Inspection.**

Lender shall at all times have the right to enter upon the Property to inspect the Property, which right shall not terminate unless and until the Loan is paid in full.  Borrower agrees to pay the reasonable costs of annual inspections by third party consultants hired by Lender.  Inspection by Lender of the Property is for the purpose of protecting the security of Lender.

**10.3. Indemnification.**

Borrower shall indemnify Lender, including each party owning an interest in the Loan and their respective officers, directors, employees, and consultants (each, an "*Indemnified Party*"), and defend and hold each Indemnified Party harmless from and against all claims, injury, damage, loss, liability, cost, and expense (including attorneys' fees, costs, and expenses) of any and every kind to any Persons or property by reason of (i) the operation or maintenance of the Property; (ii) any breach of representation or warranty, default or Event of Default under the Loan Documents; or

(iii) any other matter arising in connection with the Loan, Borrower, any Guarantor, the Property Manager, any tenants, or the Property. No Indemnified Party shall be entitled to be indemnified against its own gross negligence or willful misconduct. The foregoing indemnification shall survive repayment of the Loan, foreclosure of the Deed of Trust, and Lender's acquisition of the Property in lieu of foreclosure and shall continue to benefit Lender following any assignment of the Loan with respect to matters arising or accruing prior to such assignment.

### 10.4. <u>Independent Evaluation.</u>

Borrower acknowledges that it has independently evaluated the economic viability of the Property and the reliability and skills of all Persons involved in the Property. Borrower shall rely solely on its own independent data, evaluations and business judgment regarding the Property, and no action or statement by Lender shall be construed as an endorsement or recommendation relating to any aspect of the Property.

### 10.5. <u>Nature of Relationship.</u>

Lender and Borrower intend that the relationship between them shall be solely that of creditor and debtor. Nothing in this Agreement or the other Loan Documents shall be construed to create a partnership or any other relationship which would make Lender in any way responsible or liable for the debts, losses, obligations or duties of Borrower.

### 10.6. <u>Authorized Representative.</u>

Borrower appoints Vahan M. Dinihanian, Jr. as its authorized representative ("***Authorized Representative***") for purposes of dealing with Lender on behalf of Borrower in respect of any and all matters in connection with this Agreement, the other Loan Documents, and the Loan. The Authorized Representative, acting alone, shall have the power, in his or her discretion, to give and receive all notices, monies, approvals, and other documents and instruments, and to take any other action on behalf of Borrower. All actions by the Authorized Representative shall be final and binding on Borrower. Lender may rely on the authority given to the Authorized Representative until actual receipt by Lender of a duly authorized resolution from Borrower revoking that authority.

### 10.7. <u>Costs and Expenses.</u>

Borrower shall pay or reimburse Lender for all legal, appraisal, and inspection fees; title insurance and survey costs; recording and filing fees; hazard and liability insurance for the Property; and any and all other charges or expenses incurred by Lender in connection with the Loan, including, without limitation, all such costs and fees involved in processing Borrower's loan application, preparing the Loan Documents, and closing, administering, collecting or enforcing the Loan, including, without limitation all reasonable costs, charges, expenses, and attorneys' fees Lender incurs, with or without litigation: (i) in connection with the enforcement of any remedy contained in this Agreement or any other Loan Document, or (ii) in connection with any action taken by Lender in accordance with the terms of any of the Loan Documents to protect its interests or to recover amounts owed under the Loan, including, without limitation, any actions necessitated by the bankruptcy of Borrower or Guarantor or the exercise by any other creditor of Borrower or Guarantor of its right against Borrower, Guarantor or the Property. Borrower shall indemnify with counsel selected by Lender in its sole discretion and hold Lender harmless against any and all claims for fees, charges, real estate commissions, broker fees, taxes, or other expenses of any kind in any way connected with the Loan or the Property. Borrower's obligation to pay such expenses

- 33 -

shall not be dependent on the Closing of the Loan and shall survive any termination of any loan commitment executed by Lender. Borrower specifically acknowledges that Lender shall have the right to recover its reasonable costs, charges, expenses, and attorneys' fees in any litigation, appeal of any trial court decision, any arbitration proceeding, any action contesting or seeking to restrain, enjoin, stay or postpone the exercise of any remedy, and any bankruptcy or other insolvency proceeding involving Borrower, Guarantor, or the Property. Any amounts payable by Borrower under this Section 10.7 shall be due and payable upon Notice from Lender and, if not paid within ten (10) days thereafter, shall bear interest from the date of such Notice to and including the date of collection at the Default Rate.

### 10.8.  Notices.

All notices (each, a "*Notice*") required or permitted hereunder shall be in writing and shall be given to the parties as follows:

> Lender:     SORFI, LLC
> 240 SE 2nd Avenue, Suite 200
> Portland, OR 97214
> Attention:  Sam Ross
> Telephone: (631) 873-9082
> Email:  sam.ross@sortis.com

> Borrower:   15005 NW CORNELL LLC
> 237 NW Skyline Blvd.
> Portland, Oregon  97210
> Attention: Vahan M Dinihanian, Jr.
> Telephone: (503) 549-4091
> Email: vahan237@gmail.com

All such Notices shall be (a) sent by a nationally recognized overnight courier, in which case Notice shall be deemed delivered one Business Day after deposit with such courier; or (b) served personally, in which case Notice shall be deemed given on the date of such service, or (c) delivered by e-mail transmission followed by delivery by personal service or nationally recognized courier service on the next Business Day after e-mail transmission, in which case Notice shall be deemed to have been given on the date of e-mail transmission. The above addresses may be changed by written Notice to the other party; provided that no Notice of a change of address shall be effective until actual receipt of such Notice.

### 10.9.  Publicity.

Upon Closing of the Loan, Lender may publicize financing of the Property by media of Lender's choice and Lender may use Borrower's name and the name of the Property in any such release.

### 10.10.  Electronic Transmission of Data.

Lender and Borrower agree that certain Loan related data (including confidential information, documents, applications and reports) may be transmitted electronically, including over the Internet. This data may be transmitted to, received from or circulated among agents and representatives of Borrower and/or Lender and their Affiliates, and other Persons involved with the

subject matter of this Agreement. Borrower acknowledges and agrees that (a) there are risks associated with the use of electronic transmission and that Lender does not control the method of transmittal or service providers, (b) Lender has no obligation or responsibility whatsoever and assumes no duty or obligation for the security, receipt, or third party interception of such transmissions, and (c) Borrower will release, hold harmless and indemnify Lender from any claim, damage or loss, including that arising in whole or part from Lender's strict liability or sole, comparative or contributory negligence, which is related to the electronic transmittal of data.

### 10.11. Lender's Expenses.

Borrower agrees to pay fees in connection with the property and other reports required by Lender pursuant to this Agreement and other out-of-pocket expenses (including but not limited to legal fees) incurred by Lender and payable by Borrower in connection with the underwriting of the Loan and preparation and negotiation of the Loan Documents (collectively, the "*Borrower Closing Expenses*") on demand and authorizes Lender to pay the remaining amount due to Lender with Loan proceeds if any remain undisbursed.

### 10.12. Third Parties.

No provision of this Agreement is intended or shall be construed to be for the benefit of any third party.

### 10.13. Singular and Plural.

Whenever in this Agreement the context so requires, the neuter gender shall include the masculine and the feminine, the singular number shall include the plural, and the plural shall include the singular, and vice versa as the context may require.

### 10.14. Captions.

All section or paragraph division, numbering, and captions are for convenience of reference only, and shall not affect the interpretation or construction of this Agreement or of any term, condition, or provision hereof.

### 10.15. Entire Agreement; Modifications.

This Agreement and the Loan Documents constitute the entire agreement of the parties and supersede all prior negotiations, agreements or understandings and may not be contradicted by evidence of any alleged oral agreement. No modification or amendment of this Agreement or the Loan Documents shall be effective unless set forth in writing and signed by Lender and Borrower.

### 10.16. Counterparts.

This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same original.

### 10.17. Severability.

If any term or provision of this Agreement is illegal or invalid for any reason, such illegality or invalidity shall not affect the enforceability of the remaining provisions of this Agreement and the other Loan Documents.

**10.18.** **Construction and Interpretation.**

This Agreement and the other Loan Documents are the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent of the language contained herein and in the other Loan Documents in their entirety and not for or against either party, regardless of which party was responsible for preparation. Borrower and Lender each represent to the other that each has consulted with its own legal counsel in connection with this Agreement and the other Loan Documents.

**10.19.** **USA Patriot Act Notice.**

Lender hereby notifies Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), Lender is required to obtain, verify and record information that identifies Borrower, which information includes the name and address of Borrower and other information that will allow Lender to identify Borrower in accordance with such act.

**10.20.** **Waiver of Jury Trial.**

BORROWER WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE LOAN OR THE LOAN DOCUMENTS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER ACKNOWLEDGES THAT BORROWER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THE LOAN DOCUMENTS AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

**10.21.** **Governing Law.**

This Agreement shall be governed by the laws of the State of Oregon.

**10.22.** **Jurisdiction.**

TO THE GREATEST EXTENT PERMITTED BY LAW, BORROWER HEREBY WAIVES ANY AND ALL RIGHTS TO REQUIRE MARSHALING OF ASSETS BY LENDER. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS RELATING TO THIS AGREEMENT (EACH, A "***PROCEEDING***"), BORROWER IRREVOCABLY (A) SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS HAVING JURISDICTION IN THE COUNTY OF WASHINGTON AND STATE OF OREGON, AND (B) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM AND FURTHER WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY. NOTHING IN THIS AGREEMENT SHALL PRECLUDE LENDER FROM BRINGING A PROCEEDING IN ANY OTHER JURISDICTION NOR WILL THE BRINGING

OF A PROCEEDING IN ANY ONE OR MORE JURISDICTIONS PRECLUDE THE BRINGING OF A PROCEEDING IN ANY OTHER JURISDICTION. BORROWER FURTHER AGREES AND CONSENTS THAT, IN ADDITION TO ANY METHODS OF SERVICE OF PROCESS PROVIDED FOR UNDER APPLICABLE LAW, ALL SERVICE OF PROCESS IN ANY PROCEEDING IN ANY OREGON STATE OR UNITED STATES COURT SITTING IN WASHINGTON COUNTY MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO BORROWER AT THE ADDRESS INDICATED ABOVE, AND SERVICE SO MADE SHALL BE COMPLETE UPON RECEIPT; EXCEPT THAT IF BORROWER SHALL REFUSE TO ACCEPT DELIVERY, SERVICE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN SO MAILED.

*[SIGNATURES ON FOLLOWING PAGE]*

IN WITNESS WHEREOF, the parties have signed this Agreement as of the date first written above.

**LENDER:**

**SORFI, LLC**, an Oregon limited liability company

By:_____

Name:_____

Title:_____


**BORROWER**:


**15005 NW CORNELL LLC**, an Oregon limited liability company

By:      _____
         Vahan M. Dinihanian, Jr., its manager


_____

**Vahan M. Dinihanian, Jr.**

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

*For informational purposes only:*

Tax ID No.:

Address:    15005 NW Cornell Road
            Beaverton, Oregon  97006


            237 NW Skyline Boulevard
            Portland, Oregon 97210

# EXHIBIT B

## SOURCES AND USES OF LOAN PROCEEDS

| Sources & Uses | | |
|---|---|---|
| **Sources** | **$ Amount** | |
| Sortis Loan Amount | | 4,960,000 |
| **Total Sources** | **$** | **4,960,000** |
| | | |
| **Uses** | **$ Amount** | |
| Baterman Seidel (Greg Minor) | | 182,232 |
| Tasha Claim (As of 1/25/2022) | | 3,144,051 |
| Dan Lorenz | | 18,000 |
| Columbia Bank | | 26,165 |
| SORFI (Lender Pre-Closing Expenses) | | 98,000 |
| SORFI (Origination Fee) | | 148,800 |
| SORFI (Underwriting Fee) | | 15,000 |
| SORFI (Interest Reserve) | | 1,210,000 |
| SORFI (Working Capital Reserve) | | 100,000 |
| SORFI (Legal/Title/Escrow) | | 17,753 |
| **Total Uses** | **$** | **4,960,000** |

# Exhibit D

# PROMISSORY NOTE

$4,900,000.00                                                    Portland, Oregon
                                                          February ___, 2022

FOR VALUE RECEIVED, **15005 NW CORNELL LLC,** an Oregon limited liability company and **Vahan M. Dinihanian, Jr.,** an individual (collectively, the **"Borrower"**), promise to pay, in lawful money of the United States of America, to the order of **SORFI, LLC,** an Oregon limited liability company (**"Lender"**), at 240 SE 2nd Avenue, Suite 200, Portland, Oregon 97214, or at such other place or places or to such other party as Lender or any future holder of this Note, and their successors and assigns, may from time to time designate in writing, the principal sum of **Four Million Nine Hundred Thousand and 00/100 Dollars ($4,960,000.00)**, or so much as may be advanced hereunder, payable with interest as provided below. The proceeds of the loan (**"Loan"**) evidenced by this Note are to be advanced under the terms and conditions of the Loan Agreement (**"Loan Agreement"**) between Lender and Borrower dated the same date as this Note. Capitalized terms used but not defined in this Note are defined in the Loan Agreement.

1.      **Interest.**  The outstanding principal balance of this Note shall bear interest as provided in the Loan Agreement.

2.      **Monthly Payments**.  Monthly payments of interest only shall be due as provided in the Loan Agreement.

3.      **Maturity Date**.  The entire outstanding principal balance hereof, together with accrued and unpaid interest and all other sums evidenced by this Note, shall, if not sooner paid, become due and payable in full on February 1, 2024 (**"Maturity Date"**).

4.      **Prepayment**.  This Note may be prepaid on the terms and subject to the conditions set out in the Loan Agreement.

5.      **Late Charges**.  If any monthly payment of principal and/or interest on this Note is not received by Lender by the end of business on the fifth (5th) day of the month (the **"Grace Period"**), at the option of Lender, without waiving such Event of Default or any remedies, a late charge shall be added to the delinquent payment in the amount of five percent (5%) of the full payment not timely paid (the **"Late Charge"**). The Grace Period shall not be construed as in any way extending the due date of any payment.  Any such Late Charge shall be due and payable on demand.  If a Late Charge is added to the principal balance of this Note, it shall bear interest at the same rate as the principal balance of this Note pursuant to the Loan Agreement.  Any payment to Lender by check, draft or other item shall be received by Lender subject to collection and will constitute payment when collected not when received.  The Late Charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment and to compensate Lender for the loss of use of such funds and is in addition to, and not in lieu of, any other remedy Lender may have and is in addition to any fees and charges of any agents or attorneys which Lender may employ upon the occurrence of an Event of Default, whether authorized herein or by Law.

6.      **Security**.  This Note is secured by the Deed of Trust encumbering real and personal property located in Washington County, Oregon (the "Cornell Deed of Trust") and the Deed of Trust encumbering real and personal property located in Multnomah County, Oregon (the "Skyline Deed of Trust").

7.      **Remedies; Default Interest**.  Upon any Event of Default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due and payable in full,

- 1 -

without any further notice. Upon an Event of Default, Lender shall be entitled to the other remedies set out in the Loan Agreement, the Cornell Deed of Trust, the Skyline Deed of Trust and the other Loan Documents. Whether or not this Note is accelerated, while there is any Event of Default, the entire principal balance of this Note, all accrued interest, and all other amounts payable under the Loan Documents shall bear interest from the date of the Event of Default at the Default Rate.

8. **General.**

(a) **Waivers**. Except as otherwise provided in the Loan Documents, Borrower waives all notices required by law; including without limitation presentment and demand for payment, protest, and notice of demand, protest, dishonor and nonpayment.

(b) **Business Purpose**. Borrower warrants and represents that all funds advanced under this Note shall be applied to and are intended solely for business or commercial purposes.

(c) **Governing Law**. This Note shall be construed, enforced and otherwise governed by the laws of the State of Oregon.

(d) **Notice**. Any Notice to Borrower under this Note shall be given as provided in the Loan Agreement.

(e) **Replacement Note.** If this Note is lost, stolen, destroyed or mutilated, Borrower shall execute a replacement note upon the written request of Lender.

(f) **Time.** Time is of the essence for purposes of this Note and the other Loan Documents.

(g) **Assignment of Note.** The term "Lender" as used in this Note shall include any subsequent holder of or participant in this Note and the other Loan Documents.

EXCEPT AS OTHERWISE PROVIDED IN THIS NOTE OR THE OTHER LOAN DOCUMENTS, BORROWER ACKNOWLEDGES LIABILITY FOR PAYMENT OF ALL AMOUNTS OWING UNDER THIS NOTE AND THE OTHER LOAN DOCUMENTS AND AGREES THAT LENDER DOES NOT HAVE TO FORECLOSE THE DEED OF TRUST OR ANY OTHER COLLATERAL BEFORE DEMANDING FULL PAYMENT FROM BORROWER.

IN WITNESS WHEREOF, Borrower executes this Note as of the day and year first above written.

**BORROWER:**

**15005 NW CORNELL LLC**, an Oregon limited liability company

By: _____
    Vahan M. Dinihanian, Jr., its manager


_____
**Vahan M. Dinihanian, Jr.**




ENDORSEMENT:


PAY TO THE ORDER OF SORTIS INCOME FUND, LLC, an Oregon limited liability company, WITHOUT RECOURSE.


**SORFI, LLC**, an Oregon limited liability company

By:_____
Name:_____
Title:_____

# Exhibit E

Recording Requested By and
When Recorded Mail To:

Robert L. de Normandie
deNormandie, Sidlo & Associates PLLC
1215 Fourth Avenue, Suite 1901
Seattle, Washington  98161

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

| | |
|---|---|
| **Document Title:** | Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| **Grantor:** | 15005 NW Cornell LLC, an Oregon limited liability company |
| **Grantee:** | _____ Title Insurance Company |
| **Beneficiary:** | SORFI, LLC, an Oregon limited liability company |

| | |
|---|---|
| Dated: | February ___, 2022 |
| Location: | Oregon |
| County: | Washington |
| Tax Parcel: | |

NOTICE TO RECORDER: THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE UNIFORM COMMERCIAL CODE AND ORS 79.0502

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING ("**Deed of Trust**") is made as of January \_\_\_, 2022, by **15005 NW CORNELL LLC,** an Oregon limited liability company ("**Borrower**"), as Grantor, whose mailing address is _____, Oregon 97\_\_\_\_\_; to _____ **TITLE INSURANCE COMPANY** ("**Trustee**"), as Trustee, whose mailing address is _____, Portland, Oregon 97\_\_\_\_\_; for the benefit of **SORFI, LLC,** an Oregon limited liability company ("**Lender**"), as Beneficiary, whose mailing address is 240 SE 2nd Avenue, Suite 200, Portland, Oregon 97214.

Capitalized terms used but not defined in this Deed of Trust are defined in the Loan Agreement ("**Loan Agreement**") between Lender and Borrower of even date herewith.

In consideration of the loan ("**Loan**") evidenced by the Note described below, Borrower hereby irrevocably GRANTS, TRANSFERS, CONVEYS and ASSIGNS to Trustee, IN TRUST, WITH POWER OF SALE, all of Borrower's present and future estate, right, title, claim, and interest, either in law or in equity, in and to the following property ("**Property**"):

(a)     The real property described on <u>Exhibit A</u>, all rights to the alleys, streets and roads adjoining or abutting the real property, all present and future easements, access, air and development rights, minerals and oil, gas and other hydrocarbon substances, water, water rights and water stock, and all other rights, hereditaments, privileges, and appurtenances now or hereafter belonging or in any way appertaining to such real property ("**Realty**");

(b)     All present and future buildings, improvements and tenements located on the Realty ("**Improvements**");

(c)     All present and future fixtures and articles of property attached to, or used or adapted for use in the ownership, development, operation or maintenance of the Realty and Improvements (whether such items are leased, owned, or subject to any title-retaining or security instrument), including without limitation all heating, cooling, air-conditioning, ventilating, refrigerating, plumbing, generating, power, lighting, laundry, maintenance, incinerating, lifting, cleaning, fire prevention and extinguishing, security and access control, cooking, gas, electric and communication fixtures, equipment and apparatus; all engines, motors, conduits, pipes, pumps, tanks, ducts, compressors, boilers, water heaters and furnaces; all ranges, stoves, disposers, refrigerators and other appliances; all escalators and elevators, baths, sinks, cabinets, partitions, mantels, built-in mirrors, window shades, blinds, screens, awnings, storm doors, windows and sash; all carpeting, underpadding, floor covering, paneling, and draperies; and all shrubbery and plants. All such items shall be deemed part of the Realty and not severable wholly or in part without material injury to the freehold;

(d)     All present and future rents, revenues, issues, profits and income from the Realty or the Improvements, and all present and future leases and other agreements for the occupancy or use of all or any part of the Realty and Improvements, including without limitation all cash or security deposits, advance

rentals and deposits or payments of similar nature, and all guarantees of tenants' or occupants' performance under such leases and agreements;

(e)     All present and future tangible personal property ("**Personal Property**") used in connection with the ownership, development, operation or maintenance of the Realty and Improvements, including without limitation all furniture, furnishings, equipment, supplies and other goods, wherever located, whether in the possession of Borrower, warehousemen, bailee, or any other person;

(f)     All present and future intangible personal property used in connection with the ownership, development, operation or maintenance of the Realty, Improvements, and Personal Property, including without limitation, all permits, licenses and franchises, contract rights (including without limitation architectural, engineering, consulting, and management contracts), accounts receivable, escrow accounts, insurance policies, deposits, instruments, documents of title, general intangibles, business records and the exclusive right to the use of trade names;

(g)     All present and future materials, supplies, and other goods, wherever located, whether in the possession of Borrower, warehouseman, bailee, or any other person, purchased for use in the construction, operation or furnishing of the Improvements, together with all documents, contract rights, and general intangibles relating thereto;

(h)     All present or future site plans, plats, architectural plans and specifications, work drawings, surveys, engineering reports, test borings, market surveys, and other work products relating to the Realty and Improvements;

(i)     All present or future construction contracts relating to the Improvements, together with all performance, payment, completion or other surety bonds in connection with or related to any such construction contracts which are transferable by Borrower;

(j)     All present and future contracts and policies of insurance which insure any buildings, structures or improvements on the Realty, or any fixtures or personal property thereon, against casualty and theft, and all monies and proceeds and rights thereto which may become payable by virtue of any insurance contracts or policies;

(k)     All claims, causes of action, warranties, accounts receivable, escrow accounts, insurance policies, deposits (including tax, insurance and other reserves), instruments, documents of title, general intangibles, and business records;

(l)     All present and future monetary deposits to any city, county, public body or agency, irrigation, sewer or water district or company, and any other body or agency, for the installation, or to secure the installation, of any utility pertaining to the Realty or the Improvements.

(m)     All refunds, rebates, reimbursements, reserves, deferred payments, deposits, cost savings, governmental subsidy payments, governmentally-registered credits (such as emissions reduction credits), other credits, waivers and payments, whether in cash or in kind, due from or payable by (i) any federal, state, municipal or other governmental or quasi-governmental agency, authority or district (each, a "**Governmental Agency**") or (ii) any insurance or utility company relating to any or all of the Realty or Improvements or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Realty;

- 2 -

(n)     All refunds, rebates, reimbursements, credits and payments of any kind due from or payable by any Governmental Agency for any taxes, special taxes, assessments, or similar governmental or quasi-governmental charges or levies imposed upon Borrower with respect to the Property or upon any or all of the Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Property;

(o)     All proceeds (including claims and demands therefor) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including without limitation all insurance proceeds and condemnation awards; and

(p)     All products and proceeds of the foregoing.

TO SECURE THE FOLLOWING (collectively the "**Secured Obligations**"):

(a)     Payment of the sum of **Four Million Nine Hundred Sixty Thousand and 00/100 Dollars ($4,960,000.00)**, or so much thereof as may be advanced, with interest thereon, according to the terms and provisions of a promissory note ("**Note**") of even date, made by Borrower and payable to Lender, including any and all modifications, extensions, renewals and replacements thereof.

(b)     Payment of all sums advanced to protect the security of this Deed of Trust, together with interest thereon as herein provided;

(c)     Payment of all other sums which are or which may become owing under the Loan Documents or which may be advanced by Lender pursuant to the Loan Documents; and

(d)     Payment and performance of the other covenants and agreements of Borrower contained in the Loan Agreement and the other Loan Documents; and

(e)     Payment and performance of any future obligations of Borrower or any Affiliate of Borrower to Lender if the documentation evidencing such future obligation expressly provides that it is secured by this Deed of Trust.

As used in this Deed of Trust, the term "**Loan Documents**" means the Note, the Loan Agreement, this Deed of Trust and all related documents and instruments, and any and all modifications, extensions, renewals and replacements thereof; provided, however, that notwithstanding any other provision of this Deed of Trust, the Loan Agreement or any other Loan Document, this Deed of Trust does not secure any of Borrower's obligations under the Indemnity Agreement nor any Guarantor's obligations under the Guaranty.

The Secured Obligations may be indexed, adjusted, renewed or renegotiated.

BORROWER REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS:

### ARTICLE I.
### TITLE AND USE

**1.1     Warranty of Title.**  Borrower covenants and agrees that:  (i) Borrower is lawfully seized of the estate hereby conveyed and has full right and power to grant, convey and assign the Property, (ii) the Property is free from liens, encumbrances, exceptions and other charges of any kind whatsoever,

- 3 -

except for the exceptions listed in Lender's title insurance policy insuring this Deed of Trust or exceptions otherwise approved in writing by Lender ("**Permitted Exceptions**"), (iii) no other liens or encumbrances, whether superior or inferior to this Deed of Trust, shall be created or suffered to be created by Borrower without the prior written consent of Lender, (iv) no default on the part of Borrower or any other person exists under any of the Permitted Exceptions and all of the Permitted Exceptions are in full force and effect and in good standing, without modification, (v) complete and current copies of the Permitted Exceptions have been furnished to Lender, and none of them have been or will be modified by Borrower without Lender's prior written consent, (vi) Borrower shall fully comply with all the terms of the Permitted Exceptions and shall deliver to Lender a copy of all notices delivered in connection with the Permitted Exceptions, (vii) Lender has the right to contact the other parties to the Permitted Exceptions to confirm the status thereof, and Borrower from time to time shall, at the request of Lender, request of such parties a certificate confirming such information regarding the Permitted Exceptions as Lender may request, and (viii) Borrower shall forever warrant and defend the Property unto Lender against all claims and demands of any other person whatsoever, subject only to non-delinquent taxes and assessments and the Permitted Exceptions. None of the Permitted Exceptions, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by this Deed of Trust and the Loan Documents, materially and adversely affect the value of the Property, impair the use or operations of the Property or impair Borrower's ability to pay its obligations in a timely manner.

**1.2     Non-Agricultural Use; Commercial Loan.**  Borrower represents and warrants to Lender that (a) the Realty is not used principally for agricultural purposes, and (b) the Loan was not made primarily for personal, family or household purposes.

**ARTICLE II.**
**BORROWER'S COVENANTS.**

**2.1     Payment and Performance of Secured Obligations.**  Borrower shall pay when due all sums which are now or which may become owing under the Note, and shall pay and perform all other Secured Obligations in accordance with their terms.

**2.2     Payment of Taxes, Utilities, Liens and Charges.**

(a)     <u>Taxes and Assessments</u>.  Except as the same may otherwise be paid under Article III, Borrower shall pay when due directly to the payee thereof all taxes and assessments (including without limitation, non-governmental levies or assessments such as maintenance charges, owner association dues or charges, or fees, levies or charges resulting from covenants, conditions or restrictions) levied, assessed or charged against or with respect to the Property or this Deed of Trust. Upon request, Borrower shall promptly furnish to Lender all notices of amounts due under this subsection and all receipts evidencing such payments.

(b)     <u>Utilities</u>.  Borrower shall pay when due all utility charges and assessments for services furnished the Property.

(c)     <u>Labor and Materials</u>.  Borrower shall pay when due the claims of all persons supplying labor or materials to or in connection with the Property.

(d)     <u>Liens and Charges</u>.  Borrower shall promptly discharge any lien, encumbrance, or other charge, whether superior or inferior to this Deed of Trust, which may be claimed against the Property.

- 4 -

(e)     <u>Taxes, Assessments and Other Charges Imposed on Lender</u>.  If, at any time after the date of this Deed of Trust, any law is enacted or changed (including any interpretation thereof) which subjects Lender to any increase in any tax (except federal, state or local income taxes), assessments, or other charge, in any form measured by or based on any portion of the indebtedness secured by this Deed of Trust, Borrower shall pay such increased amount to Lender on demand; provided that if any such payment would be unlawful, Lender may declare all accrued interest and the entire principal balance of the Note immediately due and payable.

(f)     <u>Right to Contest</u>.  Notwithstanding anything set forth in this Section 2.2, so long as no Event of Default shall occur hereunder, Borrower shall have the right to contest the amount or validity in whole or in part of any lien, encumbrance or other charge against the Property by appropriate administrative or judicial proceedings conducted in good faith and with due diligence, in which event Borrower, upon written notice to Lender, may defer payment of any such lien, encumbrance or other charge, so long as (i) Borrower shall have provided Lender with evidence satisfactory to Lender that such proceedings shall operate to prevent the sale of the Property or any portion thereof, or the imposition of any penalties on Borrower or the Property; (ii) neither the Property nor any part thereof will, by reason of such postponement or deferment, be in danger of being forfeited or lost; (iii) before the date such lien, encumbrance or other charge becomes delinquent, Borrower shall provide Lender with such security as Lender may require to insure payment thereof and prevent any forfeiture or loss of the Property or any part thereof; and (iv) on a final determination of such contest, which is not appealable or is not being appealed, Borrower shall pay the amount of the lien, encumbrance or other charge if and when due, and prior to the imposition of any penalties or delinquent interest.

**2.3     Insurance Provisions.**

(a)     <u>Required Coverage</u>.  Borrower shall keep the insurance coverage required by the terms of the Loan Agreement in full force and effect.

(b)     <u>Security</u>.  As security for the Secured Obligations, Borrower hereby assigns to Lender and grants Lender a security interest in all required insurance policies, together with all proceeds thereof, rights thereto and all unearned premiums returnable upon cancellation.

(c)     <u>Application of Proceeds</u>.  The provisions of the Loan Agreement providing for the application of insurance proceeds are incorporated by this reference.

**2.4     Preservation and Maintenance of Property; Right of Entry.**

(a)     <u>Preservation and Maintenance</u>.  Borrower shall (i) not commit or suffer any waste or permit any impairment or deterioration of the Property, (ii) not abandon the Property, (iii) restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good condition and repair and shall replace fixtures, equipment, machinery and appliances of the Property when necessary to keep such items in good condition and repair, and (v) generally operate and maintain the Property in a commercially reasonable manner.

(b)     <u>Alterations</u>.  Except as specifically permitted under the Loan Agreement, none of the Improvements shall be structurally altered, removed or demolished, in whole or in part, without Lender's

- 5 -

prior written consent, nor shall any fixture or chattel covered by this Deed of Trust and adapted to the use and enjoyment of the Property be removed at any time without like consent unless actually replaced by an article of equal suitability which is owned by Borrower free and clear of any lien or security interest.

(c) Right of Entry. Lender is hereby authorized to enter the Property, including the interior of any structures, at reasonable times and after reasonable notice, for the purpose of inspecting the Property to determine Borrower's compliance with this Section 2.4.

**2.5 Parking.** If any part of the automobile parking areas included within the Property is taken by condemnation, and before the parking areas are diminished for any other reason, Borrower shall take all actions as are necessary to provide parking facilities in kind, size and location to comply with all governmental zoning and other regulations and all leases. Before making any contract for substitute parking facilities, Borrower shall furnish to Lender satisfactory assurance of completion thereof free of liens and in conformity with all government zoning and other regulations. This Deed of Trust shall constitute a first lien on all such substitute parking facilities.

**2.6 Use of Property.** Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body, and all other covenants, conditions and restrictions applicable to the Property, and pay all fees and charges in connection therewith. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Deed of Trust was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

**2.7 Condemnation.** The provisions of the Loan Agreement regarding condemnation actions and the application of condemnation proceeds are incorporated by this reference.

**2.8 Protection of Lender's Security.** Borrower shall give notice to Lender of and shall appear in and defend any action or proceeding that may affect the Property, the interests of Lender or Trustee therein, or the rights or remedies of Lender or Trustee under the Loan Documents. If any such action or proceeding is commenced, or Borrower fails to perform any obligation under the Loan Documents, Lender or Trustee may, at their option, make any appearances, disburse any sums, make any entries upon the Property, and take any actions as may be necessary or desirable to (i) protect or enforce the security of this Deed of Trust, (ii) remedy Borrower's failure to perform its obligations under the Loan Documents (without waiving such default by Borrower), or (iii) otherwise protect Lender's or Trustee's interests. Borrower shall pay all losses, damages, fees, costs, and expenses incurred by Lender and Trustee in taking such actions, including without limitation reasonable legal fees.

**2.9 Reimbursement of Lender's and Trustee's Expenses.** All amounts disbursed by Lender and Trustee pursuant to Section 2.8 or any other provision of this Deed of Trust, with interest thereon, shall be additional indebtedness of Borrower secured by this Deed of Trust. All such amounts shall be immediately due and payable and bear interest from the date of disbursement at the lesser of the default rate under the Note, or the maximum rate permitted by law.

**ARTICLE III.**
**INTENTIONALLY OMITTED**

# ARTICLE IV.
## RESTRICTIONS ON TRANSFER OR ENCUMBRANCE.

The Loan Agreement contains certain restrictions on any transfer or encumbrance of the Property, any portion thereof or any interest therein, and on any direct or indirect transfer or encumbrance of direct or indirect ownership interests in Borrower. Those provisions are incorporated by this reference. The occurrence of any Transfer or attempted Transfer not permitted under the Loan Agreement shall be an immediate Event of Default whereupon the Secured Obligations shall be immediately due and payable in full without notice or demand from Lender.

# ARTICLE V.
## UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.

**5.1    Grant of Security Interest.** This Deed of Trust constitutes a security agreement pursuant to the Uniform Commercial Code with respect to (a) any of the Property which, under applicable law, is not real property or effectively made part of the real property by the provisions of this Deed of Trust; and (b) any and all other property now or hereafter described on any Uniform Commercial Code Financing Statement naming Borrower as Debtor and Lender as Secured Party and affecting property in any way connected with the use and enjoyment of the Property, any and all such other property constituting "Property" for purposes of this Deed of Trust. Borrower hereby grants Lender a security interest in all property described in clauses (a) and (b) above as security for the Secured Obligations. Borrower and Lender agree, however, that neither the foregoing grant of a security interest nor the filing of any such financing statement shall be construed as limiting the parties' stated intention that everything used in connection with the production of income from the Property, or adapted for use therein, or which is described or reflected in this Deed of Trust, is and at all times shall be regarded as part of the Realty.

**5.2    Status of Borrower; Financing Statements.** Borrower's exact legal name is correctly set forth on the signature page of this Deed of Trust. If Borrower is not an individual, Borrower is an organization of the type specified in the introductory paragraph of this Deed of Trust. If Borrower is a registered entity, Borrower is incorporated in or organized under the laws of the state specified in the introductory paragraph of this Deed of Trust. If Borrower is an unregistered entity (including a general partnership), it is organized under the laws of the state specified in the introductory paragraph of this Deed of Trust. Borrower will not cause or permit any change to be made in its name, identity or corporate, company or partnership structure unless the Borrower shall have notified Lender in writing of such change at least thirty (30) days prior to the effective date of such change, and shall have first taken all action required by Lender for the purpose of further perfecting or protecting the lien and security interest of Lender in the Property. Borrower's principal place of business and chief executive office, and the place where Borrower keeps its books and records, including recorded data of any kind or nature, regardless of the medium of recording, including software, writing, plans, specifications and schematics concerning the Property, has been for the preceding four months (or less if for the entire existence of Borrower) and will continue to be the address of Borrower set forth in the first paragraph of this Deed of Trust (unless Borrower notifies Lender of any change in writing at least thirty (30) days prior to the date of such change). If Borrower is an individual, Borrower's principal residence has been for the preceding four months and will continue to be the address of the principal residence of Borrower set forth at the end of this Deed of Trust (unless Borrower notifies Lender of any change in writing at least thirty (30) days prior to the date of such change). Borrower's organizational identification number, if any, assigned by the state of incorporation or organization is **348896-91**. Borrower shall promptly notify Lender of any change of its organizational identification number. If Borrower does not now have

an organizational identification number and later obtains one, Borrower shall promptly notify Lender of such organizational identification number. Borrower agrees that Lender may file this Deed of Trust, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Deed of Trust or of any other security agreement or financing statement shall be sufficient as a financing statement. Borrower hereby authorizes Lender (and Lender's representatives and agents) to file financing statements (and amendments thereto) relating to the Property. The form and substance of any financing statement filed with respect to this Deed of Trust shall be as Lender, in its sole discretion, may determine. Borrower shall pay all costs of filing such financing statements and any extensions, continuations, renewals, amendments and releases thereof, and shall pay all costs and expenses of any record searches for financing statements which Lender may require.

**5.3     Lender's Rights and Remedies.** With respect to the Property subject to the foregoing security interest, Lender shall have all the rights and remedies (i) of a secured party under the Uniform Commercial Code, (ii) provided herein, including without limitation the right to cause such Property to be sold by Trustee under the power of sale granted by this Deed of Trust, and (iii) provided by law. In exercising its remedies, Lender may proceed against the items of real property and any items of personal property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies. Upon demand by Lender following an Event of Default hereunder, Borrower shall assemble any items of personal property and make them available to Lender at the Realty. Lender shall give Borrower at least five (5) days' prior written notice of the time and place of any public sale or other disposition of such Property or of the time of or after which any private sale or any other intended disposition is to be made. Any person permitted by law to purchase at any such sale may do so. Such Property may be sold at any one or more public or private sales as permitted by applicable law.

## ARTICLE VI.
## ASSIGNMENT OF RENTS AND LEASES

**6.1     Assignment of Rents and Leases.** As security for the Secured Obligations, Borrower assigns and transfers to Lender and grants Lender a security interest in and to all right, title and interest of Borrower in and to:  (a) any and all present and future leases, subleases, and other agreements for the occupancy or use of all or any part of the Property, and any and all modifications, extensions, renewals and replacements thereof ("**Leases**"); (b) all cash or security deposits, advance rentals and deposits of a similar nature under the Leases; (c) any and all guarantees of tenants' or occupants' performances under any and all Leases; and (d) all rents, issues, profits and revenues ("**Rents**") now due or which may become due or to which Borrower may now or shall hereafter become entitled or may demand or claim (including Rents coming due during any redemption period), arising or issuing from or out of any and all Leases, including without limitation minimum, additional, percentage and deficiency rents and liquidated damages and all rights to and proceeds of rental loss or business interruption insurance.

**6.2     Collection of Rents**. Prior to any Event of Default hereunder, Borrower shall have a license to, and shall, collect and receive all Rents of the Property as trustee for the benefit of Lender and Borrower, apply the Rents so collected first to the payment of taxes, assessments and other charges on the Property prior to delinquency, second to the cost of insurance, maintenance and repairs required by the terms of this Deed of Trust, third to the costs of discharging any obligation or liability of Borrower under the Leases, and fourth to the Secured Obligations, with the balance, if any, to the account of Borrower provided there is no Event of Default. Upon delivery of written notice by Lender to Borrower of an Event of Default hereunder and stating that Lender exercises its rights to the Rents, and without

the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all Rents from the Property as the same become due and payable, including without limitation Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only. Upon delivery of such written notice by Lender, Borrower hereby agrees to direct each tenant or occupant of the Property to pay all Rents to Lender on Lender's written demand therefor, without any liability on the part of said tenant or occupant to inquire further as to the existence of an Event of Default by Borrower. Borrower hereby authorizes Lender as Borrower's attorney-in-fact to make such direction to tenants and occupants upon Borrower's failure to do so as required herein. Payments made to Lender by tenants or occupants shall, as to such tenants and occupants, be in discharge of the payors' obligations to Borrower. Lender may exercise, in Lender's or Borrower's name, all rights and remedies available to Borrower with respect to collection of Rents. Nothing herein contained shall be construed as obligating Lender to perform any of Borrower's obligations under any of the Leases.

        **6.3**        **Borrower's Representations and Warranties.** Borrower hereby represents and warrants to Lender that Borrower has not executed and will not execute any other assignment of said Leases or Rents, and Borrower has not performed and will not perform any acts and has not executed and will not execute any instrument which would prevent Lender from exercising its rights under this Article VI. Borrower shall execute and deliver to Lender such further assignments of rents and leases of the Property as Lender may from time to time request. Borrower represents, warrants, and covenants that (a) Borrower is the absolute owner of all Leases and Rents, with full right and title to assign the same; (b) all existing Leases are valid, in full force and effect, and have not been modified or amended, except as disclosed in writing to Lender; (c) there is no outstanding assignment or pledge of any Leases or Rents; (d) there are no existing defaults under any Leases on the part of any party thereto, except as disclosed in writing to Lender; (e) no Rents have been discounted, released, waived, compromised, or otherwise discharged; (f) all tenants under the Leases are in occupancy, paying rent on fully executed Leases and carrying on their business with all tenant improvements fully completed except as disclosed in writing to Lender; (g) no existing Lease contains any provision permitting prepayment of more than one (1) month's rent in advance.

        **6.4**        **Lender in Possession; Appointment of Receiver.** Upon any Event of Default hereunder, Lender may, in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof in the same manner and to the same extent as Borrower could do the same, including without limitation the execution, enforcement, cancellation and modification of Leases, the collection of all Rents of the Property, the removal and eviction of tenants and other occupants, the making of alterations and repairs to the Property, and the execution and termination of contracts providing for management or maintenance of the Property, all on such terms as are deemed best by Lender to protect the security of this Deed of Trust. From and after the occurrence of any such Event of Default, if any owner of the Property shall occupy the Property or part thereof such owner shall pay to Lender in advance on the first day of each month a reasonable rental for the space so occupied, and upon failure so to do Lender shall be entitled to remove such owner from the Property by any appropriate action or proceedings. Following an Event of Default hereunder, Borrower hereby irrevocably consents and agrees that Lender shall be entitled (regardless of the adequacy of Lender's security) to the appointment of a custodial receiver or general receiver with power of sale. Said receiver may serve without bond, shall have the usual powers and duties of receivers in like or similar cases, all the powers and duties of Lender set forth in this Deed of Trust or any of the other Loan Documents, and, in the case of a general receiver, a right to sell the Property. Employment by Lender shall not disqualify a person from serving as receiver. The

receiver shall be entitled to receive a reasonable fee for all its services rendered in connection with the receivership.

**6.5    Application of Rents.**  All Rents collected subsequent to delivery of written notice by Lender to Borrower of an Event of Default hereunder shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the Rents, including without limitation attorneys' fees, receiver's fees, premiums on receiver's bonds, costs of maintenance and repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower under the Leases, and then to the Secured Obligations.  Lender or the receiver shall be liable to account only for those Rents actually received.  Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Lender under this Article.

**6.6    Deficiencies.**  To the extent, if any, that the costs of taking control of and managing the Property, collecting the Rents, and discharging obligations and liabilities of Borrower under the Leases, exceed the Rents of the Property, the excess sums expended for such purposes shall be indebtedness secured by this Deed of Trust.  Such excess sums shall be payable upon demand by Lender and shall bear interest from the date of disbursement at the Default Rate.

**6.7    Lender Not Mortgagee in Possession.**  Nothing herein shall constitute Lender a "mortgagee in possession" prior to its actual entry upon and taking possession of the Property.  Entry upon and taking possession by a receiver shall not constitute possession by Lender.

**6.8    Enforcement.**  Lender may enforce this assignment without first resorting to or exhausting any security or collateral for the Secured Obligations.

**6.9    Lender Not Responsible**.  Under no circumstances shall Lender have any duty to produce Rents from the Property. Regardless of whether or not Lender, in person or by agent, takes actual possession of the Property, Lender is not and shall not be deemed to be: (a) responsible for any waste committed by tenants or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair, or control of the Property; (b) responsible for any loss sustained by Borrower resulting from Lender's failure to lease the Property or from any other act or omission of Lender in managing the Property or administering the Leases; or (c) liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.  All risk of loss with respect to the Property is borne exclusively by Borrower and Lender shall have no responsibility for any decline in the value of the Property, for any failure by Borrower to maintain insurance coverage required under the Loan Agreement, for any inadequacy of the proceeds of any required insurance coverage or for any risk not insured against or not required to be insured against hereunder.

**6.10    Indemnity**.  Borrower shall indemnify, defend with counsel selected by Lender in its sole discretion, and hold Lender harmless from and against any and all claims, demands, liabilities, losses, lawsuits, judgments, damages, costs and expenses, including, without limitation, attorneys' fees and costs, to which Lender may be exposed or which Lender may incur arising out of or resulting from this assignment of Leases and Rents, including, without limitation, claims or demands for security deposits from tenants deposited with Borrower, and all claims or demands whatsoever asserted against Lender to satisfy any obligations of the landlord under the Leases.  This agreement by Borrower to indemnify Lender shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and or reconveyance of this Deed of Trust.

- 10 -

## ARTICLE VII.
## EVENTS OF DEFAULT.

**7.1** **Events of Default.** The occurrence of any Event of Default under the Loan Agreement shall constitute an Event of Default hereunder.

**7.2** **Remedies**. Upon any Event of Default, Lender may, at its option and without notice to or demand upon Borrower, exercise any one or more of the following actions:

(a) Declare all the Secured Obligations immediately due and payable.

(b) Bring a court action to enforce the provisions of this Deed of Trust or any of the other Loan Documents.

(c) Foreclose this Deed of Trust as a mortgage.

(d) Cause any or all of the Property to be sold under the power of sale granted by this Deed of Trust in any manner permitted by applicable law.

(e) Elect to exercise its rights with respect to the Leases and the Rents.

(f) Exercise any or all of the other rights and remedies under this Deed of Trust and the other Loan Documents.

(g) Exercise any other right or remedy available under law or in equity.

**7.3** **Exercise of Power of Sale.** For any sale under the power of sale granted by this Deed of Trust, Lender or Trustee shall record and give all notices required by law and then, upon the expiration of such time as is required by law, Trustee may sell the Property upon any terms and conditions specified by Lender and permitted by applicable law. Trustee may postpone any sale by public announcement at the time and place notified for the sale. If the Property includes several lots or parcels, Lender in its discretion may designate their order of sale or may elect to sell all of them as an entirety. The Property, real, personal and mixed, may be sold in one parcel. To the extent any of the Property sold by the Trustee is personal property, then Trustee shall be acting as the agent of the Lender in selling such Property. Any person permitted by law to do so may purchase at any sale. Upon any sale, Trustee will execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property sold, but without any covenant or warranty, express or implied, and the recitals in the Trustee's deed showing that the sale was conducted in compliance with all the requirements of law shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value.

**7.4** **Application of Sale Proceeds.** The proceeds of any sale under this Deed of Trust shall be applied in the following manner: (a) first to the payment of the costs and expenses of the sale; including without limitation Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee from date of disbursement at the applicable interest rate under the Note from time to time or at the maximum rate permitted to be charged by Trustee under the applicable law if that is less; (b) second to the payment of all sums expended by Lender under the terms of this Deed of Trust and not yet repaid, together with interest on such sums from date of disbursement at the applicable interest rate under the Note from time to time or the maximum rate permitted by applicable law if that is less; (c) third to the payment of all other Secured

Obligations in any order that the Lender chooses; and (d) the remainder, if any, to the person or persons legally entitled to it.

**7.5     Waiver of Order of Sale, Marshaling and Other Matters.**  Lender shall have the right to determine the order in which any or all portions of the secured indebtedness are satisfied from the proceeds realized upon the exercise of any remedies provided herein.  Borrower, any party who consents to this Deed of Trust and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof and waives any and all right to require marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein, or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust.  To the extent allowed by law, Borrower waives (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (ii) all rights of valuation, appraisement, stay of execution, reinstatement and redemption laws in the event of foreclosure of the liens hereby created, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State where the Property is located pertaining to the rights and remedies of sureties, and (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust.

**7.6     Non-Waiver of Defaults.**  The entering upon and taking possession of the Property, the collection of Rents or the proceeds of fire and other insurance policies or compensation or awards for any taking or damage of the Property, and the application or release thereof as herein provided, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**7.7     Expenses During Redemption Period.**  If this Deed of Trust is foreclosed as a mortgage and the Property sold at a foreclosure sale, the purchaser may during any redemption period allowed, make such repairs or alterations on the Property as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof.  Any sums so paid together with interest thereon from the time of such expenditure at the greater of the default rate under the Note, or the maximum rate permitted by law, shall be added to and become a part of the amount required to be paid for redemption from such sale.

**7.8     Foreclosure Subject to Tenancies.**  Lender shall have the right at its option to foreclose this Deed of Trust subject to the rights of any tenant or tenants of the Property.

**7.9     Evasion of Prepayment Terms.**  If any Event of Default has occurred, a tender of payment of the indebtedness secured hereby at any time prior to or at a judicial or non-judicial foreclosure sale of the Property by Borrower, or anyone on behalf of Borrower, shall constitute an evasion of any prepayment terms of the Note, if any, and shall constitute a voluntary prepayment thereunder, and any such tender shall include any prepayment premium required under the Note, if any.

**7.10     Lender's and Trustee's Expenses.**  Borrower shall pay all of Lender's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any suit is filed, including without limitation legal fees and disbursements, foreclosure costs and title charges.  All such sums, with interest thereon, shall be additional indebtedness of Borrower secured by this Deed of Trust. Such sums shall be immediately due and payable and shall bear interest from the date of disbursement at the greater of the default rate under the Note, or the maximum rate permitted by law.

**7.11    Fair Market Value**.  To the extent the Oregon Deed of Trust Act, as now existing or hereafter amended, or other statute requires that the "fair market value" or "fair value" of the Property be determined as of the foreclosure date in order to enforce a deficiency against Borrower or any other party liable for repayment of the Secured Obligations, the term "fair market value" or "fair value" shall include those matters required by law and the additional factors set forth below:

(a)    The Property shall be valued "as is" and "with all faults" and there shall be no assumption of restoration or refurbishment of Improvements, if any, after the date of the foreclosure.

(b)    An offset to the fair market value or fair value of the Property, as determined hereunder, shall be made by deducting from such value the reasonable estimated closing costs related to the sale of the Property, including but not limited to brokerage commissions, title policy expenses, tax pro-rations, escrow fees, and other common charges that are incurred by the seller of real property.

(c)    Borrower shall pay the costs of any appraisals and other expenses incurred in connection with any such determination of fair market value or fair value.

### ARTICLE VIII.
### GENERAL PROVISIONS

**8.1    No Offset.**  Borrower's obligation to timely pay and perform all obligations under the Note, the Loan Agreement, and the other Loan Documents shall be absolute and unconditional and shall not be affected by any event or circumstance, including, without limitation, any setoff, counterclaim, abatement, suspension, recoupment, deduction, defense or any other right that Borrower or any guarantor may have or claim against Lender or any other person or entity.

**8.2    Application of Payments.**  Except as applicable law or this Deed of Trust may otherwise provide, all payments received by Lender under the Note or this Deed of Trust shall be applied by Lender in the following order of priority:  (a) Lender's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust; (b) interest payable on advances made to protect the security of this Deed of Trust; (c) principal of such advances; (d) amounts payable to Lender by Borrower under Section 3 for reserves; (e) interest and late charges payable on the Note; (f) principal of the Note; and (g) any other Secured Obligations in such order as Lender, at its option, may determine; provided, however, that Lender may, at its option, apply any such payments received to interest on or principal of the Note prior to applying such payments to interest on and principal of advances made to protect the security of this Deed of Trust.

**8.3    Reconveyance.**  Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto.  The grantee in any reconveyance may be described as the "person or persons legally entitled thereto," and the recitals therein of any matters or facts shall be conclusive proof of the truthfulness thereof.  Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

**8.4    Successor Trustee.**  In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

- 13 -

**8.5     Lender's Powers.**    Without affecting the liability of any person for payment or performance of the Secured Obligations or any of Lender's rights or remedies, Lender, at its option, may extend the time for payment of the indebtedness secured hereby or any part thereof, reduce payment thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of the indebtedness, release the lien of this Deed of Trust on any part of the Property, take or release other or additional security, release or reconvey or cause to be released or reconveyed all or any part of the Property, or consent and/or cause Trustee to consent to the making of any map or plat of the Property, consent or cause Trustee to consent to the granting of any easement or creating any restriction on the property, or join or cause Trustee to join in any subordination or other agreement affecting this Deed of Trust or the lien or charge hereof.  Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorneys' fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**8.6     Subrogation.**  Lender shall be subrogated for further security to the lien, although released of record, of any and all encumbrances discharged, in whole or in part, by the proceeds of the Note or any other indebtedness secured thereby.

**8.7     Limitation on Interest and Charges.**    The interest, fees and charges under the Loan Documents shall not exceed the maximum amounts permitted by any applicable law.  If any such interest, fee or charge exceeds the maximum, the interest, fee or charge shall be reduced by the excess and any excess amounts already collected from Borrower shall be refunded.  Lender may refund such excess either by treating the excess as a prepayment of principal under the Note or by making a direct payment to Borrower. If Lender elects to treat the excess as a prepayment of principal, Borrower shall not be obligated to pay any prepayment premium required under the Note.  The provisions of this paragraph shall control over any inconsistent provision in the Loan Documents.

**8.8     Additional Documents; Power of Attorney.**    Borrower, from time to time, shall execute, acknowledge and deliver to Lender upon request, and hereby irrevocably appoints Lender its attorney-in-fact to execute, acknowledge, deliver and if appropriate file and record, such security agreements, assignments for security purposes, assignments absolute, financing statements, affidavits, certificates and other documents, in form and substance satisfactory to Lender, as Lender may request in order to perfect, preserve, continue, extend or maintain the assignments herein contained, the lien and security interest under this Deed of Trust, and the priority thereof.  Borrower shall pay to Lender upon request therefor all costs and expenses incurred in connection with the preparation, execution, recording and filing of any such document.

**8.9     Waiver of Statute of Limitations.**    To the full extent Borrower may do so, Borrower hereby waives the right to assert any statute of limitations as a defense to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust.

**8.10     Forbearance by Lender Not a Waiver.**    Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy, and no waiver by Lender of any particular default shall constitute a waiver of any other default or of any similar default in the future.  Furthermore, no waiver of Lender's rights or remedies in one or more instances shall establish a course of dealing or other agreement that will bind Lender or prohibit Lender from enforcing the terms of the Loan Documents in another instance. Without limiting the generality of the foregoing, the acceptance by Lender of payment of any sum secured by this

Deed of Trust after the due date thereof shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust, nor shall Lender's receipt of any awards, proceeds or damages under Sections 2.3 and 2.7 hereof operate to cure or waive Borrower's default in payment of sums secured by this Deed of Trust.

**8.11    Modifications and Waivers.**  This Deed of Trust cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

**8.12    Notice.**  Any notice to Borrower under this Deed of Trust shall be given in accordance with the notice provisions in the Loan Agreement.

**8.13    Governing Law; Severability; Captions.**  This Deed of Trust shall be governed by the laws of the State of Oregon.  If any provision or clause of this Deed of Trust conflicts with applicable law, such conflicts shall not affect other provisions or clauses hereof which can be given effect without the conflicting provision, and to this end the provisions hereof are declared to be severable.  If any provision of this Agreement or of any of the other Loan Documents are declared invalid for any reason by a court of competent jurisdiction, the invalid provision shall be deemed omitted and the remaining terms of this Agreement and of all of the other Loan Documents shall remain in full force and effect.  The captions and headings of the paragraphs and articles of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

**8.14    Construction**.  This Deed of Trust is the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent of the language contained herein in its entirety and not for or against either party, regardless of which party was responsible for its preparation.  Borrower and Lender each represent to the other that each has consulted with its own legal counsel in connection with this Agreement.

**8.15    Definitions.**  As used herein:  the term **"Borrower"** means the Borrower herein named, together with any subsequent owner of the Property or any part thereof or interest therein; the term **"Trustee"** means the Trustee herein named, together with any successor Trustee; and the term **"Lender"** means the Lender herein named, together with any subsequent owner or holder of the Note or any interest therein, including pledgees, assignees and participants.

**8.16    Successors and Assigns; Joint and Several Liability; Agents.**  This Deed of Trust shall bind and inure to the benefit of the parties hereto and their respective heirs, devisees, legatees, administrators, executors, successors and assigns, subject to the provisions of Section 4 hereof.  Each person executing this Deed of Trust as Borrower shall be jointly and severally liable for all obligations of Borrower hereunder.  In exercising any rights hereunder or taking actions provided for herein, Lender and Trustee may act through their respective employees, agents or independent contractors as authorized by Lender and Trustee.  Upon the occurrence of any default, Lender may proceed against any Borrower, any guarantor, or any of Lender's security for the Loan in such order and manner as Lender may elect in its sole discretion.

**8.17    Further Assurances; Clerical Errors.**  Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of

this Deed of Trust and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

**8.18    Time.** Time is of the essence in connection with all obligations of Borrower herein.

**8.19    Estoppel Certificate.** Borrower shall, within ten days of a written request from Lender and at no charge to Lender, furnish Lender or any other party designated by Lender with a written statement, duly acknowledged, setting forth the sums secured hereby and any right of set-off, counterclaim or other defense that may exist with regard to the Secured Obligations.

**8.20    Request for Notice**. Borrower hereby requests that a copy of any notice of default and notice of sale hereunder be mailed to it at its address set forth at the beginning of this Deed of Trust.

**8.21    Assignment of Loan Documents**. Lender may assign the Loan Documents in whole or in part. Lender may make available to any proposed assignee or participant all credit and financial data with respect to Borrower and any guarantor as may be in the possession of Lender. Borrower agrees to provide any additional information that any proposed assignee or participant may reasonably request.

**8.22    Certain Obligations Unsecured**. Notwithstanding anything to the contrary set forth herein or any of the Loan Documents, this Deed of Trust shall not secure the following obligations (the **"Unsecured Obligations"**): (a) any obligations evidenced by or arising under the Indemnity Agreement or the Guaranty, and (b) any other obligations in this Deed of Trust or in any of the other Loan Documents to the extent that such other obligations relate specifically to the presence on the Property of Hazardous Materials <u>and</u> are the same or have the same effect as any of the obligations evidenced by or arising under the Indemnity Agreement. Any breach or default with respect to the Unsecured Obligations shall constitute an Event of Default hereunder, notwithstanding the fact that such Unsecured Obligations are not secured by this Deed of Trust. Nothing in this Section shall, in itself, impair or limit Lender's right to obtain a judgment in accordance with applicable law after foreclosure for any deficiency in recovery of all obligations that are secured by this Deed of Trust following foreclosure.

**8.23    Counterparts**. This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same original.

**8.24    Jury Trial Waiver**. BORROWER WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE LOAN OR THE LOAN DOCUMENTS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER ACKNOWLEDGES THAT BORROWER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THE LOAN DOCUMENTS AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED

OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

## ARTICLE IX

## STATE SPECIFIC PROVISIONS.

**9.01     Principals of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 17 and the other terms and conditions of this Security Instrument, the terms and conditions of this Article 17 shall control and be binding.

**9.02     No Oral Commitments Notice**.  UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

Dated as of the day and year first written above.

**BORROWER:**

**15005 NW CORNELL LLC**, an Oregon limited liability company

By: _____
        Vahan M. Dinihanian, Jr., its manager

# ACKNOWLEDGEMENT

STATE OF OREGON        )
                                   )
COUNTY OF _____ )

This instrument was acknowledged before me on February ___, 2022, by Vahan M. Dinihanian, Jr. as the manager of 15005 NW Cornell LLC, an Oregon limited liability company.

_____
Signature of Notarial Officer

_____
Title
My commission expires: _____

(Seal, if any)

- 19 -

**<u>EXHIBIT A</u>**

**LEGAL DESCRIPTION**

*For informational purposes only:*

Tax ID No.:

Address:        15005 NW Cornell Road
                Beaverton, Oregon  97006

# Exhibit F

Recording Requested By and
When Recorded Mail To:

Robert L. de Normandie
deNormandie, Sidlo & Associates PLLC
1215 Fourth Avenue, Suite 1901
Seattle, Washington 98161

---

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

| | |
|---|---|
| **Document Title:** | Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| **Grantor:** | Vahan M. Dinihanian, Jr., an individual |
| **Grantee:** | _____ Title Insurance Company |
| **Beneficiary:** | SORFI, LLC, an Oregon limited liability company |

| | |
|---|---|
| Dated: | February ___, 2022 |
| Location: | Oregon |
| County: | Multnomah |
| Tax Parcel: | R324598 |

NOTICE TO RECORDER: THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN
ACCORDANCE WITH THE UNIFORM COMMERCIAL CODE AND ORS 79.0502

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING (**"Deed of Trust"**) is made as of January ___, 2022, by **Vahan M. Dinihanian, Jr.**, an individual (**"Borrower"**), as Grantor, whose mailing address is 237 NW Skyline Boulevard, Portland, Oregon 97210; to _____ **TITLE INSURANCE COMPANY** (**"Trustee"**), as Trustee, whose mailing address is _____, Portland, Oregon 97_____; for the benefit of **SORFI, LLC,** an Oregon limited liability company (**"Lender"**), as Beneficiary, whose mailing address is 240 SE 2nd Avenue, Suite 200, Portland, Oregon 97214.

Capitalized terms used but not defined in this Deed of Trust are defined in the Loan Agreement (**"Loan Agreement"**) between Lender and Borrower of even date herewith.

In consideration of the loan (**"Loan"**) evidenced by the Note described below, Borrower hereby irrevocably GRANTS, TRANSFERS, CONVEYS and ASSIGNS to Trustee, IN TRUST, WITH POWER OF SALE, all of Borrower's present and future estate, right, title, claim, and interest, either in law or in equity, in and to the following property (**"Property"**):

(a)     The real property described on <u>Exhibit A</u>, all rights to the alleys, streets and roads adjoining or abutting the real property, all present and future easements, access, air and development rights, minerals and oil, gas and other hydrocarbon substances, water, water rights and water stock, and all other rights, hereditaments, privileges, and appurtenances now or hereafter belonging or in any way appertaining to such real property (**"Realty"**);

(b)     All present and future buildings, improvements and tenements located on the Realty (**"Improvements"**);

(c)     All present and future fixtures and articles of property attached to, or used or adapted for use in the ownership, development, operation or maintenance of the Realty and Improvements (whether such items are leased, owned, or subject to any title-retaining or security instrument), including without limitation all heating, cooling, air-conditioning, ventilating, refrigerating, plumbing, generating, power, lighting, laundry, maintenance, incinerating, lifting, cleaning, fire prevention and extinguishing, security and access control, cooking, gas, electric and communication fixtures, equipment and apparatus; all engines, motors, conduits, pipes, pumps, tanks, ducts, compressors, boilers, water heaters and furnaces; all ranges, stoves, disposers, refrigerators and other appliances; all escalators and elevators, baths, sinks, cabinets, partitions, mantels, built-in mirrors, window shades, blinds, screens, awnings, storm doors, windows and sash; all carpeting, underpadding, floor covering, paneling, and draperies; and all shrubbery and plants. All such items shall be deemed part of the Realty and not severable wholly or in part without material injury to the freehold;

(d)     All present and future rents, revenues, issues, profits and income from the Realty or the Improvements, and all present and future leases and other agreements for the occupancy or use of all or any part of the Realty and Improvements, including without limitation all cash or security deposits, advance rentals and deposits or payments of similar nature, and all guarantees of tenants' or occupants' performance under such leases and agreements;

- 1 -

(e)     All present and future tangible personal property ("**Personal Property**") used in connection with the ownership, development, operation or maintenance of the Realty and Improvements, including without limitation all furniture, furnishings, equipment, supplies and other goods, wherever located, whether in the possession of Borrower, warehousemen, bailee, or any other person;

(f)     All present and future intangible personal property used in connection with the ownership, development, operation or maintenance of the Realty, Improvements, and Personal Property, including without limitation, all permits, licenses and franchises, contract rights (including without limitation architectural, engineering, consulting, and management contracts), accounts receivable, escrow accounts, insurance policies, deposits, instruments, documents of title, general intangibles, business records and the exclusive right to the use of trade names;

(g)     All present and future materials, supplies, and other goods, wherever located, whether in the possession of Borrower, warehouseman, bailee, or any other person, purchased for use in the construction, operation or furnishing of the Improvements, together with all documents, contract rights, and general intangibles relating thereto;

(h)     All present or future site plans, plats, architectural plans and specifications, work drawings, surveys, engineering reports, test borings, market surveys, and other work products relating to the Realty and Improvements;

(i)     All present or future construction contracts relating to the Improvements, together with all performance, payment, completion or other surety bonds in connection with or related to any such construction contracts which are transferable by Borrower;

(j)     All present and future contracts and policies of insurance which insure any buildings, structures or improvements on the Realty, or any fixtures or personal property thereon, against casualty and theft, and all monies and proceeds and rights thereto which may become payable by virtue of any insurance contracts or policies;

(k)     All claims, causes of action, warranties, accounts receivable, escrow accounts, insurance policies, deposits (including tax, insurance and other reserves), instruments, documents of title, general intangibles, and business records;

(l)     All present and future monetary deposits to any city, county, public body or agency, irrigation, sewer or water district or company, and any other body or agency, for the installation, or to secure the installation, of any utility pertaining to the Realty or the Improvements.

(m)     All refunds, rebates, reimbursements, reserves, deferred payments, deposits, cost savings, governmental subsidy payments, governmentally-registered credits (such as emissions reduction credits), other credits, waivers and payments, whether in cash or in kind, due from or payable by (i) any federal, state, municipal or other governmental or quasi-governmental agency, authority or district (each, a "**Governmental Agency**") or (ii) any insurance or utility company relating to any or all of the Realty or Improvements or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Realty;

(n)     All refunds, rebates, reimbursements, credits and payments of any kind due from or payable by any Governmental Agency for any taxes, special taxes, assessments, or similar governmental or quasi-governmental charges or levies imposed upon Borrower with respect to the Property or upon any or

- 2 -

all of the Property or arising out of the satisfaction of any conditions imposed upon or the obtaining of any approvals for the development or rehabilitation of the Property;

(o)     All proceeds (including claims and demands therefor) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including without limitation all insurance proceeds and condemnation awards; and

(p)     All products and proceeds of the foregoing.

TO SECURE THE FOLLOWING (collectively the "**Secured Obligations**"):

(a)     Payment of the sum of **Four Million Nine Hundred Sixty Thousand and 00/100 Dollars ($4,960,000.00)**, or so much thereof as may be advanced, with interest thereon, according to the terms and provisions of a promissory note ("**Note**") of even date, made by Borrower and payable to Lender, including any and all modifications, extensions, renewals and replacements thereof.

(b)     Payment of all sums advanced to protect the security of this Deed of Trust, together with interest thereon as herein provided;

(c)     Payment of all other sums which are or which may become owing under the Loan Documents or which may be advanced by Lender pursuant to the Loan Documents; and

(d)     Payment and performance of the other covenants and agreements of Borrower contained in the Loan Agreement and the other Loan Documents; and

(e)     Payment and performance of any future obligations of Borrower or any Affiliate of Borrower to Lender if the documentation evidencing such future obligation expressly provides that it is secured by this Deed of Trust.

As used in this Deed of Trust, the term "**Loan Documents**" means the Note, the Loan Agreement, this Deed of Trust and all related documents and instruments, and any and all modifications, extensions, renewals and replacements thereof; provided, however, that notwithstanding any other provision of this Deed of Trust, the Loan Agreement or any other Loan Document, this Deed of Trust does not secure any of Borrower's obligations under the Indemnity Agreement nor any Guarantor's obligations under the Guaranty.

The Secured Obligations may be indexed, adjusted, renewed or renegotiated.

BORROWER REPRESENTS, WARRANTS, COVENANTS AND AGREES AS FOLLOWS:

**ARTICLE I.**
**TITLE AND USE**

**1.1**    **Warranty of Title.**  Borrower covenants and agrees that: (i) Borrower is lawfully seized of the estate hereby conveyed and has full right and power to grant, convey and assign the Property, (ii) the Property is free from liens, encumbrances, exceptions and other charges of any kind whatsoever, except for the exceptions listed in Lender's title insurance policy insuring this Deed of Trust or exceptions otherwise approved in writing by Lender ("**Permitted Exceptions**"), (iii) no other liens or encumbrances, whether superior or inferior to this Deed of Trust, shall be created or suffered to be

- 3 -

created by Borrower without the prior written consent of Lender, (iv) no default on the part of Borrower or any other person exists under any of the Permitted Exceptions and all of the Permitted Exceptions are in full force and effect and in good standing, without modification, (v) complete and current copies of the Permitted Exceptions have been furnished to Lender, and none of them have been or will be modified by Borrower without Lender's prior written consent, (vi) Borrower shall fully comply with all the terms of the Permitted Exceptions and shall deliver to Lender a copy of all notices delivered in connection with the Permitted Exceptions, (vii) Lender has the right to contact the other parties to the Permitted Exceptions to confirm the status thereof, and Borrower from time to time shall, at the request of Lender, request of such parties a certificate confirming such information regarding the Permitted Exceptions as Lender may request, and (viii) Borrower shall forever warrant and defend the Property unto Lender against all claims and demands of any other person whatsoever, subject only to non-delinquent taxes and assessments and the Permitted Exceptions. None of the Permitted Exceptions, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by this Deed of Trust and the Loan Documents, materially and adversely affect the value of the Property, impair the use or operations of the Property or impair Borrower's ability to pay its obligations in a timely manner.

      **1.2**    **Non-Agricultural Use; Commercial Loan**.  Borrower represents and warrants to Lender that (a) the Realty is not used principally for agricultural purposes, and (b) the Loan was not made primarily for personal, family or household purposes.

**ARTICLE II.**
**BORROWER'S COVENANTS.**

      **2.1**    **Payment and Performance of Secured Obligations.**  Borrower shall pay when due all sums which are now or which may become owing under the Note, and shall pay and perform all other Secured Obligations in accordance with their terms.

      **2.2**    **Payment of Taxes, Utilities, Liens and Charges.**

          (a)    <u>Taxes and Assessments</u>.  Except as the same may otherwise be paid under Article III, Borrower shall pay when due directly to the payee thereof all taxes and assessments (including without limitation, non-governmental levies or assessments such as maintenance charges, owner association dues or charges, or fees, levies or charges resulting from covenants, conditions or restrictions) levied, assessed or charged against or with respect to the Property or this Deed of Trust. Upon request, Borrower shall promptly furnish to Lender all notices of amounts due under this subsection and all receipts evidencing such payments.

          (b)    <u>Utilities</u>.  Borrower shall pay when due all utility charges and assessments for services furnished the Property.

          (c)    <u>Labor and Materials</u>.  Borrower shall pay when due the claims of all persons supplying labor or materials to or in connection with the Property.

          (d)    <u>Liens and Charges</u>.  Borrower shall promptly discharge any lien, encumbrance, or other charge, whether superior or inferior to this Deed of Trust, which may be claimed against the Property.

          (e)    <u>Taxes, Assessments and Other Charges Imposed on Lender</u>.  If, at any time after the date of this Deed of Trust, any law is enacted or changed (including any interpretation thereof) which subjects Lender to any increase in any tax (except federal, state or local income taxes), assessments, or other

- 4 -

charge, in any form measured by or based on any portion of the indebtedness secured by this Deed of Trust, Borrower shall pay such increased amount to Lender on demand; provided that if any such payment would be unlawful, Lender may declare all accrued interest and the entire principal balance of the Note immediately due and payable.

(f)     Right to Contest.  Notwithstanding anything set forth in this Section 2.2, so long as no Event of Default shall occur hereunder, Borrower shall have the right to contest the amount or validity in whole or in part of any lien, encumbrance or other charge against the Property by appropriate administrative or judicial proceedings conducted in good faith and with due diligence, in which event Borrower, upon written notice to Lender, may defer payment of any such lien, encumbrance or other charge, so long as (i) Borrower shall have provided Lender with evidence satisfactory to Lender that such proceedings shall operate to prevent the sale of the Property or any portion thereof, or the imposition of any penalties on Borrower or the Property; (ii) neither the Property nor any part thereof will, by reason of such postponement or deferment, be in danger of being forfeited or lost; (iii) before the date such lien, encumbrance or other charge becomes delinquent, Borrower shall provide Lender with such security as Lender may require to insure payment thereof and prevent any forfeiture or loss of the Property or any part thereof; and (iv) on a final determination of such contest, which is not appealable or is not being appealed, Borrower shall pay the amount of the lien, encumbrance or other charge if and when due, and prior to the imposition of any penalties or delinquent interest.

## 2.3     Insurance Provisions.

(a)     Required Coverage.  Borrower shall keep the insurance coverage required by the terms of the Loan Agreement in full force and effect.

(b)     Security.  As security for the Secured Obligations, Borrower hereby assigns to Lender and grants Lender a security interest in all required insurance policies, together with all proceeds thereof, rights thereto and all unearned premiums returnable upon cancellation.

(c)     Application of Proceeds.  The provisions of the Loan Agreement providing for the application of insurance proceeds are incorporated by this reference.

## 2.4     Preservation and Maintenance of Property; Right of Entry.

(a)     Preservation and Maintenance.  Borrower shall (i) not commit or suffer any waste or permit any impairment or deterioration of the Property, (ii) not abandon the Property, (iii) restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good condition and repair and shall replace fixtures, equipment, machinery and appliances of the Property when necessary to keep such items in good condition and repair, and (v) generally operate and maintain the Property in a commercially reasonable manner.

(b)     Alterations.  Except as specifically permitted under the Loan Agreement, none of the Improvements shall be structurally altered, removed or demolished, in whole or in part, without Lender's prior written consent, nor shall any fixture or chattel covered by this Deed of Trust and adapted to the use and enjoyment of the Property be removed at any time without like consent unless actually replaced by an article of equal suitability which is owned by Borrower free and clear of any lien or security interest.

- 5 -

(c)     Right of Entry.  Lender is hereby authorized to enter the Property, including the interior of any structures, at reasonable times and after reasonable notice, for the purpose of inspecting the Property to determine Borrower's compliance with this Section 2.4.

**2.5     Parking.**  If any part of the automobile parking areas included within the Property is taken by condemnation, and before the parking areas are diminished for any other reason, Borrower shall take all actions as are necessary to provide parking facilities in kind, size and location to comply with all governmental zoning and other regulations and all leases.  Before making any contract for substitute parking facilities, Borrower shall furnish to Lender satisfactory assurance of completion thereof free of liens and in conformity with all government zoning and other regulations.  This Deed of Trust shall constitute a first lien on all such substitute parking facilities.

**2.6     Use of Property.**  Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body, and all other covenants, conditions and restrictions applicable to the Property, and pay all fees and charges in connection therewith.  Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Deed of Trust was executed.  Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

**2.7     Condemnation.**  The provisions of the Loan Agreement regarding condemnation actions and the application of condemnation proceeds are incorporated by this reference.

**2.8     Protection of Lender's Security.**  Borrower shall give notice to Lender of and shall appear in and defend any action or proceeding that may affect the Property, the interests of Lender or Trustee therein, or the rights or remedies of Lender or Trustee under the Loan Documents.  If any such action or proceeding is commenced, or Borrower fails to perform any obligation under the Loan Documents, Lender or Trustee may, at their option, make any appearances, disburse any sums, make any entries upon the Property, and take any actions as may be necessary or desirable to (i) protect or enforce the security of this Deed of Trust, (ii) remedy Borrower's failure to perform its obligations under the Loan Documents (without waiving such default by Borrower), or (iii) otherwise protect Lender's or Trustee's interests.  Borrower shall pay all losses, damages, fees, costs, and expenses incurred by Lender and Trustee in taking such actions, including without limitation reasonable legal fees.

**2.9     Reimbursement of Lender's and Trustee's Expenses.**  All amounts disbursed by Lender and Trustee pursuant to Section 2.8 or any other provision of this Deed of Trust, with interest thereon, shall be additional indebtedness of Borrower secured by this Deed of Trust.  All such amounts shall be immediately due and payable and bear interest from the date of disbursement at the lesser of the default rate under the Note, or the maximum rate permitted by law.

**ARTICLE III.**
**INTENTIONALLY OMITTED**

- 6 -

# ARTICLE IV.
## RESTRICTIONS ON TRANSFER OR ENCUMBRANCE.

The Loan Agreement contains certain restrictions on any transfer or encumbrance of the Property, any portion thereof or any interest therein, and on any direct or indirect transfer or encumbrance of direct or indirect ownership interests in Borrower. Those provisions are incorporated by this reference. The occurrence of any Transfer or attempted Transfer not permitted under the Loan Agreement shall be an immediate Event of Default whereupon the Secured Obligations shall be immediately due and payable in full without notice or demand from Lender.

# ARTICLE V.
## UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.

**5.1     Grant of Security Interest.** This Deed of Trust constitutes a security agreement pursuant to the Uniform Commercial Code with respect to (a) any of the Property which, under applicable law, is not real property or effectively made part of the real property by the provisions of this Deed of Trust; and (b) any and all other property now or hereafter described on any Uniform Commercial Code Financing Statement naming Borrower as Debtor and Lender as Secured Party and affecting property in any way connected with the use and enjoyment of the Property, any and all such other property constituting "Property" for purposes of this Deed of Trust. Borrower hereby grants Lender a security interest in all property described in clauses (a) and (b) above as security for the Secured Obligations. Borrower and Lender agree, however, that neither the foregoing grant of a security interest nor the filing of any such financing statement shall be construed as limiting the parties' stated intention that everything used in connection with the production of income from the Property, or adapted for use therein, or which is described or reflected in this Deed of Trust, is and at all times shall be regarded as part of the Realty.

**5.2     Status of Borrower; Financing Statements.** Borrower's exact legal name is correctly set forth on the signature page of this Deed of Trust. If Borrower is not an individual, Borrower is an organization of the type specified in the introductory paragraph of this Deed of Trust. If Borrower is a registered entity, Borrower is incorporated in or organized under the laws of the state specified in the introductory paragraph of this Deed of Trust. If Borrower is an unregistered entity (including a general partnership), it is organized under the laws of the state specified in the introductory paragraph of this Deed of Trust. Borrower will not cause or permit any change to be made in its name, identity or corporate, company or partnership structure unless the Borrower shall have notified Lender in writing of such change at least thirty (30) days prior to the effective date of such change, and shall have first taken all action required by Lender for the purpose of further perfecting or protecting the lien and security interest of Lender in the Property. Borrower's principal place of business and chief executive office, and the place where Borrower keeps its books and records, including recorded data of any kind or nature, regardless of the medium of recording, including software, writing, plans, specifications and schematics concerning the Property, has been for the preceding four months (or less if for the entire existence of Borrower) and will continue to be the address of Borrower set forth in the first paragraph of this Deed of Trust (unless Borrower notifies Lender of any change in writing at least thirty (30) days prior to the date of such change). If Borrower is an individual, Borrower's principal residence has been for the preceding four months and will continue to be the address of the principal residence of Borrower set forth at the end of this Deed of Trust (unless Borrower notifies Lender of any change in writing at least thirty (30) days prior to the date of such change). Borrower's organizational identification number, if any, assigned by the state of incorporation or organization is [N/A]. Borrower shall promptly notify Lender of any change of its organizational identification number. If Borrower does not now have an

organizational identification number and later obtains one, Borrower shall promptly notify Lender of such organizational identification number. Borrower agrees that Lender may file this Deed of Trust, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Deed of Trust or of any other security agreement or financing statement shall be sufficient as a financing statement. Borrower hereby authorizes Lender (and Lender's representatives and agents) to file financing statements (and amendments thereto) relating to the Property. The form and substance of any financing statement filed with respect to this Deed of Trust shall be as Lender, in its sole discretion, may determine. Borrower shall pay all costs of filing such financing statements and any extensions, continuations, renewals, amendments and releases thereof, and shall pay all costs and expenses of any record searches for financing statements which Lender may require.

     **5.3    Lender's Rights and Remedies.** With respect to the Property subject to the foregoing security interest, Lender shall have all the rights and remedies (i) of a secured party under the Uniform Commercial Code, (ii) provided herein, including without limitation the right to cause such Property to be sold by Trustee under the power of sale granted by this Deed of Trust, and (iii) provided by law. In exercising its remedies, Lender may proceed against the items of real property and any items of personal property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies. Upon demand by Lender following an Event of Default hereunder, Borrower shall assemble any items of personal property and make them available to Lender at the Realty. Lender shall give Borrower at least five (5) days' prior written notice of the time and place of any public sale or other disposition of such Property or of the time of or after which any private sale or any other intended disposition is to be made. Any person permitted by law to purchase at any such sale may do so. Such Property may be sold at any one or more public or private sales as permitted by applicable law.

## ARTICLE VI.
## ASSIGNMENT OF RENTS AND LEASES

     **6.1    Assignment of Rents and Leases.** As security for the Secured Obligations, Borrower assigns and transfers to Lender and grants Lender a security interest in and to all right, title and interest of Borrower in and to: (a) any and all present and future leases, subleases, and other agreements for the occupancy or use of all or any part of the Property, and any and all modifications, extensions, renewals and replacements thereof ("**Leases**"); (b) all cash or security deposits, advance rentals and deposits of a similar nature under the Leases; (c) any and all guarantees of tenants' or occupants' performances under any and all Leases; and (d) all rents, issues, profits and revenues ("**Rents**") now due or which may become due or to which Borrower may now or shall hereafter become entitled or may demand or claim (including Rents coming due during any redemption period), arising or issuing from or out of any and all Leases, including without limitation minimum, additional, percentage and deficiency rents and liquidated damages and all rights to and proceeds of rental loss or business interruption insurance.

     **6.2    Collection of Rents**. Prior to any Event of Default hereunder, Borrower shall have a license to, and shall, collect and receive all Rents of the Property as trustee for the benefit of Lender and Borrower, apply the Rents so collected first to the payment of taxes, assessments and other charges on the Property prior to delinquency, second to the cost of insurance, maintenance and repairs required by the terms of this Deed of Trust, third to the costs of discharging any obligation or liability of Borrower under the Leases, and fourth to the Secured Obligations, with the balance, if any, to the account of Borrower provided there is no Event of Default. Upon delivery of written notice by Lender to Borrower of an Event of Default hereunder and stating that Lender exercises its rights to the Rents, and without

the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court-appointed receiver, Lender shall immediately be entitled to possession of all Rents from the Property as the same become due and payable, including without limitation Rents then due and unpaid, and all such Rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only. Upon delivery of such written notice by Lender, Borrower hereby agrees to direct each tenant or occupant of the Property to pay all Rents to Lender on Lender's written demand therefor, without any liability on the part of said tenant or occupant to inquire further as to the existence of an Event of Default by Borrower. Borrower hereby authorizes Lender as Borrower's attorney-in-fact to make such direction to tenants and occupants upon Borrower's failure to do so as required herein. Payments made to Lender by tenants or occupants shall, as to such tenants and occupants, be in discharge of the payors' obligations to Borrower. Lender may exercise, in Lender's or Borrower's name, all rights and remedies available to Borrower with respect to collection of Rents. Nothing herein contained shall be construed as obligating Lender to perform any of Borrower's obligations under any of the Leases.

       **6.3**     **Borrower's Representations and Warranties.** Borrower hereby represents and warrants to Lender that Borrower has not executed and will not execute any other assignment of said Leases or Rents, and Borrower has not performed and will not perform any acts and has not executed and will not execute any instrument which would prevent Lender from exercising its rights under this Article VI. Borrower shall execute and deliver to Lender such further assignments of rents and leases of the Property as Lender may from time to time request. Borrower represents, warrants, and covenants that (a) Borrower is the absolute owner of all Leases and Rents, with full right and title to assign the same; (b) all existing Leases are valid, in full force and effect, and have not been modified or amended, except as disclosed in writing to Lender; (c) there is no outstanding assignment or pledge of any Leases or Rents; (d) there are no existing defaults under any Leases on the part of any party thereto, except as disclosed in writing to Lender; (e) no Rents have been discounted, released, waived, compromised, or otherwise discharged; (f) all tenants under the Leases are in occupancy, paying rent on fully executed Leases and carrying on their business with all tenant improvements fully completed except as disclosed in writing to Lender; (g) no existing Lease contains any provision permitting prepayment of more than one (1) month's rent in advance.

       **6.4**     **Lender in Possession; Appointment of Receiver.** Upon any Event of Default hereunder, Lender may, in person, by agent or by a court-appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof in the same manner and to the same extent as Borrower could do the same, including without limitation the execution, enforcement, cancellation and modification of Leases, the collection of all Rents of the Property, the removal and eviction of tenants and other occupants, the making of alterations and repairs to the Property, and the execution and termination of contracts providing for management or maintenance of the Property, all on such terms as are deemed best by Lender to protect the security of this Deed of Trust. From and after the occurrence of any such Event of Default, if any owner of the Property shall occupy the Property or part thereof such owner shall pay to Lender in advance on the first day of each month a reasonable rental for the space so occupied, and upon failure so to do Lender shall be entitled to remove such owner from the Property by any appropriate action or proceedings. Following an Event of Default hereunder, Borrower hereby irrevocably consents and agrees that Lender shall be entitled (regardless of the adequacy of Lender's security) to the appointment of a custodial receiver or general receiver with power of sale. Said receiver may serve without bond, shall have the usual powers and duties of receivers in like or similar cases, all the powers and duties of Lender set forth in this Deed of Trust or any of the other Loan Documents, and, in the case of a general receiver, a right to sell the Property. Employment by Lender shall not disqualify a person from serving as receiver. The

receiver shall be entitled to receive a reasonable fee for all its services rendered in connection with the receivership.

   **6.5    Application of Rents.**  All Rents collected subsequent to delivery of written notice by Lender to Borrower of an Event of Default hereunder shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the Rents, including without limitation attorneys' fees, receiver's fees, premiums on receiver's bonds, costs of maintenance and repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower under the Leases, and then to the Secured Obligations.  Lender or the receiver shall be liable to account only for those Rents actually received.  Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of anything done or left undone by Lender under this Article.

   **6.6    Deficiencies.**  To the extent, if any, that the costs of taking control of and managing the Property, collecting the Rents, and discharging obligations and liabilities of Borrower under the Leases, exceed the Rents of the Property, the excess sums expended for such purposes shall be indebtedness secured by this Deed of Trust.  Such excess sums shall be payable upon demand by Lender and shall bear interest from the date of disbursement at the Default Rate.

   **6.7    Lender Not Mortgagee in Possession.**   Nothing herein shall constitute Lender a "mortgagee in possession" prior to its actual entry upon and taking possession of the Property.  Entry upon and taking possession by a receiver shall not constitute possession by Lender.

   **6.8    Enforcement.**  Lender may enforce this assignment without first resorting to or exhausting any security or collateral for the Secured Obligations.

   **6.9    Lender Not Responsible**. Under no circumstances shall Lender have any duty to produce Rents from the Property. Regardless of whether or not Lender, in person or by agent, takes actual possession of the Property, Lender is not and shall not be deemed to be: (a) responsible for any waste committed by tenants or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair, or control of the Property; (b) responsible for any loss sustained by Borrower resulting from Lender's failure to lease the Property or from any other act or omission of Lender in managing the Property or administering the Leases; or (c) liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.  All risk of loss with respect to the Property is borne exclusively by Borrower and Lender shall have no responsibility for any decline in the value of the Property, for any failure by Borrower to maintain insurance coverage required under the Loan Agreement, for any inadequacy of the proceeds of any required insurance coverage or for any risk not insured against or not required to be insured against hereunder.

   **6.10    Indemnity**.  Borrower shall indemnify, defend with counsel selected by Lender in its sole discretion, and hold Lender harmless from and against any and all claims, demands, liabilities, losses, lawsuits, judgments, damages, costs and expenses, including, without limitation, attorneys' fees and costs, to which Lender may be exposed or which Lender may incur arising out of or resulting from this assignment of Leases and Rents, including, without limitation, claims or demands for security deposits from tenants deposited with Borrower, and all claims or demands whatsoever asserted against Lender to satisfy any obligations of the landlord under the Leases.  This agreement by Borrower to indemnify Lender shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and or reconveyance of this Deed of Trust.

- 10 -

## ARTICLE VII.
## EVENTS OF DEFAULT.

**7.1    Events of Default.**  The occurrence of any Event of Default under the Loan Agreement shall constitute an Event of Default hereunder.

**7.2    Remedies**.  Upon any Event of Default, Lender may, at its option and without notice to or demand upon Borrower, exercise any one or more of the following actions:

(a)    Declare all the Secured Obligations immediately due and payable.

(b)    Bring a court action to enforce the provisions of this Deed of Trust or any of the other Loan Documents.

(c)    Foreclose this Deed of Trust as a mortgage.

(d)    Cause any or all of the Property to be sold under the power of sale granted by this Deed of Trust in any manner permitted by applicable law.

(e)    Elect to exercise its rights with respect to the Leases and the Rents.

(f)    Exercise any or all of the other rights and remedies under this Deed of Trust and the other Loan Documents.

(g)    Exercise any other right or remedy available under law or in equity.

**7.3    Exercise of Power of Sale.**  For any sale under the power of sale granted by this Deed of Trust, Lender or Trustee shall record and give all notices required by law and then, upon the expiration of such time as is required by law, Trustee may sell the Property upon any terms and conditions specified by Lender and permitted by applicable law.  Trustee may postpone any sale by public announcement at the time and place notified for the sale.  If the Property includes several lots or parcels, Lender in its discretion may designate their order of sale or may elect to sell all of them as an entirety.  The Property, real, personal and mixed, may be sold in one parcel.  To the extent any of the Property sold by the Trustee is personal property, then Trustee shall be acting as the agent of the Lender in selling such Property.  Any person permitted by law to do so may purchase at any sale.  Upon any sale, Trustee will execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property sold, but without any covenant or warranty, express or implied, and the recitals in the Trustee's deed showing that the sale was conducted in compliance with all the requirements of law shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value.

**7.4    Application of Sale Proceeds.**  The proceeds of any sale under this Deed of Trust shall be applied in the following manner:  (a) first to the payment of the costs and expenses of the sale; including without limitation Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee from date of disbursement at the applicable interest rate under the Note from time to time or at the maximum rate permitted to be charged by Trustee under the applicable law if that is less; (b) second to the payment of all sums expended by Lender under the terms of this Deed of Trust and not yet repaid, together with interest on such sums from date of disbursement at the applicable interest rate under the Note from time to time or the maximum rate permitted by applicable law if that is less; (c) third to the payment of all other Secured

Obligations in any order that the Lender chooses; and (d) the remainder, if any, to the person or persons legally entitled to it.

**7.5    Waiver of Order of Sale, Marshaling and Other Matters.**  Lender shall have the right to determine the order in which any or all portions of the secured indebtedness are satisfied from the proceeds realized upon the exercise of any remedies provided herein.  Borrower, any party who consents to this Deed of Trust and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof and waives any and all right to require marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein, or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust.  To the extent allowed by law, Borrower waives (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (ii) all rights of valuation, appraisement, stay of execution, reinstatement and redemption laws in the event of foreclosure of the liens hereby created, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State where the Property is located pertaining to the rights and remedies of sureties, and (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust.

**7.6    Non-Waiver of Defaults.**  The entering upon and taking possession of the Property, the collection of Rents or the proceeds of fire and other insurance policies or compensation or awards for any taking or damage of the Property, and the application or release thereof as herein provided, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**7.7    Expenses During Redemption Period.**  If this Deed of Trust is foreclosed as a mortgage and the Property sold at a foreclosure sale, the purchaser may during any redemption period allowed, make such repairs or alterations on the Property as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof.  Any sums so paid together with interest thereon from the time of such expenditure at the greater of the default rate under the Note, or the maximum rate permitted by law, shall be added to and become a part of the amount required to be paid for redemption from such sale.

**7.8    Foreclosure Subject to Tenancies.**  Lender shall have the right at its option to foreclose this Deed of Trust subject to the rights of any tenant or tenants of the Property.

**7.9    Evasion of Prepayment Terms.**  If any Event of Default has occurred, a tender of payment of the indebtedness secured hereby at any time prior to or at a judicial or non-judicial foreclosure sale of the Property by Borrower, or anyone on behalf of Borrower, shall constitute an evasion of any prepayment terms of the Note, if any, and shall constitute a voluntary prepayment thereunder, and any such tender shall include any prepayment premium required under the Note, if any.

**7.10    Lender's and Trustee's Expenses.**  Borrower shall pay all of Lender's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any suit is filed, including without limitation legal fees and disbursements, foreclosure costs and title charges.  All such sums, with interest thereon, shall be additional indebtedness of Borrower secured by this Deed of Trust. Such sums shall be immediately due and payable and shall bear interest from the date of disbursement at the greater of the default rate under the Note, or the maximum rate permitted by law.

- 12 -

**7.11     Fair Market Value**.  To the extent the Oregon Deed of Trust Act, as now existing or hereafter amended, or other statute requires that the "fair market value" or "fair value" of the Property be determined as of the foreclosure date in order to enforce a deficiency against Borrower or any other party liable for repayment of the Secured Obligations, the term "fair market value" or "fair value" shall include those matters required by law and the additional factors set forth below:

(a)     The Property shall be valued "as is" and "with all faults" and there shall be no assumption of restoration or refurbishment of Improvements, if any, after the date of the foreclosure.

(b)     An offset to the fair market value or fair value of the Property, as determined hereunder, shall be made by deducting from such value the reasonable estimated closing costs related to the sale of the Property, including but not limited to brokerage commissions, title policy expenses, tax pro-rations, escrow fees, and other common charges that are incurred by the seller of real property.

(c)     Borrower shall pay the costs of any appraisals and other expenses incurred in connection with any such determination of fair market value or fair value.

## ARTICLE VIII.
## GENERAL PROVISIONS

**8.1     No Offset.**  Borrower's obligation to timely pay and perform all obligations under the Note, the Loan Agreement, and the other Loan Documents shall be absolute and unconditional and shall not be affected by any event or circumstance, including, without limitation, any setoff, counterclaim, abatement, suspension, recoupment, deduction, defense or any other right that Borrower or any guarantor may have or claim against Lender or any other person or entity.

**8.2     Application of Payments.**  Except as applicable law or this Deed of Trust may otherwise provide, all payments received by Lender under the Note or this Deed of Trust shall be applied by Lender in the following order of priority:  (a) Lender's and Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust; (b) interest payable on advances made to protect the security of this Deed of Trust; (c) principal of such advances; (d) amounts payable to Lender by Borrower under Section 3 for reserves; (e) interest and late charges payable on the Note; (f) principal of the Note; and (g) any other Secured Obligations in such order as Lender, at its option, may determine; provided, however, that Lender may, at its option, apply any such payments received to interest on or principal of the Note prior to applying such payments to interest on and principal of advances made to protect the security of this Deed of Trust.

**8.3     Reconveyance.**  Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto.  The grantee in any reconveyance may be described as the "person or persons legally entitled thereto," and the recitals therein of any matters or facts shall be conclusive proof of the truthfulness thereof.  Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

**8.4     Successor Trustee.**  In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

- 13 -

**8.5     Lender's Powers.**   Without affecting the liability of any person for payment or performance of the Secured Obligations or any of Lender's rights or remedies, Lender, at its option, may extend the time for payment of the indebtedness secured hereby or any part thereof, reduce payment thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of the indebtedness, release the lien of this Deed of Trust on any part of the Property, take or release other or additional security, release or reconvey or cause to be released or reconveyed all or any part of the Property, or consent and/or cause Trustee to consent to the making of any map or plat of the Property, consent or cause Trustee to consent to the granting of any easement or creating any restriction on the property, or join or cause Trustee to join in any subordination or other agreement affecting this Deed of Trust or the lien or charge hereof.  Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorneys' fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**8.6     Subrogation.**  Lender shall be subrogated for further security to the lien, although released of record, of any and all encumbrances discharged, in whole or in part, by the proceeds of the Note or any other indebtedness secured thereby.

**8.7     Limitation on Interest and Charges.**   The interest, fees and charges under the Loan Documents shall not exceed the maximum amounts permitted by any applicable law.  If any such interest, fee or charge exceeds the maximum, the interest, fee or charge shall be reduced by the excess and any excess amounts already collected from Borrower shall be refunded.  Lender may refund such excess either by treating the excess as a prepayment of principal under the Note or by making a direct payment to Borrower. If Lender elects to treat the excess as a prepayment of principal, Borrower shall not be obligated to pay any prepayment premium required under the Note.  The provisions of this paragraph shall control over any inconsistent provision in the Loan Documents.

**8.8     Additional Documents; Power of Attorney.**  Borrower, from time to time, shall execute, acknowledge and deliver to Lender upon request, and hereby irrevocably appoints Lender its attorney-in-fact to execute, acknowledge, deliver and if appropriate file and record, such security agreements, assignments for security purposes, assignments absolute, financing statements, affidavits, certificates and other documents, in form and substance satisfactory to Lender, as Lender may request in order to perfect, preserve, continue, extend or maintain the assignments herein contained, the lien and security interest under this Deed of Trust, and the priority thereof.  Borrower shall pay to Lender upon request therefor all costs and expenses incurred in connection with the preparation, execution, recording and filing of any such document.

**8.9     Waiver of Statute of Limitations.**   To the full extent Borrower may do so, Borrower hereby waives the right to assert any statute of limitations as a defense to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust.

**8.10     Forbearance by Lender Not a Waiver.**   Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy, and no waiver by Lender of any particular default shall constitute a waiver of any other default or of any similar default in the future.  Furthermore, no waiver of Lender's rights or remedies in one or more instances shall establish a course of dealing or other agreement that will bind Lender or prohibit Lender from enforcing the terms of the Loan Documents in another instance. Without limiting the generality of the foregoing, the acceptance by Lender of payment of any sum secured by this

Deed of Trust after the due date thereof shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust, nor shall Lender's receipt of any awards, proceeds or damages under Sections 2.3 and 2.7 hereof operate to cure or waive Borrower's default in payment of sums secured by this Deed of Trust.

      **8.11**     **Modifications and Waivers.** This Deed of Trust cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

      **8.12**     **Notice.** Any notice to Borrower under this Deed of Trust shall be given in accordance with the notice provisions in the Loan Agreement.

      **8.13**     **Governing Law; Severability; Captions.** This Deed of Trust shall be governed by the laws of the State of Oregon. If any provision or clause of this Deed of Trust conflicts with applicable law, such conflicts shall not affect other provisions or clauses hereof which can be given effect without the conflicting provision, and to this end the provisions hereof are declared to be severable. If any provision of this Agreement or of any of the other Loan Documents are declared invalid for any reason by a court of competent jurisdiction, the invalid provision shall be deemed omitted and the remaining terms of this Agreement and of all of the other Loan Documents shall remain in full force and effect. The captions and headings of the paragraphs and articles of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

      **8.14**     **Construction**. This Deed of Trust is the result of substantial negotiations between Borrower and Lender and shall be construed in accordance with the fair intent of the language contained herein in its entirety and not for or against either party, regardless of which party was responsible for its preparation. Borrower and Lender each represent to the other that each has consulted with its own legal counsel in connection with this Agreement.

      **8.15**     **Definitions.** As used herein: the term **"Borrower"** means the Borrower herein named, together with any subsequent owner of the Property or any part thereof or interest therein; the term **"Trustee"** means the Trustee herein named, together with any successor Trustee; and the term **"Lender"** means the Lender herein named, together with any subsequent owner or holder of the Note or any interest therein, including pledgees, assignees and participants.

      **8.16**     **Successors and Assigns; Joint and Several Liability; Agents.** This Deed of Trust shall bind and inure to the benefit of the parties hereto and their respective heirs, devisees, legatees, administrators, executors, successors and assigns, subject to the provisions of Section 4 hereof. Each person executing this Deed of Trust as Borrower shall be jointly and severally liable for all obligations of Borrower hereunder. In exercising any rights hereunder or taking actions provided for herein, Lender and Trustee may act through their respective employees, agents or independent contractors as authorized by Lender and Trustee. Upon the occurrence of any default, Lender may proceed against any Borrower, any guarantor, or any of Lender's security for the Loan in such order and manner as Lender may elect in its sole discretion.

      **8.17**     **Further Assurances; Clerical Errors.** Borrower agrees to execute and acknowledge such additional documents as may be necessary or desirable in order to carry out the intent and purpose of

- 15 -

this Deed of Trust and the other Loan Documents, to confirm or establish the lien hereof, or to correct any clerical errors or legal deficiencies. Without limiting the foregoing, Borrower agrees to execute a replacement Note in the event the Note is lost or destroyed and to execute an amended and restated substitute Note to correct any clerical or other errors which may be discovered in the original Note. Failure of Borrower to comply with any request by Lender pursuant to this Section within ten (10) days after written request by Lender shall constitute a material Event of Default hereunder.

**8.18    Time.** Time is of the essence in connection with all obligations of Borrower herein.

**8.19    Estoppel Certificate.** Borrower shall, within ten days of a written request from Lender and at no charge to Lender, furnish Lender or any other party designated by Lender with a written statement, duly acknowledged, setting forth the sums secured hereby and any right of set-off, counterclaim or other defense that may exist with regard to the Secured Obligations.

**8.20    Request for Notice**. Borrower hereby requests that a copy of any notice of default and notice of sale hereunder be mailed to it at its address set forth at the beginning of this Deed of Trust.

**8.21    Assignment of Loan Documents**. Lender may assign the Loan Documents in whole or in part. Lender may make available to any proposed assignee or participant all credit and financial data with respect to Borrower and any guarantor as may be in the possession of Lender. Borrower agrees to provide any additional information that any proposed assignee or participant may reasonably request.

**8.22    Certain Obligations Unsecured**. Notwithstanding anything to the contrary set forth herein or any of the Loan Documents, this Deed of Trust shall not secure the following obligations (the **"Unsecured Obligations"**): (a) any obligations evidenced by or arising under the Indemnity Agreement or the Guaranty, and (b) any other obligations in this Deed of Trust or in any of the other Loan Documents to the extent that such other obligations relate specifically to the presence on the Property of Hazardous Materials <u>and</u> are the same or have the same effect as any of the obligations evidenced by or arising under the Indemnity Agreement. Any breach or default with respect to the Unsecured Obligations shall constitute an Event of Default hereunder, notwithstanding the fact that such Unsecured Obligations are not secured by this Deed of Trust. Nothing in this Section shall, in itself, impair or limit Lender's right to obtain a judgment in accordance with applicable law after foreclosure for any deficiency in recovery of all obligations that are secured by this Deed of Trust following foreclosure.

**8.23    Counterparts**. This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same original.

**8.24    Jury Trial Waiver**. BORROWER WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE LOAN OR THE LOAN DOCUMENTS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER ACKNOWLEDGES THAT BORROWER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THE LOAN DOCUMENTS AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED

OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

## ARTICLE IX

## STATE SPECIFIC PROVISIONS.

**9.01    Principals of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 17 and the other terms and conditions of this Security Instrument, the terms and conditions of this Article 17 shall control and be binding.

**9.02    No Oral Commitments Notice**.  UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY LENDER TO BE ENFORCEABLE.

Dated as of the day and year first written above.

**BORROWER:**

_____

**Vahan M. Dinihanian, Jr.**

# ACKNOWLEDGEMENT

STATE OF OREGON         )
                                  )
COUNTY OF _____)

This instrument was acknowledged before me on February ___, 2022, by Vahan M. Dinihanian, Jr. an individual residing in Multnomah County, Oregon.

_____
Signature of Notarial Officer

_____
Title
My commission expires: _____

(Seal, if any)

## EXHIBIT A

## LEGAL DESCRIPTION

*For informational purposes only:*

Tax ID No.:

Address:      237 NW Skyline Boulevard
                Portland, Oregon 97210

# Exhibit G

# ENVIRONMENTAL AND BUILDING LAWS
# AGREEMENT AND INDEMNITY

THIS ENVIRONMENTAL AND BUILDING LAWS AGREEMENT AND INDEMNITY ("**Agreement**") is made as of February ___, 2022, by **15005 NW CORNELL LLC,** an Oregon limited liability company, and **Vahan M. Dinihanian, Jr.** (collectively, the "**Borrower**"), to and for the benefit of **SORFI, LLC,** an Oregon limited liability company ("**Lender**").

## Recitals

Pursuant to a Loan Agreement ("**Loan Agreement**") between Borrower and Lender dated the same date as this Agreement, Lender has agreed to make a loan ("**Loan**") to Borrower in the principal amount of **Four Million Nine Hundred Sixty Thousand and 00/100 Dollars ($4,960,000.00)**, to be secured in part by the Deed of Trust on the Property. Lender's commitment to make the Loan is conditioned on Borrower's execution and delivery of this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the financial benefits to Borrower from the Loan, and to induce Lender to make the Loan, Borrower agrees as provided below.

1.      **Definitions**. As used in this Agreement, the following terms are defined as follows. Capitalized terms used but not defined herein have the meanings given them in the Loan Agreement.

1.1     "**Building Laws**" means all federal, state and local laws, statutes, regulations, ordinances and requirements, now or hereafter in effect, applicable to the ownership, or operation of the Property, including all building, zoning, planning, subdivision, fire, traffic, safety, health, labor, air quality, wetlands, shoreline and flood plain laws, statutes, regulations, ordinances and requirements, and all applicable requirements of the Fair Housing Act of 1968, the Fair Housing Amendments Act of 1988, the Americans With Disabilities Act of 1990, all other federal, state and local laws and ordinances related to handicapped access, and all statutes, rules, regulations, ordinances and orders of governmental bodies and regulatory agencies, and orders and decrees of any court adopted or enacted with respect thereto, and all government and private covenants, conditions and restrictions applicable to the Property, as now in effect or hereafter amended.

1.2     "**Environmental Law(s)**" means any federal, state or local law, statute, ordinance, code, rule, regulation, license, authorization, decision, order, injunction, decree, or rule of common law, and any judicial interpretation of any of the foregoing, which pertains to health, safety, any Hazardous Substances, or the environment (including but not limited to ground or air or water or noise pollution or contamination, and underground or above ground tanks) and shall include without limitation, the Solid Waste Disposal Act, 42 U.S.C. § 6901 et seq.; the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("**CERCLA**"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("**SARA**"); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq.; the Federal Resource Conversation and Recovery Act of 1976 (42 U.S.C. §6901 et seq.); the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq.; the Safe Drinking Water Act, 42 U.S.C. § 300f et seq.; and any other federal, state or local environmental statutes, and all rules, regulations, orders and decrees now or hereafter promulgated under any of the foregoing, as any of the foregoing now exist or may be changed or amended or come into effect in the future.

1.3 **"Hazardous Substance(s)"** means:

(a) Any oil, petroleum products, flammable substances, explosives, radioactive materials, hazardous wastes or substances, toxic wastes or substances or any other wastes, materials or pollutants which (i) pose a hazard to the Property or to persons on or about the Property or (ii) cause the Property to be in violation of any Environmental Law;

(b) Any asbestos in any form which is or could become friable or which is deemed hazardous under any Environmental Law, urea formaldehyde foam insulation, transformers or other equipment which contain dielectric fluid containing levels of polychlorinated byphenyls, or radon gas;

(c) Any chemical, material or substance defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials", "extremely hazardous waste", "restricted hazardous waste", or "toxic substances" or words of similar import under any applicable Hazardous Materials Laws, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601, *et seq*.; the Hazardous Materials Transportation Act, as amended, 49 U.S.C. §1801, *et seq*.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. §1251, *et seq*.; RCW Chapter 70.105D;

(d) Any Microbial Matter and infectious substances;

(e) Any other chemical, material or substance, exposure to which is prohibited, limited or regulated by any governmental authority or may or could pose a hazard to the environment or to the health and safety of the occupants of the Property or the owners and/or occupants of property adjacent to or surrounding the Property, or any other Person coming upon the Property or adjacent property.

1.4 **"Microbial Matter"** means fungi or bacterial matter which reproduces through the release of spores or the splitting of cells, including, but not limited to, mold, mildew and viruses, in quantities that are reasonably likely to cause material damage to the Property or that can reasonably be expected to pose a material health hazard.

1.5 **"Other Property"** means any property which becomes contaminated with Hazardous Substances as a result of the construction, development, operation or other activities on, over, under or about, or the contamination of, the Property.

1.6 **"Property"** means the real property located in Washington County, Oregon, legally described in <u>Exhibit A</u> attached, and all buildings, structures and other improvements now or hereafter located thereon.

2. <u>**Representations and Warranties**</u>. Borrower warrants and represents to Lender that:

2.1 <u>**Due Investigation.**</u> Borrower has (a) duly investigated the present and past uses of the Property and caused due inquiry of the appropriate governmental agencies and offices having jurisdiction over the Property as to whether the Property or any Other Property is or has been the site of storage or contamination by any Hazardous Substances, and Borrower has examined or been advised of all Environmental Laws applicable to the Property; and (b) been advised of all Building Laws applicable to the Property. Upon Lender's request, Borrower will provide Lender with a written summary of its investigations and copies of all inquiries and responses.

2.2 **Hazardous Substances.** Borrower has no knowledge of (a) the presence of any Hazardous Substances on the Property, (b) any spills, releases, discharges or disposal of Hazardous Substances that have occurred or are presently occurring on or onto, under or about the Property or any Other Property, (c) any failure by any person or entity to comply with all currently applicable Environmental Laws with respect to the generation, recycling, reuse, sale, storage, handling, transport and/or disposal of Hazardous Substances on or from the Property, or (d) the presence, use, storage and/or disposal of Hazardous Substances, except as generally and customarily used and in the quantity generally and customarily used in the ordinary course of operating, and maintaining properties such as the Property, all of which Borrower represents and warrants have been used, stored and disposed of in accordance with commercially reasonable practices and all applicable Environmental Laws.

2.3 **Building Laws.** All buildings, structures and other improvements on the Property fully comply with all applicable Building Laws and will be either located outside of any 100-year flood plain or continuously covered by adequate flood insurance. The Property is the only real property required to operate the Property and all improvements constructed thereon are in compliance with Building Laws. All certificates of occupancy and other governmental permits and approvals necessary for the occupancy of the improvements to be constructed on the Property have been obtained.

3. **Covenants.**

3.1 **Compliance with Laws.** Borrower shall cause the Property to be continuously in compliance with all Environmental Laws and Building Laws.

3.2 **No Release or Waiver.** Borrower has not and will not release or waive the liability of any previous owner, lessee or operator of the Property, or any other person or entity potentially responsible under (a) applicable Environmental Laws for the presence or removal of Hazardous Substances on or from the Property, or (b) applicable Building Laws. Borrower has made no promises of indemnification regarding Hazardous Substances or Building Laws to any person or entity other than Lender.

3.3 **Investigations.** If Borrower learns that the Property is contaminated by any Hazardous Substance or that there is any credible reason to suspect that contamination, Borrower at its cost and through the use of licensed and competent engineers and other experts, shall promptly and thoroughly investigate the Property and shall provide to Lender a detailed description of the investigation and any copies of reports regarding such contamination or suspected contamination which investigations and reports must be reasonably acceptable to Lender.

3.4 **Notice to Lender; Remediation.** Borrower will immediately notify Lender if Borrower receives notice or otherwise becomes aware of (a) any Hazardous Substance or other environmental problem or liability with respect to the Property or Other Property, (b) any lien, action or notice resulting from the violation of any Environmental Law or any Building Law, or (c) the Property being in violation of any applicable Building Law or Environmental Law. At its own cost, Borrower will take all actions which are necessary or desirable to clean up any Hazardous Substances affecting the Property, including removal, containment or other remedial action required by Environmental Laws, and cause the Property to be in compliance with all Environmental Laws and Building Laws. Any notice sent to Lender pursuant to this paragraph will describe with particularity any actual, potential or alleged violation of Building Laws or Environmental Laws, and shall contain Borrower's plan or recommendations for correcting the violations.

4. **Indemnification.** Borrower shall indemnify, protect, defend and hold Lender harmless from and against any and all claims, demands, damages, losses, liens, liabilities, penalties, fines, lawsuits

and other proceedings and costs and expenses (including attorneys' fees and disbursements, and architectural, engineering and accounting costs and all repair and clean-up costs) which accrue to or are made against or incurred by Lender, or are in any way connected with (a) the inaccuracy of any of the certifications, representations or warranties of Borrower contained in this Agreement, (b) any activities on the Property during Borrower's ownership, possession or control of the Property which directly or indirectly result in the Property or any Other Property being contaminated with Hazardous Substances, or the Property being in violation of any applicable Building Laws or Environmental Laws, or (c) the discovery and/or cleanup of Hazardous Substances deposited or existing on, over, under or about the Property or any Other Property, (d) any claim or cause of action to the effect that Lender is in any way responsible or liable for any act or omission of Borrower or its agents, or any persons performing labor or supplying materials to the Property, and (e) any breach by Borrower of any of its covenants or agreements set forth in this Agreement. If Lender becomes the owner of or acquires an interest in or rights to the Property by foreclosure or by a conveyance in lieu of foreclosure of the Deed of Trust or any other instruments securing the Loan, or by any other means, the foregoing indemnification obligation of Borrower shall survive such foreclosure or conveyance in lieu of foreclosure or other acquisition of the Property. Notwithstanding the foregoing, Borrower shall have no obligation to defend, indemnify or hold Lender harmless from any claim, demand, damage, loss, lien, liability, etc. arising solely from or out of the activities of Lender or its agents on the Property on or after transfer of the Property to Lender pursuant to foreclosure proceedings or in lieu thereof.

5. **Independent Unsecured Obligations.** Borrower's obligations under this Agreement are unconditional, unsecured, and separate, independent and distinct from the obligations of Borrower evidenced by the Note and secured by the Deed of Trust, and shall not be subject to any non-recourse or other limitation of liability provision in any of the Loan Documents. This Agreement shall survive repayment of the Note and reconveyance of the Deed of Trust, and any transfer of the Property, whether by sale, foreclosure, deed in lieu of foreclosure, or otherwise.

6. **Default**. It is a default under this Agreement if any representation or warranty in this Agreement proves to be materially false or misleading when made, or if Borrower fails to perform any covenant, agreement or obligation under this Agreement within the time allowed. Although the obligations of Borrower under this Agreement are not secured by the Deed of Trust, at Lender's option, any default under this Agreement shall be an Event of Default under the Deed of Trust and the Loan Agreement.

7. **Fees and Expenses**. Borrower shall reimburse Lender on demand for all legal fees and other costs and expenses incurred in enforcing this Agreement, together with interest thereon from the date of demand at the Default Rate under the Loan Agreement. Such fees, costs and expenses shall include those incurred with or without suit and in any appeal, any proceedings under any present or future federal bankruptcy act or state receivership, and any post-judgment collection proceedings.

8. **Notices**. Any notice under this Agreement shall be given as provided in the Loan Agreement

9. **General.** If Borrower is comprised of more than one person or entity, the term **"Borrower"** shall refer to each and every such person or entity and all of such persons and entities shall be jointly and severally liable under this Agreement. The term **"Lender"** shall refer to SORFI, LLC and its universal successors and assigns, and any person or entity designated or appointed by Lender to acquire the Property through foreclosure or by transfer in lieu of foreclosure, and any and all other financial institutions participating in the Loan or to which the Loan may hereafter be assigned. This Agreement shall be binding upon and inure to the benefit of Lender, Borrower and their respective heirs, representatives, successors and assigns. The failure of Lender to promptly enforce any right or remedy under this Agreement shall not constitute a waiver thereof and shall not affect or impair the liability of Borrower. If any provision of this

- 4 -

Agreement is invalid, illegal or unenforceable, such provision shall be considered severed from the rest of this Agreement and the remaining provisions shall continue in full force and effect as if the invalid provision had not been included. This Agreement may be signed in counterparts all of which together shall constitute one and the same original. This Agreement shall be governed by and construed under the laws of the State of Oregon.

10. **Waiver of Jury Trial.** BORROWER WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER ACKNOWLEDGES THAT BORROWER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

DATED as of the day and year first written above.

**BORROWER:**

**15005 NW CORNELL LLC**, an Oregon limited liability company

By:     _____
         Vahan M. Dinihanian, Jr., its manager

**Vahan M. Dinihanian, Jr.,** an individual

_____

## **EXHIBIT A**

### **LEGAL DESCRIPTION**

*For informational purposes only:*

Tax ID No.:

Address:      15005 NW Cornell Road
Beaverton, Oregon  97006


237 NW Skyline Boulevard
Portland, Oregon 97210

# Exhibit H

**UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE**

THIS UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE ("**Guaranty**") is made as of February ___, 2022, by **VAHAN M. DINIHANIAN, JR.** and **EAGLE HOLDINGS LLC,** an Oregon limited liability company (individually and collectively, "**Guarantor**"), to and for the benefit of **SORFI, LLC,** an Oregon limited liability company ("**Lender**"), and its successors, assigns and participants.

**RECITALS**:

Pursuant to a Loan Agreement ("**Loan Agreement**") between Lender and **15005 NW CORNELL LLC,** an Oregon limited liability company, and **Vahan M. Dinihanian, Jr.** (collectively, the "**Borrower**"), dated the same as this Guaranty, Lender has agreed to make a loan ("**Loan**") to Borrower in the amount of **Four Million Nine Hundred Sixty Thousand and 00/100 Dollars ($4,960,000.00)**. The Loan is or will be evidenced by a Promissory Note ("**Note**"), and secured by a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing ("**Deed of Trust**") for the benefit of Lender, each dated the same as this Guaranty. Pursuant to the Loan Agreement, Borrower is also executing an Environmental and Building Laws Agreement and Indemnity ("**Indemnity Agreement**") in favor of Lender dated the same as this Guaranty.

As a condition precedent to making the Loan, Lender required that Guarantor execute and deliver this Guaranty. Any capitalized term used and not defined in this Guaranty shall have the meaning given to such term in the Loan Agreement.

**AGREEMENT**

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in order to induce Lender to make the Loan to Borrower, Guarantor agrees as follows:

1. **Definitions.** Capitalized terms used but not defined in this Guaranty have the meanings given them in the Loan Agreement.

2. **Guaranty**. Guarantor unconditionally, absolutely and irrevocably guarantees to Lender: (a) the due and punctual payment of the Note and all other amounts payable by Borrower under the Loan Documents; (b) the due and punctual performance of any and all other obligations of Borrower to Lender under the Loan Documents; and (c) the due and punctual payment and performance of all obligations of Borrower under the Indemnity Agreement (collectively, the "**Guaranteed Obligations**"). This Guaranty is a guarantee of payment, not of collection, and is in no way conditioned upon any attempt by Lender to first enforce the obligations of Borrower under the Loan Documents. This is a continuing guaranty which shall remain in full force and effect until all the Guaranteed Obligations have been fully paid and performed. Guarantor shall not be released from any obligations to Lender under this Guaranty as long as any Guaranteed Obligation is not satisfied, settled or paid or performed in full.

3. **Form of Payment.** All payments under this Guaranty shall be made to Lender in immediately available U.S. funds without reduction by any recoupment, set-off, counterclaim or cross claim against Lender.

4. **Representations and Warranties**. Guarantor represents and warrants to Lender as follows: (a) Guarantor has a financial interest in Borrower and will receive a direct and material benefit from

the Loan; (b) Guarantor acknowledges that Lender would not make the Loan to Borrower without this Guaranty; (c) the financial benefits to Guarantor from the Loan constitute reasonably equivalent value for the execution of this Guaranty, (d) Guarantor is not insolvent and will not become insolvent as a result of this Guaranty, (e) Guarantor is not engaged in a business or transaction, and is not about to engage in a business or transaction, for which the property of Guarantor constitutes unreasonably small capital, (f) Guarantor does not intend to or believe that it will incur debts that would be beyond Guarantor's ability to pay as such debts mature, (g) Guarantor has reviewed and approved of all of the terms and conditions of the Loan Documents, (h) Guarantor has established adequate means of obtaining, and will obtain from Borrower on a continuing basis, all financial and other information regarding Borrower, any other guarantor, and the Loan, without any obligation on the part of Lender to provide any such information, now or in the future.

5. **Rights of Lender**. Guarantor agrees that Lender may deal exclusively with Borrower in all matters relating to the Loan without notice to or the approval of Guarantor. It is intended that Guarantor shall remain fully liable regardless of any act or omission by Lender which might otherwise directly or indirectly result, by operation of law or otherwise, in the discharge or release in whole or in part of Borrower, any other guarantor, or any other person, or the discharge, release, or impairment of any collateral ("**Collateral**") now or hereafter held as security for any of the Obligations. Without limiting the generality of the foregoing, Guarantor agrees that Lender may do or fail to do any of the following one or more times, without notice to or the approval of Guarantor, and without diminishing, altering, or otherwise affecting the absolute, unconditional, and irrevocable liability of Guarantor hereunder:

(a) Lender may agree with Borrower on any modification, extension, renewal, and replacement of any of the terms and conditions of the Loan Documents.

(b) Lender may extend, renew, accelerate, or otherwise change the time for payment and performance of any of the Guaranteed Obligations.

(c) Lender may release Borrower, any other guarantor or any other person having any liability under the Loan Documents.

(d) Lender may release, surrender, substitute, or exchange any of the Collateral.

(e) Lender does not have to marshal assets and may direct the order or manner of sale of the Collateral as Lender may determine in its discretion.

(f) Lender may apply the Collateral to the repayment of any amounts owing to Lender under the Loan Documents in any order Lender may determine in its discretion.

(g) Lender may forbear from pursuing Borrower, any other guarantor or any other person, or forbear from foreclosing or otherwise realizing upon any of the Collateral.

(h) Lender may impair or fail to perfect a security interest in any of the Collateral.

(i) Lender may sell the Collateral in any manner it may determine in its discretion, without notice to Guarantor and whether or not such sale is commercially reasonable.

(j) Lender does not have to notify Guarantor of Lender's acceptance of this Guaranty.

(k) Lender does not have to notify Guarantor when Lender advances Loan proceeds, extend credit to Borrower, or pay any obligations of Borrower.

(l)     Lender does not have to notify Guarantor of any Default or Event of Default under the Loan Documents.

(m)     Lender does not have to make presentment and demand for payment, protest, or notice of demand, protest, dishonor and nonpayment.

6.     **Guarantor's Obligations are Absolute.**  The obligations of Guarantor under this Guaranty are absolute and unconditional, not subject to any counterclaim, set-off, recoupment, deduction or defense based upon any claim Guarantor may have against Lender or Borrower and shall remain in full force and effect without regard to, and shall not be released, discharged or terminated or in any other way affected by, any circumstance or condition (whether or not Guarantor shall have any knowledge or notice thereof), including without limitation: (a) any amendment, modification, or extension of time for payment or performance of any Guaranteed Obligations (except that the liability of Guarantor hereunder shall be deemed to apply to the Loan Documents as so amended or modified or the payment of all amounts so extended); (b) any exercise or non-exercise by Lender of any right, power or remedy under or in respect of the Loan Documents, or any waiver, consent, forbearance, indulgence or other action, inaction or omission by Lender under or in respect of the Loan Documents; (c) any assignment, sale or other transfer of Borrower's interest in all or any part of the real or personal property which at any time constitutes collateral for payment of the Guaranteed Obligations, including without limitation a conveyance of such property by Borrower to Lender by deed in lieu of foreclosure; (d) any bankruptcy, insolvency, reorganization, adjustment, dissolution, liquidation or other like proceeding involving or affecting Borrower or Lender or their respective properties or creditors, or any action taken with respect to the Loan Documents by any trustee or receiver of Lender or Borrower or by any court, in any such proceeding; (e) any invalidity or unenforceability, in whole or in part, of any term or provision of the Loan Documents or Borrower's incapacity or lack of authority to enter into the Loan Documents; (f) any release, compromise, settlement or discharge with respect to all or any portion of Borrower's obligations under the Loan Documents; (g) any acceptance of additional or substitute collateral for payment of any of the Guaranteed Obligations or any release or subordination of any collateral held at any time by Lender as security for the payment of the Guaranteed Obligations; (h) any resort to Guarantor for payment of all or any portion of the Guaranteed Obligations, whether or not Lender shall have resorted to any collateral securing the Guaranteed Obligations or shall have proceeded against Borrower or any other Person primarily or secondarily liable for the Guaranteed Obligations (it being intended that Lender may pursue its rights hereunder at any time or times); or (i) any waiver by Lender of any breach of the Loan Documents by Borrower.  No exercise, delay in exercise or non-exercise by Lender of any right given it hereby, no dealing by Lender with Borrower, Guarantor or any other Person or Persons, no change, impairment or suspension of any right or remedy of Lender, and no act or thing which, but for this provision could act as a release or exoneration of the liabilities of Guarantor hereunder, shall in any way affect, decrease, diminish or impair Guarantor's obligations hereunder or give Guarantor or any other Person any recourse or defense against Lender.

7.     **Waiver of Defenses.**  Guarantor unconditionally waives the following: (a) notice of acceptance of this Guaranty and of any matters referred to in Section 6 above; (b) all notice which may be required by statute, rule of law or otherwise to preserve intact any rights Lender may have against Guarantor under this Guaranty, including without limitation, any demand, proof or notice of non-payment of any Guaranteed Obligations, and notice of any failure on the part of Borrower to perform and comply with any covenant, agreement, term or condition of the Loan Documents; (c)  any right to the enforcement, assertion or exercise of any right, power or remedy conferred in the Loan Documents or otherwise; (d) any requirement that Lender act with diligence in enforcing its rights under the Loan Documents or this Guaranty; (e) any right to require Lender to proceed against or exhaust its recourse against Borrower or any security or collateral held by Lender at any time for the payment of the Guaranteed Obligations or to pursue any other remedy in its power before being entitled to payment from Guarantor under this Guaranty or before proceeding against Guarantor; (f) any failure by Lender to file or enforce a claim against the estate (whether in administration,

bankruptcy or any other proceeding) of Borrower or any other Person; (g) any defense based upon election of remedies by Lender which destroys or otherwise impairs the subrogation rights of Guarantor or the right of Guarantor (after payment of the Guaranteed Obligations) to proceed against Borrower for reimbursement, or both; (h) any defenses based upon the taking, modification or release of any collateral for the Guaranteed Obligations, including without limitation any defenses based upon any anti-deficiency statute, or any failure to perfect any security interest in, or the taking of, or failure to take any other action with respect to, any collateral securing payment of the Guaranteed Obligations; (i) any defense based upon the addition, substitution or release, in whole or in part, of any Person, including without limitation another Guarantor, primarily or secondarily liable for or in respect of the Guaranteed Obligations; (j) any rights or defenses based upon an offset by Guarantor against any obligation now or hereafter owed to Guarantor by Borrower; (k) any defense of the statute of limitations in any action against Guarantor under this Guaranty; and (l) all other notices which may or might be lawfully waived by Guarantor; it being the intention hereof that Guarantor shall remain liable as principal, to the extent set forth in this Guaranty, until payment in full of the Guaranteed Obligations, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of the Guarantor other than payment in full of the Guaranteed Obligations. No delay by Lender in exercising any rights and/or power hereunder or in taking any action to enforce Borrower's obligations under the Loan Documents shall operate as a waiver as to such rights or powers or in any manner prejudice any and all of the Lender's rights and powers hereunder against Guarantor.

8.  **Waiver of Suretyship Defenses**. Guarantor hereby waives any act or thing which might otherwise be deemed a legal or equitable discharge of a surety; including without limitation any defense based on any of the following: (a) the lack of diligence or any delay in enforcing, or any waiver of or failure to enforce, any right or remedy under the Loan Documents; (b) the failure or invalidity of, or any defect in, the Loan Documents; (c) any disability or other defense of the Borrower, any other Guarantor or any other person; (d) the termination from any cause whatsoever of any of Borrower's obligations under the Loan Documents, except upon payment and performance in full of the Guaranteed Obligations; (e) the loss or impairment of any right of subrogation; (f) any modification of any of the terms and conditions of the Loan Documents in any form whatsoever and without notice to Guarantor, including without limitation the renewal, extension, compromise, acceleration or other change in time for payment or performance thereof and any increase or decrease in the rate of interest thereon; (g) the foreclosure of the Collateral or any portion thereof; it being intended that this Guaranty shall survive the realization upon any of the Collateral, including without limitation non-judicial foreclosure.

9.  **Waiver of Right of Subrogation**. Until the Guaranteed Obligations are fully paid and satisfied, Guarantor hereby waives any right of subrogation, any right to enforce any remedy Lender may have against Borrower, any other guarantor or any other person, and any benefit of, and the right to participate in, any of the Collateral.

10.  **Waiver of Right of Reimbursement**. Until the Guaranteed Obligations are fully paid and satisfied, Guarantor hereby waives any right of reimbursement, contribution, recourse, or any other right or remedy of Guarantor against Borrower, any other guarantor or any other person to recover amounts which Guarantor is obligated to pay under this Guaranty.

11.  **Expenses.** Guarantor agrees to pay on demand and whether or not suit is brought, all costs and out of pocket expenses, including without limitation court costs and expenses, bankruptcy and insolvency costs and expenses and the reasonable fees and disbursements of legal counsel, incurred by or on behalf of Lender in connection with the enforcement, defense or interpretation of Guarantor's obligations under this Guaranty or the protection of Lender's rights under this Guaranty. The covenant contained in this Section shall survive payment of the Guaranteed Obligations.

- 4 -

12.     **Condition of Borrower.** Guarantor is fully aware of the financial condition of Borrower and is signing and delivering this Guaranty based solely upon Guarantor's own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement made by Lender.  Guarantor represents and warrants that Guarantor is in a position to obtain, and hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Borrower and of all other matters pertinent hereto and all circumstances bearing upon the risk of non-payment of the indebtedness guaranteed hereby, which diligent inquiry would reveal, and Guarantor is not relying upon or expecting Lender to furnish and acknowledges that Lender has no duty to advise Guarantor of or to furnish any information now or in the future in Lender's possession concerning the same or any other matter or any such circumstances.  By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of this type, which risks Guarantor acknowledges.

13.     **Further Assurances.** Guarantor agrees at any time and from time to time upon request by Lender to take, or cause to be taken, any action and to execute and deliver any additional documents which, in the opinion of Lender, may be necessary to assure to Lender the full benefits of this Guaranty.

14.     **Subordination**.  Any indebtedness of Borrower now or hereafter held by Guarantor is hereby subordinated to the Guaranteed Obligations.  Any payment of such subordinated indebtedness by Borrower to Guarantor before payment in full of the Guaranteed Obligations shall be collected, enforced and received by Guarantor as trustee for Lender and promptly paid to Lender for application against the Guaranteed Obligations.

15.     **Insolvency and Liability of Borrower.** So long as any of the Guaranteed Obligations are outstanding and this Guaranty is in effect, Guarantor will file all claims against Borrower in any bankruptcy or other proceeding in which the filing of claims is required by law in connection with indebtedness owed by Borrower to Guarantor and to assign to Lender all rights of Guarantor thereunder up to the amount of the unpaid Guaranteed Obligations.  In all such cases the Persons authorized to pay such claims shall pay to Lender the full amount thereof to the full extent necessary to pay the Guaranteed Obligations and Guarantor hereby assigns to Lender all of Guarantor's rights to all such payments to which Guarantor would otherwise be entitled.  Notwithstanding the foregoing, and except to the extent that any sums owed by Borrower to Lender under the Loan Documents have been fully satisfied thereby, the liability of Guarantor hereunder shall in no way be affected by (a) the release or discharge of Borrower in any creditors', receivership, bankruptcy or other proceedings; or (b) the impairment, limitation or modification of the liability of Borrower or the estate of Borrower in bankruptcy resulting from the operation of any present or future provision of the Bankruptcy Code or other statute, or from the decision of any court.

16.     **Preferences, Fraudulent Conveyances, Etc.** If Lender is required to refund, or voluntarily refunds, any payment received from Borrower because such payment is or may be avoided, invalidated, declared fraudulent, set aside or determined to be void or voidable as a preference, fraudulent conveyance, impermissible setoff or a diversion of trust funds under the bankruptcy laws or for any similar reason, including without limitation any judgment, order or decree of any court or administrative body having jurisdiction over Lender or any of its property, or any settlement or compromise of any claim effected by Lender with Borrower or any other claimant (**"Rescinded Payment"**) then Guarantor's liability to Lender shall continue in full force and effect, or Guarantor's liability to Lender shall be reinstated, as the case may be, with the same effect and to the same extent as if the Rescinded Payment had not been received by Lender, notwithstanding the cancellation or termination of the Note or any of the other Loan Documents.  In addition, Guarantor shall pay or reimburse Lender for all expenses (including all reasonable attorneys' fees, court costs and related disbursements) incurred by Lender in the defense of any claim that a payment received by Lender in respect of all or any part of the Guaranteed Obligations must be refunded. The provisions of this Section shall survive the termination of this Guaranty and any satisfaction and discharge of Borrower by virtue of any payment, court order or any federal or state law.

- 5 -

17.     **Waiver**.  Neither this Guaranty nor any term hereof may be changed, waived, discharged or terminated except by an instrument in writing signed by Lender and Guarantor expressly referring to this Guaranty and to the provisions so changed or limited.  No such waiver shall extend to or affect any obligation not expressly waived or impair any right consequent thereon.  No course of dealing or delay or omission on the part of Lender in exercising any right under this Guaranty shall operate as a waiver thereof or otherwise be prejudicial thereto.

18.     **Notices**.  Any demand or notice required or permitted to be given by Lender to Guarantor under this Guaranty shall be in writing and shall be deemed to have been duly given if delivered personally or by overnight courier service or if sent by registered or certified mail, return receipt requested, addressed to Guarantor at the address for notices set forth below Guarantor's signature below or any other address furnished by Guarantor to Lender.  Any notice delivered to Guarantor's designated address in the manner set forth herein shall be deemed to have been received by Guarantor at the time the notice is delivered at the designated address.  Confirmation by courier delivering any such notice pursuant to this Section shall be conclusive evidence of receipt of such notice.  Guarantor agrees not to refuse or reject delivery of any notice given hereunder and to acknowledge, in writing, receipt of same upon request by Lender and that any notice rejected or refused by Guarantor shall be deemed for all purposes of this Guaranty to have been received by Guarantor on the date refused or rejected, as conclusively established by the records of the U.S. Postal Service or the courier service.

19.     **Assignment**.  Lender may, without notice to Guarantor, assign or transfer the Loan and the Loan Documents, in whole or in part.  In such event, each and every immediate and successive assignee, transferee or holder of all or any part of the Loan and the Loan Documents shall have the right to enforce this Guaranty, by legal action or otherwise, as fully as if such assignee were by name specifically given such right and power in this Guaranty.  Lender shall have an unimpaired right to enforce this Guaranty for its benefit as to so much of the Loan and the Loan Documents as Lender has not sold, assigned or transferred.

20.     **Guarantor Bound by Judgment Against Borrower**.  Guarantor shall be conclusively bound, in any jurisdiction, by the judgment in any action by Lender against Borrower in connection with the Loan Documents (wherever instituted) as if Guarantor were a party to such action even if not so joined as a party.

21.     **Joint and Several Liability**.  The obligations of each Guarantor hereunder are joint and several.

22.     **Counterparts**.  This Guaranty may be signed in one or more counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

23.     **Governing Law/Jurisdiction**.  This Guaranty shall be governed by and construed in accordance with the laws of the State of Oregon and the obligations, rights and remedies of Guarantor and Lender hereunder shall be determined in accordance with such laws, without, however, giving effect to any provisions thereof that would require application of the laws of any other jurisdiction.  Guarantor hereby consents to the jurisdiction of the courts of the State of Oregon.

24.     **Invalid Provisions**.  If any provision of this Guaranty or the application thereof to Guarantor or any circumstance in any jurisdiction whose laws govern this Guaranty shall, to any extent, be invalid or unenforceable under any applicable statute, regulation or rule of law, then such provision shall be deemed inoperative to the extent of such invalidity or unenforceability and shall be deemed modified to conform to such statute, regulation or rule of law.  The remainder of this Guaranty and the application of any such invalid or unenforceable provision to parties, jurisdictions or circumstances other than those to whom or to which it

is held invalid or unenforceable, shall not be affected by such invalidity or unenforceability nor shall such invalidity or unenforceability affect the validity or enforceability of any other provision of this Guaranty.

25. **General Provisions.** This Guaranty shall be binding upon the respective heirs, legal representatives, successors and assigns of each Guarantor, and shall inure to the benefit of Lender and its successors and assigns, including without limitation, each successive holder of the Note. Descriptive headings of the Sections of this Guaranty have been inserted herein for convenience of reference only and shall not define or limit the provisions hereof. Except as otherwise provided in this Guaranty, each married individual who executes this Guaranty intends to bind both his or her separate estate and his or her marital community.

26. **Credit Verification**. Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, general partner of a Guarantor or in any other capacity, hereby authorizes Lender to check any credit references, verify his/her employment and obtain credit reports from credit reporting agencies of Lender's choice in connection with any monitoring, collection or future transaction concerning the Guaranteed Obligations, including any modification, extension or renewal of the Guaranteed Obligations.

27. **Waiver of Jury Trial**. GUARANTOR WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THIS GUARANTY. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY GUARANTOR, AND GUARANTOR ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. GUARANTOR FURTHER ACKNOWLEDGES THAT GUARANTOR HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL SELECTED OF GUARANTOR'S OWN FREE WILL, AND THAT GUARANTOR HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

*signatures on following page*

**GUARANTOR**:

_____
**VAHAN M. DINIHANIAN, JR.**

**EAGLE HOLDINGS LLC**, an Oregon limited liability company

By:     _____
        Vahan M. Dinihanian, Jr., its sole member

# Exhibit I

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
206-805-2700

**B. E-MAIL CONTACT AT FILER** (optional)

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Pete deNormandie
deNormandie, Sidlo & Associates PLLC
1215 Fourth Avenue, Suite 1901
Seattle Washington  98161

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 15005 NW CORNELL LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 237 NW Skyline Blvd. | Portland | OR | 97210 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SORTIS INCOME FUND, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 9 SE THIRD AVENUE, SUITE 100 | PORTLAND | OR | 97214 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:

See attached Schedule 1 and Exhibit A for Description of Collateral.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Cornell

**File with Oregon Secretary of State**

International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

**15005 NW CORNELL LLC**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☑ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

**SORFI, LLC**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| **9 SE THIRD AVENUE, SUITE 100** | **PORTLAND** | **OR** | **97214** | **USA** |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

<u>**SCHEDULE 1 TO FINANCING STATEMENT**</u>

**DEBTOR:**                **15005 NW CORNELL LLC,** an Oregon limited liability company

**SECURED PARTY**:          **SORTIS INCOME FUND, LLC,** an Oregon limited liability company

All of Debtor's right, title and interest in and to:

(a)      All present and future fixtures and articles of property attached to, or used or adapted for use in the ownership, development, operation or maintenance, of the real property located in Washington County, Oregon, legally described on <u>Exhibit A</u> attached (the "**Realty**"), and the buildings, improvements and tenements (the "**Improvements**") now or hereafter located thereon (whether such items are leased, owned or subject to any title-retaining or security instrument), including without limitation all heating, cooling, air-conditioning, ventilating, refrigerating, plumbing, generating, power, lighting, laundry, maintenance, incinerating, lifting, cleaning, fire prevention and extinguishing, security and access control, cooking, gas, electric and communication fixtures, equipment and apparatus, all engines, motors, conduits, pipes, pumps, tanks, ducts, compressors, boilers, water heaters and furnaces, all ranges, stoves, disposers, refrigerators and other appliances, all escalators and elevators, baths, sinks, all cabinets, partitions, mantels, built-in mirrors, window shades, blinds, screens, awnings, storm doors, windows and sash, all carpeting, underpadding, floor covering, paneling, and draperies, all furnishings of public spaces, halls and lobbies, and all shrubbery and plants;

(b)      All present and future easements, access, air and development rights, minerals and oil, gas and other hydrocarbon substances, royalties, water, water rights and water stock, and other rights, hereditaments, privileges, permits, licenses, franchises and appurtenances belonging or in any way appertaining to the Realty;

(c)      All present and future rents, revenues, issues, profits and income from the Realty, the Improvements or both, and all present and future leases and other agreements for the occupancy or use of all or any part of the Realty or Improvements, including without limitation all cash or security deposits, advance rentals and deposits or payments of similar nature, and all guarantees of tenants' or occupants' performance under any and all leases or agreements of occupancy or use of all or part of the Realty, the Improvements or both;

(d)      All present and future tangible personal property ("**Personal Property**") used in connection with the ownership, development, operation or maintenance of the Realty, the Improvements or both, including without limitation all furniture, furnishings, equipment and supplies;

(e)      All present and future intangible personal property used in connection with the ownership, development, operation or maintenance of the Realty, Improvements and/or Personal Property, including without limitation all permits, licenses and franchises, contract rights (including but not limited to architectural, engineering and management contracts), all accounts receivable, escrow accounts, insurance policies, deposits, instruments, documents of title, general intangibles, and business records, and the exclusive right to the use of trade names;

(f)      All present and future materials, supplies and other goods wherever located, whether in the possession of Debtor, warehouseman, bailee or any other person, purchased for use in the construction, operation or furnishing of the Improvements, together with any documents covering such materials, and all contract rights and general intangibles relating to such materials;

(g)      All present and future site plans, plats, architectural plans and specifications, work drawings, surveys, engineering reports, test borings, market surveys and other work products relating to the Realty;

(h)      All present and future construction contracts relating to the Improvements, together with any and all performance, payment, completion or other surety bonds now or hereafter issued by any surety in connection with or related to the aforesaid construction contracts, which are transferable by Debtor;

- 1 -

(i)      All present and future contracts and policies of insurance which insure any buildings, structures or improvements on the Realty, or any fixtures or personal property thereon, against casualty and theft, and all monies and proceeds and rights thereto which may become payable by virtue of any insurance contracts or policies;

(j)      Any good faith deposit or other deposit paid to any potential lender on the Realty; and

(k)      All products and proceeds of the foregoing.

**EXHIBIT A**

**LEGAL DESCRIPTION**

*For informational purposes only:*

Tax ID No.:

Address:      15005 NW Cornell Road
                Beaverton, Oregon  97006